**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com
*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ERICKSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SNAP INC., EVAN SPIEGEL, and ANDREW VOLLERO,<br><br>Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff James Erickson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United

States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Snap Inc. ("Snap" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Snap securities: (1) pursuant and/or traceable to Snap's false and misleading Registration Statement and Prospectus, issued in connection with the Company's initial public offering on or about March 2, 2017 (the "IPO" or the "Offering"); and/or (2) on the open market between March 2, 2017 and May 15, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Snap Inc. is a camera company that provides technology and social media services. The Company develops mobile camera application products and services that allow users to send and receive photos, drawings, text, and videos. Snap serves customers worldwide.

3.     Founded in 2010, the Company was formerly known as "Snapchat, Inc." and changed its name to Snap Inc. in September 2016.  Snap is headquartered in Venice,

2

California.  Snap's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "SNAP."

4.     On or about March 3, 2017, the Company completed its IPO, issuing 200,000,000 shares and raising net proceeds of approximately $3.91 billion.

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Snap's reported user growth was materially false and misleading; and (ii) as a result, Snap's public statements were materially false and misleading at all relevant times.

6.     On May 10, 2017, post-market, Snap issued its first quarterly report as a public company, disclosing disappointing user growth at the Company's Snapchat messaging platform.  For the quarter, Snap reported 166 million daily users, only 8 million more than in the previous period and only 44 million more than the same period in the prior year—Snapchat's slowest year-to-year growth rate in at least two years.

7.     On this news, Snap's share price fell $4.93, or 21.45%, to close at $18.05 on May 11, 2017.

8.     On May 16, 2017, *Bloomberg* reported that a former Snap employee, Anthony Pompliano ("Pompliano"), had filed a lawsuit against Snap, "claim[ing] he was

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

fired after three weeks on the job for raising questions about allegedly false growth metrics [and] seeking whistleblower protection against retaliation by [the] company."

9.      On this news, Snap's share price fell $0.02, or 0.1%, to close at $20.72 on May 16, 2017.

10.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

11.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

13.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and operate facilities in this district, and a significant portion of the Defendants' actions, and the subsequent damages, took place within this Judicial District.

14.   In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.   Plaintiff, as set forth in the accompanying Certification, purchased Snap securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.   Defendant Snap is incorporated in Delaware and its principal executive offices are located at 63 Market Street, Venice, California 90291.  Snap's securities are traded on the NYSE under the ticker symbol "SNAP."

17.   Defendant Evan Spiegel ("Spiegel") co-founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO"), President and Director.

18.   Defendant Andrew Vollero ("Vollero") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

19.   The Defendants referenced above in ¶¶ 17-18 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Snap Inc. is a camera company that provides technology and social media services. The Company develops mobile camera application products and services that allow users to send and receive photos, drawings, text, and videos. Snap serves customers worldwide.

21.     On February 2, 2017, Snap filed a registration statement on Form S-1 with the SEC in connection with the IPO. The registration statement was subsequently amended several times, with the final amended registration statement filed on Form S-1/A with the SEC on February 27, 2017 (collectively, the "Registration Statement").

22.     The Registration Statement contained a preliminary prospectus.  The final prospectus (the "Prospectus") was filed with the SEC on March 3, 2017.

23.     On March 1, 2017, the SEC declared the Registration Statement effective.

24.     On or about March 3, 2017, the Company completed its IPO, issuing 200,000,000 shares and raising net proceeds of approximately $3.91 billion.

**Materially False and Misleading Statements Issued During the Class Period**

25.     On March 2, 2017, Snap filed its Prospectus with the SEC, which forms part of the Registration Statement.  In the Prospectus, the Company stated, in relevant part:

> We had 158 million Daily Active Users on average in the quarter ended December 31, 2016, and we view Daily Active Users as a critical measure of our user engagement. Adding, maintaining, and engaging Daily Active Users have been and will continue to be necessary. We anticipate that our Daily Active Users growth rate will decline over time if the size of our active user base increases or we achieve higher market penetration rates. If our Daily Active Users growth rate slows, our financial performance will increasingly depend

on our ability to elevate user engagement or increase our monetization of users.

. . .

**We regularly review metrics, including our Daily Active Users and ARPU metrics, to evaluate growth trends, measure our performance, and make strategic decisions**. These metrics are calculated using internal company data and have not been validated by an independent third party. While **these numbers are based on what we believe to be reasonable estimates of our user base for the applicable period of measurement**, there are inherent challenges in measuring how our products are used across large populations globally.

. . .

Unless otherwise stated, statistical information regarding our users and their activities is determined by calculating the daily average of the selected activity for the most recently completed quarter included in this prospectus. For example, we state that on average over 2.5 billion Snaps were created every day in the quarter ended December 31, 2016. This metric is the average of the total number of Snaps created daily throughout the quarter ended December 31, 2016, which is the most recently completed quarter included in this prospectus. This same methodology is used to calculate other metrics related to Daily Active Users, including percentage of Daily Active Users that use the Chat Service every day, number of times a day Daily Active Users visit Snapchat, and amount of time spent on Snapchat every day.

(Emphases added.)

26.     The Registration Statement was signed by the Individual Defendants.

27.     The statements referenced in ¶¶ 25-26 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Snap's reported user growth was materially false and misleading; and (ii) as a result, Snap's public statements were materially false and misleading at all relevant times.

7

**The Truth Begins To Emerge**

28.     On May 10, 2017, post-market, Snap issued a press release and filed a Form 8-K with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 8-K").   For the quarter, the Company reported a net loss of $2.21 billion, or $2.31 per diluted share, on revenue of $149.65 million, compared to a net loss of $104.58 million, or $0.14 per diluted share, on revenue of $38.8 million for the same period in the prior year.

29.     That same day, Snap filed its first quarterly report on Form 10-Q with the SEC (the "Q1 2017 10-Q"), disclosing disappointing user growth at the Company's Snapchat messaging platform.   For the quarter, Snap reported 166 million daily users, only 8 million more than in the previous period and only 44 million more than the same period in the prior year—Snapchat's slowest year-to-year growth rate in at least two years.

30.     In the Q1 2017 10-Q, the Company stated, in relevant part:

> We had 166 million and 158 million Daily Active Users on average in the quarters ended March 31, 2017 and December 31, 2016, respectively, and we view Daily Active Users as a critical measure of our user engagement. Adding, maintaining, and engaging Daily Active Users have been and will continue to be necessary. We anticipate that our Daily Active Users growth rate will decline over time if the size of our active user base increases or we achieve higher market penetration rates. If our Daily Active Users growth rate slows, our financial performance will increasingly depend on our ability to elevate user engagement or increase our monetization of users.
>
> ***
>
> [A]lthough Daily Active Users grew by 7% from 143 million Daily Active Users for the quarter ended June 30, 2016 to 153 million Daily

8

Active Users for the quarter ended September 30, 2016, the growth in Daily Active Users was relatively flat in the latter part of the quarter ended September 30, 2016.

31.     On this news, Snap's share price fell $4.93, or 21.45%, to close at $18.05 on May 11, 2017.

32.     On May 16, 2017, *Bloomberg* reported that Anthony Pompliano, a former Snap employee with responsibility for running Snap's new user growth and engagement team, had filed a lawsuit against Snap, "claim[ing] he was fired after three weeks on the job for raising questions about allegedly false growth metrics [and] seeking whistleblower protection against retaliation by [the] company."  Pompliano's complaint alleged, *inter alia*, that certain Snap executives "have been falsely representing its key performance metrics—such as user growth and engagement figures—to advertisers, the media, the public, and investors in an effort to inflate Snapchat's valuation prior to taking the company public in its recent multi-billion-dollar public offering", and that "Pompliano's refusal to participate in Snapchat's institutional pandemic of misrepresenting key industry metrics to its employees, investors, trading partners, advertisers, and media . . . led to his unlawful termination".

33.     On this news, Snap's share price fell $0.02, or 0.1%, to close at $20.72 on May 16, 2017.

34.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Snap securities publicly traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Snap securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

11

- whether the prices of Snap securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Snap securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

12

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Snap securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

13

45.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Snap securities during the Class Period.

48.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the

14

Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

49.   Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

50.   As a result of the foregoing, the market price of Snap securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Snap

securities during the Class Period in purchasing Snap securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

51.    Had Plaintiff and the other members of the Class been aware that the market price of Snap securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Snap securities at the artificially inflated prices that they did, or at all.

52.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Snap securities during the Class Period.

## COUNT II

### (Violation of Section 20(a) of The Exchange Act Against The Individual Defendants)

54.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

16

55.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

56.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

57.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Snap securities.

58.    Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## COUNT III

**(Violations of Section 11 of The Securities Act Against All Defendants)**

60.    Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

61.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Individual Defendants.

62.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to

18

make the statements made not misleading, and omitted to state material facts required to be stated therein.

63.     Snap is the registrant for the IPO. Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

64.     As issuer of the shares, Snap is strictly liable to Plaintiff and the Class for the misstatements and omissions.

65.     None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

66.     By reasons of the conduct herein alleged, each Individual Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

67.     Plaintiff acquired Snap securities pursuant and/or traceable to the Registration Statement for the IPO.

68.     Plaintiff and the Class have sustained damages. The value of Snap securities has declined substantially subsequent to and due to the Individual Defendants' violations.

## **<u>COUNT IV</u>**

**(Violations of Section 15 of The Securities Act Against the Individual Defendants)**

69.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

70.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

71.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Snap within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Snap to engage in the acts described herein.

72.     Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

73.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 16, 2017

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
E-mail: hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom

21

Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***