**ROSMAN & GERMAIN LLP**
DANIEL L. GERMAIN (Cal. Bar #143334)
  germain@lalawyer.com
16311 Ventura Boulevard, Ste. 1200
Encino, CA 91436
Telephone: (818) 788-0877
Facsimile: (818) 788-0885

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
NAUMON A. AMJED
  namjed@ktmc.com
RYAN T. DEGNAN
  rdegnan@ktmc.com
MELISSA L. TROUTNER
  mtroutner@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Tom DiBiase and
Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| JAMES ERICKSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SNAP INC., EVAN SPIEGEL, and ANDREW VOLLERO,<br><br>                    Defendants. | No. 2:17-cv-03679-SVW-AGR<br><br>CLASS ACTION<br><br>**MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>Date:        August 14, 2017<br>Time:        1:30 p.m.<br>Courtroom:   10A<br>Judge:       Hon. Stephen V. Wilson<br><br>ORAL ARGUMENT REQUESTED |

| | |
|---|---|
| SHINU GUPTA, Individually and on behalf of all others similarly situated, | No. 2:17-cv-05054-SVW-AGR |
| Plaintiff, | |
| v. | |
| SNAP INC., EVAN SPIEGEL, ANDREW VOLLERO, MORGAN STANLEY & CO. LLC, GOLDMAN, SACHS, & CO., J.P. MORGAN SECURITIES LLC, DEUTSCHE BANK SECURITIES, INC., BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, ALLEN & COMPANY LLC, BTIG, LLC, C.L. KING & ASSOCIATES, INC., CITIGROUP GLOBAL MARKETS INC., CONNAUGHT (UK) LIMITED, COWEN AND COMPANY, LLC, EVERCORE GROUP, LLC, JEFFERIES LLC, JMP SECURITIES LLC, LIONTREE ADVISORS LLC, LUMA SECURITIES LLC, MISCHLER FINANCIAL GROUP, INC., OPPENHEIMER & CO., INC., RBC CAPITAL MARKETS, LLC, SAMUEL A. RAMIREZ & CO., INC., STIFEL FINANCIAL CORP., SUNTRUST ROBINSON HUMPHREY, INC., THE WILLIAMS CAPITAL GROUP, L.P., UBS SECURITIES LLC, and WILLIAM BLAIR & COMPANY, L.L.C., | |
| Defendants. | |

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-cv-03679, *ET AL.*

1

## <u>**TABLE OF CONTENTS**</u>

2  I.    PRELIMINARY STATEMENT ......................................................... 1

3  II.   ARGUMENT ................................................................................. 6

4        A.   Mr. Gupta and the Snap Investor Group Cannot Satisfy the

5             PSLRA's Requirements and Their Motions Should Be

6             Denied .................................................................................. 7

7             1.   Mr. Gupta Failed to Comply with the PSLRA's

8                  Mandatory Certification Requirement When Filing

9                  His Complaint ............................................................. 7

10            2.   Mr. Gupta Is Subject to Unique Defenses Concerning

11                 the Timing of His Class Period Transactions ............... 8

12            3.   The Snap Investor Group Is an Improper Group ......... 10

13            4.   Mr. Gupta's and the Snap Investor Group's Claimed

14                 Transactions Are Facially Inaccurate ........................ 13

15       B.   Mr. DiBiase Satisfies the PSLRA's Requirements for

16            Appointment as Lead Plaintiff ............................................ 14

17  III.  CONCLUSION ............................................................................. 16

18

19

20

21

22

23

24

25

26

27

28

Movant Tom DiBiase's Consolidated Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Counsel
Case Nos.: 2:17-cv-03679, *et al.*

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ...................................................................9-10

*Bovee v. Coopers & Lybrand*
216 F.R.D. 596 (S.D. Ohio 2003)..............................................9

*Bo Young Cha v. Kinross Gold Corp.*,
No. 12 Civ. 1203, 2012 WL 2025850 (S.D.N.Y. May 31, 2012) .......................14

*Burke v. Ruttenberg*,
102 F. Supp. 2d 1280 (N.D. Ala. 2000) ...............................3, 8

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ............................1, 5-6, 6, 15

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..........................1, 1-2, 6

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009)..................................8, 10

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ...................................................9

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11 Civ. 3658, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011)...................4, 9, 10

*GAMCO Investors, Inc. v. Vivendi, S.A.*,
917 F. Supp. 2d 246 (S.D.N.Y. 2013) ..............................9-10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176 (2d Cir. 1990)...................................10

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996)................................2, 3, 7, 7-8

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

ii

*In re Kosmos Energy Ltd. Sec. Litig.*,
  299 F.R.D. 133 (N.D. Tex. 2014) ......................................................................... 14

*In re MicroStrategy Inc. Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) .................................................................. 11

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................................... 3, 6, 7

*Niederklein v. PCS Edventures!.com, Inc.*,
  No. 1:10-cv-00479, 2011 WL 759553 (D. Idaho Feb. 24, 2011) .................. *passim*

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) ................................................................. 10

*In re Safeguard Scientifics*,
  216 F.R.D. 577 (E.D. Pa. Aug. 26, 2003) ........................................................... 13

*Schriver v. Impac Mortg. Holdings, Inc.*,
  Nos. SACV 06-31, 2006 WL 6886020 (C.D. Cal. May 2, 2006) ................... 11-12

*In re Tarragon Corp. Sec. Litig.*,
  No. 07 CIV 7972, 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) .......................... 11

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
  No. 16-cv-02758, 2016 WL 2986235 (S.D.N.Y. May 13, 2016) ................... 10-11

*Tsirekidze v. Syntax-Brillian Corp.*,
  Nos. CV-07-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................... 5, 11, 12

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................. 11

*In re Versata, Inc. Sec. Litig.*,
  Nos. C 01-1439, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) .................... 4, 11

**Statutes**

15 U.S.C. §§ 77z-1(a) ............................................................................... *passim*

15 U.S.C. § 78u-4(a) ................................................................................ *passim*

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

iii

1    Presumptive Lead Plaintiff Tom DiBiase ("Mr. DiBiase") respectfully submits

2    this Memorandum in opposition to the competing motions for appointment as Lead

3    Plaintiff filed by Shinu Gupta ("Mr. Gupta") [ECF No. 25], Irland James Stewart,

4    Wu Chen Yueh Chiao, Sanzhar Khussainov, and Howard Weisman (collectively, the

5    "Snap Investor Group") [ECF No. 21], and Ariadna Adjiashvili and Mary Tam

6    (collectively, the "Adjiashvili-Tam Group") [ECF No. 11] and in further support of

7    Mr. DiBiase's motion for appointment as Lead Plaintiff (the "Motion") [ECF No.

8    19].[1]

9    **I.    PRELIMINARY STATEMENT**

10    The Private Securities Litigation Reform Act of 1995 ("PSLRA") governs the

11    selection of the lead plaintiff in class actions asserting claims under the federal

12    securities laws and requires courts to appoint as lead plaintiff the movant asserting

13    the largest financial interest in the litigation who *also* satisfies the relevant

14    requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See*

15    15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii).   The PSLRA's

16    "straightforward" and "sequential" selection process mandates that "[i]f the plaintiff

17    with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court

18    must repeat the inquiry, this time considering the plaintiff with the next-largest

19    financial stake, until it finds a plaintiff who is both willing to serve and satisfies the

20    requirements of Rule 23."  *See In re Cavanaugh*, 306 F.3d 726, 729-32 (9th Cir.

21    2002); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for

22    any reason) the court determines that the movant with the largest losses cannot make

23    a threshold showing of typicality or adequacy, then the court should . . . disqualify

---

[1]     Unless otherwise indicated, all references to "ECF No. __" are to entries on the docket of *Erickson v. Snap Inc., et al.*, No. 2:17-cv-03679-SVW-AGR (C.D. Cal.). Sharmilli Ghosh also filed a motion seeking appointment as Lead Plaintiff, but subsequently withdrew her motion on July 20, 2017.  *See* ECF Nos. 15 (Ms. Ghosh's motion) and 27 (Ms. Ghosh's notice of withdrawal).

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

1

1   that movant from serving as lead plaintiff.").  Indeed, the PSLRA "does not permit
2   courts simply to 'presume' that the movant with 'the largest financial interest in the
3   relief sought by the class' satisfies the typicality and adequacy requirements."
4   *Cendant*, 264 F.3d at 264.

5       Here, Mr. DiBiase is the only movant before the Court able to meet all of the
6   necessary elements for appointment under the PSLRA.  *See* 15 U.S.C. §§ 77z-
7   1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).  Specifically, with losses of approximately
8   $309,000 in connection with his Class Period transactions in Snap stock, Mr.
9   DiBiase possesses the largest financial interest of any movant capable of satisfying
10  the adequacy and typicality requirements of Rule 23.

11      While Mr. Gupta and the Snap Investor Group claim larger losses than Mr.
12  DiBiase, both movants suffer from disqualifying defects that render each inadequate
13  to represent the class and require that their motions be rejected.

14      ***First***, Mr. Gupta should be rejected because Mr. Gupta, in connection with the
15  filing of his complaint in *Gupta v. Snap Inc., et al.*, No. 2:17-cv-05054-SVW-AGR
16  (C.D. Cal. filed July 10, 2017) (the "*Gupta* Action"), failed to file the sworn
17  certification required by the PSLRA.  *See* 15 U.S.C. §§ 77z-1(a)(2)(A), 78u-
18  4(a)(2)(A) ("Each plaintiff seeking to serve as a representative party on behalf of a
19  class shall provide a sworn certification, which shall be personally signed by such
20  plaintiff and filed with the complaint" attesting to six delineated topics); *Greebel v.
21  FTP Software, Inc.*, 939 F. Supp. 57, 61 (D. Mass. 1996) ("Congress mandated that a
22  certification be filed with the complaint").  There is no justification for Mr. Gupta's
23  failure to meet this mandatory statutory requirement and his casual approach to his
24  very first action as a plaintiff in this litigation, coupled with questions surrounding
25  his trading (discussed below), raises serious doubts about his ability to oversee this
26  litigation as a lead plaintiff on behalf of thousands of investors.  Indeed, Mr. Gupta

27
28

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

2

has put his conduct to date in the litigation at issue by touting it as a basis for his appointment. *See* ECF No. 25-1 at 2 (touting Mr. Gupta's "conduct to date in prosecuting the litigation"). As such, it is appropriate to consider how Mr. Gupta has actually led this litigation to date and his failure to comply with the PSLRA's basic mandatory requirements—which are designed "to curb the use of . . . figurehead plaintiffs who would serve the interests of plaintiffs' lawyers, not the class"— dictates that his motion be denied. *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1047 (N.D. Cal. 1999); *see also Greebel*, 939 F. Supp. at 60 ("Failure of the named plaintiff to file a certification with the complaint [is] fatal to maintenance of the putative class action."); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1319-1320 (N.D. Ala. 2000) ("Only those plaintiffs who satisfy the certification requirement of the subsection can serve as lead plaintiff [because] the certification requirement forms the baseline for any party seeking to act as lead plaintiff in a securities class action.").[2]

***Second***, even if Mr. Gupta was not plagued by the foregoing defects, his motion should nevertheless be rejected because Mr. Gupta is subject to unique defenses concerning the timing of his transactions that undermine his adequacy and typicality. As demonstrated in the loss calculations accompanying his motion [ECF No. 25-5], 150,000 Snap shares (60% of the shares held by Mr. Gupta at the end of the Class Period) were purchased ***after*** the May 10, 2017 corrective disclosure which revealed Snap's slowing daily active user growth and caused the price of Snap's stock to fall more than 20% and ***after*** Mr. Gupta's proposed counsel here (Faruqi &

---

[2] The subsequent submission of a certification with Mr. Gupta's lead plaintiff motion [ECF No. 25-4] does not cure his defects. The PSLRA is clear that the certification must be "filed with the complaint." 15 U.S.C. §§ 77z-1(a)(2)(A), 78u-4(a)(2)(A). Furthermore, Mr. Gupta's belated submission does not state that he—in fact—authorized the filing of the complaint filed in his name. *See* ECF No. 25-4 at ¶ 1. Rather, Mr. Gupta's belated certification only authorizes "the filing of a motion to be appointed lead plaintiff." *Id.*

---

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

3

Faruqi, LLP) issued a press release on May 11, 2017 announcing an investigation into "whether [Snap] and its executives violated federal securities laws regarding statements made during the Company's initial public stock offering."[3]  Mr. Gupta's "post-disclosure purchases suggest that [he] invested in [company] securities notwithstanding notice of defendants' misstatements and omissions" and "[t]hese unusual trading patterns may well undermine the ability of [Mr. Gupta] to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate." *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011).

**Third**, the Snap Investor Group must be rejected because it is a lawyer-assembled group that has failed to establish that its members are able to function as a cohesive group.  Indeed, courts throughout the country have repeatedly held that, while groups are not prohibited under the PSLRA, a group cannot be considered for appointment when it is "comprised of individuals and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel."  *Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-ELJ-CWD, 2011 WL 759553, at *5 (D. Idaho Feb. 24, 2011).  The Snap Investor Group has made no attempt to justify its appointment and has not provided the Court with **any** of the evidence routinely relied upon by courts to assess the ability of a group to serve as a lead plaintiff, including, *inter alia*: (1) "any pre-existing relationship among them;" (2) "an explanation of how its members would function collectively;" and (3) "a description of the mechanism that its members and the proposed lead

---

[3]    *See* Supplemental Declaration of Daniel L. Germain in Support of Movant Tom DiBiase's Consolidated Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Germain Supp. Decl."), Exhibit A (Faruqi & Faruqi, LLP press release from May 11, 2017 announcing "investigation focuse[d] on whether the Company and its executives violated federal securities laws regarding statements made during the Company's initial public stock offering").

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

4

counsel have established to communicate with one another about the litigation." *In re Versata, Inc. Sec. Litig.*, Nos. C 01-1439 SI, *et al.*, 2001 WL 34012374, at *5 (N.D. Cal. Aug. 20, 2001) (citation omitted).  In fact, there is no evidence that the Snap Investor Group's members were even aware of each other's existence or had spoken with each other prior to the filing of the motion seeking their joint appointment as Lead Plaintiff—a fact which strongly suggests that the group is "unlikely to 'fairly and adequately represent the class' because it is unlikely to engage in the litigation in a meaningful way at all." *Tsirekidze v. Syntax-Brillian Corp.*, Nos. CV-07-2204-PHX-FJM, *et al.*, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) (internal citation omitted).

**Fourth**, as discussed in greater detail below, the loss calculations provided to the Court by Mr. Gupta and the Snap Investor Group include several stock transactions that appear to have occurred at prices outside of the daily trading range for the respective transaction dates.  *See infra* at Section II.A.4.  Such material errors call into question the accuracy of both movant's filings and purported losses and raise the specter of additional unique defenses and, in the case of Mr. Gupta, raises further questions about his commitment to properly leading this litigation.

With Mr. Gupta and the Snap Investor Group eliminated from consideration, Mr. DiBiase asserts a larger financial interest ($309,000) than the only other movant still before the Court—the Adjiashvili-Tam Group ($70,845)—and no movant has provided "proof" that Mr. DiBiase is inadequate to represent the class.  *See infra* at Section II.B.[4]  This, without more, is sufficient to deny the individual appointment of

---

[4]    Many courts refuse to consider the appointment of individual members of a group.  *See, e.g.*, *Niederklein*, 2011 WL 759553, at *8 (refusing to appoint individual member of a group where "[n]either [group member] proposed, alternatively, that the Court consider appointment of either individually. . . .").  Even if the Court were to consider the individual members of the Snap Investor Group, no group member possesses a larger financial interest than Mr. DiBiase.  *See infra* at Section II.B.

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-cv-03679, *ET AL.*

5

the Adjiashvili-Tam Group under the PSLRA's straightforward and sequential lead plaintiff selection process.[5]  *See Cavanaugh*, 306 F.3d at 732 ("Once . . . the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements.").

Accordingly, Mr. DiBiase respectfully submits that he is the presumptive Lead Plaintiff and requests that the Court grant his Motion and deny the competing motions.

## II.   ARGUMENT

Under the "straightforward" and "sequential" selection process mandated by the PSLRA, a movant's financial interest is only the starting point when evaluating a lead plaintiff movant as the Lead Plaintiff must also "satisfy[y] the typicality and adequacy requirements [before] he is entitled to lead plaintiff status." *Cavanaugh*, 306 F.3d at 732.  As such, a movant seeking appointment as lead plaintiff that does not satisfy Rule 23's requirements cannot be appointed—regardless of that movant's asserted loss.  *See Cendant*, 264 F.3d at 267 ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff.").

Here, only Mr. DiBiase satisfies the requirements of the PSLRA and can be appointed as Lead Plaintiff under the PSLRA's selection process.  *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

---

[5]     Like the Snap Investor Group, the Adjiashvili-Tam Group is an improper group that has provided the Court with no information to establish its ability to cohesively work together and justify its appointment as a lead plaintiff group.

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

6

### A.   Mr. Gupta and the Snap Investor Group Cannot Satisfy the PSLRA's Requirements and Their Motions Should Be Denied

#### 1.   Mr. Gupta Failed to Comply with the PSLRA's Mandatory Certification Requirement When Filing His Complaint

The PSLRA was passed, in large part, to reduce lawyer-driven litigation and "to curb the use of . . . figurehead plaintiffs who would serve the interests of plaintiffs' lawyers, not the class." *Network Assocs.*, 76 F. Supp. 2d at 1047.  To fulfill this purpose, the PSLRA *requires* plaintiffs filing complaints under the federal securities laws to also file a certification stating, among other things, "that the plaintiff has reviewed the complaint and authorized its filing" and "set[ting] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period."  15 U.S.C. §§ 77z-1(a)(2)(A), 78u-4(a)(2)(A); *Greebel*, 939 F. Supp. at 61 ("Congress mandated that a certification be filed with the complaint").

Here, Mr. Gupta filed the *Gupta* Action on July 10, 2017, and inexplicably did not file the required certification.  *See generally Gupta*, ECF No. 1.  As such, Mr. Gupta—in violation of the PSLRA's clear and unambiguous mandate—failed to certify that, among other things, he read and authorized the complaint filed in his name.  This failure is fatal because, while Mr. Gupta cites to "his conduct to date in prosecuting the litigation" as evidence in support of his motion, *see* ECF No. 25-1 at 2, his conduct here actually calls into question Mr. Gupta's commitment to representing the interests of the class through the diligent oversight of counsel.  In fact, the actual evidence suggests that Mr. Gupta never authorized the filing of a complaint in his name.  Indeed, the certification filed with Mr. Gupta's lead plaintiff motion on July 17, 2017 (which was executed on June 30, 2017—ten days *before* his complaint was filed) states that Mr. Gupta "has authorized the filing of a *motion to be appointed lead plaintiff*."  *See* ECF No. 25-4 at ¶ 1.  It says nothing about filing a

---

Movant Tom DiBiase's Consolidated Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Counsel
Case Nos.: 2:17-cv-03679, *et al.*

7

complaint.  *See id.*  Mr. Gupta's willingness to either willfully fail to comply with the PSLRA's certification requirements or cede control of the litigation to counsel and allow counsel to file documents in his name without, based on the evidence to date, his approval raises very serious concerns about his ability to oversee this litigation.  *See Network Assocs.*, 76 F. Supp. 2d at 1047 ("the [PSLRA] essentially bars from the lead plaintiff role a person who . . . does not read the complaint before a lawsuit is filed in his or her name"); *Greebel*, 939 F. Supp. at 60 ("Failure of the named plaintiff to file a certification with the complaint [is] fatal to maintenance of the putative class action."); *Burke*, 102 F. Supp. 2d at 1319-20 ("Only those plaintiffs who satisfy the certification requirement of the subsection can serve as lead plaintiff [because] the certification requirement forms the baseline for any party seeking to act as lead plaintiff in a securities class action.").  Mr. Gupta has voluntarily put his conduct to date in this litigation at issue.  *See* ECF No. 25-1 at 2.  When his conduct is examined, it is clear that Mr. Gupta's motion should be rejected.

### 2. Mr. Gupta Is Subject to Unique Defenses Concerning the Timing of His Class Period Transactions

Separate and apart from Mr. Gupta's failure to comply with the PSLRA's certification requirements, Mr. Gupta significantly increased his purchase of Snap stock by purchasing 150,000 shares of Snap *after* news surfaced questioning the strength of the Company's daily active user growth—a pled corrective disclosure— and *after* his counsel publicly announced that they were investigating Snap and its officers for securities fraud.  Mr. Gupta's post-corrective trading exposes him to potentially unique defenses that are not faced by other class members, including Mr. DiBiase, who purchased shares before any corrective news entered the market.  Accordingly, Mr. Gupta cannot meet the typicality requirement and cannot be appointed regardless of his claimed loss.  *See In re Countrywide Fin. Corp. Sec.*

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

8

*Litig.*, 273 F.R.D. 586, 598 (C.D. Cal. 2009) ("typicality is defeated where 'there is a danger that absent class members will suffer [because] their representative is preoccupied with defenses unique to it'").

Here, as set forth in Mr. Gupta's loss chart, Mr. Gupta held 104,000 shares on May 10, 2017 when Snap issued its quarterly financial results which revealed that Snap's daily active user growth was declining—causing the price of Snap's common stock to decline more than 20%. *See* ECF No. 25-5 (Mr. Gupta's transaction and loss chart); *Gupta*, ECF No. 1 at ¶¶ 6-7 (Mr. Gupta's complaint alleging a May 10, 2017 corrective disclosure). The following day, Mr. Gupta's counsel (Faruqi & Faruqi, LLP), among other law firms, issued a press release announcing investigations into the Company for violations of securities fraud. *See* Germain Supp. Decl., Ex. A. Notwithstanding this revelation, the significant decline in Snap's stock value, and the publication of press releases from multiple law firms (including Faruqi & Faruqi, LLP), Mr. Gupta proceeded to purchase ***an additional 150,000 shares of Snap stock*** after May 10, 2017. As a result, more than 60% of the Snap stock held by Mr. Gupta through the remainder of the Class Period was purchased ***after*** a substantial revelation of fraud that he himself pled in his filed complaint.

Critically, defendants may argue that the magnitude of Mr. Gupta's "post-disclosure purchases suggest that [he] invested in [company] securities notwithstanding notice of defendants' misstatements and omissions" and undermine "the ability of [Mr. Gupta] to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate." *Faris*, 2011 WL 4597553, at *8. As explained by the court in *Bovee v. Coopers & Lybrand*:

> The fraud on the market theory is key to the class
> certification issue in securities fraud class. Without the
> benefit of the presumption of reliance, requiring proof of
> individualized reliance from each member of the proposed

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

9

> plaintiff class effectively would [prevent plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones.

216 F.R.D. 596, 603 (S.D. Ohio 2003) (internal quotation marks and citation omitted).[6]   Accordingly, "post-disclosure purchases can defeat the typicality requirement for class certification when plaintiffs made a disproportionately large percentage of their purchases post-disclosure." *GAMCO Investors, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261 (S.D.N.Y. 2013) (internal quotation marks omitted).[7] While Mr. DiBiase intends to aggressively prosecute claims on behalf of all investors, including the claims of class members purchasing after corrective news, Mr. Gupta's transaction pattern presents a unique issue and there is "no reason to subject the class to this potential defense [facing Mr. Gupta] where there is another movant, [Mr. DiBiase], that" is not subject to such unique defenses. *Faris*, 2011 WL 4597553, at *8.

### 3.     The Snap Investor Group Is an Improper Group

With Mr. Gupta eliminated from consideration, the Snap Investor Group, a cobbled together group of four seemingly unconnected individuals, purports to claim the next largest loss *if* its members' losses are aggregated. *See* ECF No. 22. While

---

[6]     Under Section 10(b) of the Securities Exchange Act of 1934, plaintiffs are required to prove reliance upon alleged misrepresentations. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  In order to meet the reliance element, the Supreme Court has "endorsed the 'fraud-on-the-market' theory, which permits certain [Section 10(b)] plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 461 (2013).

[7]     *See also, e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990) (concluding that a plaintiff "was an inappropriate class representative since its claim is subject to several unique defenses including its continued purchases . . . despite having notice of, and having investigated, the alleged fraud"); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (rejecting movant because its post-corrective disclosure "transactions raise serious questions regarding [the movant's] reliance on the alleged misrepresentations and omissions"); *Countrywide*, 273 F.R.D. at 603 ("Of course, *unusual* post-disclosure trading patterns present typicality problems.").

---

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

10

the PSLRA permits groups of investors to seek appointment as lead plaintiff under certain circumstances, courts have repeatedly held that a group cannot aggregate its members' individual financial interests when the group is "comprised of individuals and entities having no pre-litigation relationship or identifiable cohesiveness aside from their alleged losses and shared counsel [and] should not be appointed lead plaintiff under the [PSLRA]."  *Niederklein*, 2011 WL 759553, at *5 (citation omitted); *see also In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16-cv-02758 (PKC), 2016 WL 2986235, at *2 (S.D.N.Y. May 13, 2016) (explaining that courts "have largely rejected the aggregation of individual shareholders who have no common connection other than their lawyers for purposes of calculating financial interest under the PSLRA").  Accordingly, appointment of "groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff," when they have offered ***no evidence*** as to how they intend to oversee the case's prosecution, would "run[] directly contrary to the goals of the PSLRA—to reduce lawyer-driven litigation." *Tsirekidze*, 2008 WL 942273, at *3-4.

Consistent with the goal of the PSLRA to eliminate lawyer-driven litigation, courts require groups of unrelated investors to present "***evidence*** that the members of the group will act collectively and separately from their lawyers." *In re Tarragon Corp. Sec. Litig.*, No. 07 CIV 7972(PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) (emphasis added).  Specifically, courts require evidence detailing, among other things: (1) how the group was formed; (2) how the group proposes that its members will work together in representing the class, including any methods for resolving potential disputes among the group's members; and (3) whether the group's members have established mechanisms for communicating with each other

---

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

11

and with counsel.  *See Niederklein*, 2011 WL 759553, at *6 (rejecting group that failed to demonstrate its cohesiveness).[8]

Here, the Snap Investor Group—consisting of four seemingly unrelated investors—has provided the Court with ***no evidence*** explaining how the group was formed or how the group's members propose to work cohesively and effectively with one another to oversee both this litigation and their counsel.  Perhaps more fundamentally, there is no evidence that the group's members were even aware of each other's existence or had spoken with each other prior to the filing of the motion seeking their joint appointment as Lead Plaintiff.[9]  The absence of this evidence undermines the Snap Investor Group's motion and strongly suggests that the group is "unlikely to fairly and adequately represent the class because it is unlikely to engage in the litigation in a meaningful way at all."  *Tsirekidze*, 2008 WL 942273, at *3 (internal quotation marks and citation omitted).  Indeed, "the clear implication is that

---

[8]      *See also Versata*, 2001 WL 34012374, at *5 (requiring evidence from group members concerning "any pre-existing relationship among them," "how its members would function collectively," and "the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation"); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) ("a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (rejecting group that "failed to present evidence with respect to its formation, its operational structure, or whether the members of the group had ever communicated with one another about their roles"); *Schriver v. Impac Mortg. Holdings, Inc.*, Nos. SACV 06-31 CJC (RNBx), *et al.*, 2006 WL 6886020, at *8 n.10 (C.D. Cal. May 2, 2006) (rejecting group and holding that "there is no reason the [group] . . . could not have submitted such evidence [demonstrating cohesion] in connection with their initial motions").

[9]      The boilerplate PSLRA certifications submitted with the Snap Investor Group's motion are insufficient to establish its adequacy as a group of unrelated investors.  *See Niederklein*, 2011 WL 759553, at *6 (rejecting group of unrelated investors and finding "boilerplate certifications discussing the stock purchases and alleged losses" insufficient to establish cohesion); *Tsirekidze*, 2008 WL 942273, at *4 (rejecting group of unrelated investors and concluding that "each individual has so far participated only to the extent of signing his name onto a boilerplate 'certification in support of application of lead plaintiff'").

---

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

12

counsel, rather than [the members of the Snap Investor Group], are steering the litigation"—the very result the PSLRA seeks to prevent. *Id.*

Having failed to establish its cohesion as a group of unrelated investors, the Snap Investor Group's motion must be denied.[10]

### 4. Mr. Gupta's and the Snap Investor Group's Claimed Transactions Are Facially Inaccurate

Mr. Gupta's and the Snap Investor Group's adequacy to represent the class is further called into question by the existence of several errors in the transaction data and loss calculations provided to the Court. Specifically, numerous transactions (involving thousands of shares) set forth in their respective motions appear to have occurred at prices outside of the daily trading range of Snap common stock:[11]

| Movant | Claimed Transaction Date | Claimed Transaction Quantity | Claimed Transaction Price | Low Price of the Day | High Price of the Day |
|---|---|---|---|---|---|
| Mr. Gupta | 3/6/2017 | 35,000 (Purchase) | $28.50 | $23.77 | $28.25 |
| Mr. Gupta | 5/16/2017 | 55,000 (Purchase) | $21.05 | $20.15 | $20.88 |
| Mr. Weisman (Snap Investor Group) | 3/6/2017 | 5,000 (Sale) | $28.33 | $23.77 | $28.25 |
| Mr. Khussainov (Snap Investor Group) | 3/8/2017 | 7,500 (Purchase) | $29.10 | $21.31 | $23.43 |

These discrepancies call into question the accuracy of Mr. Gupta's and the Snap Investor Group's claimed losses—raising the possibility that there are additional

---

[10]   The Adjiashvili-Tam Group is also an improper group that has failed to provide any evidence establishing its cohesion and justifying its appointment as a lead plaintiff group.

[11]   The daily trading range for Snap common stock is based on data provided by Bloomberg. *See* Germain Supp. Decl., Exhibit B. Mr. Gupta and the Snap Investor Group's transaction data are taken from their respective loss charts. *See* ECF Nos. 25-5 (Mr. Gupta's loss chart) & 23-3 (Snap Investor Group's loss chart).

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

13

errors—and further undermines the propriety of either movant's appointment as Lead Plaintiff. *See, e.g.*, *In re Safeguard Scientifics*, 216 F.R.D. 577, 582 & 582 n.4 (E.D. Pa. Aug. 26, 2003) (rejecting class representative where errors in his certification presented "serious concerns with credibility" that gave rise to a "potential and likely adverse effect on the putative class' interests"). Moreover, these errors (particularly when viewed in conjunction with Mr. Gupta's failure to follow the PSLRA's certification requirements) raise serious questions about the commitment and willingness of these movants' to oversee this litigation on behalf of the class. *See In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 145 (N.D. Tex. 2014) (finding proposed class representative inadequate and explaining that "[w]hen it appears that the potential representatives are 'simply lending their names to a suit controlled entirely by the class attorney' . . . courts may find them to be inadequate").[12]

### B.   Mr. DiBiase Satisfies the PSLRA's Requirements for Appointment as Lead Plaintiff

With Mr. Gupta and the Snap Investor Group removed from consideration, Mr. DiBiase is the only movant capable of satisfying the PSLRA's largest financial interest and adequacy and typicality requirements.

With losses of approximately $309,000 in connection with his Class Period transactions in Snap stock under a last-in, first-out ("LIFO") analysis, Mr. DiBiase

---

[12] Questions about the completeness of two members if the Snap Investor Group's transactions in Snap securities also exist. Here, the *Gupta* action, which was filed on July 10, 2017, expanded the end of the Class Period from May 15, 2017, to June 6, 2017. However, because Ms. Chiao and Mr. Khussainov executed their PSLRA certifications before the end of the Class Period, it is unclear whether the schedules of transactions provided to the Court are complete and include Class Period transactions post-dating the execution of the certifications. *See* ECF No. 23-2 (Ms. Chiao's certification dated May 24, 2017; listing no transactions after March 3, 2017); *id.* (Mr. Khussainov's certification dated June 6, 2017; listing no transactions after March 8, 2017). The existence of additional transactions may trigger further adequacy challenges.

---

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

14

asserts the largest financial interest (even if the Court were to consider the financial interests of the individual members of the Snap Investor Group and the Adjiashvili-Tam Group):[13]

| Movant | LIFO Losses[14] |
|---|---|
| Mr. DiBiase | $309,000 |
| Mr. Stewart (Snap Investor Group) | $149,829 |
| Ms. Chiao (Snap Investor Group) | $96,986 |
| Mr. Khussainov (Snap Investor Group) | $87,983 |
| Ms. Adjiashvili (Adjiashvili-Tam Group) | $49,085 |
| Mr. Weisman (Snap Investor Group) | $38,678 |
| Ms. Tam (Adjiashvili-Tam Group) | $21,760 |

In addition to his sizable financial interest in the litigation, Mr. DiBiase meets the applicable requirements under Rule 23 and, thus, is the "presumptively most adequate plaintiff" under the PSLRA. *See Cavanaugh*, 306 F.3d at 732 ("Once . . . the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements."). Moreover, because there is no "proof" before the Court undermining the Mr. DiBiase's adequacy and typicality, Mr. DiBiase should be appointed as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Cavanaugh*, 306 F.3d at 741 ("by statute, the

---

[13]    LIFO is the preferred and most widely accepted methodology for calculating movants' financial interests. *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the overwhelming trend . . . nationwide has been to use LIFO").

[14]    As noted *supra* at Section II.A.4, Mr. Khussainov's and Mr. Weisman's loss calculations claim transaction prices that are outside of the daily trading range and Ms. Chiao's and Mr. Khussainov's certifications pre-date the end of the Class Period. As such, Mr. DiBiase uses their claimed losses, despite their inaccuracies, for purposes of comparing movants' financial interests only.

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-cv-03679, *ET AL.*

15

presumption of most adequate plaintiff may be overcome only upon proof that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class'").

## III.    CONCLUSION

For the reasons set forth above and in his opening brief, Mr. DiBiase respectfully requests that the Court appoint Mr. DiBiase as Lead Plaintiff, approve Mr. DiBiase's selection of Kessler Topaz Meltzer & Check, LLP as Lead Counsel and Rosman & Germain LLP as Liaison Counsel for the class, and deny the competing motions.

Dated: July 24, 2017                            Respectfully submitted,

**ROSMAN & GERMAIN LLP**

*/s/ Daniel L. Germain*
DANIEL L. GERMAIN (Bar # 143334)
  germain@lalawyer.com
16311 Ventura Boulevard, Ste. 1200
Encino, CA 91436
Telephone: (818) 788-0877
Facsimile: (818) 788-0885

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
NAUMON A. AMJED
  namjed@ktmc.com
RYAN T. DEGNAN
  rdegnan@ktmc.com
MELISSA L. TROUTNER
  mtroutner@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Tom DiBiase and*
*Proposed Lead Counsel for the Class*

MOVANT TOM DIBIASE'S CONSOLIDATED OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL
CASE NOS.: 2:17-CV-03679, *ET AL.*

16