UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-03679-SVW-AGR | Date | September 18, 2017 |
| Title | *Erickson et al., v. Snap, Inc., et al.* | | |

| | |
|---|---|
| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
| Paul M. Cruz | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER REGARDING MOTIONS TO CONSOLIDATE AND MOTIONS TO APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL [11][15][19][21][25]

### I. Factual And Procedural Background

*The SNAP Initial Public Offering*

   Snap, a Delaware corporation with its principal executive officers in Venice, California, is a camera company whose primary product is a free mobile chatting application, Snapchat. Snap, traded on the New York Stock Exchange as "SNAP," generates revenue by growing user engagement of Snapchat and delivering advertisements to Snapchat users.

   On March 2, 2017, Snap commenced its IPO and raised approximately $3.91 billion. The Related Actions allege that, at the time of the Company's IPO, Snap was experiencing a slowdown in the growth of Snapchat's key user engagement metrics, including the number of Snapchat users who open the application at least once a day or Daily Active Users ("DAUs"). Despite this slowdown, Snap's Registration Statement—filed with multiple amendments in February 2017—stated that Snap analyzed its growth trends by "regularly review[ing]" key performance indicators ("KPIs") such as the number of Snapchat's DAUs and promised "rapid" growth of Snap's advertising business. The Related Actions allege that Snap and the Individual Defendants made materially false and misleading statements and omitted material adverse facts about the Company's business, operations, and compliance policies in Snap's Registration Statement, including its Prospectus, and during the Class Period, including: (1)

:
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | September 18, 2017 |
|---|---|---|---|
| Title | *Erickson et al., v. Snap, Inc., et al.* | | |

Snap's calculations of its user engagement metrics, including Snapchat's DAUs; and (2) Snap's reported growth of its user engagement metrics, including Snapchat's DAUs. It is also alleged that the Underwriter Defendants had access to confidential information concerning Snap's user metrics during their due diligence investigation and caused the Registration Statement containing the false and misleading statements to be filed with the SEC and declared effective.

On May 10, 2017, Snap announced its financial results for the first financial quarter of 2017, including DAU growth of only 5% for the first quarter of 2017 and a net income loss of $2.21 billion. On this news, Snap's share price declined $4.93 per share, or approximately 21%, from a closing price of $22.98 on May 10, 2017, to close at $18.05 per share on May 11, 2017.

*The Whistleblower Suit*

Additional details of Snap's alleged misconduct emerged on May 16, 2017, when it was reported that a former Snap employee, Anthony Pompliano, filed a whistleblower lawsuit alleging that the Company falsely represented its engagement metrics, including Snapchat's DAUs, and recklessly calculated user metrics. In the lawsuit, Mr. Pompliano alleged that he was fired when he alerted the Company about the issues. On June 7, 2017, Nomura Instinet reported that worldwide downloads of Snapchat for the months of April and May 2017 were down 22% from the year prior, claiming that Snap was overstating DAU growth and reporting user metrics in a misleading manner. Snap's share price then fell $0.80 per share, or approximately 4%, from a closing price of $20.36 on June 6, 2017, to close at $19.56 per share on June 7, 2017. After that point, multiple investors, including the Plaintiffs in this action, began filing suit.

*Appointment as Lead Plaintiff*

The various named Plaintiffs in this action have now filed motions before this Court to ask the Court to appoint a lead plaintiff and approve lead counsel. The two Plaintiffs who are vying for appointment as lead plaintiff are Shinu Gupta and Tom DiBiase.

Plaintiff Gupta claims that during the class period, he suffered losses of $1,017,273.01 under a last in, first out methodology. Gupta has selected the Faruqi Firm to be his Lead Counsel for the Class.

Plaintiff DiBiase claims that during the class period, he suffered losses of approximately $309,900 under a last in, first out methodology. DiBiase has selected Kessler Topaz as Lead Counsel and Rosman &

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | |
|  | | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | September 18, 2017 |
|---|---|---|---|
| Title | *Erickson et al., v. Snap, Inc., et al.* | | |

Germain as Liaison Counsel upon approval.

II. **Standard for Appointing Lead Plaintiff**

The PSLRA governs the appointment of a Lead Plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), (3). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of publication, for appointment as Lead Plaintiff. See *Cavanaugh*, 306 F.3d at 729 (*citing* 15 U.S.C. § 78u-4(a)(3)(A)(i)); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 664 (C.D. Cal. 2005) (same).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the court is then to consider any motion made by class members and is to appoint as Lead Plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members." Step two involves establishing a rebuttable presumption that the "most adequate plaintiff" is the person who (1) has filed the complaint or made a timely motion for lead plaintiff, (2) possesses the largest financial interest in the litigation, and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 730 (describing the PSLRA's competitive process for determining the "most adequate plaintiff"); *Schriver v. Impact Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *8-10 (C.D. Cal. May 1, 2006).

Once the court determines who among the movants seeking appointment as Lead Plaintiff is the presumptive Lead Plaintiff, the presumption can be rebutted upon proof by a class member that the presumptive Lead Plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see also *Cavanaugh*, 306 F.3d at 730; *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *8 (same).[1]

---

[1] Plaintiff Gupta's attorney attended this Court's hearing on this motion on September 11, 2017. He claimed that DiBiase has not adequately rebutted the PSLRA's presumption in favor of choosing the plaintiff with the largest financial interest in the litigation—Gupta; however, 15 U.SC. § 78u-4(a)(3)(B)(iii)(II)(aa-bb) says otherwise. Others vying for appointment can adequately rebut any such presumption by showing that Gupta will not fairly protect the class or is subject to unique defenses.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | September 18, 2017 |
|---|---|---|---|
| Title | *Erickson et al., v. Snap, Inc., et al.* | | |

The PSLRA's "straightforward" and "sequential" selection process mandates that "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *See In re Cavanaugh*, 306 F.3d 726, 729-32 (9th Cir. 2002); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). The PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264.

III. **Appointment of Plaintiff Tom DiBiase as Lead Plaintiff**

   a. **Plaintiff DiBiase adequately rebuts the presumption of Plaintiff Gupta as Lead Plaintiff**

The PSLRA first requires this Court to consider which Plaintiff has the largest financial interest in the litigation. In that regard, Plaintiff Gupta has the largest loss—over $1,000,000 dollars—during the class period. The questions that follow such a determination are: (1) Does appointing Gupta as Lead Plaintiff satisfy the requirements of Federal Rule of Civil Procedure 23? and, (2) Can another class member offer proof that Gupta either will not fairly and adequately protect the interests of the class or that Gupta is subject to unique defenses that render Gupta incapable of adequately representing the class?

Plaintiff DiBiase argues that Gupta is subject to unique defenses concerning the timing of his class period transactions, thus making Gupta an atypical Lead Plaintiff. Gupta significantly increased his purchase of Snap stock by purchasing 150,000 shares—out of his total 250,000 shares—after news surfaced questioning the strength of the Company's daily active user growth. Dkt. 25, Ex 5. More than 60% of Gupta's Snap stock was purchased after the exact revelation of alleged fraud that Gupta pled in his own complaint. *Is*. These post-corrective trading might expose Gupta to unique defenses regarding whether Gupta actually relied on any alleged misrepresentations by Snap.

Defendants may argue that the magnitude of Mr. Gupta's "postdisclosure purchases suggest that [he] invested in [company] securities notwithstanding notice of defendants' misstatements and omissions" and undermine "the ability of [Mr. Gupta] to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate." *Faris*, 2011 WL 4597553, at *8. As explained by the court in *Bovee v.*

|   |   : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | September 18, 2017 |
|---|---|---|---|
| Title | *Erickson et al., v. Snap, Inc., et al.* | | |

*Coopers & Lybrand*:

> The fraud on the market theory is key to the class certification issue in securities fraud class. Without the benefit of the presumption of reliance, requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would [prevent plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones.

216 F.R.D. 596, 603 (S.D. Ohio 2003). Under Section 10(b) of the Securities Exchange Act of 1934, plaintiffs are required to prove reliance upon alleged misrepresentations. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). In order to meet the reliance element, the Supreme Court has "endorsed the 'fraud-on-the-market' theory, which permits certain [Section 10(b)] plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 461 (2013).

Accordingly, "post-disclosure purchases can defeat the typicality requirement for class certification when plaintiffs made a disproportionately large percentage of their purchases post-disclosure." *GAMCO Investors, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261 (S.D.N.Y. 2013). Gupta's transaction pattern presents a unique issue.

Gupta responds that purchases of stock by class representatives after negative announcements do not necessarily destroy typicality. *See Hufnagle*, 2011 U.S. Dist. LEXIS 19771, at *22; *In re Novatel Wireless Sec. Litig.*, No. 08-CV-1689 H (RBB), 2010 U.S. Dist. LEXIS 49543, at *20-21 (S.D. Cal. May 12, 2010). Gupta argues that his purchases after the initial corrective disclosure do "not sever the presumption of reliance" and "do not give rise to a unique defense that would preoccupy" him or counsel. *Middlesex County Ret. Sys. v. Semtech Corp.*, No. CV 07-7114 CAS (FMOx), 2010 U.S. Dist. LEXIS 145971, at *11, 13 (C.D. Cal. Aug. 27, 2010). The specific quote that Plaintiff Gupta refers to from *Semtech* is actually about post-disclosure purchases that occurred after the class period. Many of the other cases Defendant cites for the proposition that post-disclosure purchases are not atypical are also inapposite. *See e.g., In re Novatel Wireless Securities Litigation*, No. 08-1689, 2010 U.S. Dist. LEXIS 49543 at *22 (S.D. Cal. May 12, 2010) (refers to the typicality of the initial purchase of stock in comparison to the post-disclosure purchase, as opposed to the entire purchase of stock that is relevant to Gupta's analysis). Furthermore, when the post-disclosure purchases are a disproportionately large percentage of a plaintiff's stock purchases, typicality becomes more of an issue. ." *See GAMCO Investors, Inc. v. Vivendi, S.A.*, 917

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | September 18, 2017 |
|---|---|---|---|
| Title | *Erickson et al., v. Snap, Inc., et al.* | | |

F. Supp. 2d 246, 261 (S.D.N.Y. 2013). Gupta's post-disclosure purchases more than doubles his holdings in Snap. Over 60% of the losses he claims in this suit stem from the post-disclosure purchases.

The criteria courts must consider for choosing a Lead Plaintiff are not as absolute as Gupta's counsel would have this Court believe during the hearing for this motion. The PSLRA asks the Court to consider whether a plaintiff will fairly and adequately represent the class as the case moves forward. Gupta would not be able to do so. The PSLRA asks the Court to consider whether the particular plaintiff is subject to unique defenses. Plaintiff Gupta, although he may have the largest financial interest, is subject to unique defenses. There is no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court.

Accordingly, the Court DENIES Gupta's motion for appointment as Lead Plaintiff.

### b. Plaintiff DiBiase is the most adequate Plaintiff to represent this class

With Plaintiff Gupta removed from consideration, Plaintiff DiBiase is the only movant capable of satisfying the PSLRA's largest financial interest and adequacy and typicality requirements. In fact, DiBiase's investment loss prior to Snap's disclosures is fairly close to Gupta's pre-disclosure investment loss, both approximately around $300,000. Plaintiff DiBiase is also the only other plaintiff who has not withdrawn from vying for appointment as Lead Plaintiff.

In comparison to Plaintiff Gupta, no other member of the class has offered any evidence that Plaintiff DiBiase cannot meet the Rule 23(a) requirements of adequacy and typicality. Mr. DiBiase seeks recovery for the losses on his investments in Snap securities that he incurred as a result of Defendants' alleged misrepresentations and omissions. DiBiase's claims arise from the same conduct as those of most other class members. DiBiase is adequate because his interest in aggressively pursuing claims against Defendants is aligned with the interests of other class members who were similarly harmed as a result of Defendants' false and misleading statements.

Accordingly, Plaintiff DiBiase is the most adequate Plaintiff to represent this class and the Court GRANTS DiBiase's motion to be appointed as Lead Plaintiff.

### IV. Approval of Kessler Topaz as Lead Counsel

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | September 18, 2017 |
|---|---|---|---|
| Title | *Erickson et al., v. Snap, Inc., et al.* | | |

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to the Court's approval. See 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734 ("the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff"); *See also In re Cohen v. United States Dist. Court for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice"). Plaintiff DiBiase has selected and retained Kessler Topaz to serve as Lead Counsel for the class. Kessler Topaz specialized in class action litigation and has prosecuted numerous other securities fraud class action.

Similarly, Rosman & Germain has experience litigating complex class actions and is well-qualified to represent the class as Liaison Counsel. The Court GRANTS Plaintiff DiBiase's motion to approve his selection of Kessler Topaz as Lead Counsel and Rosman & Germain as Liaison Counsel for the class.

### V. The Related Actions Will Be Consolidated

Consolidation is appropriate under Rule 42(a) where the actions involve common questions of law or fact. *See Andrade v. Am. Apparel, Inc.*, No. 10-06352 MMM (PJWx), 2011 WL 13130706, at *3 (C.D. Cal. Mar. 15, 2011) (quoting Rule 42(a)). Here, the Related Actions present virtually identical factual and legal issues arising out of the same alleged course of misconduct and involve the purchase of Snap securities across overlapping class periods. The slight variations in class periods and parties among the Related Actions do not render consolidation inappropriate where, as here, the Related Actions assert identical claims based on similar factual allegations against overlapping Defendants. *See id.* ("The existence of slight differences in class periods, parties, or damages among the suits does not necessarily defeat consolidation where the essential claims and factual allegations are similar."). Therefore, the Court grants Plaintiffs' motion to consolidate cases with a separate order attached for clarity.

### VI. Conclusion

For the reasons mentioned above, the Court DENIES Plaintiff Gupta's motion for appointment as Lead Plaintiff, GRANTS Plaintiff DiBiase's motion for appointment as Lead Plaintiff, GRANTS DiBiase's motion to approve Kessler Topaz as Lead Counsel and Rosman & Germain as Liaison Counsel, and GRANTS the motion to consolidate cases.

|  | : |
|---|---|
| Initials of Preparer | PMC |