UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**    IN CHAMBERS ORDER DENYING MOTION TO DISMISS [73, 75]

## I.    Factual Background

On December 1, 2017, Defendants Snap Inc., et al and Underwriter Defendants (collectively referred to as "Defendants") filed Rule 12(b)(6) motions to dismiss Plaintiffs' consolidated amended class action complaint ("CAC"). Dkt. 73-1; Dkt. 75-1. Defendants contend that Plaintiffs' CAC is defective because it fails to allege any false or misleading statements or omissions. Dkt. 73-1, p. 1.

### a.  Snap, Inc.

The facts of this case involve Snap, Inc., ("Snap") and the company's Initial Public Offering ("IPO") on March 2, 2017. Snap is a social media company whose main product is the mobile social media platform, Snapchat. Snapchat is a free picture-messaging application. It allows users to send vanishing messages, known as "Snaps," that are visible for a few seconds before they disappear. Dkt. 67, p. 12. Snapchat also enables users to combine different snaps into a narrative "Story" and message one another using text, images, and videos. Dkt. 67, p. 12-13. The company started in 2011 as an iPhone-only application, but soon after expanded its reach to other mobile operating systems, like Android. Dkt. 67, p. 12.

Because Snapchat is a free application, Snap generates almost all of its revenue from third-party

|  | : |
|---|---|
| Initials of Preparer | |
|  | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

advertising.[1] Dkt. 67, p. 14. This advertising revenue is driven by the total number of users on the platform and their level of engagement. As the number of engaged users increases, Snap's advertising revenue increases.

From 2011 to 2016, Snap experienced rapid user growth. Dkt. 67, p. 12-13. On February 2, 2017, Snap filed a preliminary version of its S-1 disclosure statement with the SEC.[2] The SEC later declared the S-1 disclosure effective on March 1, 2017. In total, Snap's IPO raised $3.4 billion by selling 200 million shares at $17 per share.

### b.  Snap's stock price during the class period

Lead Plaintiff Thomas Dibiase and all other class action Plaintiffs purchased shares of Snap common stock between March 2, 2017—the date of the company's IPO and the beginning of the class period—and August 10, 2017 (the end of the class period). Dkt. 67, p. 7.

There were a few notable changes to Snap's stock price during the class period.[3] The IPO offering price was $17 per share. On March 3, 2017, the day after its IPO, Snap's stock price rose to the class period high of $29.44 per share. Dkt. 67, p. 42. Then, on May 10, 2017, Snap announced its financial results for the first quarter of 2017. That day Snap's stock closed at $22.98 per share. Dkt. 67, p. 49. The following day, on May 11, 2017, Snap's stock closed at $18.05 per share. Dkt. 67, p. 49. By August 10, 2017, Snap's stock traded at $13.77 per share. Dkt. 67, p. 12.

### c.  Underwriter Defendants

The Defendants collectively referred to as "Underwriter Defendants" were all underwriters and sellers of Snap's IPO. Dkt. 67, p. 92. All Underwriter Defendants sold over five million shares of Snap common stock in the IPO at the offering price of $17 per share. Dkt. 67, p. 91-92.[4] Defendants Morgan

---

[1]  "For 2015 and 2016, advertising revenue accounted for 98% and 96% of Snap's total revenue, respectively." Dkt. 67, p. 14.
[2]  Snap filed amendments to the S-1 disclosure statement on FormS-1/A on February 2, 2017, February 9, 2017, February 16, 2017, and February 27, 2017. Dkt. 67, p. 26.
[3]  Plaintiffs contend that the "value" of Snap's stock at the IPO and throughout the class period was lower than the stock "price." See Dkt. 67, p. 96-98.
[4]  Each of the Underwriter Defendants sold the following shares of Snap common stock. Morgan Stanley sold 60,485,614 shares, Goldman Sachs sold 49,600,000 shares, Deutsche Bank Securities sold 20,000,000 shares, J.P. Morgan Securities sold

|  |  | : |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

Stanley & Co. ("Morgan Stanley) and Goldman, Sachs & Co. ("Goldman Sachs") were lead underwriters for Snap's IPO. Dkt. 67, p. 91-92. As lead underwriters, Morgan Stanely and Goldman Sachs guided Snap through its IPO and helped the company determine its initial stock price. Dkt. 67, p. 81.

### d.  Plaintiffs' Allegations

Plaintiffs' CAC focuses on three major events and issues that Snap allegedly failed to disclose in the months leading up to its IPO.

### i.  *The Instagram Claim*

Plaintiffs allege that Snap concealed material information in its S-1 disclosure statements about how competing platforms impacted Snap's core business and user-growth. Essential to Plaintiffs' argument is that Defendants failed to acknowledge the negative effects Instagram[5] specifically had on Snap's user growth leading up to the IPO. Dkt. 67, p. 21.

From 2014 to 2016, Snap reported rapid quarterly growth in daily active users.[6] But in comparison to Snap's exponential growth in 2014, 2015, and the first two quarters of 2016, the company's growth from the third quarter of 2016 to the fourth quarter of 2016 was "relatively flat." Dkt. 67, p. 28. Snap publicly explained that the company's "accelerated growth" in the beginning of 2016 caused the flatter growth it experienced at the end of 2016. Dkt. 67, p. 28. Snap attributed competition from similar platforms, like Instagram, to its flattened growth in markets outside of North America and Europe. Dkt. 67, p. 29. But for its markets in North America and Europe, Snap explained that "increased

---

26,500,00 shares, Barclays Capital sold 12,000,000 shares, Credit Suisse Securities sold 6,153,846 shares, and Allen & Company sold 14,000,000 shares. All shares were shares of Snap common stock and were sold at the IPO price of $17 per share. Dkt. 67, p. 91-92.

[5] Instagram, a social media platform and subsidiary of Facebook, launched the Instagram Stories and Instagram Direct features in August 2016. Dkt. 67, p. 21. With these new features, Instagram arguably replicated the "core functionality" of Snapchat. Dkt. 67, p. 21. Instagram Direct allowed users to message one another with text, photos, and videos, while Instagram Stories allowed users to post disappearing photos and videos that could also be combined into a narrative "story." Dkt. 67, p. 21.

[6] Snapchat reported an average of 46 million daily active users in the first quarter of 2014, and an average of 158 million daily active users by the fourth quarter of 2016. See Dkt. 67, p. 64.

_____  :  _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

user engagement from product launches" in the first half of the year set a high baseline that was difficult to match in the second half of the year. Dkt. 67, p. 29

Plaintiffs contend that Snap misrepresented the causes of its flattened growth in North America at the end of 2016 to mitigate the impact of competition from Instagram on Snap's daily active users. Dkt. 67, p. 30. Plaintiffs allege that competition from Instagram directly caused Snap's daily active users to decline. Dkt. 67, p. 30. While Snap acknowledged that Instagram's Stories feature may be directly competitive in its S-1 registration statement, Plaintiffs argue that this statement materially misrepresented Instagram Stories as a potential risk, as opposed to an outside factor that had already dramatically impacted Snap's user growth and engagement. Dkt. 67, p. 30.

### ii.  *The Pompliano Whistleblower Claim*

Plaintiffs claim that Snap did not disclose a pending lawsuit, brought by former Snapchat employee and whistleblower Anthony Pompliano, on the S-1 disclosure, and Plaintiffs allege that this omission was material. Dkt. 67, p. 46. Pompliano's lawsuit was filed under seal in California state court on January 4, 2017. Dkt. 67, p. 45. In it, Pompliano alleged that he was terminated and retaliated against because he discovered and attempted to remedy major inaccuracies in how Snap calculated and reported its daily active users. Dkt. 67, p. 46-47. Many tech companies rely on their daily active user calculation in making representations to investors about the health of the company. In response to Pompliano's lawsuit, Snap publicly denied Pompliano's allegations and moved to keep the complaint under seal.[7] Plaintiffs allege that Snap failed to disclose the lawsuit in the S-1, while attempting to keep the complaint sealed. On April 4, 2017, Pompliano unsealed his complaint. Dkt. 67, p. 46. The same day Snap's share price fell by 7.3 percent. Dkt. 67, p. 46.

Plaintiffs allege that Snap concealed the Pompliano complaint because Pompliano's allegations were credible and posed a significant risk to the company. Dkt. 67, p. 33. Specifically, Plaintiffs allege that Pompliano's allegations posed a material threat to Snap's advertising business, Snaps' opportunities to find new investors, and Snap's ability to compete with Instagram. Dkt. 67, p. 33. Plaintiffs conclude that Snap's failure to disclose the Pompliano complaint constituted a material omission that rendered their S-1 disclosure statement misleading. Dkt. 67, p. 33.

---

[7] Snap moved to keep the complaint sealed on January 18, 2017, less than two weeks after it was filed and months before the IPO. Dkt. 67, p. 45.

_____  :  _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|----------|------------------------|------|--------------|
| Title | *In Re Snap Inc. Securities Litigation* | | |

### iii.   The Growth-Hacking Claim

Finally, Plaintiffs allege that Snap materially misrepresented its use of "growth hacking" to artificially inflate their daily active user numbers.[8] Dkt. 67, p. 60-64. Plaintiffs allege that initially Snap denied any use of growth hacking techniques to inflate their user metrics. Dkt. 67, p. 61. In a conference call with analysts and investors on May 10, 2017, Snap CEO Evan Spiegel ("Spiegel") distinguished Snap from other companies that may engage in growth hacking.[9] Dkt. 67, p. 51. But Plaintiffs allege that Spiegel admitted, in August 2017, that Snap does and did engage in growth hacking. Dkt. 67, p. 56. This was over 5 months after the IPO. During a phone call with analysts in August 2017, Spiegel admitted that Snap does send push notifications to user phones of "highly relevant" content, which would constitute growth-hacking to inflate the number of daily active users. Dkt. 67, p. 57. Plaintiffs conclude that Snap's failure to disclose its practice of growth-hacking—thus artificially inflating its daily active user calculation—constituted a material omission that rendered Snap's S-1 disclosure statement misleading.

### e.   Procedural Posture

The Court now considers whether the claims above survive Defendants' Motion to Dismiss. In the interest of judicial economy and efficiency, the Court considers and addresses both Defendants' Motions to Dismiss and Underwriter Defendants' Motion to Dismiss in this Order. The Court acknowledges that the only claims Plaintiffs allege against the Underwriter Defendants are the Securities Acts § § 11 and 12(a)(2) claims. While not as extensive as Plaintiffs' claims against the Executive and Director Defendants, they still arise from the same nexus of facts.

## II.   Legal Standard

To survive a motion to dismiss, the Plaintiffs' complaint "must contain sufficient factual matter,

---

[8] Growth hacking occurs when companies send push notifications to users. The user then opens the application that sent the notification and becomes an additional daily active user in the company's metrics.

[9] Spiegel noted that growth hacking is not sustainable and can have a negative impact on a company's relationship with its customers. Dkt. 67, p. 51.

: _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*; *see Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (holding that while "legal conclusions may provide a framework for a complaint…they must be supported by factual allegations") (quoting *Aschroft*, 556 U.S. at 679).

Complaints that allege violations of Section 10(b) and Section 11 of the Securities Exchange Act of 1934, as well as Securities and Exchange Commission Rule 10b-5, are subject to heightened pleading requirements for misrepresentations and scienter. *See Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.,* 774 F.3d 598, 605 (9th Cir. 2014) (holding that "Rule 9(b) applies to all elements of a securities fraud action, including loss causation"*); see also Rubke v. Capitol Bancorp Ltd,* 551 F.3d 1156, 1161 (9th Cir. 2009) (holding that Rule 9(b) applies to Section 11 claims "if [the] complaint sounds in fraud") (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005)).[10] Thus, a securities fraud complaint "must state with particularity" how and why each statement was false at the time the statement was made. Fed. R. Civ. P. Rule 9(b); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).

In deciding a 12(b)(6) motion, the Court must accept all allegations of material fact stated in the complaint as true and construe the allegations in the light most favorable to the nonmoving party. *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002). The court should draw all reasonable inferences in favor of the nonmoving party. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The Court's "review is limited to the complaint; evidence outside the pleadings…cannot normally be considered in deciding a 12(b)(6) motion." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).[11] One exception is that the court may consider those matters of which it may take judicial

---

[10] Section 10(b) and Rule 10b-5 have dual heightened pleading standards under both Rule 9(b) and the Private Securities Litigation Reform Act (PSLRA).

[11] The Court has the discretion to consider matters outside of the pleadings, but to do so, it must convert the motion to dismiss to a motion for summary judgment. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007). The Court will not convert this motion to a motion for summary judgment, and therefore, will only consider matters suitable at the motion to dismiss stage.

                                                                          :

                              Initials of Preparer
                                                              PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

notice.[12]

### III.     Section 10(b) – Legal Analysis

The Court is guided by the very recent Ninth Circuit case, *Webb v. Solarcity Corp.*, WL 1189422 (9th Cir. Mar. 8, 2018), in its analysis. "To state a claim under § 10(b) and Rule 10b-5, [Plaintiffs] must show (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection

---

[12]      *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (holding that the court's review of a 12(b)(6) motion may include "matters of which [it] may take judicial notice."). Defendants collectively submit 11 news articles to argue a "truth-on-the-market" defense, meaning that the information allegedly omitted from Snap's Offering Documents was already known to the public. Among those exhibits is Exhibit 5 (ECF No. 73-7)—a TechCrunch article, which Defendants rely on primarily for its full page of "reader comments." See Ex. 5; Mem. at 9-10; UW Mem. at 6. The "reader comments" in Exhibit 5, however, cannot be considered on a motion to dismiss because they are neither incorporated by reference in the CAC nor a suitable subject for judicial notice. "Reader comments" are not the type of "facts" suitable for judicial notice. Facts are only judicially noticeable if they are not "subject to reasonable dispute." *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 150 (C.D. Cal. 2007).

Furthermore, on a motion to dismiss, the facts "are drawn from the Plaintiff's [complaint]" and the 'uncontroverted allegations in the complaint must be taken as true.'" *Gusevs v. AS Citadele Banka*, 2017 WL 2661707, at *2 n.4 (C.D. Cal. Feb. 13, 2017) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Accordingly, if a court takes judicial notice of a document, "it may do so 'not for the truth of the facts recited therein, but for the existence of the [document], which is not subject to reasonable dispute over its authenticity.'" *Live Concert*, 247 F.R.D. at 150. Where a defendant proffers an exhibit to support a "truth-on-the-market" defense, for example, the exhibit should only be considered "to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Gerritsen*, 112 F. Supp. 3d at 1029. Moreover, "[a]t this stage, the Court must resolve any ambiguities in Plaintiffs' favor." *Immune Response*, 375 F. Supp. 2d at 995.

Defendants seek to introduce 11 news articles (Exs. 5, 6, 8, 10, 11, 12, 13, 14, A, B, and C) to argue that "the market understood" the full extent of the competition by Instagram Stories, the impact of that competition on Snap, and the lawsuit filed by Pompliano. In doing so, however, Defendants cannot rely on the facts reported in articles; the articles also may lack material facts about the omitted matters. In fact, as noted in the complaint, Defendants unequivocally directed investors not to consider any information beyond the four corners of the S-1. Defendants base their arguments on inferences, the truth of the documents' contents, and factual disputes arising from their proffered exhibits. This analysis is improper at this stage of litigation. *See Lee v. Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (reversing distrct court that "assumed the existence of facts [] favor[ing] defendants based on evidence outside [the] pleadings, took judicial notice of the truth of disputed factual matters, and did not construe [] allegations" in plaintiffs' favor); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1064 (C.D. Cal. 2012) (finding that taking judicial notice of the truth of the documents' contents to "suggest[] that the court can infer scienter" "would be inappropriate in the context of a motion to dismiss"). The Court denies Defendants' Requests for Judicial Notice.

_____  :  _____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Webb*, WL 1189422 at *4 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011)). Defendants' Motions to Dismiss focuses on the complaint's pleadings regarding scienter and material misrepresentations or omissions.

      *a. Scienter*

      Plaintiffs have adequately plead scienter. The pleading standard for scienter requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "A strong inference is an inference that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Webb*, WL 1189422 at *4 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007)).

      The Pompliano allegations satisfy the pleading standard. Snap moved to keep the complaint under seal shortly after Pompliano filed it and did not disclose the Pompliano complaint in their S-1 disclosure statement. With regard to the growth-hacking allegations, the fact that Snap allegedly changed its position three months after it initially denied any engagement in growth hacking allows, at least at the pleading stage, the inference that the company was aware that its practices could constitute growth-hacking before the S-1 disclosure.[13]

      The Court considers each of Plaintiffs' allegations individually, but it is the combination of Plaintiffs' allegations and a holistic view of the CAC that guides the Court's ultimate decision regarding scienter. *See Webb*, WL 1189422, at *9 (holding that "the [district] court did not err in considering each allegation on its own before holding that they also failed to support a strong inference of scienter in combination); *see also In re VeriFone Holdings, Inc. Sec. Litig.,* 704 F.3d 694, 703 (9th Cir. 2012) (holding that to avoid the potential pitfalls of a dual analysis, the court conducts "a holistic review of the allegations to determine whether they combine to create a strong inference of intentional conduct or

---

[13] Two phone conversations are relevant here. First, the Court considers Spiegel's conference call with analysts and investors on May 10, 2017. Plaintiffs allege that during this first call Spiegel did not acknowledge that Snap engages in growth hacking despite broaching the topic. Second, the Court considers Spiegel's phone call with analysts in August 2017. Plaintiffs allege that during the second conversation Spiegel admitted to Snap's engagement in growth hacking. *See* Dkt. 67, p. 51-61.

                                                           : _____

Initials of Preparer

                                   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

deliberate recklessness").[14]  When isolated from Plaintiffs other allegations, the Instagram allegations do not support a strong inference of scienter. Snap acknowledged Instagram in its S-1 disclosure statement and indicated that Instagram may be "directly competitive." This is in stark contrast to Snap's omission of the Pompliano complaint or initial denial of growth hacking. Thus, while the Court agrees with the Defendants that the Instagram allegations alone would not satisfy scienter, the complaint survives as a whole under *Webb*. All three claims as a whole create a strong inference of intentional conduct or deliberate recklessness.

      b.   *Misleading Statement or Omission*

      Plaintiffs have also adequately plead material misrepresentations or omissions in their CAC. Unless "the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds [could] not differ," the question of "whether a statement is misleading and whether adverse facts were adequately disclosed . . . should be left to the trier of fact." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) (citing *Fecht v. The Price Co.*, 70 F.3d 1078, 1081 (9th Cir.1995)). Plaintiffs alleged in detail Defendants' material misrepresentations and omissions regarding Instagram, Pompliano, and Growth Hacking. *See* Dkt. 67. All of Defendants' contentions as to whether or not certain disclosures or omissions were material or misrepresentation are arguments that are not appropriate at this point in the litigation or rely on evidence outside of the complaint.

      Regarding the Instagram claim, Defendants contend that more disclosure was unnecessary. But the risk of disclosures must be read in context of "comforting statements in the prospectus." *Meyer v. Jimkosolar Holdings Co., Ltd.*, 761 F.3d 245, 251 (2d Cir. 2014). The Court views the S-1's risk disclosures regarding the impact of competition in the context of Defendants' alleged misrepresentations regarding the reasons for Snap's "relatively flat" and "lumpy" 4Q 2016 DAU growth. That context allows Plaintiffs to sufficiently plead that investors were not adequately advised of the existence and impact of Instagram's Stories on Snap's user growth and advertising revenue. *Id*. (finding the "failure to disclose [current] problems in the [] prospectus could be found by a trier of fact to be an omission that renders misleading the comforting statements"). Moreover, hypothetical risk disclosures—e.g., Instagram Stories "**may** be directly competitive," ¶231—do not absolve Defendants of their duty to disclose known material adverse trends currently affecting Snap's user growth and the viability of its

---

[14] The Ninth circuit also held in *Verifone* that a Court cannot "simply ignore the individual allegations and the inferences drawn from them." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d at 703.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | | Date | June 7, 2018 |
|---|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | | |

platform. The Ninth Circuit has rejected similar efforts to rely on abstract and hypothetical risk warnings that fail to "alert[] the reader that some of the[] risks may already have come to fruition." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986 (9th Cir. 2008); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1181 (9th Cir. 2009), aff'd, 563 U.S. 27 (2011).

With regard to the Pompliano claim, Defendants contend that Snap was not required to disclose Pompliano's lawsuit under Accounting for Unasserted Claims (ASC) Standard 450.[15] ASC 450, labeled Contingencies, outlines the accounting and disclosure requirements for loss and gain contingencies reporting in an S-1. ASC 450 "set[s] out different rules for claims that have been asserted and those that have yet to be asserted." *SEC v. RPM Int'l*, 2017 WL 4358693, at *12 (D.D.C. Sept. 29, 2017). "[F]or a claim that has been asserted, an issuer must disclose a loss contingency if there is 'at least a reasonable possibility' that a loss may be incurred, even if the amount cannot be reasonably estimated." *Id*. Defendants concede that Pompliano's suit was filed prior to the S-1; Defendants dispute whether the Complaint plausibly alleges that a material loss from Pompliano's suit was "reasonably possible." The CAC alleges that in addition to the significant damages sought by Pompliano, "at the time of IPO, Snap was losing money, [and therefore] the likelihood of a material loss as a result of his complaint was 'reasonably possible.'" ¶ 248. These allegations are sufficient at this stage. *See In re Silver Wheaton*, 2016 WL 3226004 at *9 (C.D. Cal. 2016) (finding ASC 450 violation adequately alleged where the likelihood of liability was "more than remote").[16] Defendants also contend that the S-1's inclusion of

---

[15] These financial accounting standards for S-1 disclosures are Generally Accepted Accounting Principles (GAAP) issued by the Financial Accounting Standards Board (FASB).

[16] Defendants also argue that Snap's purported assessment under ASC 450 qualifies as an opinion, and that Plaintiffs were required to "plead the exact assumptions" underlying this assessment. *City of Dearborn Heights v. Align Tech., Inc.,* 856 F.3d 605, 618 (9th Cir. 2017)). But the CAC does not allege a misleading statement with respect to ASC 450; instead, the omission of Pompliano's claim in violation of ASC 450 rendered the S-1's "discussion of litigation-related risks facing the Company" materially false and misleading. ¶247. Even if this "statement" qualified as an opinion, Defendants' misconstrue *Align*. The Ninth Circuit did not establish a bright-line test requiring plaintiffs to plead the "exact assumptions" underlying any allegedly false or misleading opinion. Rather, the court held that the complaint failed to allege any "facts going to the basis for the issuer's opinion" that rendered the opinion materially misleading. 856 F.3d at 616; see id. at 618 ("[p]laintiff's omissions theory of liability fails because none of the three alleged omissions call[s] into question the issuer's basis for offering the opinion"); id. at 618-19 ("without any allegations tying [the alleged omission] to any of [d]efendants' goodwill valuations," plaintiff's claim based on an alleged improper valuation fails). Here, to the extent any of the allegedly false or misleading statements in the CAC could qualify as "opinions," *see RPM*, 2017 WL 4358693, at *17 (questioning whether disclosures of loss contingencies constitute opinions), the CAC adequately alleges that the S-1 omitted material facts going to the basis of Snap's disclosures regarding "Pending Matters."

: 

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|

| Title | *In Re Snap Inc. Securities Litigation* |
|---|---|

corrected metrics rendered Pompliano's allegations immaterial. Accepting Plaintiffs allegations as true, as the Court is required to do at this stage, *Tellabs*, 551 U.S. at 314, the CAC sets forth detailed, particularized allegations, including admissions by Individual Defendants Vollero[17] and Spiegel regarding their awareness that Snap's user metrics were unreliable, ¶¶71, 153-55, and documentary evidence included in Pompliano's sworn complaints, see ¶150, supporting Pompliano's version of events. ¶¶64-72, 134-57.

The CAC alleges that Individual Defendants Spiegel and Khan's[18] statements on May 10 and May 24 about Snap's purported high-quality user engagement metrics, including its avoidance of "growth hacking" techniques designed to inflate these metrics, ¶¶174-179a, 184-186, were material misrepresentations because, as Spiegel subsequently admitted in August 2017, Snap drove a portion of its DAU growth through such techniques, including the use of push notifications to get users to use the Snapchat application, ¶199. These allegations are sufficient at this stage. *See, e.g., Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 192 (S.D.N.Y. 2010) (falsity established where complaint alleged "subsequent admissions" that were inconsistent with defendants' public statements). Defendants offer an alternative interpretation of Spiegel's admission regarding Snap's reliance on growth hacking. But this only demonstrates that a factual dispute exists which cannot be resolved at the pleading stage. *See LDK*, 584 F. Supp. 2d at 1260.

Finally, Defendants assert that the CAC does not allege any actionable misrepresentations or omissions because the relevant "truth" was disclosed to investors before the S-1 on March 1, 2017. "A method of refuting an alleged misrepresentation's materiality," "truth-on-the-market" is an affirmative defense. *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011), aff'd, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013). To succeed on this affirmative defense, Defendants must "show that the information was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created" by the alleged false or misleading statements. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1160 (C.D. Cal. 2008). At the pleading stage, a court may dismiss on the basis of an affirmative defense only if "the affirmative defense is apparent on the face of the complaint." *Tatung Co., Ltd. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036,

---

[17] Defendant Andrew Vollero has been Snap's Chief Financial Officer since 2016. Vollero signed the Registration Statement and throughout the Class Period, made relevant statements in Company releases, conference calls, and other public forums.
[18] Defendant Imran Khan ("Khan") has been Snap's Chief Strategy Officer since January 2015. Throughout the Class Period, Khan made statements in Company releases, conference calls, and other public forums

                                                                    _____ : _____
                                                                        Initials of Preparer
                                                                              PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

1057 (C.D. Cal. 2014).

Defendants contend that there was sufficient speculation about the impact of Instagram's Stories on Snap's user growth and engagement prior to the filing of the S-1 in March 2017 to defeat Plaintiffs' claims. But, as alleged in the CAC, any credibility these rumors had could have been counteracted by the filing of the S-1, which unequivocally directed investors not to consider any information beyond the four corners of the S-1. *See* Ex. 1 at 54 ("You should rely only on statements made in this prospectus in determining whether to purchase our shares, not on information in public media that is published by third parties."). Snap's statements could have misleadingly reassured investors about the causes of Snap's disappointing 4Q DAU results, ¶¶228-31, thus "operat[ing] as a direct rebuttal of any speculation that Facebook's Instagram was having a negative impact on Snap's DAU," ¶231. *See Immune Response*, 375 F. Supp. 2d at 1037 (finding truth-on-the-market defense was not established where complaint alleged that defendants "attempted to suppress public knowledge" of the truth); *Fresno Cty. Emples. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 562 (S.D.N.Y. 2017) (holding that "[t]his is not an appropriate case for a 'truth-on-the-market' defense . . . because Rentrak 'itself warned investors not to rely on the media'"); In re Facebook, Inc., 986 F. Supp. 2d 487, 522 (S.D.N.Y. 2013). Plaintiffs' CAC survives.

IV.     **Section 11 Legal Analysis**

a.     False Statements of Material Fact and Material Omissions

It is difficult to discern whether Plaintiff's Securities Act claims for untrue statements of material fact or material omissions sound in fraud; however, the Court finds that the claims do sound in fraud.[19]

---

[19]     Plaintiffs argue that their claims do not sound in fraud. Plaintiffs assert that because they have "exercised care in differentiating asserted negligence claims from fraud claims," that there claims are not subject to Rule 9(b)'s heightened pleading standards. *See* Dkt. 78, p. 7 (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 273 (3d Cir. 2006); *Countrywide*, 588 F. Supp. 2d at 1163). The Court disagrees.

Just because Plaintiffs allege in their CAC that their Section 11 claim "does not assert that the Securities Act Defendants acted with fraudulent intent," does not mean that the claim does not sound in fraud. *See* Dkt. 67, p. 115, ¶ 380. The Ninth Circuit prescribes two different approaches for applying Rule 9(b) pleading standards to a Section 11 claim. Which approach a court takes depends on whether the entire Section 11 claim sounds in fraud, or only part of it does.

In *In re Dauo Systems*, the Ninth Circuit held that Plaintiffs' entire complaint sounds in fraud and as a result, "all of plaintiffs' claims, whether including an element of fraud or not, must satisfy the heightened pleading standard set out in Rule

_____ : _____

Initials of Preparer

PMC

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

The issue with which pleading standard to apply in this case is that the nexus of Plaintiffs' Section 11 claim stems from the same misrepresentations or omissions, namely, Instagram and Pompliano, as do their Section 10(b) claim. Although Plaintiffs provide express disclaimers that the Securities Act claims are non-fraud claims and employ slightly different language, their Section 11 claim and allegations against the Executive Defendants do sound in fraud. To say that they do not would completely ignore the fact that Plaintiffs make virtually the same allegations against the Executive Defendants for securities fraud as they do for Section 11. Regardless, whether or not Rule 9(b) pleading standards apply to all of Plaintiffs' Section 11 claims is not dispositive in this case. Even through the lens of Rule 9(b) pleading standards, Plaintiffs' CAC pleads both the Instagram and Pompliano claims with enough specificity to satisfy Rule 9(b)'s heightened pleading standards.

Under Section 11, if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security . . . [may] sue." 15 U.S.C. § 77k(a). "Section 11 thus creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out." Omnicare, 135 S. Ct. at 1323. The Pomplinao claim focuses on what Snap left out. Snap failed to disclose the Pompliano complaint in its S-1 disclosure statement. See supra Part II.b; Part III.a. Conversely, the Instagram claim focuses on how Snap addressed competition from Instagram Stories. Although Snap addressed that Instagram Stories "may be directly competitive," Plaintiffs allege that Snap was already facing direct competition from Instagram and that "Snap's DAU growth had been significantly diminished by Facebook's launch of Instagram 'Stories,'" a fact that is never referenced in Snap's S-1 disclosure. Dkt. 67, p.100-101, ¶ 348-349.

---

9(b)." 411 F.3d at 1028. There, the Plaintiffs' complaint fully incorporated the Plaintiffs' securities fraud allegations into their Securities Act claims. The Ninth Circuit held that "because the complaint makes a 'wholesale adoption' of the securities fraud allegation for purposes of the Securities Act claims, this court need not 'sift through allegations of fraud in search of some lesser included claim of strict liability." *Id.*

Conversely, in *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003), the Ninth Circuit held that Rule 9(b) pleading standards applied to only part of Plaintiffs' Section 11 claim because only part of the claim sounded in fraud. The Ninth Circuit explained that "in a case where fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b), [whereas] allegations of non-fraudulent conduct need satisfy only the ordinary pleading standards of Rule 8(a)." 317 F.3d at 1105. There, Plaintiffs' complaint contained "allegations of both fraudulent and non-fraudulent conduct." *Vess*, 317 F.3d at 1105. The Ninth Circuit indicated that in such instances, the court "should disregard" those allegations of fraud that "are insufficiently pled…or strip them from the claim . . . [and] then examine the allegations that remain to determine whether they state a claim." *Id.*

:

_____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|

| Title | *In Re Snap Inc. Securities Litigation* |
|---|---|

 

   *b. Section 11 Damages*

   Plaintiffs have two theories of damages under Section 11. The first theory of damages—the difference between the price Plaintiffs paid for the stock initially and the price at the time Plaintiffs brought their suit—is not particularly difficult to understand. Plaintiff's second theory of damages under Section 11 is that the price of Snap's IPO did not accurately represent its actual value.[20] At the motion to dismiss stage, both of Plaintiffs' theories are sufficient for the CAC to survive.

   Defendants first argue that based on the pleadings, Plaintiffs have not plausibly claimed damages under Section 11.[21] First, as both parties aptly emphasize, Defendant's pleading argument about the lack of damages in the complaint is an affirmative defense that places a "heavy burden" of proof on the defense. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994); *see also In re Countrywide*, 588 F. Supp. 2d at 1170 (holding that "§ 11(e) makes the absence of loss causation (or 'negative causation') an affirmative defense to reduce or avoid liability under § 11"). Defendants have not satisfied this burden. Furthermore, "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). As noted above, Plaintiffs have adequately plead material misstatements and omissions to establish a prima facie case under Section 11. Once Plaintiffs allege misstatements and omissions, the damages claim typically follows because Plaintiffs can claim damages between the IPO price and the price at the time Plaintiffs brought

---

[20] When the Court refers to the actual value of the stock, it is because Plaintiffs contend that Snap's stock price at IPO did not actually reflect Snap's true price or true worth if the S-1 had allegedly been accurate.
[21] Damages under Section 11 are different from Section 10b because the two suits stem from potentially different conduct. Violations of Section 10b and 10b-5 can lead to rescission or damages. Section 10 damages would consist of a purchaser's out-of-pocket loss, effectively limited to the difference between the purchase or sale price and the trading price of the security during the relevant 90-day period beginning on the date on which the information correcting the relevant misstatement or omission was disseminated. But Section 11 is not just about and omission or misstatement. Section 11 imposes liability if any part of a registration statement, at the time it became effective, "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or required to make the statements therein not misleading." Damages are thus usually calculated by finding the difference between the price paid for the security and the value at the time the Plaintiff brings the lawsuit. Here, numerous named Plaintiffs filed the lawsuit at a price that was higher than the price they initially paid: the IPO price. But the Consolidated Amended Class Complaint was filed at a price lower than the IPO price. If the only calculation for damages was the price differential, this might pose a problem; however, as the discussion above notes, Section 11 also permits a value-based claim for damages, which would allow Plaintiffs claim to proceed here regardless.

 

                                                                                               :

                                                        Initials of Preparer
                                                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

the suit. For example, if Plaintiffs bought stock at the IPO for $10.00 and filed the suit when the price dropped to $8.00, Plaintiffs' damages are $2.00 per stock.

But there are some Plaintiffs who cannot claim damages under this theory because they filed suit when Snap's stock price was still above the IPO price. Defendants argue that accordingly, those Plaintiffs would lack standing because their complaints "fail to plead facts demonstrating that [those Plaintiffs] suffered the particular type of injury contemplated by the statute."[22] *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1167 (C.D. Cal. 2008) (citations omitted). Thus, a lack of damages would present a "standing inquiry, . . . namely, whether [Plaintiffs] suffered a compensable economic loss on the securities . . . [and are] entitled to relief" *Id.*[23]  It remains the case that "a complaint must be dismissed where it is apparent from the face of the complaint…that Plaintiffs cannot have suffered a decline in the value of their securities." *Id.* Defendants claim that anyone who held securities that traded above their offering price on the date they filed the lawsuit should be precluded from suing under Section 11. But Defendants' argument ignores Plaintiffs' second claim for damages.

Based on the CAC, Plaintiffs also could have suffered a decline in the value—the true price—of their securities. To continue the example used above, if Plaintiffs bought stock at the IPO for $10.00 and filed the suit when the price was at $11.00, they would not have any damages based on the difference in IPO price and the price at the time of the complaint. But, if Plaintiffs could show that the stock's price at IPO should have $7.00 because of the omissions and misrepresentations—instead of $10.00, those Plaintiffs would still have suffered $3.00 in damages because of the issues present in the S-1 disclosure. Courts recognize, and Defendants even acknowledge, that there are times where a stock price at IPO does ***not*** reflect the ***true value*** of the security.[24]  Plaintiffs argue here that Snap's actual stock price at IPO overestimated the true value of the stock at that time because of the alleged material omissions and misrepresentations noted above. This theory is a valid theory of damages.

---

[22] The 'type of injury' the statute contemplates is a decline in investment value due to materially false or misleading information in the registration statement. *Id.*

[23] Defendants argue that the Ninth Circuit's holding *In Re Broderbund/Leaning Co. Sec. Litig.*, 294 F.3d 1201 (2002), warrants the dismissal of Plaintiffs' CAC because the CAC fails to show that Plaintiffs suffered any loss on Snap securities. In *Broderbund*, the Ninth Circuit affirmed a 12(b)(6) dismissal of a putative class because the class "suffered no cognizable damages." *In re Countrywide*, 588 F. Supp. 2d at 1169 (qualifying the Ninth Circuit's holding in *Broderbund*).

[24] See *In re Fortune Sys. Sec. Litig.*, 680 F. Supp. 1360, 1370 (N.D. Cal. 1987); *see also Campton v. Ignite Rest. Grp. Inc.*, 2014 WL 61199, at *5, 7 (S.D. Tex. Jan. 7, 2014).

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | June 7, 2018 |
|---|---|---|---|
| Title | *In Re Snap Inc. Securities Litigation* | | |

The Court notes that those Plaintiffs who filed when the stock price was above the IPO price may indeed be unable to prove damages after an expert evaluates the stock value; however, that is not an appropriate question at this stage. Section 11(e) sets the measure of damages for a plaintiff still holding her securities at the "value" of those securities at the time of suit. *See* 15 U.S.C. § 77k(e)(3). "Value," however, is not necessarily equal to "price," and the determination of value is a fact-intensive inquiry. *See McMahan v. Wherehouse Entertainment*, 65 F.3d 1044, 1048–49 (2nd Cir. 1995). It would be inappropriate to resolve this question at the motion to dismiss stage. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)" *In re Initial Public Offering Securities Litigation*, 241 F.Supp.2d 281, 351 n. 80 (S.D.N.Y. 2003)(cleaned up).

Thus, whether or not the price of Snap's IPO accurately reflected its value is not a question the Court must consider at this time. What is clear is that Plaintiffs plead sufficient facts that create "the reasonable inference" that Snap's IPO price may not have reflected its actual value with regard to Plaintiffs who filed their claim before the stock price dropped below the IPO price.[25] Those Plaintiffs sufficiently plead that the actual value of Snap's stock may have been less than the stock price, and, as a result, those Plaintiffs may have suffered an actual loss.[26] "So long as the other allegations in the complaint (and matters of which a court may take judicial notice) do not conclusively demonstrate that plaintiffs cannot prove a loss, the complaint survives a motion to dismiss. The statute, the Ninth Circuit, and the Supreme Court do not require more." *In re Countrywide*, 588 F. Supp. 2d at 1169.

V.    **CONCLUSION**

The Court DENIES Defendants' Motion to Dismiss. Plaintiffs are required to file motion for class certification within 90 days.

---

[25] *In re Countrywide*, 588 F. Supp. 2d at 1169–70 ("A plaintiff is required (1) to allege that he purchased the relevant securities; and (2) to allege facts creating the reasonable inference that the value of the securities on the presumptive damages date—that is, either the value at the time plaintiff sold the securities; or the value at the time of suit, if the plaintiff still holds the securities—is less than the purchase price").

[26] The Court notes that there are multiple Plaintiffs who can claim damages based on the difference between the IPO price and the price at the time of filing. These Plaintiffs have a valid claim under both theories—price-based and value-based— because they filed after the stock price dropped below the IPO price. This may pose a separate issue at class certification.

:

Initials of Preparer

PMC