| | |
|---|---|
| 1 | BORIS FELDMAN, State Bar No. 128838 |
| 2 | Email: boris.feldman@wsgr.com |
|   | IGNACIO E. SALCEDA, State Bar No. 164017 |
| 3 | Email: isalceda@wsgr.com |
| 4 | WILSON SONSINI GOODRICH & ROSATI |
|   | Professional Corporation |
| 5 | 650 Page Mill Road |
| 6 | Palo Alto, CA 94304-1050 |
|   | Telephone: (650) 493-9300 |
| 7 | Facsimile: (650) 565-5100 |
| 8 | |
| 9 | *Attorneys for Defendants Snap Inc., Evan Spiegel, Robert Murphy,* |
| 10 | *Andrew Vollero, Imran Khan, Joanna Coles, A.G. Lafley, Mitchell Lasky,* |
| 11 | *Michael Lynton, Stanley Meresman,* |
| 12 | *Scott D. Miller, and Christopher Young* |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SNAP INC. SECURITIES LITIGATION | Case No. 2:17-cv-03679-SVW-AGR |
| | **CLASS ACTION** |
| | **MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF SNAP DEFENDANTS' MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** |
| | Date: August 13, 2018 |
| | Time: 1:30 p.m. |
| | Courtroom: 10A |
| | Honorable Stephen V. Wilson |
| This Document Relates To: All Actions | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

    A.    Section 11(e) of the Securities Act .......................................................... 2

    B.    This Court's Order for Supplemental Briefing ...................................... 2

    C.    The Snap Defendants' Supplemental Briefing ...................................... 3

    D.    This Court's Decision Concerning Damages ......................................... 3

ARGUMENT .............................................................................................................. 4

    A.    Applicable Standard for Interlocutory Appeals ..................................... 4

    B.    The Damages Issue Is a Controlling Question of Law .......................... 4

    C.    Conflicting Holdings – as Well as This Court's Order for Supplemental Briefing – Demonstrate Substantial Grounds for Difference of Opinion ................................................................................ 5

    D.    An Immediate Appellate Holding That Plaintiffs Lack §11 Damages Will Materially Advance the Termination of the Litigation ................................................................................................ 10

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alpern v. UtiliCorp United, Inc.*,
  84 F.3d 1525 (8th Cir. 1996) ................................................................................ 8

*Beecher v. Able*,
  435 F. Supp. 397 (S.D.N.Y. 1975) ....................................................................... 8

*Brickman v. Facebook, Inc.*,
  2017 U.S. Dist. LEXIS 64343 (N.D. Cal. Apr. 27, 2017) ................................... 6

*Campton v. Ignite Rest. Grp. Inc.*,
  2014 WL 61199 (S.D. Tex. Jan. 7, 2014) ............................................................ 6

*Fortyune v. City of Lomita*,
  766 F.3d 1098 (9th Cir. 2014) .............................................................................. 6

*Helman v. Alcoa Global Fasteners, Inc.*,
  2009 U.S. Dist. LEXIS 64720 (C.D. Cal. June 16, 2009), *aff'd*,
  673 F.3d 986 (9th Cir. 2011) ................................................................. 4, 6, 7, 11

*In re AFC Enters., Inc. Sec. Litig.*,
  348 F. Supp. 2d 1363 (N.D. Ga. 2004) .......................................................... 9, 10

*In re Barclays Bank PLC Sec. Litig.*,
  2016 U.S. Dist. LEXIS 75663 (S.D.N.Y. June 9, 2016) .............................. 8, 9, 10

*In re Broderbund/Learning Co. Sec. Litig.*,
  294 F.3d 1201 (9th Cir. 2002) ..................................................................... *passim*

*In re Brooks Automation Inc. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 88045 (D. Mass. Nov. 6, 2007) ............................... 9, 10

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1982), *aff'd sub nom. Arizona v. Ash
  Grove Cement Co.*, 459 U.S. 1190 (1983) .......................................................... 4

*In re Countrywide Financial Corp. Securities Litigation*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................... 7

*In re Initial Public Offering Sec. Litig.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003) ................................................................. 6

*In re LendingClub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ............................................................... 6

*In re Wash. Mut. Inc. Sec., Deriv. & ERISA Litig.*,
  2010 U.S. Dist. LEXIS 142992 (W.D. Wash. Oct. 12, 2010) ........ 3, 7, 8, 9, 10

*linkLine Communications, Inc. v. SBC Calif., Inc.*,
  No. 2:03CV05265-SVW (C.D. Cal. Apr. 1, 2005) ............................................ 4

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
   65 F.3d 1044 (2d Cir. 1995) ................................................................. 1, 3, 6, 7, 10

*MGM Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) .................................................................................................. 4

*MGM Studios Inc. v. Grokster, Ltd.*,
   No. 2:01CV08541-SVW (C.D. Cal. June 18, 2003) .......................................... 4

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012) .................................................................................. 8

*Pac. Bell Telephone Co. v. linkLine Communications, Inc.*,
   555 U.S. 438 (2009) .................................................................................................. 4

*Pierce v. Morris*,
   2006 U.S. Dist. LEXIS 57366 (N.D. Tex. Aug. 16, 2006) .............................. 9

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ....................................................................... 5, 6, 11

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) ............................................................................... 11

**STATUTES**

28 U.S.C. §1292(b) ............................................................................................... *passim*

Securities Act §11 ................................................................................................. *passim*

# TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
| --- | --- |
| Plaintiffs | Lead Plaintiff Thomas DiBiase and named Plaintiff David Steinberg |
| Amended Complaint | Plaintiffs' Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws |
| Snap | Snap Inc. |
| Snap Defendants | Snap, Evan Spiegel, Robert Murphy, Andrew Vollero, Imran Khan, Joanna Coles, A.G. Lafley, Mitchell Lasky, Michael Lynton, Stanley Meresman, Scott D. Miller, and Christopher Young |
| IPO | initial public offering |
| Securities Act | Securities Act of 1933 |
| Exchange Act | Securities Exchange Act of 1934 |
| DSB | Supplemental Brief in Support of the Snap Defendants' Motion to Dismiss the Consolidated Complaint |
| PSB | Memorandum of Points and Authorities in Response to the Court's February 20, 2018 Order for Additional Briefing on the Motion to Dismiss |
| DSR | Supplemental Reply in Support of the Snap Defendants' Motion to Dismiss the Consolidated Complaint |
| PSR | Reply Memorandum of Points and Authorities in Response to the Court's February 20, 2018 Order for Additional Briefing on the Motion to Dismiss |
| Order | In Chambers Order Denying Motion to Dismiss, filed June 7, 2018 |
| Order for Supp. Briefing | In Chambers Order for Additional Briefing on the Motion to Dismiss, filed February 20, 2018 |
| Ex. | Exhibits attached to the Declaration of Ignacio E. Salceda, filed herewith |

Two questions that determine whether Plaintiffs lack damages under the Securities Act should be certified for immediate appeal under 28 U.S.C. §1292(b). The Snap Defendants respectfully move for certification.

## INTRODUCTION

Even if Plaintiffs could ever establish liability in this case – which Defendants dispute – the question whether they could show damages turns on two questions of law. Both require construing §11(e)(1) of the Securities Act. The first is whether a stock's "value" is its market price. The second is whether "the time such suit was brought" is when the first-filed complaint was filed. These are controlling questions on which reasonable jurists can disagree.

On the first question, there is flatly conflicting case law. The Ninth Circuit in *Broderbund* resolved that question in a way that favors the Snap Defendants and requires dismissal of at least some of the claims. The Second Circuit in *McMahan* resolved the same question in a way that favors Plaintiffs. Siding with the Second Circuit, this Court believed that the Ninth Circuit's *Broberbund* holding did not bind it. But that is an issue the Ninth Circuit itself could quickly resolve if certification is granted. On the second question, likewise, a substantial line of authority directly conflicts with this Court's decision. Federal courts across the country, including in this circuit, have held that "the time such suit was brought" is when the first-filed complaint was filed – a holding that also favors the Snap Defendants here.

That reasonable jurists can disagree on these questions is underscored by this Court's order requesting supplemental briefing. The order noted that, even after the Court did its own research, the damages issue was still "unclear."

Certainly, immediate appellate resolution of both questions will advance the termination of this litigation: If Plaintiffs lack damages, then their claim under the Securities Act must be dismissed, leaving only their claim under the Exchange Act. This Court should therefore certify the questions for immediate appeal under 28 U.S.C. §1292(b).

# BACKGROUND

## A. Section 11(e) of the Securities Act

Damages for claims under §11 of the Securities Act are determined by the formula in §11(e), 15 U.S.C. §77k(e). It provides the following measures of damages:

> the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought[.]

*Id.* This formula provides three different measures for determining the damages of putative class members, depending on whether and when they sold stock. But in all three measures, the highest possible starting price for determining damages is the same: the offering price at the IPO, here $17 per share. DSB at 1-2.

## B. This Court's Order for Supplemental Briefing

In this case, the first-filed complaint was filed on May 16, 2017 (*see* DSB at 1, 9 & n.2) – a time when Snap's stock price was above the IPO price and had never dropped below that price. *See* Order at 14 n.21. The Snap Defendants thus moved to dismiss, arguing that all stockholders' damages were governed by that first-filed complaint and that damages under §11 were zero. Order for Supp. Briefing at 1.

On February 20, 2018, this Court issued an order stating that, "[u]pon conducting further research, the Court is still unclear as to" several issues raised by the Snap Defendants' damages argument and that supplemental briefing on those issues was necessary. *Id.* at 1-2. One of the issues was whether, as used in measure

1 of §11(e), "the time such suit was brought" is the date of the first-filed complaint. Another was whether the term "value" means the "price . . . at the date the Section 11 claim was filed," *In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203-05 (9th Cir. 2002); *see In re Wash. Mut. Inc. Sec., Deriv. & ERISA Litig.*, 2010 U.S. Dist. LEXIS 142992, at *54-55 (W.D. Wash. Oct. 12, 2010), or the "true value after the alleged misrepresentations are made public," *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995).

### C.    The Snap Defendants' Supplemental Briefing

In their supplemental briefing, the Snap Defendants explained that no stockholders could have §11 damages and that Plaintiffs' §11 claim must be dismissed. The Snap Defendants argued that application of each measure in §11(e) results in zero damages: Those stockholders who were holding the stock on May 16, 2017, when the first complaint in this action was filed, lack damages because Snap's stock price on that date was $20.78 – higher than the IPO price of $17. DSB at 3. Those who sold before May 16, 2017, lack damages because the share price never dropped below $17 before that date. And those who sold after suit was filed lack damages because their damages are capped at the drop from Snap's IPO price ($17) to the price on May 16, 2017 ($20.78), which is zero. DSB at 2-3.

The Snap Defendants also argued that "the time such suit was brought" is the date of the first-filed complaint and that "value" means the "price . . . at the date the Section 11 claim was filed" under *Broderbund* and *Washington Mutual*.

### D.    This Court's Decision Concerning Damages

By Order dated June 7, 2018, this Court denied the Snap Defendants' motion to dismiss. In construing "value" under §11(e)(1), the Order adopted the definition of the Second Circuit in *McMahan* and rejected that of the Ninth Circuit in *Broderbund* and the district court in *Washington Mutual*. In construing "the time such suit was brought," the Order called the definition a potential "problem" (Order 14 n.21). But it then stated without analysis that those stockholders who

filed complaints after the stock price dropped below the IPO price have a "valid claim" for damages even under the Snap Defendants' definition of "value" (Order 16 n.26) – a statement that suggests rejection of the first-filed-complaint rule.

## ARGUMENT

### A.  Applicable Standard for Interlocutory Appeals

Under Section 1292(b), a district court may certify for immediate review a (1) "controlling question of law" as to which (2) there is "substantial ground for difference of opinion" and (3) "an immediate appeal . . . may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. §1292(b); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983).  This Court has applied these standards often in certifying orders for interlocutory appeal.  *See, e.g.*, *Helman v. Alcoa Global Fasteners, Inc.*, 2009 U.S. Dist. LEXIS 64720 (C.D. Cal. June 16, 2009), *aff'd*, 673 F.3d 986 (9th Cir. 2011); *linkLine Communications, Inc. v. SBC Calif., Inc.*, No. 2:03CV05265-SVW (C.D. Cal. Apr. 1, 2005) (Ex. 1) (ultimately resolved in Supreme Court, *Pac. Bell Telephone Co. v. linkLine Communications, Inc.*, 555 U.S. 438 (2009)); *MGM Studios Inc. v. Grokster, Ltd.*, No. 2:01CV08541-SVW (C.D. Cal. June 18, 2003) (Ex. 2) (ultimately resolved in Supreme Court, *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)).  Because the three statutory elements are met here, certification is warranted.

### B.  The Damages Issue Is a Controlling Question of Law

A question of law is "controlling" if "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court."  *Cement*, 673 F.2d at 1026.  That element is easily met here because if the Ninth Circuit reverses and holds that Plaintiffs lack damages under §11, that holding will require dismissal of Plaintiffs' Securities Act claim.  *See Broderbund*, 294 F.3d at 1203-05 (affirming dismissal of §11 claim because plaintiff suffered no cognizable damages); Order at 15 n.23.

The first question as to which review is sought here – how to construe "value" in measure 1 of §11(e) – is a pure question of law. Does "value" mean the price of the defendant's security had the security been sold rather than held, as the Snap Defendants contend? DSB at 9-10; DSR at 3-5. Or does it mean the true worth of the security had the price not been inflated by alleged falsehood, as Plaintiffs contend and as this Court held? PSB at 8-9; PSR at 1-3.

An appellate holding in favor of the Snap Defendants will obviate the need for a factual inquiry into the stock's "true value" – an inquiry that this Court held will require expert evidence and thus will be unresolvable on a motion to dismiss. Order at 16. The only inquiry will be Snap's market price when the complaints were filed, and that is undisputed: The parties agree, and this Court held, that Snap's stock price was higher than the IPO price when the first-filed complaint was filed. *See* Order at 14 n.21 ("[N]umerous named Plaintiffs filed the lawsuit at a price that was higher than the price they initially paid: the IPO price. But the Consolidated Amended Class Complaint was filed at a price lower than the IPO price.").

A second controlling question of law will then arise, but it too will be purely legal: For purposes of measure 1 in §11(e), is "the time such suit was brought" when the first-filed complaint was filed or when the Amended Complaint was filed? If the former, as the Snap Defendants urge (DSB at 3-7), then the action will have to be dismissed for lack of damages because no class member can have had damages under any of the three statutory measures of damages. *See supra* at 3; *Broderbund*, 294 F.3d at 1203-05 (affirming dismissal for lack of cognizable damages).

**C.     Conflicting Holdings – as Well as This Court's Order for Supplemental Briefing – Demonstrate Substantial Grounds for Difference of Opinion**

Section 1292(b) next requires "substantial ground for difference of opinion[.]" That substantial ground "exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v.*

*BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *see Fortyune v. City of Lomita,* 766 F.3d 1098, 1101 n.2 (9th Cir. 2014). "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688. What matters is not actual disagreement, but the "'strength of the arguments'" advanced by the applicant. *See Helman*, 2009 U.S. Dist. LEXIS 64720, at *17 (granting §1292(b) petition where "persuasive arguments exist on both sides of the issue"). But when there *is* actual disagreement, the case for certification is particularly strong. *Brickman v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 64343, at *9 (N.D. Cal. Apr. 27, 2017) (granting certification: "'One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed.'"). And here there is: Courts are split on both questions presented by this motion.

**Disagreement concerning "value":** On the construction of the statutory term "value," this case presents an actual, not just a possible, disagreement among reasonable jurists.

On the one hand, the Second Circuit's *McMahan* decision and other authority agree with Plaintiffs' definition. *See* Order at 16 (holding that "value" is "not necessarily equal to 'price'" and that "the determination of value is a fact-intensive inquiry," and citing *McMahan*, 65 F.3d at 1048-49; *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 351 n.80 (S.D.N.Y. 2003)); *Campton v. Ignite Rest. Grp. Inc.*, 2014 WL 61199, at *5, *7 (S.D. Tex. Jan. 7, 2014) (citing *McMahan* and *Initial Public Offering*); *see In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1187 & n.4 (N.D. Cal. 2017) (calling issue "difficult").

On the other hand, the Ninth Circuit's *Broderbund* decision and other authority agree with the Snap Defendants' definition. *See Broderbund*, 294 F.3d at 1204 (under §11(e), the "value" of a security is its *price on the date suit was filed*:

"[D]amages must be 'measured by the difference between the amount paid for the security and its *price* at either the time it was sold *or the date the Section 11 claim was filed*.'" (emphasis added) (citation omitted)); *Wash. Mut.*, 2010 U.S. Dist. LEXIS 142992, at *54-55 (calling *Broderbund* "binding Ninth Circuit authority" and holding that "damages are calculated in this case as the difference between the price paid *and the price on the date the suit was filed*" and that *Broderbund* requires rejection of Second Circuit's position in *McMahan* (emphasis added)). As *Washington Mutual* held, *Broderbund* is binding on this Court and forecloses reliance on the Second Circuit's holding in *McMahan*. *Id.* In its Order, this Court characterized *In re Countrywide Financial Corp. Securities Litigation*, 588 F. Supp. 2d 1132, 1169 (C.D. Cal. 2008), as "qualifying the Ninth Circuit's holding in *Broderbund*." Order at 15 n.23. But even if a district court holding could qualify a Ninth Circuit holding, nothing in *Countrywide* addresses the portion of *Broderbund* at issue here.

      The split between the *McMahan* and *Broderbund* lines of cases constitutes a clear conflict, demonstrating substantial grounds for difference of opinion.

      Furthermore, the "'strength of the arguments'" advanced by the Snap Defendants militates in favor of certification. *Helman*, 2009 U.S. Dist. LEXIS 64720, at *17 (granting §1292(b) petition where "persuasive arguments exist on both sides of the issue"). In particular, the Snap Defendants argue (DSR at 4-5) that, if Plaintiffs' definition of "value" were correct, Congress would also have used "value" rather than "price" in measures 2 and 3 of §11(e). Price inflation due to misrepresentation is as fully contemplated by measures 2 and 3 as by measure 1. But Congress did not use "value" in measures 2 and 3. Thus, Plaintiffs' reading of "value" to mean uninflated price must be incorrect. Why did Congress use "value" in measure 1 but "price" in measures 2 and 3? Because, as the Snap Defendants demonstrate (DSR at 4), "value" is the term applied by measure 1 to a security that is *held*, while "price" is the term applied by measures 2 and 3 to a security that is

*sold*. The difference was not accidental. When a security is sold, the amount paid is necessarily the price. But when a security is held, it does not always have a price: Illiquid securities, such as the mortgage-backed certificates in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, have no market price. 693 F.3d 145, 167 (2d Cir. 2012). Thus, measure 1 could not use "price" because illiquid securities have no price absent sale. The single term that covers *all* securities – liquid and illiquid – that are held is "value." Where, as here, a security has a market price because it is publicly traded, that price is its "value." *See* DSR at 4.

Both the clear conflict of legal authority and the compelling logic of the Snap Defendants' position support immediate appeal.

**Disagreement concerning when "suit was brought":** On the meaning of the term "the time such suit was brought," several factors similarly demonstrate substantial grounds for disagreement.

First, substantial authority conflicts with this Court's decision, *see* Order at 16 n.26. In support of the proposition that the date "suit was brought" is the date of the first-filed complaint, the Snap Defendants cite numerous holdings (*see* DSB at 3-4), beginning with the leading case, *Beecher v. Able*, 435 F. Supp. 397 (S.D.N.Y. 1975), and continuing with several others, including from courts in this Circuit. *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996); *Wash. Mut.*, 2010 U.S. Dist. LEXIS 142992; *In re Barclays Bank PLC Sec. Litig.*, 2016 U.S. Dist. LEXIS 75663 (S.D.N.Y. June 9, 2016).

*Beecher* held that the date of the first-filed complaint was "the most logical benchmark for measuring damages[.]" 435 F. Supp. at 401-02 (noting that this holding promoted beneficial policy: "In future cases the prospect of selection of the filing day of the first suit may well reduce date-shopping subsequent to the first filing[.]"). Adopting *Beecher*'s reasoning, *Alpern* held that the date when the initial complaint was filed was "'the time such suit was brought' for purposes of calculating damages under § 11(e)(1)." 84 F.3d at 1544. *Washington Mutual* held

that, for purposes of determining §11 damages, "the proper date is the filing of the first complaint seeking relief for the same alleged misconduct." 2010 U.S. Dist. LEXIS 142992, at *52-54 (holding that allowing plaintiffs to use date of amended complaint would permit "damage shopping") (citing *Pierce v. Morris*, 2006 U.S. Dist. LEXIS 57366, at *18 (N.D. Tex. Aug. 16, 2006)). *Barclays* also used the date of the first-filed complaint to determine damages, noting that "[t]he majority of cases hold that the proper date is that of the first-filed complaint[.]" 2016 U.S. Dist. LEXIS 75663, at *19.

Substantial authority also rebuts Plaintiffs' arguments. The Snap Defendants cite cases demonstrating that courts regularly use the date of the first-filed complaint to calculate §11 damages as to *all* defendants, even those added later. DSR at 2; *Pierce*, 2006 U.S. Dist. LEXIS 57366, at *4-5, *17-18 (in holding that plaintiffs lacked §11 damages, court used date of original complaint as controlling for all defendants, including those added later); *In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1368, 1379-80 (N.D. Ga. 2004) (holding that, although consolidated complaint added many new defendants, date of first-filed complaint was "the time suit was brought" for all defendants). The Snap Defendants also cite cases demonstrating that the first-filed complaint governs even when the plaintiff who filed the consolidated complaint did not file any of the earlier individual complaints. DSB at 6; *In re Brooks Automation Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 88045, at *10-11, *19-20 (D. Mass. Nov. 6, 2007) (although consolidated complaint was filed by party who had not filed before, §11 damages were determined by share price on date when first individual complaint – not consolidated complaint – was filed); *Wash. Mut.*, 2010 U.S. Dist. LEXIS 142992, at *53-55 (although proposed class representative did not become party until amended consolidated complaint was filed, date of first-filed individual complaint controlled for §11 damages).

In addition, numerous cases cited by the Snap Defendants establish that it is equitable to read "the time such suit was brought" to mean the time when the first-filed complaint was filed. That reading provides a neutral rule across the board, regardless of whether the rule helps or hurts plaintiffs in a particular case. DSB at 7; *Brooks Automation*, 2007 U.S. Dist. LEXIS 88045, at *19-20 (plaintiffs helped by rule that first-filed complaint governs); *Barclays*, 2016 U.S. Dist. LEXIS 75663, at *18-22 (same); *AFC Enters.*, 348 F. Supp. 2d at 1379-80 (same).

Second, this Court itself stated that, if "value" means the price on the date suit was filed (as the Snap Defendants urge), the issue of whether the first-filed complaint governs "might pose a problem[.]" Order at 14 n.21. In so stating, this Court acknowledged the difficulty of the issue.

Both the wall of legal authority cited by the Snap Defendants and the Court's acknowledgment of interpretive difficulty militate in favor of certification.

**Interpretive Difficulty Shown by Order for Supplemental Briefs:** Even after "conducting further research" of its own, the Court was "unclear" as to the controlling questions of law cited in this motion. Order for Supp. Briefing at 1-2. Thus, the Court requested supplemental briefing on whether the first-filed complaint governs and whether the term "value" is better explained by *Broderbund* and *Washington Mutual* on the one hand, or *McMahan* on the other hand. *Id.* at 2.

That the Court, after its own research, still found those questions "unclear" – so much so that it directed additional briefing – further underscores the substantial grounds for disagreement as to those questions.

**D. An Immediate Appellate Holding That Plaintiffs Lack §11 Damages Will Materially Advance the Termination of the Litigation**

There can be no dispute that an immediate appeal on these two controlling questions of law "may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. §1292(b).

If the Court of Appeals agrees with the Snap Defendants on both controlling questions, then Plaintiffs will necessarily lack §11 damages. Dismissal of Plaintiffs' §11 claim will therefore be mandated under *Broderbund*. This Court itself has issued a §1292(b) certification in order to resolve similar issues about the availability of damages. *See Helman*, 2009 U.S. Dist. LEXIS 64720, at *18 (granting certification under §1292(b) because legal question at issue "is crucial for determining the extent of damages that Plaintiffs may ultimately be able to recover"); *see also Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (requirement satisfied where immediate appeal may lead to termination of one or more of plaintiffs' claims); *Reese*, 643 F.3d at 688 (element does not "require[] that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation"; certification proper if immediate appeal eliminates only some claims). It should do so again here.

## CONCLUSION

The motion for certification of an interlocutory appeal should be granted.

Dated: June 18, 2018

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Boris Feldman
      Boris Feldman

*Attorneys for Defendants Snap Inc., Evan Spiegel, Robert Murphy, Andrew Vollero, Imran Khan, Joanna Coles, A.G. Lafley, Mitchell Lasky, Michael Lynton, Stanley Meresman, Scott D. Miller, and Christopher Young*