**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 296130)
skaplan@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

     - and -

SHARAN NIRMUL (*Pro Hac Vice*)
snirmul@ktmc.com
ETHAN J. BARLIEB (*Pro Hac Vice*)
ebarlieb@ktmc.com
NATHAN HASIUK (*Pro Hac Vice*)
nhasiuk@ktmc.com
JONATHAN F. NEUMANN (*Pro Hac Vice*)
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Lead Plaintiff Thomas DiBiase,*
*Proposed Named Plaintiffs Donald R. Allen*
*and Shawn B. Dandridge, and Lead Counsel*
*for the Putative Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE SNAP INC. SECURITIES LITIGATION | Case No. 2:17-cv-03679-SVW-AGR |
| | **CLASS ACTION** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| | Date: November 19, 2018 |
| | Time: 1:30 p.m. |
| | Courtroom: 10A |
| | Judge: Hon. Stephen V. Wilson |
| This Document Relates To: All Actions | |

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................ 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................... 3

   A.   Summary of Facts and Evidence Common to All Class Members.................................................................. 3

   B.   The Court's Motion to Dismiss Order and Pre-Trial Proceedings .................................................... 5

III. ARGUMENT ....................................................................... 6

   A.   Securities Cases Are Particularly Well-Suited for Class Action Treatment ...................................................... 6

   B.   The Proposed Class Satisfies Rule 23(a) ............................ 7

      1.   The Class is Sufficiently Numerous ........................... 7

      2.   Questions of Law and Fact Are Common to All Class Members ............................................................ 8

      3.   Plaintiffs' Claims are Typical of the Class .................... 9

      4.   Plaintiffs and Class Counsel Are Adequate ................ 11

   C.   The Proposed Class Satisfies Rule 23(b)(3) ...................... 12

      1.   Rule 23(b)(3)'s Predominance Requirement is Satisfied ............ 12

         a.   Plaintiffs' Securities Act Claims Satisfy Predominance ....................................... 13

         b.   Plaintiffs' Exchange Act Claims Satisfy Predominance ....................................... 14

            i.   Plaintiffs Are Entitled to the FOTM Presumption ............................................ 14

            ii.   Plaintiffs Are Entitled to the *Affiliated Ute* Presumption ............................................ 19

c.   Common Issues Concerning Damages
Predominate.........................................................................19

d.   Plaintiffs' Control Person Claims Satisfy
Predominance....................................................................22

2.   Rule 23(b)(3)'s Superiority Requirement is Established.............22

IV.   CONCLUSION ...................................................................................23

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re 2TheMart.com, Inc. Sec. Litig.*,

5

    114 F. Supp. 2d 955 (C.D. Cal. 2000).................................................................16

6

*In re Adobe Sys., Inc. Sec. Litig.*,

7

    139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................6

8

*Affiliated Ute Citizens of Utah v. United States*,

    406 U.S. 128 (1972) ...........................................................................................19

9

*In re Alstom SA Sec. Litig.*,

10

    253 F.R.D. 266 (S.D.N.Y. 2008).......................................................................17

11

*Amador v. Baca*,

12

    No. 2:10-cv-1649 (C.D. Cal. Nov. 18, 2016) (Wilson, J.)..................................13

13

*Amchem Prods., Inc. v. Windsor*,

14

    521 U.S. 591 (1997) ...........................................................................................13

15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,

16

    568 U.S. 455 (2013) ................................................................................13, 14, 15

17

*Angley v. UTi Worldwide Inc.*,

18

    311 F. Supp. 3d 1117 (C.D. Cal. 2018)................................................................7

19

*In re AST Research Sec. Litig.*,

    1994 WL 722888 (C.D. Cal. Nov. 8, 1994) (Wilson, J.) ...............................6, 7, 11

20

*In re Banc of Cal. Sec. Litig.*,

21

    2018 WL 3868922 (C.D. Cal. May 31, 2018) ...............................................17, 22

22

*In re Barclays Bank PLC Sec. Litig.*,

23

    2016 WL 3235290 (S.D.N.Y. June 9, 2016)........................................................5

24

*Basic Inc. v. Levinson*,

25

    485 U.S. 224 (1988) ......................................................................................14, 15

26

*Bee, Denning, Inc. v. Capital Alliance Grp.*,

27

    310 F.R.D. 614 (S.D. Cal. 2015).......................................................................10

28

*Blackie v. Barrack*,
 524 F.2d 891 (9th Cir. 1975) ....................................................................... 6

*Brown v. China Integrated Energy Inc.*,
 2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ..................................... 7, 15, 16, 17

*Cammer v. Bloom*,
 711 F. Supp. 1264 (D.N.J. 1989) ............................................... 15, 16, 18

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) .................................................................................. 22

*Conn. Ret. Plans & Tr. Funds v. Amgen, Inc.*,
 2009 WL 2633743 (C.D. Cal. Aug. 12, 2009), *aff'd*,
 568 U.S. 455 (2013) ............................................................................. 7, 9

*In re Constar Int'l Inc. Sec. Litig.*,
 585 F.3d 774 (3d Cir. 2009) .................................................................... 21

*In re Cooper Cos. Inc. Sec. Litig.*,
 254 F.R.D. 628 (C.D. Cal. 2009) ............................................................... 8

*In re Countrywide Fin. Corp. Sec. Litig.*,
 273 F.R.D. 586 (C.D. Cal. 2009) .............................................................. 10

*In re Diamond Foods, Inc., Sec. Litig.*,
 295 F.R.D. 240 (N.D. Cal. 2013) .............................................................. 20

*In re DVI, Inc. Sec. Litig.*,
 249 F.R.D. 196 (E.D. Pa. 2008), *aff'd* 639 F. 3d 623 (3d Cir. 2011) ................... 17

*Epstein v. MCA, Inc.*,
 50 F.3d 644 (9th Cir. 1995) ................................................................... 2, 6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
 563 U.S. 804 (2011) ......................................................................... 12, 13, 14

*Fed. Ins. Co. v. Caldera Med., Inc. et al*,
 Case No. 2:15-cv-00393-SVW-PJW (C.D. Cal. Jan. 25, 2016),
 ECF No. 217 (Wilson, J.) .......................................................................... 7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
 134 S. Ct. 2398 (2014) .................................................................... 14, 18

*Hatamian v. Advanced Micro Devices, Inc.*,
  2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ........................................... 10, 20, 23

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983) ................................................................. 13

*In re HiEnergy Techs., Inc. Sec. Litig.*,
  2006 WL 2780058 (C.D. Cal. Sept. 26, 2006) .......................................... 11

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ....................................................... 2, 9

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
  252 F. Supp. 2d 1005 (C.D. Cal. 2003) ............................................... 20

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ....................................................... 18

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) ....................................................... 21

*In re JPMorgan Chase & Co. Sec. Litig.*,
  2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ....................................... 8

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) ..................................................... 10

*Katz v. China Century Dragon Media, Inc.*,
  287 F.R.D. 575 (C.D. Cal. 2012) ........................................... 7, 8, 10, 13

*Lambert v. Nutraceutical Corp.*,
  870 F.3d 1170 (9th Cir. 2017) ....................................................... 22

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ..................................................... 13

*In re LendingClub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) ........................................... 21, 23

*Lewert v. Boiron, Inc.*,
  2014 WL 12626335 (C.D. Cal. Nov. 5, 2014) (Wilson, J.) ........................ 11, 23

*In re Live Concert Antitrust Litig.*,
  247 F.R.D. 98 (C.D. Cal. 2007) (Wilson, J.) ..................................... 13, 21

*Loritz v. Exide Techs.*,
  2015 WL 12488514 (C.D. Cal. Dec. 17, 2015) ................................................ 13, 22

*Loritz v. Exide Techs.*,
  2015 WL 6790247 (C.D. Cal. July 21, 2015) (Wilson, J.) ............................*passim*

*In re Magma Design Automation Sec. Litig.*,
  2007 WL 2344992 (N.D. Cal. Aug. 16, 2007)...................................................... 23

*In re Metro. Sec. Litig.*,
  2008 WL 5102303 (E.D. Wash. Nov. 25, 2008)................................................... 21

*In re Nature's Sunshine Prods. Inc. Sec. Litig.*,
  251 F.R.D. 656 (D. Utah 2008) ............................................................................ 16

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  272 F.R.D. 160 (S.D.N.Y. 2011)......................................................................... 21

*Nguyen v. Radient Pharm. Corp.*,
  287 F.R.D. 563 (C.D. Cal. 2012) ........................................................................ 17

*In re Online DVD Rental Antitrust Litig.*,
  2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ....................................................... 6

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014)............................................................................ 9, 10

*Perez-Funez v. Dist. Director, Immigration & Naturalization Service*,
  611 F. Supp. 990 (C.D. Cal. 1994)......................................................................... 8

*Petrie v. Elec. Game Card, Inc.*,
  308 F.R.D. 336 (C.D. Cal. 2015) ........................................................................... 7

*In re PHP Healthcare Corp.*,
  128 F. App'x 839 (3d Cir. 2005)......................................................................... 15

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015)......................................................................... 21, 22

*In re Silver Wheaton Corp. Sec. Litig.*,
  2017 WL 2039171 (C.D. Cal. May 11, 2017) ..................................................... 20

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ..................................................................... 18-19

*In re Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018) ........................................................... 5

*Stockwell v. City & Cty. of S.F.*,
749 F.3d 1107 (9th Cir. 2014) ............................................................................. 14

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
552 U.S. 148 (2008) ........................................................................................... 19

*Sudunagunta v. Nantkwest, Inc.*,
2018 WL 3917865 (C.D. Cal. Aug. 13, 2018) ...............................................7, 20-21

*Takiguchi v. MRI Int'l, Inc.*,
2016 WL 1091090 (D. Nev. Mar. 21, 2016) ......................................................... 14

*In re THQ Inc. Sec. Litig.*,
2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ....................................................... 6, 7

*Tibble v. Edison Int'l*,
2009 WL 6764541 (C.D. Cal. June 30, 2009) (Wilson, J.) ....................................... 8

*Todd v. STAAR Surgical Co.*,
2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ......................................................... 7, 16

*In re Twitter Inc. Sec. Litig.*,
2018 WL 3440708 (N.D. Cal. July 17, 2018) ..................................................... 7, 22

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
2013 WL 2247394 (C.D. Cal. May 9, 2013) ......................................................... 16

*Vathana v. EverBank*,
2010 WL 934219 (N.D. Cal. Mar. 15, 2010) ......................................................... 12

*In re VeriSign, Inc. Sec. Litig.*,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ......................................................6-7

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ......................................................................................... 2, 8

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ......................................................... 7

**Statutes**

15 U.S.C. § 77k(e) ................................................................................... 20

**Other Authorities**

17 C.F.R. § 239.13 .................................................................................. 17

Fed. R. Civ. P. 23 .............................................................................. 7, 22

# TABLE OF ABBREVIATIONS

| ABBREVIATION | DEFINITION |
|---|---|
| ¶__ | Citations to paragraphs in the CAC (defined herein) |
| ASC 450 | Accounting Standards Codification Topic 450 |
| CAC | Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 67) |
| Control Person Defendants | Executive Defendants and Director Defendants |
| DAU | Daily Active Users |
| Defendants | Snap Defendants (defined herein) and the Executive Defendants (defined herein) |
| Director Defendants | Joanna Coles, A.G. Lafley, Mitchell Lasky, Michael Lynton, Stanley Meresman, Scott D. Miller, and Christopher Young |
| Ex. __ | Exhibits to the Declaration of Sharan Nirmul in Support of Lead Plaintiff's Motion for Class Certification |
| Exchange Act Defendants | Snap and the Executive Defendants |
| Executive Defendants | Evan Spiegel, Robert Murphy, Andrew Vollero, and Imran Khan |
| IPO | Initial Public Offering |
| Kessler Topaz | Kessler Topaz Meltzer & Check, LLP |
| Lead Plaintiff | Court-appointed Lead Plaintiff Thomas DiBiase |
| Nirmul Decl. | Declaration of Sharan Nirmul in Support of Lead Plaintiff's Motion for Class Certification |
| Nye Rpt. | Expert Report of Zachary Nye, Ph.D., dated August 30, 2018, attached as Exhibit H to the Nirmul Decl. |
| Plaintiffs | Lead Plaintiff Thomas DiBiase and Proposed Named Plaintiffs Donald R. Allen and Shawn B. Dandridge |
| Pompliano | Anthony Pompliano |
| Rosman & Germain | Rosman & German LLP |
| Rule | Federal Rule of Civil Procedure |

| ABBREVIATION | DEFINITION |
| --- | --- |
| S-1 | Snap's Registration Statement and Prospectus filed on Form S-1 with the SEC on February 2, 2017, together with its amendments filed with the SEC on February 9, 16, and 27, 2017, respectively, and its Prospectus filed on Form 424B4 with the SEC on March 3, 2017 |
| SEC | U.S. Securities and Exchange Commission |
| Securities Act Defendants | Snap, Evan Spiegel, Robert Murphy, Andrew Vollero, the Director Defendants, and the Underwriter Defendants |
| Snap or Company | Snap Inc. |
| Snap Defendants | Snap, the Executive Defendants (defined herein), and the Director Defendants (defined herein) |
| Underwriter Defendants | Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, Deutsche Bank Securities, Inc., Barclays Capital Inc., Credit Suisse Securities (USA) LLC, and Allen & Company LLC |

Lead Plaintiff respectfully submits this memorandum of points and authorities in support of his Motion for Class Certification.[1] Lead Plaintiff seeks to certify a class pursuant to Rules 23(a) and 23(b)(3) on behalf of himself and all other persons and entities who purchased or otherwise acquired Snap Class A common stock ("Snap Common Stock") between March 2, 2017 and August 10, 2017 ("Class Period"), inclusive, and were damaged thereby ("Class").[2] Lead Plaintiff further requests that the Court appoint Plaintiffs as Class Representatives, and appoint Kessler Topaz as Class Counsel and Rosman & Germain as Liaison Counsel.[3]

## I.   INTRODUCTION

Snap is a NYSE-traded technology company whose stock was sold to Plaintiffs and thousands of putative Class members through the March 2, 2017 IPO's false and materially misleading registration statement and prospectus.  Within just weeks of the IPO, the false narrative of strong user growth—which was purportedly driving advertising revenue—that Defendants had used to peddle Snap's stock to unsuspecting investors, began to crumble.  Revelations of a whistleblower complaint that challenged the integrity of Snap's user metrics surfaced, along with new disclosures that Snap's user growth had been overtaken by competitor Instagram. In short order, the lead IPO underwriter also shockingly downgraded the stock to below its offering price. After two successive quarters of dismal user growth, Snap's stock bottomed out at $11.83 per share, erasing billions of dollars of class members' investments.  This action seeks to recover the losses that Plaintiffs and the Class have suffered.

---

[1] Unless otherwise noted: (i) all capitalized terms have the meaning ascribed to them in the CAC or Table of Abbreviations; (ii) all emphasis is added; and (iii) all internal citations and quotations are omitted.

[2] Included within the Class are all persons and entities who purchased shares of Snap Common Stock on the open market and/or pursuant or traceable to the IPO on or about March 2, 2017. Excluded from the Class are Defendants and their families; the officers, directors and affiliates of Defendants; members of Defendants' immediate families and their legal representatives, heirs, successors or assigns; and any entity in which Defendants have or had a controlling interest.

[3] Lead Plaintiff is concurrently filing a Motion to Add Donald R. Allen and Shawn B. Dandridge as Named Plaintiffs and Withdraw David Steinberg as Named Plaintiff pursuant to Rule 21.

As the Ninth Circuit has aptly explained, securities fraud class actions fit Rule 23 "like a glove." *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995). This case is no exception; all of the requirements of Rule 23 are satisfied.

*First*, the Class is comprised of thousands of investors who purchased Snap Common Stock in the IPO and during the Class Period and were injured by Defendants' conduct. *See infra* Section III.B.1.   Accordingly, joinder of all Class members would be impracticable, if not impossible.

*Second*, although "[e]ven a single [common] question" will suffice to establish commonality, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011), this action involves numerous common issues of law and fact, including whether: (i) Defendants violated the federal securities laws; (ii) Defendants' Class Period statements misrepresented or omitted material facts; and (iii) the Control Person Defendants had control over Snap. Thus, Rule 23(a)(2) is readily satisfied. *See infra* Section III.B.2.

*Third*, Plaintiffs' claims are typical of the proposed Class. They arise from the same common course of misconduct and are based on identical legal theories. In other words, Plaintiffs and members of the Class "all purchased [Snap's Common Stock] at artificially inflated prices caused by Defendants' misconduct and false and misleading statements during the Class Period, and suffered losses when [the Company's] stock price declined after [its] true condition was partially revealed to the market." *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011). Accordingly, the "permissive" standard for typicality is satisfied. *See infra* Section III.B.3.

*Fourth*, the proposed Class Representatives are plainly qualified and adequate to represent the Class. Each has a significant financial interest in the outcome of this litigation, and each has demonstrated his adequacy and commitment to vigorously represent the interests of the Class by, among other things, retaining experienced counsel, actively supervising the litigation, and participating in substantial discovery. Likewise, proposed Class Counsel is highly experienced in complex securities class

1  actions and has steadfastly litigated this case on behalf of the proposed Class. Rule

2  23(a)(4) is satisfied. *See infra* Section III.B.4.

3      *Fifth*, common questions overwhelmingly "predominate" over individual

4  questions. Indeed, the primary elements of Plaintiffs' claims—including falsity,

5  materiality, scienter, loss causation, and control—are issues that affect all members of

6  the Class equally, and whose common proof will be made on a class-wide basis.

7  Moreover, reliance is presumed for all Class members under both the fraud-on-the-

8  market and *Affiliated Ute* presumptions. Similarly, although not required to satisfy

9  predominance, damages in securities fraud cases like this one are subject to a common

10  methodology and formula that can be applied class-wide. Common issues predominate

11  under Rule 23(b)(3). *See infra* Section III.C.1.

12      *Finally*, the class action device is a vastly "superior" method for fairly and

13  efficiently adjudicating this action.  Given the large number of Snap investors who

14  purchased Snap Common Stock in the IPO and during the Class Period, it would be far

15  too costly and inefficient for each individual Class member to file and litigate separate

16  actions in a fragmented manner.  There also are no management difficulties which

17  would preclude this action from being maintained as a class action because the facts,

18  legal issues, and evidence are predominantly common to the Class.  A class action is

19  superior under Rule 23(b)(3). *See infra* Section III.C.2.

20      Because this action meets all of the requirements for certification under Rule 23,

21  Lead Plaintiff respectfully requests that the Court grant his motion.

22  **II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY**

23      **A.  Summary of Facts and Evidence Common to All Class Members**

24      Snap is a social media company whose flagship product is the mobile-based

25  ephemeral messaging application, Snapchat. ¶28. Funded by billions in venture capital

26  from Silicon Valley firms seeking to invest early in a platform with viral popularity,

27  Snap experienced a meteoric rise in user growth between 2011 and 2016. ¶¶39-48.

28

By 2016, however, Snap's fortunes had taken a turn for the worse. The Company's venture capital funding had all but dried up, and after suffering net losses of $372.9 million and $514.6 million in 2015 and 2016, respectively, it had accumulated a deficit of $1.2 billion. *Id.* Facebook's introduction of Instagram Stories in August 2016, a Snapchat copycat, only compounded these issues. Indeed, although not known to investors at the time, the competing product had an immediate and dramatic negative impact on Snap's user growth. ¶¶73-85. What's more, even before Instagram, alarm bells had been raised internally over how Snap had calculated its user metrics—including allegations by one former employee that they had been artificially inflated. ¶¶64-72.

Still, the Company and the Executive Defendants ploughed forward with the IPO in the hopes of cashing in on a much needed capital infusion. ¶¶86-92. On March 2, 2017, with investors still in the dark about the trends in Snap's user metrics and the impact of competition from Facebook, Snap went public, raising $3.4 billion from investors by selling 200 million shares at $17 per share. ¶¶3, 124. The IPO was initially heralded as a success, with the stock reaching a high water mark of $27.09 the very next day. The euphoria, however, was short lived. In the weeks and months that followed, as the relevant truth was slowly revealed to the market, Snap's stock price tumbled precipitously, decreasing to $11.83 by August 11, 2017. ¶279. Several lawsuits, including this one, followed.

The CAC focuses on three core misrepresentations and omissions made in the IPO and during the Class Period: (i) the impact of competition from Instagram on Snap's core business, including on its DAU; (ii) the existence and substance of a lawsuit challenging the metrics by which investors and advertisers valued Snap's platform, and internal control deficiencies at Snap; and (iii) Snap's use of "growth hacking," a technique used to artificially inflate Snap's reported DAU. ¶¶290-99; 380-407.

On September 18, 2017, the Court appointed Thomas DiBiase as Lead Plaintiff, Kessler Topaz as Lead Counsel and Rosman & Germain as Liaison Counsel. ECF No. 54. Roughly two months later, on November 1, 2017, Lead Plaintiff filed the CAC (ECF No. 67). The CAC asserts claims arising under §§ 11, 12(a)(2), and 15 of the Securities Action of 1933 (15 U.S.C. §§ 77k, 77l(a)(2), and 77o) ("Securities Act Claims"), §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5) ("Exchange Act Claims").

## B.    The Court's Motion to Dismiss Order and Pre-Trial Proceedings

On June 7, 2018, the Court denied Defendants' motions to dismiss in full. *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528 (C.D. Cal. June 7, 2018) ("MTD Order"). The MTD Order further directed Lead Plaintiff to file a motion for class certification within 90 days (i.e., by September 5, 2018).

The Court has scheduled this matter for trial beginning on March 12, 2019. A final pre-trial hearing is scheduled for February 25, 2019. Discovery has commenced and the parties submitted a Rule 26 Report on July 9, 2018, and a stipulated proposed protective order on August 28, 2018.

In order to streamline this case for trial, Lead Plaintiff voluntarily dismissed without prejudice certain parties—the Underwriter and Director Defendants—that are completely indemnified by the remaining Defendants, while securing these parties' cooperation in pre-trial matters. In a similar vein, Lead Plaintiff has also elected not to pursue claims under Section 12(a)(2) of the Securities Act.[4] Accordingly, this Action now proceeds to trial against Snap and Executive Defendants (Spiegel, Vollero, Murphy, and Khan) with claims under Sections 10(b) and 20(a) of the Exchange Act and Sections 11 and 15(a) of the Securities Act.

---

[4] As courts have recognized, a Lead Plaintiff "is permitted to make tactical decisions to pursue some claims and not others." *See, e.g., In re Barclays Bank PLC Sec. Litig.*, 2016 WL 3235290, at *7 (S.D.N.Y. June 9, 2016) (rejecting typicality challenge to plaintiff who dropped 12(a)(2) claims at class certification).

# III.   ARGUMENT

## A.   Securities Cases Are Particularly Well-Suited for Class Action Treatment

As this Court has explained, "[t]he Ninth Circuit has recognized explicitly that 'class actions . . . have 'proved useful where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of the defendants . . . .'" *In re AST Research Sec. Litig.*, 1994 WL 722888, at *2 (C.D. Cal. Nov. 8, 1994) (Wilson, J.) (quoting *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913 (9th Cir. 1964)); *see also Epstein*, 50 F.3d at 668 (securities fraud class actions fit Rule 23 "like a glove"). Indeed, as this Court has likewise recognized, "the 'overwhelming weight of authority' holds that securities fraud actions are properly certifiable as class actions under Rule 23." *In re AST*, 1994 WL 722888, at *2 (quoting *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975)).

As such, "the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re THQ Inc. Sec. Litig.*, 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002). Any doubts should be resolved in favor of certifying the class because denial will almost certainly terminate the action and be detrimental to the class's interests. *See Blackie*, 524 F.2d at 901; *In re Online DVD Rental Antitrust Litig.*, 2010 WL 5396064, at *3 (N.D. Cal. Dec. 23, 2010) ("[W]hen courts are in doubt as to whether certification is warranted, courts tend to favor class certification."). Indeed, "class actions commonly arise in securities fraud cases as the claims of separate investors are often too small to justify individual lawsuits, making class actions the only efficient deterrent against securities fraud." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991). "Accordingly, courts in the Ninth Circuit . . . hold a liberal view of class actions in securities litigation." *Id*; *see also In re VeriSign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein

1    geographically dispersed shareholders with relatively small holdings would otherwise

2    have difficulty in challenging wealthy corporate defendants.").

3         This action is similar to the numerous securities cases certified in this District,

4    including by this Court. *See, e.g., id; Loritz v. Exide Techs.*, 2015 WL 6790247, at *1

5    (C.D. Cal. July 21, 2015) (Wilson, J.) ("*Loritz I*") (certifying Exchange Act claims); *In*

6    *re AST*, 1994 WL 722888, at *5 (same); *Sudunagunta v. Nantkwest, Inc.*, 2018 WL

7    3917865, at *1 (C.D. Cal. Aug. 13, 2018) (certifying Securities Act claims following

8    IPO); *In re Twitter Inc. Sec. Litig.*, 2018 WL 3440708, at *1 (N.D. Cal. July 17, 2018)

9    (certifying Exchange Act claims following IPO).[5] Class certification is appropriate.

10        **B.    The Proposed Class Satisfies Rule 23(a)**

11        Under Rule 23(a), a party seeking class certification must demonstrate that: "(1)

12   the class is so numerous that joinder of all members is impracticable; (2) there are

13   questions of law or fact common to the class; (3) the claims or defenses of the

14   representative parties are typical of the class; and (4) the representative parties will

15   fairly and adequately protect the interests of the class." Each prerequisites is met here.

16        **1.    The Class is Sufficiently Numerous**

17        Rule 23(a)(1) requires the class be so numerous that joinder of all class members

18   is "impracticable."   "[A] class of 40 or more members raises a presumption of

19   impracticability of joinder based on numbers alone," Civil Minutes, *Fed. Ins. Co. v.*

20   *Caldera Med., Inc. et al*, Case No. 2:15-cv-00393-SVW-PJW (C.D. Cal. Jan. 25,

21   2016), ECF No. 217 at 5 (Wilson, J.) (Ex. C), but the exact size of the class need not

22   be known if "general knowledge and common sense indicate that it is large," *In re*

23   *Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *6 (N.D. Cal. Oct. 27, 2015). "In securities

24

25   _____

     [5] *See also Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117 (C.D. Cal. 2018); *Todd*
26   *v. STAAR Surgical Co.*, 2017 WL 821662 (C.D. Cal. Jan. 5, 2017); *Brown v. China*
     *Integrated Energy Inc.*, 2015 WL 12720322 (C.D. Cal. Feb. 17, 2015); *Petrie v. Elec.*
27   *Game Card, Inc.*, 308 F.R.D. 336 (C.D. Cal. 2015); *Katz v. China Century Dragon*
     *Media, Inc.*, 287 F.R.D. 575 (C.D. Cal. 2012); *Conn. Ret. Plans & Tr. Funds v. Amgen,*
28   *Inc.*, 2009 WL 2633743 (C.D. Cal. Aug. 12, 2009), *aff'd*, 568 U.S. 455 (2013); *THQ*,
     2002 WL 1832145.

fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *3 (S.D.N.Y. Sept. 29, 2015).

Here, the Class consists of potentially thousands of investors in Snap Common Stock, which was traded on the New York Stock Exchange ("NYSE") throughout the Class Period.  During the Class Period, there were between 661.9 million and 811.1 million shares of Snap Common Stock outstanding, and an average of 106 million shares (or 15.6% of all outstanding shares) traded hands on a weekly basis.  Nye Rpt. ¶24. Moreover, in addition to individual investors, more than 270 institutional investors held Snap Common Stock during the Class Period.  *Id.* ¶41.  Finally, with respect to the Securities Act claims in particular, over 200 million shares of Snap Common Stock was sold in the IPO. *Id.* ¶11.

Accordingly, the numerosity requirement is readily satisfied. *See, e.g., In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (numerosity established where "corporation has millions of shares trading on a national exchange"); *Katz*, 287 F.R.D. at 584 (numerosity established where "there were thousands of purchases and sales of CDM shares through the IPO and in the after-market during the proposed class period"); *see also Perez-Funez v. Dist. Director, Immigration & Naturalization Service*, 611 F. Supp. 990, 995 (C.D. Cal. 1994) (class of 25 members sufficiently numerous).

### 2.       Questions of Law and Fact Are Common to All Class Members

Rule 23(a)(2) requires questions of law or fact that are common to all class members. "The commonality requirement has been 'construed permissively,'" *Tibble v. Edison Int'l*, 2009 WL 6764541, at *2 (C.D. Cal. June 30, 2009) (Wilson, J.) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)), and the Supreme Court has recognized that "[e]ven a single [common] question" will suffice, *Wal-Mart*, 564 U.S. at 359. The Ninth Circuit has likewise explained that "Plaintiffs need not

show, however, that every question in the case, or even a preponderance of questions, is capable of class wide resolution." *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014). Thus, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.*

Here, there are numerous common questions of law and fact, including:

(i)      Whether Defendants violated the federal securities laws;

(ii)      Whether Defendants' statements misrepresented or omitted facts;

(iii)      Whether the misrepresented and omitted facts were material;

(iv)      Whether the Exchange Act Defendants knowingly or recklessly disregarded that their statements were materially false and misleading;

(v)      Whether Snap's Common Stock was artificially inflated (and by how much);

(vi)      Whether the alleged stock price declines are causally connected to Defendants' misrepresentations and omissions; and

(vii)      Whether the Control Person Defendants had control over Snap.

Courts, including this Court, routinely find that common questions of law and fact such as these satisfy Rule 23(a)(2). *See, e.g., Loritz I*, 2015 WL 6790247, at *4 (commonality requirement satisfied "where Plaintiffs alleged a 'common course of conduct' involving defendants' alleged misrepresentations"). This is because the "legal claims at hand all involve the same basic legal claims: securities frauds." *Conn. v. Amgen*, 2009 WL 2633743, at *5 ("it is undisputed that [commonality] is met" because "these legal claims are based on the same nucleus of operative facts"); *accord Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266 (N.D. Cal. 2011) (same).

### 3.      Plaintiffs' Claims are Typical of the Class

Under Rule 23(a)(3)'s "permissive standard" for typicality, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020). Thus, the Ninth Circuit does not require the named

plaintiffs' injuries to be "identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* at 685 (quoting *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001)). Importantly, in assessing typicality, a court's "focus should be on the *defendants'* conduct . . . ." *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *5 (N.D. Cal. Mar. 16, 2016); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) ("focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff").[6]

Here, Plaintiffs' and the Class's claims arise from Defendants' common course of misconduct, are based on identical legal theories—violations of Sections 10(b) and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act—and will be proven by the same evidence on a class-wide basis. Specifically, Plaintiffs, like the other Class members, purchased Snap Common Stock during the Class Period at prices artificially inflated by Defendants' misconduct and suffered damages when the relevant truth concealed by Defendants' misrepresentations was disclosed to the market, causing Snap's Common Stock price to decline.  ¶¶ 261-81, 290-99, 380-407; ECF No. 19-1; Exs. A-B (Plaintiffs' executed Certifications declaring the same).

This alignment of factual allegations, as well as legal and remedial theories, establishes typicality under Rule 23(a)(3). *See, e.g., Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 626 (S.D. Cal. 2015) ("Typicality is satisfied 'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability.'"); *Katz*, 287 F.R.D. at 586 (finding typicality met where "[l]ike the proposed class members, the class representatives purchased shares in CDM [and] [t]hey claim that they did so at a

---

[6] What's more, where there has been a finding of commonality, a finding of typicality normally follows, as these two requirements "tend to merge[.]" *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 607, 607 n.62 (C.D. Cal. 2009).

1
2
3

time that the registration statement and other offering materials contained material misrepresentations and omissions"); *see also In re AST*, 1994 WL 722888, at *2-3 (same).

### 4. Plaintiffs and Class Counsel Are Adequate

4
5
6
7
8
9

Rule 23(a)(4) requires the named parties to "fairly and adequately protect the interests of the class." This requirement looks to "whether the named plaintiffs and their counsel [1] have any conflicts of interest and [2] whether they will prosecute the action vigorously on behalf of the class." *Lewert v. Boiron, Inc.*, 2014 WL 12626335, at *8 (C.D. Cal. Nov. 5, 2014) (Wilson, J.). Both prongs are met here.

10
11
12
13
14
15
16
17

*First*, there are no conflicts of interests between Plaintiffs (or their counsel) and other members of the Class. Rather, as explained above, the interests of Plaintiffs and their counsel are fully aligned with those of the Class. *See supra* Section III.B.3. Plaintiffs therefore have every reason to continue to prosecute this action vigorously on behalf of themselves and other Class members. *See In re HiEnergy Techs., Inc. Sec. Litig.*, 2006 WL 2780058, at *4 (C.D. Cal. Sept. 26, 2006) (plaintiff adequate because its "interests are compatible with those of the entire [p]laintiff [c]lass, derive from the same legal theories, and [they] allege the same operative facts").

18
19
20
21
22
23
24
25
26
27
28

*Second*, Plaintiffs have demonstrated their vigor and commitment to prosecute and supervise this action on behalf of the Class by, among other things, retaining highly-qualified counsel, regularly communicating with counsel regarding the status of the case, and reviewing and authorizing submissions to the Court and Defendants. Specifically, through counsel, Plaintiffs have, among other things: (i) investigated and filed an amended complaint; (ii) successfully opposed Defendants' motions to dismiss; (iii) opposed Defendants' motion for interlocutory appeal; (iv) retained and consulted an expert on damages and market efficiency; (v) propounded document requests, interrogatories, and nonparty discovery requests; and (vi) searched for, collected, reviewed, and produced documents responsive to Defendants' discovery requests. *See* Nirmul Decl. ¶4. Plaintiffs intend to continue to perform similar activities throughout

this action, including preparing for and attending a deposition, trial, and any mediations. *See* ECF No. 19-1; Exs. A-B (Plaintiffs' Declarations affirming their willingness to represent the Class through the completion of litigation).

Moreover, as noted above, Plaintiffs have retained attorneys who are qualified, experienced, and able to vigorously prosecute this action on behalf of the Class. Kessler Topaz possesses extensive experience litigating complex securities fraud class actions. *See* Ex. F (Kessler Topaz Resume). Rosman & Germain is likewise a highly respected law firm with extensive experience in complex, class action litigation, and substantial experience litigating within the Central District of California. *See* Ex. G (Rosman & Germain Resume). As the Court is aware, each law firm has already done substantial work in investigating and prosecuting the claims in this action and has devoted considerable resources to this case. The Court should appoint Kessler Topaz as Class Counsel and Rosman & Germain as Liaison Counsel under Rule 23(g).

## C.     The Proposed Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), this case also satisfies Rule 23(b)(3), which requires the proposed class representative to establish that common questions of law or fact "predominate" over individual issues, and that a class action is "superior" to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-10 (2011) ("*Halliburton I*"); *Vathana v. EverBank*, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010) ("subsection [23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results"). Both requirements are satisfied here.

### 1.     Rule 23(b)(3)'s Predominance Requirement is Satisfied

The Supreme Court has explained that where, as here, claims are based upon misrepresentations and omissions in violation of the securities laws, "[p]redominance is a test readily met." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Further, "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." Order, *Amador v. Baca*, No. 2:10-cv-1649 (C.D. Cal. Nov. 18, 2016), ECF No. 327 at 7 (Wilson, J.) (Ex. D); *see also In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530 (N.D. Cal. 2009) ("Here, although class members might favor differing interpretations, for example, regarding the extent to which [a report] disclosed the fraud or [a press release] re-inflated the stock price, all class members are unified by an interest in proving the same common course of conduct."). Moreover, "[t]hroughout this analysis, the Court's focus must be whether the evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence ultimately will be persuasive to the trier of fact." *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 122 (C.D. Cal. 2007) (Wilson, J.).

### a.   Plaintiffs' Securities Act Claims Satisfy Predominance

Determining whether common questions predominate over individual questions "begins, of course, with the elements of the underlying cause of action." *Halliburton I*, 563 U.S. at 809. For their Securities Act claims, Plaintiffs "need only show a material misstatement or omission" in the registration statement or prospectus. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). Plaintiffs "need not show scienter, reliance or loss causation." *Katz*, 287 F.R.D. at 582 (citing *Rubke v. Capitol Bancorp, Ltd.,* 551 F.3d 1156, 1161 (9th Cir.2009)).[7]

The Securities Act claims here are thus ideally suited for class treatment because the answers to the core questions are common to all Class members—i.e., (i) was there a misrepresentation or omission?; and, if so, (ii) was it objectively material? Under

---

[7] Plaintiffs here need not show reliance since they each purchased Snap Common Stock pursuant or traceable to the IPO, and during the Class Period. *Loritz v. Exide Techs.*, 2015 WL 12488514, at *5 (C.D. Cal. Dec. 17, 2015) ("*Loritz II*") ("[A] plaintiff who purchases a security within twelve months of the registration statement need not show reliance to bring a Section 11 claim.") (quoting *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013)).

1  these circumstances, predominance is easily established. *Amgen Inc. v. Conn. Ret.*

2  *Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("The alleged misrepresentations and

3  omissions, whether material or immaterial, would be so equally for all investors

4  composing the class.").

5  **b.      Plaintiffs' Exchange Act Claims Satisfy Predominance**

6  To recover under Section 10(b) of the Exchange Act, all Class members must

7  establish: "(1) a material misrepresentation or omission . . . ; (2) scienter; (3) a

8  connection . . . [with] the purchase or sale of a security; (4) reliance . . . ; (5) economic

9  loss; and (6) loss causation."  *See Stockwell v. City & Cty. of S.F.*, 749 F.3d 1107, 1112

10  (9th Cir. 2014) (quoting *Amgen*, 568 U.S. at 460-61).  It is axiomatic that "most of

11  these elements are clearly susceptible to classwide proof, particularly the alleged

12  misrepresentations made by the defendants, scienter, and loss [causation]." *Takiguchi*

13  *v. MRI Int'l, Inc.*, 2016 WL 1091090, at *7 (D. Nev. Mar. 21, 2016); *accord Amgen*,

14  568 U.S. at 475 (the "essential elements" of a 10b-5 claim are subject to common

15  proof).  Moreover, a plaintiff is not required to prove materiality or loss causation at

16  the class certification stage.  *See Id.* at 469-70 (materiality); *Halliburton I*, 563 U.S. at

17  809-15 (loss causation).    Thus, "[w]hether common questions of law or fact

18  predominate in a securities fraud action often turns on the element of reliance."

19  *Halliburton I*, 563 U.S. at 810.

20  Here, for the reasons discussed below, predominance is easily satisfied as to

21  Plaintiffs' Exchange Act claims because Plaintiffs and the Class are entitled to rely on:

22  (i) the fraud-on-the-market ("FOTM") presumption of reliance established by the

23  Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and re-affirmed in

24  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) ("*Halliburton II*");

25  and (ii) the *Affiliated Ute* presumption of reliance.

26  **i.      Plaintiffs Are Entitled to the FOTM Presumption**

27  The FOTM presumption is based on the "premise . . . that the price of a security

28  traded in an efficient market will reflect all publicly available information about a

company; accordingly, a buyer of the security may be presumed to have relied on that information in purchasing the security." *Amgen*, 568 U.S. at 458.  Indeed, "it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" *Basic*, 485 U.S. at 246-47.

Here, the applicable prerequisites[8] for invoking the FOTM presumption—publicity, market efficiency, and market timing—are easily met.  *First*, each alleged misrepresentation was a public statement addressed to the marketplace.  *See* ¶¶ 226-60; 339-79.  *Second*, Plaintiffs and Class members purchased Snap Common Stock after Defendants' misrepresentations were made and before full disclosure of the relevant truth concealed by Defendants.  *See* ECF No. 19-1; Exs. A-B (reflecting Plaintiffs' transactions in Snap Common Stock).  *Finally*, for the reasons set forth below, the market for Snap Common Stock was efficient throughout the Class Period.

As an initial matter, Snap Common Stock was at all times during the Class Period listed and actively traded on the NYSE, "one of the most efficient capital markets in the world."  *In re PHP Healthcare Corp.*, 128 F. App'x 839, 848 (3d Cir. 2005) (per curiam); Nye Rpt. ¶17.  Courts routinely hold that the NYSE is a presumptively efficient market.  *See, e.g.*, *Brown*, 2015 WL 12720322, at *16 (noting "listing on a major national stock exchange" such as NYSE is "generally a strong indicator of market efficiency").

In addition to assessing whether a stock traded on a national market, "the Ninth Circuit looks to the nonexclusive factors set out in *Cammer v. Bloom,* 711 F. Supp. 1264, 1285–87 (D.N.J. 1989)." *Loritz I*, 2015 WL 6790247, at *9. These factors are: (i) a large weekly trading volume; (ii) the existence of a significant number of analyst reports; (iii) the existence of market makers and arbitrageurs in the security; (iv) eligibility to file an S-3 registration statement; and (v) reasonably prompt movement of the stock price caused by unexpected corporate events or financial releases (i.e., a

---

[8] As noted above, materiality need not be established at the class certification stage, since it is a question common to the Class.  *See Amgen*, 568 U.S. at 469-70.

cause and effect relationship).  *See id.* As confirmed in the Nye Report and discussed below, an empirical analysis of each *Cammer* factor establishes that Snap Common Stock traded on an efficient market during the Class Period.  Nye Rpt. ¶¶22-53.

**High Weekly Trading Volume:** Average weekly trading volume of 2.0% or more of outstanding shares justifies a "strong presumption that the market for the security is an efficient one."  *Todd*, 2017 WL 821662, at *7 (quoting *Cammer*, 711 F. Supp. at 1286).  During the Class Period, the average weekly trading volume of Snap Common Stock was 15.6% of outstanding shares.  Nye Rpt. ¶24.  This trading volume supports the conclusion that the market for this security was efficient throughout the Class Period.  *Id.* ¶¶22-27; *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 n.6 (C.D. Cal. 2000) (1% average weekly volume supported market efficiency).

**Significant Analyst Coverage:** "[T]he existence of securities analysts following [a defendant's] stock during the class period would imply that the market would rapidly and fully incorporate information into the stock price because analyst reports would likely be 'closely reviewed by investment professionals, who would in turn make buy/sell recommendations to client investors.'"  *Brown*, 2015 WL 12720322, at *17. During the Class Period, more than 25 different analyst firms covered Snap, and at least 150 analyst reports were published regarding Snap—further supporting market efficiency.   Nye Rpt. ¶¶28-33; *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *19 (C.D. Cal. May 9, 2013) (allegation that "several security analysts from major brokerage firms followed [defendant's] stock and wrote reports that were distributed to customers of those firms and made publicly available" satisfied this *Cammer* factor); *see also In re Nature's Sunshine Prods. Inc. Sec. Litig.*, 251 F.R.D. 656, 662-63 (D. Utah 2008) (coverage by four analysts was evidence of market efficiency).

**Market Makers:** During the Class Period, Snap Common Stock traded predominantly on the NYSE, an exchange that employs a single "specialist," or designated market maker ("DMM"), that acts as the market maker for a given security.

Nye Rpt. ¶¶34-35. Although courts have found that the "oversight of a DMM favors market efficiency," *In re Banc of Cal. Sec. Litig.*, 2018 WL 3868922, at *6 (C.D. Cal. May 31, 2018), this factor is largely inapplicable to the inquiry here, *see, e.g., Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 573 (C.D. Cal. 2012) ("[p]laintiffs are thus correct when they state that Radient's argument that they 'provide no reliable evidence of market-makers and arbitrageurs' and 'fail to identify even a single one,' is a red herring" where defendant's stock traded on NYSE); *see also In re DVI, Inc. Sec. Litig.*, 249 F.R.D. 196, 210 (E.D. Pa. 2008), *aff'd* 639 F.3d 623 (3d Cir. 2011), ("Because market makers are used only for securities traded on the NASDAQ or in the over-the-counter market, this factor is not relevant [to stocks traded on the NYSE].").[9]

As an alternative, some courts look to the number of institutional investors holding a stock, finding that "because these investors could easily buy and sell [the] securities on exchanges such as the NYSE . . . they have likely acted as arbitrageurs and facilitated the efficiency of the market." *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 280 (S.D.N.Y. 2008). Here, institutional investors owned approximately 60% of outstanding Snap Common Stock during the Class Period. This is a strong indicator that Snap Common Stock was traded efficiently. *See* Nye Rpt. ¶41.

**SEC Form S-3 Eligibly:** A company is eligible to file a Form S-3 registration statement if it possesses a market capitalization of at least $75 million and has filed SEC reports for twelve consecutive months. *See* 17 C.F.R. § 239.13. The "S-3 form is 'predicated on the [SEC]'s belief that the market operates efficiently for these companies, i.e., that the disclosure in Exchange Act reports and other communications by the registrant, such as press releases, has already been disseminated and accounted for by the market place.'" *Brown*, 2015 WL 12720322, at *17 (quoting *Cammer*, 711 F. Supp. at 1284). As set forth in the Nye Report, Snap possessed an average market

---

[9] Still, with respect to Snap Common Stock traded on the NASDAQ, Dr. Nye observed more than 130 active market makers, further indicating the market was efficient. Nye Rpt. ¶36.

1  capitalization of between $14 billion and $31 billion during the Class Period—well

2  above the $75 million requirement for S-3 eligibility. Nye Rpt. ¶47.

3      While Snap was ineligible to file a Form S-3 during the Class Period, "this factor

4  will not necessarily weigh against a finding of market efficiency [because] such

5  ineligibility was only because of timing factors rather than because the minimum stock

6  requirements set forth in the instructions to Form S-3 were not met." *In re Initial Pub.*

7  *Offering Sec. Litig.*, 260 F.R.D. 81, 101 (S.D.N.Y. 2009); *accord Cammer*, 711 F.

8  Supp. at 1287 ("Again, it is the number of shares traded and the value of shares

9  outstanding that involve the facts which imply efficiency."). As such, this factor tilts

10 in favor of market efficiency, or is at worst neutral. Nye Rpt. ¶¶44-47

11     **Cause and Effect Relationship:** The final *Cammer* factor relates to how the

12 price of a security reacts to the release of new, Company-specific news events. *Loritz*

13 *I*, 2015 WL 6790247, at *10-11. To analyze this relationship, Dr. Nye performed an

14 event study—a well-established and universally-accepted methodology to determine

15 whether a particular stock price rapidly incorporates new information.  Nye Rpt. ¶¶48-

16 53; *Halliburton II*, 134 S. Ct. at 2415; *Loritz I*, 2015 WL 6790247, at *11 ("The most

17 common empirical test for a causal connection is an event study, which attempts to

18 calculate the effect of an event on the value of the stock of a company.").

19     More specifically, to assess whether Snap Common Stock responded to the

20 release of new company-specific news during the Class Period, Dr. Nye compared

21 Snap's stock price movements on days when Snap released information related to its

22 quarterly or year-end financial performance ("event dates").   Dr. Nye's analysis

23 confirmed that Snap Common Stock experienced a statistically significant price

24 reaction on *100%* of event dates.  *Id.* ¶52.  Dr. Nye therefore concluded Snap's stock

25 price reacted to the release of new company-specific information, which strongly

26 supports a finding of an efficient market during the Class Period.  *Id.* ¶53. *See, e.g.,*

27 *Loritz I*, 2015 WL 6790247, at *11 (market efficiency established where statistically

28 statistic movements were observed on 88% of news days and 3% of non-news days);

1   *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 436 (D. Ariz. 2013) (market efficiency

2   established where statistically significant movements were observed on 81.25% of

3   news days).

4       Accordingly, for all of the reasons discussed above, the market for Snap

5   Common Stock was unquestionably efficient during the Class Period. Plaintiffs are

6   therefore entitled to rely on the FOTM presumption.

7           ii.     **Plaintiffs Are Entitled to the *Affiliated Ute***
                    **Presumption**
8

9       Reliance may also be presumed because Plaintiffs' claims are premised, in part,

10  on Defendants' omissions of material facts.  If "one with a duty to disclose" omits a

11  material fact, "the investor to whom the duty was owed need not provide specific proof

12  of reliance."  *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 159 (2008)

13  (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972)).

14  Instead, it is necessary only that "the facts withheld be material in the sense that a

15  reasonable investor might have considered them important in the making of this

16  decision." *Affiliated Ute*, 406 U.S. at 153-54.  Here, this Court determined the SAC

17  adequately alleged Defendants had a duty to disclose omitted, material information

18  regarding, among other things, the Pompliano allegations. *See, e.g.,* MTD Order, 2018

19  WL 2972528, at *8 ("The Pompliano claim focuses on what Snap *left out*.").  Thus,

20  Plaintiffs are entitled to the *Affiliated Ute* presumption of reliance, at least with respect

21  to those claims that rely primarily on omissions.

22          c.      **Common Issues Concerning Damages Predominate**

23      Common issues of damages predominate here because, as with virtually all

24  securities cases, they are subject to well-established methodologies that can be applied

25  to all class members: Namely, an event study for the Exchange Act Claims and a

26  statutory formula for the Securities Act claims. Nye Rpt. ¶¶54-55. In any event, as

27  explained below, it is black letter law that any differences in damages cannot defeat

28  predominance.

**Exchange Act Claims:** Courts in the Ninth Circuit routinely hold that common issues concerning damages predominate in Section 10(b) actions, where damages are subject to a well-settled out-of-pocket methodology that can easily be applied using a common formula. *See, e.g.*, *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *15 (C.D. Cal. May 11, 2017) ("Damages for every class member can be mechanically calculated according to [expert's] proposed [event study] methodology and are therefore subject to class wide proof."); *Hatamian*, 2016 WL 1042502, at *8 ("[t]he event study method is an accepted method for the evaluation of materiality [and] damages to a class of stockholders in a defendant corporation"); *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 251-52 (N.D. Cal. 2013) (same); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003) (same). Indeed, as the Ninth Circuit explained in its seminal *Blackie* decision, "we are confident that should the [Section 10(b)] class prevail the amount of price inflation during the period can be charted and the process of computing individual damages will be virtually a *mechanical task*." 524 F.2d at 905.

This case is no exception. As Dr. Nye explains, damages here are subject to the standard out-of-pocket methodology. Nye Rpt. ¶¶56-59. Utilizing this methodology, Dr. Nye will, at the appropriate time, quantify the amount of artificial inflation caused by Defendants' misconduct that existed in Snap's Common Stock price on each day of the Class Period. *Id.* This methodology directly aligns with Plaintiffs' theory of liability—i.e., that Snap's Common Stock price was artificially inflated during the Class Period due to Defendant's misconduct. *Id.* Moreover, the evidence and methodology for calculating the daily artificial inflation, and thus damages, are both common to the Class and applicable on a Class-wide basis. *Id.* ¶¶54-55.

**Securities Act Claims:** Plaintiffs' damages methodology under the Securities Act relies on a statutory formula common to all Class members. *See* 15 U.S.C. § 77k(e) (statutory formula for Section 11). Nye Rpt. ¶¶60-63. Common issues concerning damages unquestionably predominate over such claims. *See, e.g., Sudunagunta*, 2018

WL 3917865, at *8 (noting that "damages under Section 11 are statutory and mechanical"); *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 785 (3d Cir. 2009) ("The formulaic nature of § 11 leaves defendants with little room to maneuver" in opposing class certification.); *N.J. Carpenters Health Fund v. Residential Capital, LLC,* 272 F.R.D. 160, 167 (S.D.N.Y. 2011) ("the plain language of section 11(e) prescribes the method of calculating damages . . . and the statutory scheme requires courts to apply the prescribed formula in every section 11 case") (alterations in original).[10]   This is true even if Defendants elect to present a negative causation defense. *See, e.g., In re Metro. Sec. Litig.*, 2008 WL 5102303, at *2 (E.D. Wash. Nov. 25, 2008) ("Furthermore, the defendants have not cited, and independent research has failed to uncover, a Section 11 case in which a court has ruled that the existence of a loss causation defense precludes certification under Rule 23(b)(3).").

While Plaintiffs' proffer of a classwide approach to calculating damages further supports predominance, the Ninth Circuit has nevertheless repeatedly held that "differences in damages calculations is not sufficient to defeat class certification." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986-87 (9th Cir. 2015); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification."); *accord In re Live Concert Antitrust Litig.*, 247 F.R.D. at 147 ("even if [the defendants'] criticisms are valid and the calculation of the amount of damages requires the analysis of some individual issues, this does not preclude class certification").

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)—an antitrust case involving four disparate theories of liability and damages—did not alter this black-letter law.  As the Ninth Circuit recently explained, "*Comcast* stood only for the proposition that

---

[10] *See also In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1184 (N.D. Cal. 2017) (finding predominance satisfied and endorsing use of event study to measure damages under Securities Act).

plaintiffs must be able to show that their damages stemmed from defendant's actions that created the legal liability." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017); *see also Pulaski*, 802 F.3d at 986-88 (same). As set forth above, Plaintiffs have plainly done so. And while "[c]ourts in this circuit have not interpreted *Comcast* to 'require certification proponents to rely on a class-wide damages model to demonstrate predominance,'" *In re Twitter Inc. Sec. Litig.*, 2018 WL 3440708, at *9 (N.D. Cal. July 17, 2018); *Banc of Cal.,* 2018 WL 3868922, at *8 (same), Plaintiffs have likewise propounded such methodologies here as additional support.[11]

### d.    Plaintiffs' Control Person Claims Satisfy Predominance

Finally, whether the Control Person Defendants exercised control over Snap under Section 20 of the Exchange Act and Section 15 of the Securities Act "constitutes a common question for all class members because if Plaintiffs are able to prove a primary violation, the controlling person inquiry would not be specific to individual class members." *Loritz II*, 2015 WL 12488514, at *5. Accordingly, predominance is established.

### 2.    Rule 23(b)(3)'s Superiority Requirement is Established

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  In assessing superiority, Rule 23(b)(3) enumerates four factors that courts should consider: (i) the interests of class members in "individually controlling the prosecution or defense of separate actions"; (ii) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (iii) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (iv) the manageability of a class action.  Each of these factors supports superiority.

---

[11] This case is therefore distinguishable from *Loritz I*, where the plaintiffs failed to present *any* damages model. 2015 WL 6790247, at *22-23.

*First*, Plaintiffs seek to represent a Class that includes a large number of geographically-dispersed investors whose individual damages are likely small enough to render individual litigation prohibitively expensive. *See, e.g.*, *Lewert*, 2014 WL 12626335, at *7 ("A class action is superior where the cost of litigating on an individual basis would dwarf recovery.").

*Second*, concentrating this litigation in a single forum has numerous benefits, including eliminating the risk of inconsistent adjudication and promoting the fair and efficient use of the judicial system. *See, e.g. Hatamian*, 2016 WL 1042502, at *10.

*Third*, with the exception of one case filed in California State Court, which is currently stayed in favor of this action, Ex. E, Plaintiffs are unaware of any other action asserting claims like those asserted here.[12]  In any event, this case is superior to the State Court Action because it is far more advanced, with discovery already well underway and a trial date set for March 12, 2019. *LendingClub,* 282 F. Supp. 3d  at 1185 (superiority established where federal court Securities Act class action was more advanced than, and scheduled for trial before, parallel state court action).

*Finally*, there are no unusual manageability issues.  *See, e.g.*, *In re Magma Design Automation Sec. Litig.*, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007) (class action "'maintainable' in this case because [defendant company] treated . . . all of its shareholders in the same fashion").  Accordingly, Plaintiffs have established superiority.

## IV.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests the Court certify the proposed Class, appoint Plaintiffs as Class Representatives, and appoint Kessler Topaz as Class Counsel and Rosman & Germain as Liaison Counsel.

---

[12] That case is *Snap Inc. Securities Cases*, No. 4960 (Superior Court of California, County of Los Angeles) ("State Court Action"). The defendants in the State Court Action are represented by the same counsel as the defendants here, and brought the motion to stay in the State Court Action.

DATED: August 30, 2018

Respectfully submitted,

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
SHARAN NIRMUL (*Pro Hac Vice*)
snirmul@ktmc.com
ETHAN J. BARLIEB (*Pro Hac Vice*)
ebarlieb@ktmc.com
NATHAN HASIUK (*Pro Hac Vice*)
nhasiuk@ktmc.com
JONATHAN F. NEUMANN (*Pro Hac Vice*)
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (267) 948-2512

- and -

JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Attorneys for Lead Plaintiff Thomas DiBiase,*
*Proposed Named Plaintiffs Donald R. Allen*
*and Shawn B. Dandridge, and Lead Counsel*
*for the Putative Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ROSMAN & GERMAIN LLP**
DANIEL L. GERMAIN (Bar #143334)
Germain@lalawyer.com
16311 Ventura Boulevard, Suite 1200
Encino, CA 91436
Telephone: (818) 788 0877
Facsimile: (818) 788-0885

*Liaison Counsel for the Putative Class*