BORIS FELDMAN, State Bar No. 128838
Email: boris.feldman@wsgr.com
IGNACIO E. SALCEDA, State Bar No. 164017
Email: isalceda@wsgr.com
DORU GAVRIL, State Bar No. 282309
Email: dgavril@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

*Attorneys for Defendants Snap Inc.,
Evan Spiegel, Robert Murphy,
Andrew Vollero, and Imran Khan*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| IN RE SNAP INC. SECURITIES LITIGATION | Case No. 17-cv-03679-SVW-AGR |
|---|---|
| | **CLASS ACTION** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL** |
| | DATE: November 29, 2018<br>TIME: 10:00 a.m.<br>COURTROOM: 550 |
| | Before: The Hon. Alicia G Rosenberg |

This Document Relates To: All Actions

MEMO. OF PTS. AND AUTH. IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL
CASE NO. 17-cv-03679-SVW-AGR

# INTRODUCTION

Defendants bring this motion to compel because Thomas DiBiase, Shawn Dandridge, and Donald Allen[1] (the "Individuals") have declined to produce or log documents they admitted were responsive to Defendants' Requests for Production ("RFPs"). Their position is incorrect. Messrs. DiBiase, Dandridge, and Allen must either produce responsive documents, or, in the alternative, include these documents on a privilege log and demonstrate they are privileged.

To date, the Individuals have refused to do either. They have produced a total of 74 documents and a privilege log with exactly 3 entries, constituting the retention letters with their counsel, Kessler Topaz Meltzer & Check, LLP ("Lead Counsel"), over which Lead Counsel has asserted privilege. Defendants now bring this motion to compel to address two specific deficiencies related to the Individuals' refusal to comply with their discovery obligations.

First, the Court should compel production of any factual notes from interviews with the two former Snap employees ("FE") cited in the Consolidated Amended Complaint ("CAC"). The CAC relies extensively on statements attributed to these FEs.[2] But despite the numerous Complaint references to purported statements by the FEs, no record of such statements has been produced. No assertion of privilege been made, nor a log produced.

Second, the Court should compel production of a complete privilege log that lists every responsive document that has been withheld on grounds of privilege. Lead Counsel has admitted to withholding documents responsive to Defendants' RFPs beyond the three listed on the privilege log but have declined to supplement

---

[1] Defendants note that none of the Individuals represent the class. Mr. DiBiase, the sole court-appointed lead plaintiff, submitted his withdrawal on September 28, 2018. ECF No. 118. Lead Counsel's proposal that Mr. Dandridge and Mr. Allen be added to the litigation as named plaintiffs is still pending. ECF No. 115.

[2] *E.g.*, CAC ¶¶ 8, 37, 38, 78, 85, 104, 217, 329.

1  the privilege log.

2  Messrs. DiBiase, Dandridge, and Allen must either produce the documents
3  or include them on a privilege log.  They cannot both withhold a responsive
4  document on grounds of privilege *and* simultaneously refuse to log it.

## FACTUAL BACKGROUND

6  The CAC alleges that Snap made various misrepresentations related to its
7  user metrics and other matters.  After the Court denied Snap's Motion to Dismiss
8  on June 7, 2018, Mr. DiBiase moved to certify a class on August 30, 2018.  (ECF
9  No. 114).  In that motion, he asserted that the proposed class representatives
10 (Messrs. Allen and Dandridge and himself) were typical class members and could
11 adequately represent the interests of absent class members.

12 Defendants served Messrs. DiBiase, Dandridge, and Allen with RFPs that
13 included 16 distinct document requests.[3]  Ex. A (attached to the Declaration of
14 Doru Gavril, filed herewith).  Defendants' RFPs sought to discover information
15 relevant to evaluate the typicality and adequacy of the proposed class
16 representatives.  *See id.*

17 During meet and confer sessions on August 24, 2018 and August 29, 2018,
18 Lead Counsel agreed to produce responsive documents and record any withheld
19 responsive documents in a privilege log.

20 By September 7, 2018, Messrs. DiBiase, Dandridge, and Allen had produced
21 74 documents and a privilege log with only three entries.  Lead Counsel explained
22 that these three entries were all retention letters, over which the Individuals were
23 asserting privilege, in their entirety.

24 Lead Counsel also assured Defendants that Messrs. DiBiase, Dandridge, and
25 Allen had conducted a diligent search of their records and completed production of

---

[3] After Defendants served their RFPs upon Mr. DiBiase, Lead Counsel agreed that the same set of RFPs would also apply to Mr. Allen and Mr. Dandridge.

all responsive documents in their possession, custody, or control.  Only after Defendants questioned the low number of produced and logged documents did Lead Counsel admit that additional responsive documents existed.  But Lead Counsel refused to produce such documents or include them on a privilege log.

## ARGUMENT

### I. Plaintiffs Fail to Carry Their Burden in Opposing Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  The party resisting discovery—here, Messrs. DiBiase, Dandridge, and Allen—"has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).  They fail to carry this burden.

For the reasons explained below, the Court should compel production of: (1) factual notes of interviews with the FEs; and (2) a complete privilege log.

### II. Factual Notes of Interviews with FEs Must Be Produced

Defendants' RFPs required Lead Counsel to produce factual notes related to their oral communications with the FEs.[4]  Defendants require such documents in order to corroborate statements attributed to the FEs in the CAC.

The need to verify such statements is explained in *In re Millennial Media, Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 69534, at *30-31 (S.D.N.Y. May 29, 2015). In *Millennial Media*, the court was troubled when it found that the complaint contained "statements that witnesses denied making" and "statements that were

---

[4] Defendants' RFP No. 7 requests: "All documents upon which you relied or to which you referred in preparing the complaint, including but not limited to, all documents relating to any investigation, however formal or informal, conducted by you, and all documents you received or otherwise acquired from, any current or former employee of Snap or any competitor of Snap (including but not limited to Apple, Facebook, Google, Twitter, Kakao, Line, Naver, and Tencent)."

made but which the [complaint] presented out of context[.]" *Id.* The complaint also contained "statements of knowledge of opinion for which the witness lacked a factual basis." *Id.* The court determined that these problems "could have been avoided had counsel sought to confirm with these witnesses the facts and quotations that counsel proposed to attribute to them." *Id.* In order to verify the purported statements in the CAC and confirm that no such problems occurred here, Defendants seek Lead Counsel's factual notes of oral communications with the FEs.

Messrs. DiBiase, Dandridge, and Allen have not claimed that such factual interview notes are privileged attorney-client communications. Nor can they. Contemporaneous factual notes of such oral communications with non-parties are not protected by the attorney-client privilege because there is no attorney-client relationship between Lead Counsel and the FEs. *See Taylor v. Waddell & Reed, Inc.*, 2011 U.S. Dist. LEXIS 54109, at *12-13 (S.D. Cal. May 20, 2011) (compelling production of communications between attorneys and putative class members where attorneys merely solicited information from putative class members and made no representation about the creation of attorney-client relationship).

Lead Counsel's factual interview notes with non-parties also cannot be withheld as attorney opinion work product. Defendants only seek factual information about the content of the FE's statements, not Lead Counsel's impressions. Courts regularly compel production of such materials. For example, in *Johnson v. Bryco Arms,* the court granted a motion to compel factual statements from a non-party witness. No. 03 CV 2582, 2005 U.S. Dist. LEXIS 48587, at *17 (E.D.N.Y. Mar. 1, 2005). It recognized that "[t]he policy rationale behind the work product doctrine—protecting litigation strategy from disclosure— is not triggered where, as here, the information provided comes from a witness whose narrative is critical to the case." *Id.* at *13. Many other courts have found the

same. *E.g.*, *Crosby v. City of New York*, 269 F.R.D. 267, 279 (S.D.N.Y. 2010) ("[l]ower courts have consistently treated witness statements as factual rather than opinion work product, even where those statements have been summarized by counsel.") (citing *Abdell v. City of New York*, 2006 WL 2664313 (S.D.N.Y. Sept. 14, 2006)).

If Messrs. DiBiase, Dandridge, and Allen seek to withhold portions of factual interview notes as attorney opinion work product, they must produce the documents with appropriate redactions and include them on a privilege log, so Defendants can evaluate the assertion of privilege. *Infra*, Section III.[5]

### III.   Messrs. DiBiase, Dandridge, and Allen Must Log Withheld Documents

If they withhold any documents responsive to Defendants' RFPs as privileged, Messrs. DiBiase, Dandridge, and Allen must "expressly make the claim" of privilege and "describe the nature of the . . . things not produced or disclosed—and do so in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). "The privilege log should: identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected for disclosure." *Bryco Arms*, 2005 U.S. Dist. LEXIS 48587, at *9 (citation omitted).

Messrs. DiBiase, Dandridge, and Allen have refused to provide such a log. They assert privilege without providing the necessary facts. Courts in the Ninth Circuit, however, are "avers[e] to blanket assertions of privilege." *Parra v. Bashas' Inc.*, 2003 U.S. Dist. LEXIS 28375, at *17-18 (D. Ariz. Oct. 1, 2003).

Messrs. DiBiase, Dandridge, and Allen must log withheld documents for

---

[5] Defendants' RFPs also required the production of communications between Lead Counsel (as agents for Messrs. DiBiase, Dandridge, and Allen) and FEs. To date, Messrs. DiBiase, Dandridge, and Allen have produced three documents containing such communications. To the extent others exist, they must be produced.

two reasons. First, they must produce complete privilege logs so Defendants can assess their reasons for withholding documents and challenge whether such assertions of privilege are legitimate. Without such a log, Defendants do not even know what documents exist, much less have the ability to challenge blanket assertions of privilege. In an illustrative case, the court in *Jones v. Hernandez* warned that "[p]arties are not permitted to unilaterally decide that a privilege applies, withhold a document, [and] not notify the other side" when the document "existed at the time Defendants' RFPs issued, was responsive to those requests, and was in Plaintiff's possession." 322 F.R.D. 411, 415 (S.D. Cal. 2017). The court recognized the importance of a privilege log and held "[i]f discovery is withheld based on any privilege or protection, such should be stated in a privilege log to provide the other side an opportunity to meet and confer and possibly challenge that claimed privilege." *Id*. Here too, Defendants need a complete privilege log in order to evaluate assertions of privilege.

Second, contrary to Lead Counsel's position, there is no automatic "carve out" for "documents between a lawyer and client created after the initiation of the litigation." *Horton v. United States*, 204 F.R.D. 670, 673 (D. Colo. 2002). The refusal to create an automatic exception derives from a simple truth: "[T]hat a document concerning the litigation is created and exchanged between lawyer and client after the lawsuit is commenced does not mean necessarily that the document is privileged and not subject to discovery."[6] *Id.*

---

[6] Although some courts have declined to require the inclusion of attorney-client communications made after the initiation of litigation on a privilege log, they have done so on the grounds that logging voluminous communications would be burdensome and irrelevant to the issues in the case. *E.g., Hernandez v. Best Buy Co.*, 2014 U.S. Dist. LEXIS 152117, at *27-29 (S.D. Cal. Oct. 24, 2014) (in wage-and-hour case, defendants' privilege log did not need to include attorney-client communications after commencement of litigation because doing so would be "unduly burdensome"). Here, Messrs. DiBiase, Dandridge, and Allen have not shown that requiring a privilege log would be unduly burdensome. *See Friedman v. 24 Hour Fitness United States, Inc.*, 2009 U.S. Dist. LEXIS 135419, at *5-6 (C.D. Cal. Jan. 12, 2009) (requiring privilege log where party did not demonstrate the log would be unduly burdensome).

In a securities class like this one, it is particularity critical that Messrs. DiBiase, Dandridge, and Allen produce or log their communications with Lead Counsel.  As recognized by this Court, the existence and frequency of such communications—which is apparent from the face of the log even if the documents themselves are not produced—goes directly to their adequacy to serve as Lead Plaintiff or class representatives.  In a prior securities class action, this Court considered the frequency of communication between plaintiffs and their counsel when deciding whether the proposed class representative was adequate.  *Loritz v. Exide Techs.*, 2015 U.S. Dist. LEXIS 100471, at *22-23 (C.D. Cal. July 21, 2015) (Wilson, J.).  The same issue has arisen here.

Messrs. Dandridge and Allen's motion to be appointed class representative is currently pending before the Court.  It has been fully briefed, and a hearing is scheduled for November 19, 2018.   Thus, the existence and frequency of communications between Messrs. DiBiase, Dandridge, and Allen and Lead Counsel are directly relevant to this same critical point.[7]  Messrs. Dandridge and Allen have each declared that they are adequate representatives of the proposed class.  For example, in their Reply in Further Support of their Motion for Class Certification, Messrs. Dandridge and Allen assert that they have "continuously and regularly communicated with counsel." ECF No. 163 at 9.  By refusing to produce a privilege log documenting such communications, they have hamstrung Defendants' and the Court's ability to determine whether this claim is true.

---

[7] Although Mr. DiBiase has withdrawn his motion to be appointed class representative, the existence and frequency of his communications with Lead Counsel are directly relevant to whether he has been fulfilling his continuing obligations as purported Lead Plaintiff.  *See McGuire v. Dendreon Corp.*, 2008 U.S. Dist. LEXIS 14713, at *6 (W.D. Wash. Feb. 13, 2008) ("The Court finds that it has an ongoing duty to consider new information relevant to the adequacy and typicality of Lead Plaintiff"); *see also Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000) ("Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), the lead plaintiff must 'otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.'").

# CONCLUSION

For these reasons, the Court should grant Defendants' Motion to Compel.

Dated: November 9, 2018

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  /s/ Ignacio E. Salceda
  Ignacio E. Salceda

*Attorneys for Defendants Snap Inc., Evan Spiegel, Robert Murphy, Andrew Vollero, and Imran Khan*