**LABATON SUCHAROW LLP**
THOMAS A. DUBBS
tdubbs@labaton.com
CAROL C. VILLEGAS
cvillegas@labaton.com
LOUIS GOTTLIEB
lgottlieb@labaton.com
FRANCIS P. MCCONVILLE
fmcconville@labaton.com
JEFFREY A. DUBBIN (SBN 287199)
jdubbin@labaton.com
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for State of New Mexico on behalf of New Mexico*
*State Investment Council and Proposed Lead Counsel for the Class*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Snap Inc. Securities Litigation | Case No. 2:17-cv-03679- SVW-AGR |
| | **CLASS ACTION** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE OF NEW MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL** |
| | Date:  February 25, 2019 |
| | Time:  1:30 p.m. |
| | Courtroom:  10A – 10th Floor |
| | Judge:  Honorable Stephen V. Wilson |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    PRELIMINARY STATEMENT.................................................................1

II.   FACTUAL BACKGROUND ...................................................................3

III.  ARGUMENT ..........................................................................................6

    A.   New Mexico SIC Should Be Appointed Lead Plaintiff......................6

       1.   The PSLRA Standard for Appointing Lead
          Plaintiff ....................................................................................6

    B.   New Mexico SIC Is the "Most Adequate Plaintiff" ...........................8

       1.   New Mexico SIC Satisfied the PSLRA's
          Procedural Requirements...........................................................8

       2.   New Mexico SIC Has the Largest Financial
          Interest in the Outcome of the Action ......................................8

       3.   New Mexico SIC Otherwise Satisfies Rule 23's
          Typicality and Adequacy Requirements ...................................8

          (a)   New Mexico SIC's Claims Are Typical of Those
              of the Class ....................................................................9

          (b)   New Mexico SIC Will Fairly and Adequately
              Protect the Interests of the Class ...................................10

       4.   As A Sophisticated Institutional Investor, New
          Mexico SIC Is Precisely the Type of Lead Plaintiff
          Congress Envisioned When It Passed the PSLRA.................10

    C.   The Court Should Approve New Mexico SIC's Choice of
      Counsel.............................................................................................12

CONCLUSION....................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) .................................................................. 7, 12, 13

*In re Cohen v. U.S.*,
  586 F.3d 703 (9th Cir. 2009) ............................................................................ 12

*In re Critical Path, Inc. Sec. Litig.*,
  156 F. Supp. 2d 1102 (N.D. Cal. 2001) ............................................................ 11

*Feyko v. Yuhe Int'l Inc.*,
  No. CV 11-05511 DDP, 2012 WL 682882 (C.D. Cal. Mar. 2,
  2012) ................................................................................................................. 11

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................. 11

*Perlmutter v. Intuitive Surgical, Inc.*,
  No. 10-cv-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15,
  2011) ................................................................................................................. 11

*Richardson v. TVIA, Inc.*,
  No. C 06 06304-RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16,
  2007) ................................................................................................................... 8

*Russo v. Finisar Corp.*,
  No. 5:CV 11-01252-EJD, 2011 WL 5117560 (N.D. Cal. Oct. 27,
  2011) ................................................................................................................... 9

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.
  Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2016 WL 5930844 (N.D. Cal. Oct. 11,
  2016) ................................................................................................................... 7

*Westley v. Oclaro, Inc.*,
  No. C-11-2448-EMC, 2011 WL 4079178 (N.D. Cal. Sept. 12,
  2011) .............................................................................................................. 9, 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE OF NEW MEXICO
ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

ii

**Rules & Statutes**

Fed. R. Civ. P. 23....................................................................................*passim*

15 U.S.C. § 77z-1*et seq.* ........................................................................*passim*

15 U.S.C. § 78u-4 *et seq.* .......................................................................*passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-8141 (S.D.N.Y.) ............................................................... 13

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-1963 (S.D.N.Y.) .............................................................. 13

*In re Countrywide Fin. Corp. Sec. Litig.*,
    No. 07-cv-5295 (C.D. Cal.) .............................................................. 13

*In re Broadcom Corp. Sec. Litig.*,
    No. 06-cv-5036 (C.D. Cal.) .............................................................. 12

*Eastwood Enters., LLC v. WellCare Health Plans, Inc.*,
    No. 07-cv-1940 (M.D. Fla.) .............................................................. 12

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    No. 10-cv-03461 (S.D.N.Y.) ............................................................. 13

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N.
    730 .......................................................................................... 11, 13

Lead Plaintiff Movant the State of New Mexico on behalf of New Mexico State Investment Council ("New Mexico SIC") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), and Section 27(a)(3)(B) if the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B) as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (1) appointing New Mexico SIC as Lead Plaintiff  on behalf of investors who purchased Snap Inc. ("Snap" or the "Company") securities (i) pursuant and/or traceable to Snap's Initial Public Offering ("IPO") on or about March 2, 2017 and/or (ii) on the open market between March 2, 2017 through August 10, 2017 (the "Class Period"); (2) approving  its selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class (the "Motion"); and (3) granting such other and further relief as the Court may deem just and proper.

I.     **PRELIMINARY STATEMENT**

Presently pending before this Court is a consolidated federal securities class action[1] (the "Action") brought on behalf of investors who purchased Snap securities (i) pursuant and/or traceable to Snap's IPO on or about March 2, 2017 and/or (ii) on the open market between March 2, 2017 through August 10, 2017. The Action charges Snap and certain of its officers and/or directors (collectively, "Defendants") with violations of the Securities Act and/or the Exchange Act.

---

[1]     On January 10, 2019, this Court ordered the reopening of the lead plaintiff appointment process, allowing 21 days—until January 31, 2019—for any party to move for appointment as Lead Plaintiff.  *See* Dkt. 208.  Pursuant to this Court Order, New Mexico SIC respectfully submits this memorandum of law in support of its motion for lead appointment and approval of counsel in the above-captioned action.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i).  In that regard, the Court is required to determine which member of the Class has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

New Mexico SIC respectfully submits that it should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA.  As set forth in detail below, New Mexico SIC incurred ***$1,068,313.90*** in losses as a result of its transactions in Snap securities during the Class Period.[2] In light of this significant loss, New Mexico SIC has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.

New Mexico SIC also meets the typicality and adequacy requirements of Rule 23 as required by the PSLRA.  Its claims are typical of those of absent Class members, and it will fairly and adequately represent the interests of the Class. Additionally, New Mexico SIC is the type of sophisticated institutional investor that Congress intended to empower to lead securities class actions.  New Mexico SIC manages New Mexico's $23 billion permanent endowment fund and possesses

---

[2]    A copy of the Certification signed by Steven K. Moise, State Investment Officer on behalf of New Mexico SIC is attached as Exhibit A to the accompanying Declaration of Jeffrey A. Dubbin ("Dubbin Decl."), which sets forth all transactions of New Mexico SIC in Snap securities during the Class Period.  In addition, a chart reflecting the calculation of New Mexico SIC's losses as a result of their Class Period transactions in Snap securities is attached as Exhibit B to the Dubbin Decl.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION OF STATE OF NEW MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

2

the capability, resources, and experience to oversee this complex litigation.  New Mexico SIC has successfully represented injured investors in securities class actions, and is willing and able to undertake the responsibilities involved in acting as lead plaintiff to guarantee the vigorous prosecution of the Action.  Accordingly, New Mexico SIC is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

New Mexico SIC has also demonstrated its adequacy through its selection of Labaton Sucharow as Lead Counsel on behalf of the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Labaton Sucharow is a nationally recognized securities class action law firm that has recovered billions of dollars for the benefit of injured investors, and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, New Mexico SIC requests that the Court appoint it Lead Plaintiff and otherwise grant its Motion.

## II.    FACTUAL BACKGROUND

Snap is a camera company that provides technology and social media services.  The Company develops mobile camera application products and services that allow users to send and receive photos, drawings, text, and videos.  Snap serves customers worldwide.

On March 2, 2017, the Company completed its IPO, issuing 200,000,000 shares and raising net proceeds of approximately $3.91 billion.  The registration statement and prospectus issued in connection with the IPO presented Snap as having a fast-growing and highly engaged user base primed for increasing monetization through advertising revenue.

Snap's true user metrics were very different, which the evidence strongly suggests was clear to Snap's management well before the IPO occurred.  It was

well known to the Executive Defendants, although not adequately disclosed to investors prior to the IPO, that Snap's principal competitor Facebook had successfully mimicked Snapchat's most popular features through its own Instagram "Stories" function and, by the time of the IPO, had eclipsed Snap's Daily Active Users ("DAU"), the metric which Snap touted as fundamental to its valuation.  These flaws were ultimately revealed to investors, after the IPO, by slowing growth figures throughout the Class Period as well as whistleblower allegations from former Snap employee Anthony Pompliano ("Pompliano"), who detailed Defendants' knowing misrepresentations of Snap's critical user engagement metrics, as well as severe deficiencies with the Company's internal controls.  These subsequent disclosures following the IPO revealed that Facebook was eviscerating Snap's customer base and Snap's user growth had effectively stalled, which was not previously disclosed to Snap investors.

On April 4, 2017, new details concerning Pompliano's whistleblower allegations against Snap emerged.  On this date, Business Insider reported that "[c]urrently redacted portions of Pompliano's lawsuit contain user metrics that he claims are different from what Snap told investors and the press ahead of its February IPO."  Following this news, the Company's stock price fell $1.65 per share, or 7.3 percent, from a close of $22.35 per share on April 3, 2017 to close at $20.70 per share on April 5, 2017.

On May 10, 2017, Snap announced that its DAUs increased only 5% quarter-over-quarter, from 158 million in Q4 2016.  Market commentators uniformly attributed Snap's slowing user growth to direct competition from Instagram.  For example, VentureBeat reported on May 10, 2017 that "Facebook's plan worked: Snapchat hits 166 million users, 34 million fewer than Instagram Stories."  On this news, the Company's stock price fell $4.93 per share, or roughly 21 percent, from a closing price of $22.98 on May 10, 2017, to close at $18.05 per share on May 11, 2017.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE OF NEW MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

4

Then, on June 7, 2017, it was reported that based on data from SensorTower, a firm that tracks app analytics, worldwide downloads of Snapchat for the months of April and May 2017 were down 22% from the year prior, confirming that the image of Snap as a rapidly-growing, soon-to-be profitable business was just a mirage.  In addition, a report issued by Nomura Instinet on this date noted that "By comparison, Instagram downloads have demonstrated YoY growth, suggesting that competitive pressures may be intensifying for Snap, challenging the platform's ability to attract and retain new users."  Following these disclosures, the Company's stock price fell $1.65 per share, or approximately 7.4 percent, from a prior close of $20.36 per share on June 6, 2017 to close at $18.85 per share on June 8, 2017.

On July 11, 2017, Morgan Stanley lowered its price target on Snap stock by 42 percent to $16 and downgraded Snap to equal-weight.  The report specifically tied its downgrade of Snap's stock to the fact that "Instagram competition is increasing."  The report stated that Morgan Stanley was "lowering [its] forward DAU estimates given this data," which it viewed as a "troubling directional trend[] which causes us to lower our DAU outlook."  Morgan Stanley's shocking downgrade was noted by market participants as signaling a significant change in the outlook of Snap stock.  For example, CNBC described Morgan Stanley's downgrade as "a rare rebuke by a firm that helped bring [Snap] public."  Following this disclosure, the price of Snap's common stock fell $1.52 per share, or approximately 8.9 percent, from a closing price of $16.99 on July 10, 2017, to close at $15.47 per share on July 11, 2017.

On August 10, 2017, Snap announced its second quarter results and yet again reported that growth in key user engagement metrics had been stagnant.  Specifically, the Company reported that "DAU grew from 143 million in Q2 2016 to 173 million in Q2 2017, an increase of 30.5 million or 21% year-over-year.  DAU increased 7.3 million or 4% quarter-over-quarter, from 166 million in Q1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION OF STATE OF NEW MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

5

2017." In response to Snap's continued disappointing growth in user engagement, Snap's stock price fell $1.94 per share, or approximately 14 percent, from a closing price of $13.77 on August 10, 2017, to close at $11.83 per share on August 11, 2017.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.   New Mexico SIC Should Be Appointed Lead Plaintiff

New Mexico SIC respectfully submits that it is the presumptively "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any qualified movant, and otherwise satisfies Rule 23's typicality and adequacy requirements.

#### 1.   The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l) and 15 U.S.C. § 77z-1(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).  First, the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --
> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION OF STATE OF NEW MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

6

1           (II)    that, not later than 60 days after the date on which the

2           notice is published, any member of the purported class may

3           move the court to serve as lead plaintiff of the purported class.

4  15 U.S.C. § 78u-4(a)(3)(A)(i) and 15 U.S.C. § 77z-1(a)(3)(A)(i).

5        Next, under the PSLRA, a court is to consider any motion made by class

6  members and appoint the movant that the court determines to be most capable of

7  adequately representing the interests of the class as lead plaintiff. Specifically, the

8  PSLRA provides that a court:

9           shall appoint as lead plaintiff the member or members of the

10          purported plaintiff class that the court determines to be most

11          capable of adequately representing the interests of class

12          members (. . . the "most adequate plaintiff") . . . .

13  15 U.S.C. § 78u-4(a)(3)(B)(i) and 15 U.S.C. § 77z-1(a)(3)(B)(i).

14        In adjudicating a lead plaintiff motion, a court shall adopt a presumption that

15  the "most adequate plaintiff" is the person who: (1) filed a complaint or made a

16  motion to serve as lead plaintiff; (2) has the largest financial interest in the relief

17  sought by the class; and (3) otherwise satisfies the requirements of Rule 23. *See* 15

18  U.S.C. § 78u-4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also In re*

19  *Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (discussing three-step

20  competitive process for selecting a lead plaintiff). This presumption "'may be

21  rebutted only upon proof . . . that the presumptively most adequate plaintiff [] will

22  not fairly and adequately protect the interests of the class'" or "is subject to unique

23  defenses that render such plaintiff incapable of adequately representing the class."

24  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); *see also*

25  *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

26  MDL No. 2672 CRB (JSC), 2016 WL 5930844, at *2 (N.D. Cal. Oct. 11, 2016).

27

28

1

**B.     New Mexico SIC Is the "Most Adequate Plaintiff"**

**1.     New Mexico SIC Satisfied the PSLRA's Procedural
Requirements**

New Mexico SIC filed this motion to serve as Lead Plaintiff in a timely

manner.  On January 10, 2019, this Court ordered the reopening of the lead

plaintiff appointment process, allowing 21 days—until January 31, 2019—for any

party to move for appointment as Lead Plaintiff.  *See* Dkt. 208.  New Mexico SIC

timely filed its motion within the required period.

**2.     New Mexico SIC Has the Largest Financial Interest in the
Outcome of the Action**

The PSLRA instructs the Court to adopt a rebuttable presumption that the

"most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest

financial interest in the relief sought by the class," so long as the movant

"otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also Richardson v.*

*TVIA, Inc*., No. C 06 06304-RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16,

2007) (discussing the PSLRA's lead plaintiff appointment process).

During the Class Period, New Mexico SIC suffered substantial losses of

***$1,068,313.90*** as a result of its transactions in Snap securities.  *See* Loss Analysis,

Dubbin Decl. Ex. B.  New Mexico SIC is presently unaware of any other movant

with a larger financial interest in the outcome of the Action.  Consequently, and

because it also satisfies Rule 23's typicality and adequacy requirements, New

Mexico SIC is entitled to the legal presumption that it is the most adequate

plaintiff.

**3.     New Mexico SIC Otherwise Satisfies Rule 23's Typicality
and Adequacy Requirements**

In addition to possessing the largest financial interest in the outcome of the

litigation, New Mexico SIC satisfies the applicable requirements of Rule 23.  *See*

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  MOTION OF STATE OF NEW
MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

8

With respect to class certification, Rule 23(a) requires that: (1) the class is so
numerous that joinder of all members is impracticable; (2) there are questions of
law or fact common to the class; (3) such claims are typical of those of the class;
and (4) the representative will fairly and adequately protect the interests of the
class.  *See* Fed. R. Civ. P. 23(a).  However, at the lead-plaintiff-selection stage, all
that is required is a preliminary showing that the lead plaintiff's claims are typical
and adequate.  *See, e.g.*, *Westley v. Oclaro, Inc.*, No. C-11-2448-EMC, 2011 WL
4079178, at *2 (N.D. Cal. Sept. 12, 2011) (noting that only a "preliminary
showing" of typicality and adequacy satisfies Rule 23 at the lead plaintiff stage).
Here, New Mexico SIC unquestionably satisfies both requirements.

> **(a)    New Mexico SIC's Claims Are Typical of Those of the Class**

The typicality requirement of Rule 23(a)(3) is satisfied when the
representative party "has suffered the same injuries as other class members as a
result of the same conduct by defendants and has claims based on the same legal
issues."  *Westley*, 2011 WL 4079178, at *2 (citation omitted).  Here, the claims
that New Mexico SIC asserts are typical of the claims of the other members of the
putative Class because, like all other Class members, New Mexico SIC:
(1) purchased Snap securities during the Class Period; (2) was adversely affected
by Defendants' allegedly false and misleading statements; and (3) suffered
damages as a result thereof.  *See Russo v. Finisar Corp.*, No. 5:CV 11-01252-EJD,
2011 WL 5117560, at *4 (N.D. Cal. Oct. 27, 2011) (discussing ways in which a
lead plaintiff movant can meet the typicality requirement).  Since the claims that
New Mexico SIC asserts are based on the same legal theories and arise "from the
same event or practice or course of conduct that gives rise to the claims of other
class members," typicality is satisfied.  *See* Newberg, *et al.*, Newberg On Class
Actions, §3:13 (4th ed. 2002).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE OF NEW
MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

9

**(b)     New Mexico SIC Will Fairly and Adequately Protect the Interests of the Class**

With respect to adequacy, a movant is an adequate class representative when it possesses common interests and an absence of conflict with fellow class members, and the movant's attorneys are qualified, experienced, and vigorously able to conduct the litigation. *See Westley*, 2011 WL 4079178, at *2 (explaining that, with regard to the adequacy requirement, a court must evaluate whether "(1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation") (citation omitted).

New Mexico SIC will fairly and adequately represent the interests of the proposed Class. No antagonism exists between New Mexico SIC's interests and those of the absent Class members; rather, the interests of New Mexico SIC, and Class members are squarely aligned. Moreover, because of its substantial financial stake in the litigation, Class members can be assured that New Mexico SIC has the incentive to vigorously represent the Class' interests.

In addition, New Mexico SIC has demonstrated its adequacy through its selection of Labaton Sucharow as Lead Counsel to represent the Class in this action. As discussed more fully below, Labaton Sucharow is highly experienced in prosecuting securities class actions vigorously and efficiently, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v) and 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II) and (B)(v). Accordingly, New Mexico SIC satisfies the adequacy requirement.

**4.     As A Sophisticated Institutional Investor, New Mexico SIC Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA**

In addition to satisfying the requirements of Rule 23, New Mexico SIC—a sophisticated institutional investor—is precisely the type of investor Congress

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE OF NEW MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

10

sought, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").  Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.  To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-03451-LHK, 2011 WL 566814, at *13 (N.D. Cal. Feb. 15, 2011) ("appoint[ing] an institutional investor, . . . comports with the PSLRA's goal to increase the likelihood that institutional investors would serve as lead plaintiffs"); *see also Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 WL 682882, at *3 (C.D. Cal. Mar. 2, 2012) (noting that "institutional investors [are] exactly the type of sophisticated market participants Congress intended to take on the role of lead plaintiff following the PSLRA's reforms") (citations omitted).  Here, New Mexico SIC is well suited to fulfill this Congressional intent.

Furthermore, courts in this District have regularly favored a single large institutional investor like New Mexico SIC as lead plaintiff.  *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1025 (N.D. Cal. 1999) (analyzing legislative history and noting "It seems clear that Congress intended a single, strong lead plaintiff to control counsel and the litigation"); *see also In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1112 (N.D. Cal. 2001) (single institutional investor with losses of $2.3 million appointed over competing

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE OF NEW MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

11

movants with aggregate losses of $14 million).   Here, New Mexico SIC is
precisely the type of lead plaintiff envisioned by Congress.  As a sophisticated
institutional investor, New Mexico SIC has the combined experience in legal and
financial matters that will substantially benefit the class.  New Mexico SIC also
understands the duties of a lead plaintiff pursuant to the PSLRA, is willing to
oversee the vigorous prosecution of the Action, and have pledged to "provid[e]
testimony at deposition and trial, if necessary."  *See* Certification, Dubbin Decl.
Ex. A.

New Mexico SIC's understanding of the responsibilities of a lead plaintiff is
based, in part, on its experience prosecuting securities class actions and its
demonstrated history of securing significant recoveries on behalf of defrauded
investors, which will benefit the Class.  *See In re Broadcom Corp. Sec. Litig.*, No.
06-cv-5036 (C.D. Cal.) (settlement of $160.5 million); and  *Eastwood Enters., LLC
v. WellCare Health Plans, Inc.*, No. 07-cv-1940 (M.D. Fla.) (settlement of $200
million).  Moreover, New Mexico SIC has the sophistication and resources
necessary to effectively litigate this matter and supervise Class counsel.
Accordingly, New Mexico SIC is the paradigmatic lead plaintiff as contemplated
by the PSLRA.

**C.     The Court Should Approve New Mexico SIC's Choice of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead
counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 78u-
4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v).  As such, this Court should not
disturb the lead plaintiff's choice of counsel unless necessary to "protect the
interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and 15 U.S.C. § 77z-
1(a)(3)(B)(iii)(II)(aa); *see also In re Cohen v. U.S.*, 586 F.3d 703, 712 (9th Cir.
2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district
court should generally defer to that choice.") (citing *In re Cendant Corp. Litig.*,
264 F.3d 201, 276 (3d Cir. 2001)); *Cavanaugh*, 306 F.3d at 733.  Courts should not

1    disturb the lead plaintiff's choice of counsel unless necessary to "protect the

2    interests of the plaintiff class."  H.R. Conf. Rep. No. 104-369, at 35 (1995),

3    *reprinted in* 1995 U.S.C.C.A.N. at 734; *see also Cavanaugh*, 306 F.3d at 734

4    ("Selecting a lawyer in whom a litigant has confidence is an important client

5    prerogative and we will not lightly infer that Congress meant to take away this

6    prerogative from securities plaintiffs.  And, indeed, it did not.  While the

7    appointment of counsel is made subject to the approval of the court, the Reform

8    Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

9        Here, New Mexico SIC has selected Labaton Sucharow, highly-qualified

10   counsel, to serve as Lead Counsel for the proposed Class.  Labaton Sucharow has

11   significant experience in prosecuting securities class actions and has excelled as

12   lead counsel in numerous landmark securities class actions throughout the United

13   States on behalf of defrauded investors.  Labaton Sucharow served as a lead

14   counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-

15   cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion

16   for injured investors and secured a $294.9 million recovery in *In re Bear Stearns

17   Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.),

18   in which it served as co-lead counsel.  In addition, Labaton Sucharow was a lead

19   counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-

20   5295 (C.D. Cal.), which achieved a settlement of $624 million—one of the largest

21   securities fraud settlements arising from the financial crisis of 2007 and 2008.

22   Labaton Sucharow presently serves as co-lead counsel in *In re Goldman Sachs

23   Group, Inc. Securities Litigation*, No. 10-cv-03461 (S.D.N.Y.), among other

24   significant investor class actions.  *See* Dubbin Decl., Ex. C.

25       Accordingly, the Court may be assured that by granting this Motion and

26   approving New Mexico SIC's selection of Labaton Sucharow as Lead Counsel, the

27   Class will receive the highest caliber of legal representation.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE OF NEW
MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

13

# **CONCLUSION**

For the foregoing reasons, New Mexico SIC respectfully requests that the Court: (1) appoint New Mexico SIC as Lead Plaintiff; (2) approve its selection of Labaton Sucharow as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED:  January 31, 2019                    Respectfully submitted,

_/s/Jeffrey A. Dubbin_

JEFFREY A. DUBBIN (SBN 287199)
jdubbin@labaton.com

**LABATON SUCHAROW LLP**
THOMAS A. DUBBS
tdubbs@labaton.com
CAROL C. VILLEGAS
cvillegas@labaton.com
LOUIS GOTTLIEB
lgottlieb@labaton.com
FRANCIS P. MCCONVILLE
fmcconville@labaton.com
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

_Counsel for State of New Mexico on behalf of New Mexico State Investment Council and Proposed Lead Counsel for the Class_

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF STATE OF NEW MEXICO ON BEHALF OF NEW MEXICO STATE INVESTMENT COUNCIL FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; CASE NO. 2:17-CV-03679-SVW-AGR

14