1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for the Putative Class and*
*Attorneys for Lead Plaintiff Movants*
*the Snap Shareholder Group*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SNAP INC.<br>SECURITIES LITIGATION<br><br><br><br><br><br><br><br>This Document Relates To: All Actions | Case No. 2:17-cv-03679-SVW-AGR<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION OF THE SNAP SHAREHOLDER GROUP FOR APPOINTMENT AS LEAD PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 4, 2019<br>Time: 1:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Stephen V. Wilson |

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ........................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

I.  PRELIMINARY STATEMENT ........................................................ 2

II. FACTUAL BACKGROUND ............................................................ 6

    1.  Relevant Procedural History ................................................ 6

    2.  Discovery Efforts To Date ................................................... 8

III. ARGUMENT ......................................................................... 11

    1.  The Snap Shareholder Group Satisfies the PSLRA's Procedural Requirements and Should Be Appointed Lead Plaintiff .................. 11

        A.  The Snap Shareholder Group Timely Moved for Appointment as Lead Plaintiff .................................. 11

        B.  The Snap Shareholder Group Has the Largest Financial Interest in the Relief Sought by the Class ................. 11

        C.  The Snap Shareholder Group Satisfies the Relevant Requirements of Rule 23 ....................................... 11

            i.   The Snap Shareholder Group's Claims Are Typical ..... 12

            ii.  The Snap Shareholder Group Is Adequate .................... 13

    2.  The Court Should Approve the Snap Shareholder Group's Selection of Counsel ...................................................... 17

    3.  In the Alternative, the Court Should Appoint the Snap Shareholder Group as Co-Lead Plaintiff and Kessler Topaz as Co-Lead Counsel .......................................................... 19

IV. CONCLUSION ...................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & Emp't Ret.*
   *Income Sec. Act (ERISA) Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009)...................................................................... 15

*Camp v. Qualcomm Inc.*,
   No. 18-CV-1208-AJB-BLM,
   2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ..................................................... 13

*Estakhrian v. Obenstine*,
   No. CV 11-3480 FMO,
   2017 WL 2661616 (C.D. Cal. June 20, 2017) ...............................................19-20

*In re Lucent Techs., Inc. Sec. Litig.*,
   221 F. Supp. 2d 472 (D.N.J. 2001) ...........................................................5, 20, 21

*Lusk v. Life Time Fitness, Inc.*,
   No. 15-1011 JRT/JJK,
   2015 WL 9858177 (D. Minn. July 10, 2015).........................................5, 19-20, 20

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
   No. 13-CV-05368-LHK,
   2014 WL 2604991 (N.D. Cal. June 10, 2014) ..................................................... 15

*In re Millennial Media, Inc. Sec. Litig.*,
   87 F. Supp. 3d 563 (S.D.N.Y. 2015)...............................................................19-20

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998)........................................................................... 19

*Pirelli Armstrong Tire Corp. Retiree Med.*
   *Benefits Tr. v. LaBranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004).................................................................5, 19, 20

*Sabbagh v. Cell Therapeutics, Inc.*,
   Nos. C10-414MJP, *et al.*,
   2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) ................................................. 15

*Shreves v. Xunlei Ltd.*,
    Nos. cv-15-04299-MWF (ASx), *et al.*,
    2015 WL 5446935 (C.D. Cal. Sept. 15, 2015)................................... 12, 13, 16, 17

*In re Snap Inc. Sec. Litig.*,
    No. 2:17-CV-03679-SVW-AGR,
    2018 WL 3816764 (C.D. Cal. Aug. 8, 2018) .......................................... 7

*In re Snap Inc. Sec. Litig.*,
    No. 2:17-CV-03679-SVW-AGR,
    2018 WL 2972528 (C.D. Cal. June 7, 2018) .......................................... 7

*In re Twitter Inc. Sec. Litig.*,
    326 F.R.D. 619 (N.D. Cal. 2018) ....................................................... 21

**Statutes**

15 U.S.C. § 77z-1(a) ............................................................................ *passim*

15 U.S.C. § 78u-4(a) ............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................ 13

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on or about March 4, 2019, at 1:30 p.m., before the Honorable Stephen V. Wilson, at the United States District Court for the Central District of California, located at Courtroom 10A of the First Street Courthouse, 350 W. 1st Street, Los Angeles, California, Lead Plaintiff movants Smilka Melgoza, as trustee of the Smilka Melgoza Trust U/A DTD 04/08/2014, Rediet Tilahun, Tony Ray Nelson, Rickey E. Butler, and Alan L. Dukes (collectively, the "Snap Shareholder Group") will respectfully move this Court for entry of an order, pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") appointing the Snap Shareholder Group as Lead Plaintiff and approving the Snap Shareholder Group's selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") to serve as Lead Counsel for the class.

This Motion is made on the grounds that the Snap Shareholder Group timely filed this Motion pursuant to the Court's January 10, 2019 Order reopening the Lead Plaintiff appointment process (ECF No. 208, the "Reopening Order") and is the "most adequate plaintiff" under the PSLRA. Specifically, the Snap Shareholder Group believes that it has the "largest financial interest" in the relief sought by the class in this litigation and also satisfies the applicable requirements of Federal Rule of Civil Procedure 23 ("Rule 23") because its claims are typical of other class members' claims and because it will fairly and adequately represent the interests of the class.

Given the unique nature of this motion, the Snap Shareholder Group respectfully requests that, should another movant claim a larger financial interest, the Court exercise its statutory discretion and appoint the Snap Shareholder Group as Co-Lead Plaintiff with the other movant and appoint Kessler Topaz as Co-Lead Counsel.[1]

---

[1] As the Court is aware, Kessler Topaz was previously appointed as Lead Counsel to represent the class in this litigation. *See* ECF No. 54 ("Lead Plaintiff Order").

The Motion is made based upon the accompanying Memorandum of Points and Authorities in Support Thereof, the Declaration of Sharan Nirmul (the "Nirmul Decl.") filed herewith, the pleadings and other filings in this litigation, and such other written or oral argument as may be permitted by the Court.  The Snap Shareholder Group respectfully requests oral argument.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  PRELIMINARY STATEMENT

Since Kessler Topaz was appointed as Lead Counsel, this securities class action has been proceeding expeditiously towards a (now vacated) March 2019 trial date.  The litigation was first filed on May 16, 2017, and asserts claims under the Securities Act and the Exchange Act against Snap Inc. ("Snap" or the "Company") and certain of Snap's current and former executive officers (collectively, "Defendants").   On September 18, 2017, consistent with the requirements of the PSLRA, the Court appointed Thomas DiBiase ("DiBiase") as Lead Plaintiff and Kessler Topaz as Lead Counsel.  *See* Lead Plaintiff Order.  Since their appointment, DiBiase and Kessler Topaz have diligently and effectively led this litigation—investigating and drafting a highly-detailed amended complaint based, in part, on confidential witness testimony developed by Lead Counsel, defeating Defendants' motions to dismiss and motion for interlocutory review, retaining and consulting with industry and damages experts, engaging in substantial discovery practice involving the production of more than 1.5 million pages of documents by Defendants and third parties, completing class certification briefing (ECF Nos. 114 & 163), and preparing for trial, including engaging a trial and jury consultant.  Unexpectedly, after filing his class certification motion, DiBiase was forced to withdraw his request to be appointed as a class representative after health issues made it apparent that he was no longer able to sit for a deposition or serve as a class representative at trial.  *See* EFC No. 118.  On January 10, 2019, the Court issued the Reopening Order and "allow[ed] 21 days—until January 31, 2019— for any party to move for appointment as Lead Plaintiff."  Reopening Order at 4.

Pursuant to the Reopening Order, the Snap Shareholder Group respectfully submits that it is the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff.  *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I) ("the court shall adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class [and] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure").  To the best of the Snap Shareholder Group's knowledge, its losses of approximately *$486,597* on a last-in, first-out ("LIFO") basis in connection with its transactions in Snap securities during the Class Period (March 2, 2017, through August 10, 2017) represents the largest known financial interest in the relief sought by the class.  *See* Nirmul Decl., Exs. A & B.

In addition to asserting the largest financial interest, the Snap Shareholder Group readily satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the class and because it will fairly and adequately represent fellow investors.  *See infra* Section III.1.C.  Indeed, the Snap Shareholder Group reflects a diverse cross-section of the investors that comprise the class, both geographically and demographically.  As set forth in greater detail in the Joint Declaration submitted herewith, the members of the Snap Shareholder Group fully understand the obligations the lead plaintiff owes to the class under the PSLRA and are willing and able to undertake these responsibilities to ensure the vigorous prosecution of this action.  *See* Nirmul Decl., Ex. C ("Joint Declaration").  The Joint Declaration also provides details about each group member's background, why the members decided to seek appointment with each other, why the Snap Shareholder Group selected Kessler Topaz as Lead Counsel, how the group intends on functioning, protocols implemented by the group to communicate with and without counsel, the group's goals of reinitiating the prosecution of the class's claims as soon as possible without duplication of work, and each member's commitment to participating in the discovery process and seeing this case through its conclusion.  *See* Joint Decl., ¶¶ 2-8; 11-20.  The Snap Shareholder

Group is already functioning as a cohesive unit and its members convened two joint conference calls prior to filing this motion to discuss, among other things, several of the topics listed above. *See id.*, ¶ 12.[2]

No other movant is prepared to effectively and efficiently resume the prosecution of this case and, as a result, none can satisfy Rule 23's adequacy requirement. In fact, no other movant has even contacted Kessler Topaz to discuss a plan for managing this litigation without disruption or duplication of efforts, including marshalling discovery (which thus far has involved Lead Counsel's review and synthesis of more than 1.5 million pages of documents produced to date and extensive data analytics on Snap's various user metrics), preparing for over a dozen depositions, the first of which were scheduled to begin days before the Court entered a stay in this action, resuming negotiations with Defendants and third parties regarding numerous production deficiencies on outstanding document requests and subpoenas, pursuing the pending discovery matters before Magistrate Judge Rosenberg with regards to document production, continuing to develop the analysis of the industry and damages experts who have been working with Lead Counsel for many months, all of which involve complex legal and factual issues, and continuing the work with Lead Counsel's trial consultants.

Finally, by retaining Kessler Topaz to serve as Lead Counsel for the class, the Snap Shareholder Group has not only cemented its adequacy but has selected experienced and competent counsel that has already zealously and effectively represented the class as Court-appointed Lead Counsel in this litigation. Accordingly, the Snap Shareholder Group's selection of Kessler Topaz as Lead Counsel should be

---

[2]    If appointed as Lead Plaintiff, the Snap Shareholder Group intends on seeking the appointment of Donald R. Allen ("Allen") and Shawn B. Dandridge ("Dandridge")—two highly qualified and committed class members who sought appointment as proposed class representatives in this litigation and who were deposed, produced documents, and responded to interrogatories—as class representatives in connection with the Snap Shareholder Group's filing of a motion for class certification.

approved. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

Finally, the Snap Shareholder Group recognizes that the matter before the Court is not the typical case where all movants are appearing at the outset of an action with a fundamentally uniform basis of knowledge about the litigation. Rather, unlike any other movant before the Court, the Snap Shareholder Group's proposed Lead Counsel has expended millions of dollars in attorney time and litigation expenses for the benefit of the class. The Snap Shareholder Group strongly believes that the class would be harmed if this institutional knowledge was lost or needed to be relearned at the class's expense. Accordingly, should another movant assert a greater financial interest in this litigation than the Snap Shareholder Group (and otherwise satisfy the requirements of the PSLRA), the Snap Shareholder Group respectfully requests that the Court—in order to protect the interests of the class—should exercise its statutory discretion, as other courts have previously done, and appoint the Snap Shareholder Group as Co-Lead Plaintiff and appoint Kessler Topaz as Co-Lead Counsel. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004) (citing "the Court's acknowledged discretion in the lead plaintiff appointment process" and concluding that "a co-lead plaintiff structure is appropriate [and] will help to ensure that adequate resources and experience are available to the prospective class in the prosecution of this action") (citation omitted); *Lusk v. Life Time Fitness, Inc.*, No. 15-1011 JRT/JJK, 2015 WL 9858177, at *2 (D. Minn. July 10, 2015) (appointing co-lead plaintiffs where doing so "would best protect the [class's] interests"); *cf. In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 488 (D.N.J. 2001) (appointing co-lead plaintiff structure consisting of previously-appointed lead plaintiff and new lead plaintiff movant asserting the largest financial interest). There would be no benefit to the class by vacating the substantial work Kessler Topaz has undertaken to advance this litigation at this late stage. Accordingly, should

circumstances warrant, the appointment of the Snap Shareholder Group as Co-Lead Plaintiff and Kessler Topaz as Co-Lead Counsel would be in the best interests of the class.

## II.    FACTUAL BACKGROUND

### 1.    Relevant Procedural History

As the Court is aware, the instant litigation has rapidly unfolded since it was commenced.

**Appointment of Lead Plaintiff:** On September 18, 2017, the Court appointed DiBiase as Lead Plaintiff and Kessler Topaz as Lead Counsel to represent the class. *See* Lead Plaintiff Order.  In appointing DiBiase, the Court rejected competing movant Shinu Gupta's motion for appointment as lead plaintiff—finding that Gupta was subject to unique defenses that "undermine 'the ability of [Mr. Gupta] to assert the fraud-on-the-market presumption of reliance, thereby rendering [him] inadequate." *Id.* at 4 (alterations in original).  The other competing movants had previously withdrawn their motions.  *See* ECF Nos. 27, 33, & 36.

**Amended Complaint and Motion to Dismiss Ruling:** On November 1, 2017, DiBiase and Kessler Topaz filed the Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws, which asserts claims against Defendants under the Securities Act and the Exchange Act.  *See* ECF No. 67 (the "Amended Complaint").  Prior to the filing of the Amended Complaint, Kessler Topaz conducted an extensive factual investigation, which included numerous interviews with former Snap employees, including two former employees who are quoted extensively throughout the Amended Complaint.  *See* ECF 201-1, ¶ 3; Nirmul Decl., ¶ 2. Specifically, the Amended Complaint pleads in significant detail that Snap's executive management was alerted to internal concerns regarding Facebook (and its Instagram platform) and its impact on Snap's user growth and engagement as well as Snap's ability to compete for advertisers and monetize Snap's platform.  According to confidential witness testimony, these concerns were downplayed by Snap's executive

management and resulted in internal sales projections and assumptions regarding the Company's ability to grow and monetize its platform that were not realistic.[3]   The existential threat that Instagram posed to Snap's growth was a known risk that was downplayed in the offering materials for Snap's March 3, 2017 IPO, and the misleading disclosures in the IPO materials regarding the true competitive risks facing Snap are the basic tenet of this litigation.

On June 7, 2018, the Court denied Defendants' motions to dismiss the Amended Complaint in full.  *See In re Snap Inc. Sec. Litig.*, No. 2:17-CV-03679-SVW-AGR, ECF No. 92, 2018 WL 2972528 (C.D. Cal. June 7, 2018) ("MTD Order").  Defendants thereafter filed a motion to certify the MTD Order for interlocutory appeal, which the Court denied on August 8, 2018.  *See In re Snap Inc. Sec. Litig.*, No. 2:17-CV-03679-SVW-AGR, ECF No. 108, 2018 WL 3816764, at *3 (C.D. Cal. Aug. 8, 2018) (denying motion and stating that "the Defendants have not met their heavy burden of showing a difference of opinion or controlling question of law, which—if addressed—would avoid protracted and expensive litigation").  Defendants filed their answer to the Amended Complaint on June 29, 2018.  *See* ECF No. 102.  On August 8, 2018, the Court scheduled this matter for trial beginning on March 12, 2019.  *See* ECF No. 109.

At the time the Amended Complaint was filed, Snap was not subject to any governmental investigation regarding its IPO disclosures.  However, on November 13, 2018, Snap confirmed that it had responded to subpoenas from the U.S. Department of Justice and the U.S. Securities and Exchange Commission—presumably relying on the work performed by Kessler Topaz on behalf of the class.  Indeed, Snap stated that it believed "that these regulators are investigating issues related to the previously disclosed allegations ***asserted in the class action*** about our IPO disclosures."[4]

---

[3]     The two former employees were scheduled to be deposed in this case but their depositions were taken off calendar in connection with the partial stay of the case.

[4]     *See, e.g.*, Tim Bradshaw, *Snap reveals IPO probe from US regulators*, FINANCIAL TIMES, Nov. 13, 2018 (emphasis added).

1
2
3
4
5
6
7
8
9
10
11
12

**Class Certification Motion:** On August 30, 2018, DiBiase and Kessler Topaz filed a motion seeking to certify this case as a class action and the appointment of DiBiase, Allen, and Dandridge as class representatives. *See* ECF No. 114. On September 28, 2018, DiBiase filed a notice informing the Court that, due to unexpected and serious health issues that precluded him from sitting for his deposition or serving as a class representative at trial, he intended to withdraw his application to serve as a class representative. *See* EFC No. 118. While DiBiase was prepared to "remain as a Lead Plaintiff until Mr. Allen and Mr. Dandridge," who have been deposed, "[we]re added as named plaintiffs, and until Mr. Allen and Mr. Dandridge [we]re appointed by the Court as Class representatives," *id.* at 2, the Court instead reopened the lead plaintiff process and announced that it "will allow 21 days—until January 31, 2019— for any party to move for appointment as Lead Plaintiff." Reopening Order at 4.

13
14
15

Prior to the issuance of the Court's Reopening Order, the parties completed briefing in connection with the motion for class certification and were prepared for oral argument to be heard on January 7, 2019.[5]

16

### 2.   Discovery Efforts To Date

17
18
19
20
21
22
23
24
25
26

Since their appointment on September 18, 2017, DiBiase and Kessler Topaz have engaged in substantial discovery efforts. In addition to responding to Defendants' document and interrogatory requests and producing documents (as well as related motion practice, *see, e.g.*, ECF No. 172), DiBiase and Kessler Topaz have served extensive discovery requests on Defendants and other relevant third parties. First, on June 29, 2018, DiBiase and Kessler Topaz served forty-nine unique document requests on Defendants. *See* Nirmul Decl., ¶ 6. Since that time, the parties have met and conferred extensively regarding Defendants' document production. *See id*. Defendants' document production was also the subject of a motion to compel, which sought from Defendants additional data sources, search terms, and custodians. *See*

27
28

---

[5]      On November 26, 2018, the Court issued a partial stay of the case and vacated the trial date and all pre-trial deadlines. *See* Reopening Order at 2.

ECF No. 136.  After a nearly three-hour in-person hearing, Magistrate Judge Rosenberg granted that motion in large part.  *See* ECF No. 137.  The in-person hearing was followed by two telephonic hearings on issues emanating from the initial hearing and a number of discovery issues that have been previously raised with Magistrate Judge Rosenberg that remain unresolved and will very likely require further Court intervention.  *See* Nirmul Decl., ¶ 7.

In response to these efforts, Defendants have, to date, produced more than 1.5 million pages of documents.  *See id*., ¶ 9.  DiBiase and Kessler Topaz also received over 26,000 pages of documents from Snap's underwriters.  *See id*.  A substantial portion of these documents, including documents identified as most likely to contain relevant information through technology-assisted review, has been reviewed by staff and contract attorneys and synthesized for Kessler Topaz's litigation team.  *See id*., ¶ 11.  Defendants had represented that they expect to substantially complete document production by no later than mid-January 2019, although the stay of the litigation and the reopening of the lead plaintiff selection process has suspended the parties' efforts to meet and confer on any outstanding deficiencies.  *See id*., ¶ 10.

Second, DiBiase and Kessler Topaz noticed four depositions of current and former Snap employees, of the approximately fifteen depositions that were contemplated and for which Kessler Topaz has already undertaken significant preparation, as well as served a comprehensive notice of deposition on Snap under Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)").  *See id*., ¶ 12.  The parties met and conferred extensively on the topics on which Snap would produce witnesses and had reached substantial agreement on the scope of these depositions. *See id*., ¶ 13. These depositions were set to begin at the end of November, with depositions of three former Snap employees and four Rule 30(b)(6) corporate designees confirmed.  *See id*. Notably, on October 25, 2018, following a telephonic hearing, Magistrate Judge Rosenberg denied Defendants' request to enjoin the Rule 30(b)(6) depositions as well as two depositions of former Snap employees in light of DiBiase's withdrawal.

See ECF No. 146.  While these depositions were taken off the calendar, the Snap
Shareholder Group intends on pursuing these depositions if appointed Lead Plaintiff.
*See* Nirmul Decl., ¶ 13.

Third, DiBiase and Kessler Topaz served fifteen document subpoenas and four
deposition subpoenas on third parties, including Ernst & Young, Jared Leto,
PriceWaterhouseCoopers, Oath, Sensor Tower, Anthony Pompliano, and numerous
other former Snap employees.  *See id.*, ¶ 8.  In response to these subpoenas, DiBiase
and Kessler Topaz received more than 1,800 pages of documents but further
negotiations on the sufficiency of these productions have since been suspended because
of the partial stay.  *See id.*, ¶ 9.

Fourth, in anticipation of expert disclosures—which were previously due on
December 12, 2018 (*see* ECF No. 177)—DiBiase and Kessler Topaz retained two
merits experts and one damages expert.  Each expert has done substantial work
reviewing case materials and preparing for the previous December 12, 2018 disclosure
deadline.  *See* Nirmul Decl., ¶ 14.  DiBiase and Kessler Topaz also retained a trial
consultant, who has similarly engaged in substantial efforts to assist Kessler Topaz in
preparing this case for trial.  *See id.*, ¶ 15.

Finally, as Defendants previously disclosed to the Court, the parties had engaged
a mediator and were preparing to mediate this case in accordance with the Court's
January 4, 2019 deadline when the issues concerning DiBiase arose.  *See id.*, ¶ 17.

In sum, Kessler Topaz has invested more than 20,000 attorney hours (or more
than $7.5 million in lodestar) and incurred hundreds of thousands of dollars in expenses
prosecuting this case.  *See id.*, ¶ 20.

Kessler Topaz remains committed to aggressively litigating this case on an
expedited basis.

## III.  ARGUMENT

### 1.  The Snap Shareholder Group Satisfies the PSLRA's Procedural Requirements and Should Be Appointed Lead Plaintiff

The PSLRA's lead plaintiff selection process provides that "the court shall adopt a presumption that the most adequate plaintiff . . . is the person or ***group of persons*** that . . . has the largest financial interest in the relief sought by the class [and] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I) (emphasis added).

Here, the Snap Shareholder Group is the "most adequate plaintiff" because it: (i) timely moved for appointment as Lead Plaintiff; (ii) possesses the "largest financial interest in the relief sought by the class"; and (iii) "otherwise satisfies the requirements of Rule 23" for purposes of this Motion.  *Id.*

### A.  The Snap Shareholder Group Timely Moved for Appointment as Lead Plaintiff

Pursuant to the Reopening Order, the Court has "allow[ed] 21 days—until January 31, 2019—for any party to move for appointment as Lead Plaintiff." Reopening Order at 4.  Accordingly, the Snap Shareholder Group's motion is timely.

### B.  The Snap Shareholder Group Has the Largest Financial Interest in the Relief Sought by the Class

Here, the Snap Shareholder Group suffered losses of approximately ***$486,597*** under a LIFO analysis in connection with its Class Period purchases of Snap securities. *See* Nirmul Decl., Exs. A & B.  To the best of the Snap Shareholder Group's knowledge, there are no other lead plaintiff movants asserting a larger financial interest in this litigation.

### C.  The Snap Shareholder Group Satisfies the Relevant Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of

1   the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy.

2   *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

3       Rule 23(a) provides that a party may serve as a class representative if: (i) the

4   class is so numerous that joinder of all members is impracticable; (ii) there are

5   questions of law or fact common to the class; (iii) the claims or defenses of the

6   representative parties are typical of the claims or defenses of the class; and (iv) the

7   representative parties will fairly and adequately protect the interests of the class.

8   However, a movant need only make a preliminary showing that it meets the typicality

9   and adequacy requirements during the lead plaintiff selection process. *See Shreves v.*

10  *Xunlei Ltd.*, Nos. cv-15-04299-MWF (ASx), *et al.*, 2015 WL 5446935, at *3 (C.D. Cal.

11  Sept. 15, 2015) ("the Court's crucial inquiry is whether [the movant] also satisfies the

12  'typicality' and 'adequacy' requirements under Federal Rule of Civil Procedure 23")

13  (citation omitted).

14               **i.**     **The Snap Shareholder Group's Claims Are Typical**

15       The typicality requirement is satisfied where the movant's claims are "similar to

16  all class members." *Id.*  The Snap Shareholder Group satisfies the typicality

17  requirement because, just like all other proposed class members, the Snap Shareholder

18  Group seeks to recover the losses it suffered on its Snap investments as a result of

19  Defendants' misrepresentations and omissions.  Moreover, ***no member*** of the Snap

20  Shareholder Group purchased ***any*** shares after the May 10, 2017 corrective

21  disclosure—which the Court has already held would be disqualifying for a lead

22  plaintiff movant. *See* Lead Plaintiff Order at 5 ("post-disclosure purchases can defeat

23  the typicality requirement for class certification when plaintiffs made a

24  disproportionately large percentage of then purchases post-disclosure").  Thus, the

25  Snap Shareholder Group's claims arise from the same conduct as those of the other

26  class members.  Accordingly, the Snap Shareholder Group satisfies Rule 23's typicality

27  requirement. *See Xunlei*, 2015 WL 5446935, at *3.

28

### ii.   The Snap Shareholder Group Is Adequate

The adequacy element of Rule 23 requires that the Lead Plaintiff "fairly and adequately protect the interests of the class."  Rule 23(a).  This element is satisfied where: (i) the movant is "willing[] to vigorously represent the class's claims"; (ii) "the movant's interests do not conflict with those of the class"; and (iii) "the movant's counsel is capable and qualified." *Xunlei*, 2015 WL 5446935, at *3 (citation omitted).

Here, there are no conflicts between the Snap Shareholder Group and the class as each seeks to recover losses caused by Defendants' false and misleading statements. Moreover, the members of the Snap Shareholder Group have submitted certifications affirmatively demonstrating their willingness to pursue this litigation for the benefit of the class. *See* Nirmul Decl., Exs. A & C.

To further demonstrate its adequacy, the Snap Shareholder Group has also submitted herewith a Joint Declaration providing background information about the members and detailing its members' motivations for seeking appointment together, their rationale for selecting Kessler Topaz as Lead Counsel, and steps they have implemented to ensure that the class's claims will be prosecuted zealously. *See* Nirmul Decl., Ex. C; *see also* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) (allowing for the appointment of a group); *Camp v. Qualcomm Inc.,* No. 18-CV-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (rejecting movant for, *inter alia*, failing to provide "basic details about himself, including where he lives or who he is specifically in his motion"). Specifically, the Joint Declaration establishes, *inter alia*, that:

- Based on their respective financial losses, their commitment to ensuring efficiency of representation, and the avoidance of unnecessary waste, after substantial consideration, the Snap Shareholder Group's members each independently determined that they could maximize the potential recovery for the class by jointly seeking appointment as lead plaintiff

1    and by proposing Kessler Topaz as Lead Counsel (Joint
2    Decl., ¶¶ 7-8);

3    •    Before filing a motion, members of the Snap Shareholder
4         Group held two joint conference calls to discuss, among
5         other things, the procedural history of the litigation, seeking
6         appointment in this case, the benefits of joint decision-
7         making, and the benefits of retaining Kessler Topaz to
8         continue representing the class as Lead Counsel (*Id.*, ¶¶ 12-
9         13);

10   •    The Snap Shareholder Group's members acknowledge that
11        they were under no obligation to select Kessler Topaz as
12        Lead Counsel; however, the Snap Shareholder Group
13        reiterates that its decision to seek appointment as Lead
14        Plaintiff is motivated, in part, by its belief that Kessler
15        Topaz's reappointment as Lead Counsel is in the best
16        interests of the class given that Kessler Topaz is, based on
17        the firm's prosecution of the matter to date, capable of
18        aggressively litigating this case without unnecessary
19        expense, delay, or duplication of work (*Id.*, ¶¶ 7; 11; 18);

20   •    The Snap Shareholder Group's members have explicitly
21        acknowledged and accepted their duties and obligations to
22        all class members if selected as Lead Plaintiff and are
23        committed to seeking the largest possible recovery for the
24        class (*Id.*, ¶¶ 2-7; 20);

25   •    The Snap Shareholder Group's members are committed to
26        overseeing counsel to ensure that the case is efficiently
27        litigated in the class's best interests (*Id.*, ¶¶ 7; 18-19);

28

- The members of the Snap Shareholder Group acknowledge that this action may proceed quickly and are committed to producing relevant documents and sitting for a deposition in a timely manner (*Id.*, ¶ 14);

- The Snap Shareholder Group's members are committed to collaboratively working together to manage this litigation on behalf of the proposed class and have implemented protocols for communicating with each other (with and without counsel present) as necessary, excluding on short notice and for resolving any disputes (if any arise) (*Id.*, ¶¶ 16-17); and

- The members of the Snap Shareholder Group have reaffirmed their commitment to lead by consensus and is driven by their diverse experiences and their shared fiduciary duty to the class (*Id.*, ¶¶ 17; 20).

The specificity of the Joint Declaration confirms the Snap Shareholder Group's adequacy and its members' ability to operate as a functioning, cohesive group separate from their counsel, and meets the evidentiary threshold required by courts to appoint a group under the PSLRA. *See Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *5 (N.D. Cal. June 10, 2014) ("Courts have found that such joint declarations are demonstrative of a movant group's adequacy as lead plaintiff.") (citation omitted); *In re Bank of Am. Corp. Sec., Derivative & Emp't Ret. Income Sec. Act (ERISA) Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing group and noting "declarations demonstrating cooperative efforts among" the group's members); *Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP, *et al.*, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010) (the "declarations address every concern raised by courts who have questioned the ability of previously-unrelated group[s]" to represent the class).

Moreover, the Snap Shareholder Group has demonstrated its adequacy through its selection of Kessler Topaz to serve as Lead Counsel for the class.  As discussed below, Kessler Topaz is highly qualified and experienced in the area of securities class action litigation and, as the current Court-appointed Lead Counsel, has zealously represented the class in this litigation to date.

The Snap Shareholder Group is the only movant capable of satisfying Rule 23's adequacy requirement.  As explained by the court in *Xunlei*, "[a] court should inquire about the movant's interests in the outcome of the case and their ***willingness to vigorously represent the class's claims*** to determine if a preliminary showing of adequacy" has been made.  2015 WL 5446935, at *3 (emphasis added) (citation omitted).  Consistent with *Xunlei*, this Court has held that "[t]he criteria courts must consider for choosing a Lead Plaintiff are not as absolute as [argued by counsel]." Lead Plaintiff Order at 6.  Rather, "[t]he PSLRA asks the Court to consider whether a plaintiff will fairly and adequately represent the class as the case moves forward." *Id.* Thus, evidence that movants will protect the class ***going forward*** is inextricably intertwined with a showing of adequacy.  *See id.*

Here, the Snap Shareholder Group's selection of Kessler Topaz and the active engagement of its members demonstrated via the Joint Declaration establishes their commitment to vigorously representing the class's interests.  Given the unique procedural posture of this case, a movant's failure to conduct basic diligence into how this case could be transitioned to new counsel without significant duplication of costs (ultimately borne by the class) demonstrates the absence of acting in the class's interests and shows no willingness to protect the class "as the case moves forward". *See* Lead Plaintiff Order at 6.  Here, no other potential movants contacted Kessler Topaz to coordinate efforts, discuss a transition plan, or otherwise inquire how the litigation could be prepared for trial without significant duplication of costs or delay. Such a lack of interest in how to actually litigate a case that was (until the recent stay) months away from trial and has incurred millions of dollars in attorney time and

expenses illustrates that no competing movant has a sufficient understanding of the steps needed to immediately assume leadership without unduly burdening the class. Willful ignorance of these critical facts undermines any argument that competing movants have the ability to act in the class's best interests. *See id.*; *Xunlei*, 2015 WL 5446935, at *3.

In contrast, the Snap Shareholder Group has been fully advised of the developments in this litigation, is prepared to engage in discovery, and has selected counsel able to continue prosecuting the case without any delay or duplication of efforts. *See* Joint Decl., ¶¶ 9-11; 14. The Snap Shareholder Group is the only movant who has provided actual evidence of their commitment to protect the class as the case progresses towards trial. As such, other than the Snap Shareholder Group, no movant can make the necessary showing of adequacy given the unique facts before the Court. *See* Lead Plaintiff Order at 6; *Xunlei*, 2015 WL 5446935, at *3.

### 2.    The Court Should Approve the Snap Shareholder Group's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to the Court's approval. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."); *see also* Lead Plaintiff Order at 7 (outlining lead plaintiff's authority to select lead counsel).

Here, the Snap Shareholder Group has selected and retained Kessler Topaz to serve as Lead Counsel for the class. As the Court has previously noted, "Kessler Topaz specialized in class action litigation and has prosecuted numerous other securities fraud class action." *See id.*; *see also* Nirmul Decl., Ex. D. The firm is actively engaged in complex litigation, and, in addition to the work Kessler Topaz has done to advance the claims in this litigation, the firm has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re*

*Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities and Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery). Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high profile securities class actions, including: *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.); *In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9449 (KSH) (CLW) (D.N.J.); *Baker v. SeaWorld Entertainment, Inc.*, No. 14-cv-2129 (MMA) (AGR) (S.D. Cal.); and *Washtenaw County Employees' Retirement System v. Walgreen Co.*, No. 15-cv-3187 (SJC) (MMR) (N.D. Ill.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held before the Honorable Shira A. Scheindlin in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr., *see In re Southern Peru Copper Corp. Shareholder Derivative Litigation*, No. 961-CS (Del. Ch.), *aff'd Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion), and has taken numerous other actions to either verdict or the eve of trial. *See* Nirmul Decl., Ex. D. Kessler Topaz's trial experience is another critical fact motivating the Snap Shareholder Group's motion and selection of Kessler Topaz given that this case was quickly approaching trial before the partial stay (and will quickly advance toward trial after the stay is lifted).

Moreover, Kessler Topaz's ability to represent the class is conclusively demonstrated through the quality of representation it has already provided the class as

the current Court-appointed Lead Counsel.  Indeed, as discussed herein, Kessler Topaz has diligently led the class past Defendants' motions to dismiss, has engaged in substantial discovery efforts, and has advanced the litigation toward trial.

Thus, the Court can be assured that the class will continue to receive the highest caliber of legal representation should it approve the Snap Shareholder Group's selection of Kessler Topaz as Lead Counsel for the class.

### 3.    In the Alternative, the Court Should Appoint the Snap Shareholder Group as Co-Lead Plaintiff and Kessler Topaz as Co-Lead Counsel

If the Court ultimately determines that another movant asserts a larger financial interest than the Snap Shareholder Group and is otherwise qualified, the Snap Shareholder Group respectfully requests that—given the unique circumstances of this litigation—the Court should exercise its statutory discretion and appoint the Snap Shareholder Group as Co-Lead Plaintiff and appoint Kessler Topaz as Co-Lead Counsel.  The use of a co-lead structure here would inure to the benefit of the class by ensuring the continuity of the class's representation, avoiding the loss of significant knowledge developed by Kessler Topaz throughout the litigation, and the minimization of needless duplication of effort and expense.

As explained by the court in *In re Oxford Health Plans, Inc. Securities Litigation*, "the PSLRA expressly contemplates the appointment of more than one plaintiff" and "[b]ecause the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on *a case-by-case basis*, taking account of the *unique circumstances* of each case."  182 F.R.D. 42, 49 (S.D.N.Y. 1998) (emphasis added).  To this end, courts throughout the country have concluded that under certain circumstances "the interests of a proposed class will be served best by the appointment of co-lead plaintiffs or multiple lead plaintiffs who did not move initially as a group."  *Pirelli*, 229 F.R.D. at 419 (collecting cases); *see also In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015) ("courts routinely adopt a co-lead plaintiff structure where it 'best serve[s]' the

1   interests of the proposed class given 'the circumstances of th[e] particular case'")

2   (quoting *Oxford*, 182 F.R.D. at 45) (alterations in original); *Lusk*, 2015 WL 9858177,

3   at *2 (appointing co-lead plaintiffs where doing so would "best protect the interests"

4   of the class); *cf. Estakhrian v. Obenstine*, No. CV 11-3480 FMO (CWx), 2017 WL

5   2661616, at *7 (C.D. Cal. June 20, 2017) (noting "court's duty . . . to protect class

6   members") (internal quotation and citation omitted).  In doing so, these courts have

7   expressly noted their "discretion in the lead plaintiff appointment process," *Pirelli*, 229

8   F.R.D. at 420, as well as their "interest in managing and maintaining the orderly

9   progression of the case."  *Lusk*, 2015 WL 9858177 at *2 (appointing two movants as

10  co-lead plaintiffs because such a structure would "deter any interruption in the

11  litigation arising out of a conflict of interest challenge to class representation"); *see

12  also Lucent*, 221 F. Supp. 2d at 488 (pairing the existing lead plaintiff with a new

13  movant asserting the largest financial interest when subsequently-filed securities class

14  actions were consolidated with the existing class action).

15          The foregoing authorities confirm the Court's ability to appoint co-lead plaintiffs

16  where the class's interests will be protected.  This case is exactly the situation where a

17  co-lead structure is needed as this is not the typical lead plaintiff motion process

18  occurring at the outset of litigation where no movant can claim specialized knowledge

19  that would unquestionably enhance the representation of the class.  Rather, in the

20  sixteen months since the previous lead plaintiff was appointed, Kessler Topaz—as the

21  Court-appointed Lead Counsel—substantially advanced the interests of the class and

22  has developed institutional knowledge regarding the facts and legal theories at issue in

23  this case.  These efforts cannot be understated given that Kessler Topaz has expended

24  significant time:

25      • Investigating and drafting a highly detailed complaint which

26          included identifying and developing critical confidential

27          witness testimony;

28

- defeating Defendants' motions to dismiss (and a subsequent motion for interlocutory appeal);
- retaining and consulting with industry and damages experts in advance of class certification and trial;
- engaging in substantial discovery practice involving the preparation of more than forty document requests, the service of fifteen document subpoenas and four deposition subpoenas on third parties, the production of more than 1.5 million pages of documents by Defendants, and the briefing and argument of related discovery motions;
- completing class certification briefing (including defending the deposition of two proposed class representatives); and
- beginning preparations for the previously scheduled March 2019 trial.

Indeed, Kessler Topaz has devoted more than 20,000 attorney hours (or approximately $7.5 million in lodestar) and hundreds of thousands of dollars in expenses, *see* Nirmul Decl., ¶ 20, prosecuting the class's claims in this litigation—no other candidate before the Court can make a similar showing of its commitment.

The adoption of a co-lead structure here guarantees that the knowledge developed by Kessler Topaz will not simply be tossed aside if another movant is appointed as the lone lead plaintiff, and avoids the needless delay and duplication of effort and expense that would accompany the appointment of a lead plaintiff and a lead counsel starting from scratch with no material knowledge of the facts in this case. *Cf. Lucent*, 221 F. Supp. 2d at 488 (utilizing co-lead plaintiff structure consisting of previously-appointed lead plaintiff and newly-appointed lead plaintiff movant); *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018) (addressing issue at class certification and noting that "courts in this district and circuit have appointed co-class counsel in PSLRA cases").

## IV.   CONCLUSION

For the reasons set forth above, the Snap Shareholder Group respectfully requests that the Court grant its Motion in its entirety.

DATED: January 31, 2019

Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*/s/ Jennifer L. Joost*
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

– and –

SHARAN NIRMUL (*Pro Hac Vice*)
snirmul@ktmc.com
NAUMON A. AMJED (*Pro Hac Vice*)
namjed@ktmc.com
RYAN T. DEGNAN (*Pro Hac Vice*)
rdegnan@ktmc.com
ETHAN J. BARLIEB (*Pro Hac Vice*)
ebarlieb@ktmc.com
NATHAN A. HASIUK (*Pro Hac Vice*)
nhasiuk@ktmc.com
JONATHAN F. NEUMANN (*Pro Hac Vice*)
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610)-667-7056

*Lead Counsel for the Putative Class and*
*Attorneys for Lead Plaintiff Movants*
*the Snap Shareholder Group*

**THE SCHALL LAW FIRM**
BRIAN SCHALL (Bar No. 290685)
brian@schallfirm.com
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192

1

2

*Additional Counsel for the*
*Snap Shareholder Group*

3

**ROSMAN & GERMAIN LLP**
DANIEL L. GERMAIN (Bar No. 143334)
germain@lalawyer.com
16311 Ventura Boulevard, Suite 1200
Encino, CA 91436
Telephone: (818) 788-0877
Facsimile: (818) 788-0885

4

5

6

7

*Liaison Counsel for the Putative Class*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28