**KESSLER TOPAZ
MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for the Putative Class and
Attorneys for Lead Plaintiff Movants
the Snap Shareholder Group*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SNAP INC. SECURITIES LITIGATION | Case No. 2:17-cv-03679-SVW-AGR |
| | **CLASS ACTION** |
| | **SNAP SHAREHOLDER GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO COMPETING MOTIONS** |
| | Date: March 4, 2019 Time: 1:30 p.m. Courtroom: 10A Judge: Hon. Stephen V. Wilson |
| This Document Relates To: All Actions | |

SNAP SHAREHOLDER GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND IN OPPOSITION TO COMPETING MOTIONS
CASE NO.: 2:17-CV-03679-SVW-AGR

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .................................................... 1

II.   ARGUMENT ........................................................................ 7

    1.   The Snap Shareholder Group Has Affirmatively Demonstrated Its Adequacy and Commitment to Represent the Class ...................... 8

    2.   The Competing Movants Cannot Satisfy the PSLRA's Requirements and Their Motions Should Be Denied ........................ 10

        A.   No Competing Movant Has Demonstrated Its Ability to Adequately Represent the Class ................................. 10

        B.   The Court Has Previously Found Gupta Atypical .................. 11

        C.   New Mexico Is an Atypical "In-and-Out" Trader That Must Be Disqualified under *Erickson* ...................................... 13

        D.   The Remaining Movants Do Not Assert a Greater Financial Interest than the Snap Shareholder Group ............... 16

        E.   The Remaining Movants Also Cannot Meet Rule 23's Requirements ........................................... 16

            i.   Ghosh Has Failed to Adequately Oversee Counsel ....... 16

            ii.  The Stewart-Khussainov-Weisman Group Is Not Cohesive, Cannot Adequately Oversee Counsel, and Has Submitted an Inaccurate Certification.............. 18

    3.   In the Alternative, the Court Should Appoint the Snap Shareholder Group as Co-Lead Plaintiff and Kessler Topaz as Co-Lead Counsel ................................................. 19

III.  CONCLUSION ............................................................. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) .............................................................4, 14-15, 15

*Camp v. Qualcomm Inc.*,
   18-cv-1208-AJB-BLM,
   2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ........................................................ 7, 19

*In re Cavanaugh v. U.S. Dist. Court for the N. Dist. of Cal.*,
   306 F.3d 726 (9th Cir. 2002) ...............................................................................*passim*

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................... 1, 8

*In re Compuware Sec. Litig.*,
   386 F. Supp. 2d 913 (E.D. Mich. 2005) ................................................................ 15

*Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*,
   No. 13 C 2111,
   2013 WL 3934243 (N.D. Ill. July 30, 2013).............................................. 13, 14, 15

*Doshi v. Gen. Cable*,
   No. 2:17-025 (WOB-CJS),
   2017 WL 5178673 (E.D. Ky. Nov. 7, 2017)........................................4, 13, 14, 15

*Erickson v. Snap, Inc.*,
   No. 2:17-cv-03679-SVW-AGR,
   2017 U.S. Dist. LEXIS 221050 (C.D. Cal. Sep. 18, 2017)............................*passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ................................................................................... 15

*Goodman v. AssetMark, Inc.*,
   53 F. Supp. 3d 583 (E.D.N.Y. 2014)..............................................................12-13

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ..........................................................................4, 13

*IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*,
    326 F.R.D. 513 (D. Minn. 2018) ............................................................................. 12

*In re IMAX Sec. Litig.*,
    272 F.R.D. 138 (S.D.N.Y. 2010)..........................................................3, 3-4, 14, 15

*Kasdan v. Cty. of L.A.*,
    No. CV 12-06793 GAF (JEMx),
    2014 WL 6669354 (C.D. Cal. Nov. 24, 2014)....................................................... 3, 12

*In re Lucent Techs., Inc. Sec. Litig.*,
    221 F. Supp. 2d 472 (D.N.J. 2001) ........................................................................ 20

*Lusk v. Life Time Fitness, Inc.*,
    No. 15-1911,
    2015 WL 9858177 (D. Minn. July 10, 2015)................................................... 15, 20

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
    No. 13-CV-05368-LHK,
    2014 WL 2604991 (N.D. Cal. June 10, 2014) .......................................9, 10, 11, 18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*
    *v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004)............................................................................ 7, 20

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund*
    *v. Arbitron, Inc.*,
    278 F.R.D. 335 (S.D.N.Y. 2011)............................................................................ 5, 17

*Sabbagh v. Cell Therapeutics, Inc.*,
    Nos. C10-414MJP, *et al.*,
    2010 WL 3064427 (W.D. Wash. Aug. 2, 2010) ....................................................... 9

*In re Safeguard Scis.*,
    216 F.R.D. 577 (E.D. Pa. 2003) .............................................................................. 19

*Shreves v. Xunlei Ltd.*,
    Nos. CV-15-04288-MWF (ASx), *et al.*,
    2015 WL 5446935 (C.D. Cal. Sept. 15, 2015).................................................... 2, 10

**Statutes**

15 U.S.C. § 77z-1(a) ................................................................................................ 1, 8

15 U.S.C. § 78u-4(a) ........................................................................................... 1, 8, 10

**Other Authorities**

Fed R. Civ. P. 11 ....................................................................................................... 17

Lead Plaintiff movants Smilka Melgoza, as trustee of the Smilka Melgoza Trust U/A DTD 04/08/2014, Rediet Tilahun, Tony Ray Nelson, Rickey E. Butler, and Alan L. Dukes (collectively, the "Snap Shareholder Group") respectfully submit this memorandum of points and authorities in further support of their motion for appointment as Lead Plaintiff [ECF No. 219, the "Motion"] and in opposition to competing motions filed by: Shinu Gupta [ECF No. 215]; State of New Mexico on behalf of New Mexico State Investment Counsel [ECF No. 214, "New Mexico"]; Sharmili Ghosh [ECF No. 209]; and Irland James Stewart, Sanzhar Khussainov, and Howard Weisman [ECF No. 222, the "Stewart-Khussainov-Weisman Group"].[1]

## I.   PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires courts to appoint as lead plaintiff the movant or group of movants asserting the largest financial interest in the litigation who *also* satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") *and* is not subject to unique defenses. *Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 U.S. Dist. LEXIS 221050, at *10 (C.D. Cal. Sep. 18, 2017) (rejecting movant that "may have the largest financial interest," but "is subject to unique defenses"); *see also* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). *Erickson* accords with case law making clear that the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001). Instead, "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both

---

[1]   Unless otherwise indicated, all emphases are added and internal citations are omitted. Movants David Sprung and Emad Sayage have either withdrawn their motion or filed a non-opposition to competing motions. *See* ECF Nos. 234 ("Sprung Withdrawal"); 235 ("Sayage Non-Opposition").

1   willing to serve and satisfies the requirements of Rule 23." *In re Cavanaugh v. U.S.*

2   *Dist. Court for the N. Dist. of Cal.*, 306 F.3d 726, 729-32 (9th Cir. 2002).

3        With losses of approximately ***$486,597***, the Snap Shareholder Group is the ***only***

4   movant that satisfies Rule 23's adequacy and typicality requirements, and thus, is the

5   ***only*** movant entitled to appointment under the PSLRA. *See id.* As detailed in its Joint

6   Declaration [ECF No. 219-4]—the Snap Shareholder Group fully understands the

7   obligations a lead plaintiff owes to the class and has already taken steps to ensure that

8   the prosecution of the action will commence immediately upon the group's

9   appointment. Specifically, the Snap Shareholder Group has demonstrated its

10  commitment to protecting the class by selecting Kessler Topaz Meltzer & Check, LLP

11  ("Kessler Topaz") to continue serving as Lead Counsel—thereby avoiding

12  unnecessary disruption, delay, duplication of efforts and expenses, and the loss of

13  institutional knowledge developed during this litigation by Kessler Topaz. Tellingly,

14  no other movant has proposed any plan for resuming the prosecution of this action, let

15  alone contacted Kessler Topaz to meaningfully coordinate efforts or inquire how the

16  litigation could be prepared for trial. *See Shreves v. Xunlei Ltd.*, Nos. CV-15-04288-

17  MWF (ASx), *et al.*, 2015 WL 5446935, at *3 (C.D. Cal. Sept. 15, 2015) ("[a] court

18  should inquire about the movant's interests in the outcome of the case and their

19  ***willingness to vigorously represent the class's claims*** to determine if a preliminary

20  showing of adequacy" has been made). Given this litigation's unique posture—which

21  is closer to its conclusion than its inception—offering a litigation plan is not a trivial

22  matter but, instead, is essential to an adequacy inquiry. *See Erickson*, 2017 U.S. Dist.

23  LEXIS 221050, at *10 ("[t]he PSLRA asks the Court to consider whether a plaintiff

24  will fairly and adequately represent the class ***as the case moves forward***" when

25  assessing adequacy). Failing to address this critical issue renders each of the

26  competing movants unable to meet Rule 23's adequacy element. *See id.*

27

28

1
2
3

In addition to the competing movants' failure to take the necessary steps to adequately represent the class, each competing movant also suffers from additional adequacy and typicality deficiencies requiring the denial of their motions.

4
5
6
7
8
9
10
11
12
13
14
15
16

**Gupta Has Already Been Disqualified**: This Court has already made its views on Gupta clear. *See id.* at *6-10 (disqualifying Gupta). Nothing has changed since Gupta was rejected ***by this Court in this case***. The same atypical trading pattern that required Gupta's disqualification in the *Erickson* opinion is present today. *Compare id.* at *7 (noting argument that "[m]ore than 60% of Gupta's Snap stock was purchased after the exact revelation of alleged fraud that Gupta pled in his own complaint") *with* ECF No. 215-3 (setting forth Gupta's Snap transactions). Gupta inexplicably renews his request for appointment in blatant disregard of *Erickson*'s holding and the law of the case doctrine. *See Kasdan v. Cty. of L.A.*, No. CV 12-06793 GAF (JEMx), 2014 WL 6669354, at *3 (C.D. Cal. Nov. 24, 2014) ("Under the 'law of the case' doctrine, a court is 'generally precluded from reconsidering an issue that has already been decided by the same court.'"). Gupta's motion should once again be denied. *See Erickson*, 2017 U.S. Dist. LEXIS 221050, at *6-10.

17
18
19
20
21
22
23
24
25
26
27

**New Mexico's Trading Exposes It to Unique Defenses**: Like Gupta, New Mexico's trading presents unique defenses that preclude its appointment. *See id.* (disqualifying movant with trading exposing it to unique defenses). Here, New Mexico is an "in-and-out" trader that sold ***all*** of its holdings in Snap stock prior to the end of the Class Period. *See* ECF No. 217-2 (showing that New Mexico sold all Snap shares by July 28, 2017). Because New Mexico did not hold any Snap stock at the time of the final corrective event on August 10, 2017, *see* Amended Complaint, ¶¶ 278-79, it "cannot establish loss causation" for every corrective disclosure in this litigation. *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155 (S.D.N.Y. 2010). "[A]t a minimum, [New Mexico] is subject to unique defenses which may threaten to become the focus of the litigation" and undermine its ability to certify this litigation as a class.

28

1
2
3

*Id.* (denying class certification where proposed representative failed to retain shares through all corrective disclosures); *see also Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

  The risks to the class from New Mexico's appointment as the sole lead plaintiff are significant.  In addition to not having standing to cover all corrective disclosures, should the Court ultimately determine that intra-Class Period partial disclosures are not actionable, the class would be left without a representative plaintiff with standing and force a third round of lead plaintiff motions.  *See Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011) (disqualifying movant because "if the district court later finds that the [earlier] announcement . . . does not constitute a disclosure of fraud, none of the [movant's] losses would qualify as proximately linked to the alleged fraud in this case").  Moreover, any claim by New Mexico that it is not atypical or subject to unique defenses because its shares were sold after some (but not the final) corrective disclosure is of no moment.  Recent case law confirms that "in-and-out" traders, even ones selling after pled corrective disclosures like New Mexico, are not appropriate lead plaintiffs.  *See Doshi v. Gen. Cable*, No. 2:17-025 (WOB-CJS), 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017).  Critically, there is no requirement at this early stage to prove a defense in order to reject a movant—only to show a degree of likelihood that a unique defense might play a significant role at trial.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (holding that a plaintiff "fails to satisfy the typicality requirement" if "it is predictable that a major focus of the litigation will be on a defense unique to him").  As with Gupta, "[t]here is no reason to subject the class to [New Mexico's] unique defenses when a non-conflicted candidate for Lead Plaintiff [the Snap Shareholder Group] is also before the Court." *Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10.

26
27
28

  In contrast to Gupta and New Mexico, the Snap Shareholder Group does not present any unique trading issues as several of its members purchased Snap stock

before the first corrective disclosure and retained shares through the end of the Class Period.  *See* ECF No. 219-2.

**The Remaining Movants Do Not Assert a Greater Financial Interest than the Snap Shareholder Group and Suffer from Additional Defects**: The remaining movants—Ghosh and the Stewart-Khussainov-Weisman Group—assert a smaller financial interest than the Snap Shareholder Group, and each suffers from additional defects which would independently require their disqualification even if they asserted a larger financial interest than the Snap Shareholder Group.  Specifically:

- **Ghosh**, along with Stewart and Weisman (addressed *infra*) plagiarized the Amended Complaint in this litigation—including statements attributed to confidential witnesses.[2]  The uncontroverted record before the Court establishes that Ghosh's counsel ***never spoke*** with the confidential witnesses cited in the Plagiarized Complaint and likely have no idea who they are.  *See* ECF Nos. 201-2 (redline comparison of the Amended Complaint and the Plagiarized Complaint); 201-1, ¶¶ 3-6 (Declaration of Sharan Nirmul confirming that no counsel or investigators contacted the confidential witnesses on behalf of Ghosh, Stewart, and Weisman).  In addition to failing to conduct any (let alone a reasonable) inquiry, *see* Federal Rule of Civil Procedure 11 ("Rule 11"), Ghosh's counsel likely cannot identify the confidential witnesses in discovery if asked to do so.  *See Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron*, *Inc.*, 278 F.R.D. 335, 341 (S.D.N.Y. 2011) ("where a party has attempted to satisfy the pleading requirements of the PSLRA 'by 'showcasing' statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are . . . .'").  Ghosh's reckless approach to this case and

---

[2]    *See Ghosh v. Snap Inc.*, No. 2:18-cv-09587-SVW-AGR, ECF No. 1 (C.D. Cal. filed Nov. 13, 2018) (the "Plagiarized Complaint").

her lack of oversight of counsel undermines any claim she makes about her adequacy.  *See Cavanaugh*, 306 F.3d at 733 ("the court may consider whether the plaintiff's decision to select that lawyer casts doubt on his ability to handle the responsibilities of lead plaintiff"); *Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10 (assessing adequacy based on ability to protect the class).

- Like Ghosh, two of the **Stewart-Khussainov-Weisman Group**'s members (Stewart and Weisman) filed the Plagiarized Complaint and cannot meet Rule 23's adequacy requirement.  *See Cavanaugh*, 306 F.3d at 733; *Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10.  Additionally, there are serious questions regarding the Stewart-Khussainov-Weisman Group's cohesiveness considering that this is now its *fourth* iteration.  The group originally consisted of Stewart, Khussainov, Weisman, and Wu Chen Yueh Chiao [ECF No. 21], before shrinking to just Stewart and Weisman [ECF No. 192], then briefly joining Ghosh with Stewart and Weisman to file the Plagiarized Complaint, and now remerges with Khussainov alongside Stewart and Weisman [ECF No. 222]  The ever-shifting composition of the group does not bode well for its ability to prosecute this case in a cohesive manner.  *See Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10.[3]  Separately, Khussainov's sworn certification [ECF No. 224-1] is inaccurate and purports to report trading that is outside of the daily trading range for Snap stock.  *See* Supplemental Declaration of Sharan Nirmul in

---

[3]     The Stewart-Khussainov-Weisman Group argues that the Court "should limit its consideration of potential Lead Plaintiffs to putative Class members who initially sought appointment on the original motion deadline."  ECF No. 223 at 7; *see also* ECF No. 215-1 at 9 (Gupta: requesting the court "grant[] priority to movants who timely moved originally").  The Court has implicitly rejected these requests in "allow[ing] 21 days—until January 31, 2019—for *any party* to move for appointment as Lead Plaintiff."  ECF No. 208 at 4.

Support of the Motion of the Snap Shareholder Group for Appointment as Lead Plaintiff ("Nirmul Supp. Decl."), Ex. A.  The court in *Camp v. Qualcomm Inc.*, recently rejected a movant for, *inter alia*, identical out-of-range trading issues and concluded that such a movant could not meet Rule 23's requirements.  No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (rejecting movant where certification included stock purchased at a "price allegedly [] not within the daily low or high trading prices").

Given the adequacy and typicality issues plaguing the competing movants and/or their inability to claim the largest financial interest, the Snap Shareholder Group respectfully submits that it is the presumptive Lead Plaintiff and requests that the Court grant its Motion in full.[4]

## II.  ARGUMENT

Under the PSLRA's lead plaintiff selection process, a movant is only entitled to appointment if it asserts the largest financial interest in the litigation, satisfies the adequacy and typicality requirements of Rule 23, *and* is not subject to unique defenses. *See Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10 (rejecting movant that "may have the largest financial interest," but "is subject to unique defenses"); *Cavanaugh*, 306

---

[4]    If the Court were to determine that the Snap Shareholder Group is not the presumptively most adequate, the Snap Shareholder Group respectfully submits that— given the unique circumstances of this case—the class would be best served by the appointment of the Snap Shareholder Group as Co-Lead Plaintiff and Kessler Topaz as Co-Lead Counsel.  As set forth in its Motion and in greater detail below, the Snap Shareholder Group believes that the use of a co-lead structure would benefit the class by, among other things, minimizing the duplication of effort and expense already incurred in this litigation and preventing the institutional knowledge accrued by Kessler Topaz from being wasted.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004) (citing "the Court's acknowledged discretion in the lead plaintiff appointment process" and concluding that "a co-lead plaintiff structure is appropriate [and] will help to ensure that adequate resources and experience are available to the prospective class in the prosecution of this action").

1    F.3d at 732 (holding that a lead plaintiff must also "satisf[y] the typicality and adequacy

2    requirements [before] he is entitled to lead plaintiff status").  Accordingly, a movant's

3    financial interest is only the starting point under the PSLRA's analysis.  *See Erickson*,

4    2017 U.S. Dist. LEXIS 221050, at *6 ("The PSLRA 'does not permit courts simply to

5    'presume' that the movant with 'the largest financial interest in the relief sought by the

6    class' satisfies the typicality and adequacy requirements") (quoting *Cendant*, 264 F.3d

7    at 264).  As such, a movant seeking appointment that is unable to meet Rule 23's

8    adequacy and typicality requirements cannot be appointed regardless of its claimed

9    financial stake.  *See Erickson*, 2017 U.S. Dist. LEXIS 221050, at *5-6 ("[i]f the

10   plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the

11   court must repeat the inquiry, this time considering the plaintiff with the next-largest

12   financial stake, until it finds a plaintiff who is both willing to serve and satisfies the

13   requirements of Rule 23") (quoting *Cavanaugh*, 306 F.3d at 729-32) (alteration in

14   original); *Cendant*, 264 F.3d at 267 ("If (for any reason) the court determines that the

15   movant with the largest losses cannot make a threshold showing of typicality or

16   adequacy, then the court should . . . disqualify that movant from serving as lead

17   plaintiff.").  The Snap Shareholder Group is the ***only*** movant that meets every element

18   for appointment under the PSLRA.  *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-

19   4(a)(3)(B)(iii)(I); *see also Erickson*, 2017 U.S. Dist. LEXIS 221050, at *5-6.

20   **1.    The Snap Shareholder Group Has Affirmatively Demonstrated Its
21          Adequacy and Commitment to Represent the Class**

22   The Snap Shareholder Group is the only movant before the Court that has

23   established its adequacy by providing evidence of its ability to zealously and

24   effectively represent the class.  *See Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10.

25   Here, the Snap Shareholder Group's Joint Declaration and conduct to date

26   affirmatively demonstrates its members' commitment and ability to work as a cohesive

27   group to prosecute this litigation.  *See* ECF No. 219-4.  Specifically, the Joint

Declaration reaffirms the Snap Shareholder Group's willingness to fulfil its obligations as a lead plaintiff, including overseeing counsel, participating in the discovery process, maximizing the recovery for the entire class, and shepherding this litigation through its conclusion.  *See id.*  The Snap Shareholder Group's adequacy is conclusively established under the PSLRA.  *See, e.g.*, *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *5 (N.D. Cal. June 10, 2014) (holding that joint declarations demonstrate a group's adequacy); *Sabbagh v. Cell Therapeutics, Inc.*, Nos. C10-414MJP, *et al.*, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010) ("declarations address every concern raised by courts who have questioned the ability of previously-unrelated group[s]" to represent the class).

Moreover, the Snap Shareholder Group is the only movant before the Court that has affirmatively demonstrated that it is fully aware of the developments in this litigation, is prepared to engage promptly in the discovery process, and has selected counsel that is capable of resuming the prosecution of this litigation without unnecessary delay or duplication of efforts and expenses.  *See* ECF No. 219-4, ¶¶ 9-11; 13-14; 18-20; *see also Fusion-io*, 2014 WL 2604991, at *5 ("The test for adequacy asks whether . . . the class representative and his counsel will 'prosecute the action vigorously on behalf of the class.'").  The Snap Shareholder Group has acted to protect the class by retaining Kessler Topaz—the Court-appointed Lead Counsel that has already expended more than 20,000 attorney hours and hundreds of thousands of dollars in out-of-pocket expenses to advance the class's interest—for the purpose of minimizing unnecessary delay, duplication, expense, and loss of the substantial institutional knowledge developed through the prosecution of this litigation to date.[5]

---

[5]     In addition to selecting Kessler Topaz, the Snap Shareholder Group intends to advance the interests of the class by seeking the appointment of Donald R. Allen and Shawn B. Dandridge—two highly qualified and committed class members who previously sought appointment as proposed class representatives in this litigation and who were deposed, produced documents, and responded to interrogatories—as class representatives in connection with the filing of its motion for class certification.  To

The Snap Shareholder Group has demonstrated that it "will fairly and adequately represent the class as the case moves forward." *Erickson*, 2017 U.S. Dist. LEXIS 221050, at \*10; *see also Xunlei*, 2015 WL 5446935, at \*3 ("[a] court should inquire about the movant's . . . willingness to vigorously represent the class's claims to determine if a preliminary showing of adequacy" has been made).

Finally, no "proof" exists to rebut the Snap Shareholder Group's presumptive status as the most adequate plaintiff under the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *Cavanaugh*, 306 F.3d at 741 (same).  Accordingly, the Snap Shareholder Group is entitled to appointment as Lead Plaintiff pursuant to the PSLRA.

> ## 2. The Competing Movants Cannot Satisfy the PSLRA's Requirements and Their Motions Should Be Denied
>
> ### A. No Competing Movant Has Demonstrated Its Ability to Adequately Represent the Class

In stark contrast to evidence presented by the Snap Shareholder Group, none of the competing movants has established their ability to effectively and efficiently resume this case upon appointment.  As a result, none of the competing movants can satisfy Rule 23's adequacy requirement and no competing movant is entitled to appointment as Lead Plaintiff under the PSLRA.  *See Erickson*, 2017 U.S. Dist. LEXIS 221050, at \*10; *Fusion-io*, 2014 WL 2604991, at \*5.

Here, no competing movant has articulated any plan for how the prosecution of this case would be transitioned from Kessler Topaz to its proposed lead counsel in a manner that minimizes duplication of efforts and expenses (ultimately borne by the class).  Indeed, none of the competing movants approached Kessler Topaz to develop a plan for the orderly transition of this case prior to the filing of its lead plaintiff motion

---

this end, Allen and Dandridge participated in the Snap Shareholder Group's two pre-motion conference calls.  *See* ECF No. 219-4, ¶ 13.

1  and, despite the Snap Shareholder Group flagging this issue in its Motion, no movant

2  has subsequently approached the Snap Shareholder Group to meaningfully discuss how

3  this litigation could be prepared for trial without significant disruption.[6]  Failure to take

4  these obvious steps is inexplicable and demonstrates the absence of any real interest in

5  "prosecut[ing] the action vigorously on behalf of the class."  *See Fusion-io*, 2014 WL

6  2604991, at *5 (holding that willingness to "vigorously" represent the class is a part of

7  "*[t]he test* for adequacy").   The record before the Court precludes a finding of the

8  competing movants' adequacy.  In addition to this common deficiency, each competing

9  movant is subject to additional defects (discussed below) that prevents its appointment

10  as Lead Plaintiff.

### B.   The Court Has Previously Found Gupta Atypical

12      The Court has already rejected Gupta.  *Erickson*, 2017 U.S. Dist. LEXIS 221050,

13  at *10.   As the Court is aware, "Gupta significantly increased his purchase of Snap

14  stock by purchasing 150,000 shares—out of his total 250,000 shares—after news

15  surfaced [on May 10, 2017] questioning the strength of the Company's daily active

16  user growth"—demonstrating that "[m]ore than 60% of Gupta's Snap stock was

17  purchased after the exact revelation of alleged fraud that Gupta pled in his own

18  complaint."  *Id.* at *7.  Based on this record, the Court concluded that Gupta "is subject

19  to unique defenses" and that "[t]here is no reason to subject the class to these unique

20  defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court."

21  *Id.* at *10; *see also id.* at *8 (citing *GAMCO Invs., Inc. v. Vivendi, S.A.*, 917 F. Supp.

22  2d 246, 261 (S.D.N.Y. 2013), and *Faris v. Longtop Fin. Techs. Ltd.*, Nos. 11 Civ.

23  3658(SAS), *et al.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011)).

---

[6]      The Stewart-Khussainov-Weisman Group purportedly instructed its counsel to "prosecute this action in an efficient, cost-effective manner."  *See* ECF No. 224-2, ¶ 7. In an inauspicious beginning to the Stewart-Khussainov-Weisman Group's leadership of this action, their directive is seemingly being ignored as its counsel has made no overtures to Kessler Topaz about how to actually litigate this case efficiently.

Nothing has changed.  The Court's earlier findings are controlling and Gupta remains an unsuitable representative.  First, *Erickson* firmly establishes ***this*** Court's view on the inadequacy of movants who make significant purchases after corrective disclosures.  Thus, any citation by Gupta to out-of-circuit or non-controlling case law is wholly irrelevant to the matter before ***this*** Court.  Gupta has already made his arguments.

Second, Gupta never moved for reconsideration of this Court's ruling and is barred under the law of the case doctrine from relitigating his adequacy given that the facts surrounding Gupta's transactions are identical to when *Erickson* was issued.  Indeed, "[u]nder the 'law of the case' doctrine, a court is 'generally precluded from reconsidering an issue that has already been decided by the same court.'"  *Kasdan*, 2014 WL 6669354, at *3) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997)).  "The doctrine is intended to aid 'the efficient operation of court affairs' and '***maintain consistency*** during the course of a single lawsuit.'"  *Id.*  Courts have discretion to depart from the doctrine only if: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result."  *Id.*  Gupta has not articulated any basis for concluding that the Court's ruling was "clearly erroneous," would be altered by new evidence, or "an intervening change in the law has occurred."  Gupta's disagreement with the Court's opinion is insufficient to compel a different result.  *See id.*; *cf. IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 528 (D. Minn. 2018) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (alteration in original) (citing *Ariz. v. Cal.*, 460 U.S. 605, 618 (1983)); *Goodman v. AssetMark, Inc.*, 53 F. Supp. 3d 583, 585-86 (E.D.N.Y. 2014) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle

for it again"). Gupta remains an atypical representative and must (again) be disqualified. *See Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10.

### C. New Mexico Is an Atypical "In-and-Out" Trader That Must Be Disqualified under *Erickson*

*Erickson* establishes this Court's unwillingness to saddle the class with a lead plaintiff movant with problematic trading who, in turn, would expose all investors to the movant's unique defenses. *See id*. *Erickson*'s reasoning applies with equal force to New Mexico and requires its disqualification.

New Mexico is subject to unique defenses based on its status as an "in-and-out" trader that completely divested its holdings in Snap stock weeks before the final corrective disclosure in this case. *See Doshi,* 2017 WL 5178673, at *4; *Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 WL 3934243, at *5 (N.D. Ill. July 30, 2013) (movant that sold shares after some but prior to the final corrective disclosure is "unable to satisfy the Rule 23 requirements necessary for a lead Plaintiff"). Moreover, the Snap Shareholder Group is not required to prove that this defense will ultimately prevail and, instead, need only show that it "it is predictable" that the unique defense might play a significant role at trial in order for the Court to reject New Mexico as inadequate. *Hanon*, 976 F.2d at 509; *see also Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10.

New Mexico properly recognizes that the Class Period ends on August 10, 2017, following Snap's announcement that growth in key user metrics had been stagnant—resulting in a 14% decline in Snap's stock price between August 10, 2017, and August 11, 2017. *See* ECF 216 at 5-6. However, New Mexico sold ***all*** of its Snap holdings by July 28, 2017—weeks before the final corrective disclosure. *See* ECF Nos. 217-1 (New Mexico's PSLRA certification); 217-2 (New Mexico's loss chart). Accordingly, New Mexico did not own a single share of Snap stock at the final corrective disclosure

on August 10, 2017.  *See* Amended Complaint, ¶ 278 ("This disclosure revealed the relevant truth . . . ."); ECF No. 216 at 5-6.

New Mexico's trading renders it an "in-and-out" trader that "cannot establish loss causation" for all pled corrective disclosures in this case and, "at a minimum, [New Mexico] is subject to unique defenses which may threaten to become the focus of the litigation." *IMAX*, 272 F.R.D. at 155.

Any effort by New Mexico to salvage its motion by arguing that its sales were made after some (but not every) partial corrective should be rejected.  The court's analysis in *Doshi* is instructive.  In *Doshi*, the court disqualified an institutional investor, on the basis that it was subject to unique defenses, where the investor sold all of its shares *after* some corrective disclosures *but* completely exited its position *prior* to the final corrective event.  *See* 2017 WL 5178673, at *4.  As explained by *Doshi*, a movant selling all shares before the end of the class period (even if the sales came after earlier corrective disclosures) "would be subject to a standing defense and would have no incentive to pursue the claims based on that subsequent disclosure."  *Id.* Accordingly, movants with New Mexico's trading are "not an appropriate lead plaintiff."  *See id.*  The *Navistar* court reached a similar conclusion and found that a lead plaintiff movant who sold all shares after one corrective disclosure but before the end of the class period "*would be unable* to satisfy the Rule 23 requirements necessary for a lead Plaintiff."  2013 WL 3934243, at *5 ("It is undisputed that after the [first disclosure], and before the [end of the class period], [movant] sold all of its Navistar stock").  *Navistar*'s unambiguous holding is based on the court's conclusion that "in-and-out" traders like New Mexico will "face a unique defense unlike most other Plaintiffs [and] may face a motion to dismiss based on a lack of standing since [New Mexico] suffered no injury relating to the" final corrective disclosure in this case.  2013 WL 3934243, at *5; *see also FalconStor*, 277 F.R.D. at 240 ("[I]f the district court later finds that the [series of partial corrective disclosures] does not constitute a

disclosure of fraud, none of [New Mexico's] losses would qualify as proximately linked to the alleged fraud in this case.").

Unlike the Snap Investor Group's members, several of whom held shares through the end of the Class Period and across *all* corrective disclosures, New Mexico's appointment as the sole lead plaintiff exposes the class to the risk that it may be later disqualified and the Court would be required to appoint a third lead plaintiff. *See IMAX*, 272 F.R.D. at 155 (denying class certification, rejecting proposed class representative, and reopening lead plaintiff selection process where proposed class representative did not hold shares at the end of the class period); *FalconStor*, 277 F.R.D. at 240 ("the Court is concerned that if the [movant], as lead plaintiff, is unable to prove loss causation and is found to lack standing, the entire case could be dismissed"); *In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 920 (E.D. Mich. 2005) (granting summary judgment for defendants where the lead plaintiff sold its securities prior to the date the alleged fraud was found to have been revealed to the public).

New Mexico's trading deficiencies are particularly acute given the late stage of this litigation and the fact that class certification briefing will resume immediately after the partial stay is lifted.  New Mexico's motion as the sole lead plaintiff creates an unacceptable (and unnecessary) level of risk to the class.  New Mexico's motion should be denied.  *See Erickson*, 2017 U.S. Dist. LEXIS 221050, at *10; *Doshi,* 2017 WL 5178673, at *4; *Navistar*, 2013 WL 3934243, at *5; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009) (reversing class certification involving representatives who were "in-and-out" traders).[7]

---

[7] Given these risks, the Snap Shareholder Group should, at a minimum, be appointed as Co-Lead Plaintiff given that members of the group held stock through the final corrective disclosure.  *See, e.g., Lusk v. Life Time Fitness, Inc.*, No. 15-1911 JRT/JJK, 2015 WL 9858177, at *2 (D. Minn. July 10, 2015) (appointing co-lead plaintiffs where doing so "would best protect the [class's] interests" given the one movant's "possible conflict of interest defense which may well become manifest at the class certification stage of this litigation").

**D.     The Remaining Movants Do Not Assert a Greater Financial Interest than the Snap Shareholder Group**

In addition to failing to demonstrate their ability to adequately represent the class, *see supra* at Section II.2.A, the remaining movants should be rejected because they do not assert a larger financial interest than the Snap Shareholder Group:

| MOVANT | LOSSES |
| --- | --- |
| Snap Shareholder Group | $486,597 (ECF No. 219 at 11) |
| Ghosh | $344,978 (ECF No. 209-1 at 6) |
| Stewart-Khussainov-Weisman Group | $339,994 (ECF No. 223 at 10-11) |
| ~~Sprung~~ (*see* Sprung Withdrawal) | ~~$329,827 (ECF No. 213-2 at 4)~~ |
| ~~Sayage~~ (*see* Sayage Non-Opposition) | ~~$59,000 (ECF No. 211 at 5)~~ |

This, without more, is sufficient to deny the remaining movants' motions under the PSLRA's "straightforward" lead plaintiff selection process. *See Cavanaugh*, 306 F.3d at 732.

**E.     The Remaining Movants Also Cannot Meet Rule 23's Requirements**

**i.     Ghosh Has Failed to Adequately Oversee Counsel**

Ghosh's conduct to date has shown that she is unable (or unwilling) to oversee counsel and adequately represent the class.  *See id.* at 733 (selection of proposed counsel can be a factor in assessing movant's adequacy).  On November 13, 2018, seeking to seize control of this case from the Court-appointed Lead Plaintiff, Ghosh (with Stewart and Weisman) filed the Plagiarized Complaint which copied—virtually word-for-word—all of the substantive allegations asserted in the Amended Complaint including confidential witness testimony that was provided ***only to Lead Counsel***.  *See* ECF Nos. 201-2 (redline comparison of the Amended Complaint and the Plagiarized Complaint); 201-1, ¶¶ 3-6 (Declaration of Sharan Nirmul confirming that the confidential witnesses were not contacted by counsel or investigators representing

Ghosh).  Such conduct, undermines Ghosh's claim that "she filed the [Plagiarized Complaint] to protect her and the interests of the [c]lass" and that "[t]hese actions further establish that Ghosh will prosecute the Action vigorously on behalf of the [c]lass."  ECF 209-1 at 9.

Moreover, Ghosh's willingness to lend her name to the Plagiarized Complaint despite the fact that her counsel failed to conduct any inquiry into the veracity of the statements pertaining to the two confidential witnesses is troubling.  In addition to potentially running afoul of Rule 11,[8] it is unclear how Ghosh's counsel will be able to "prosecute the Action vigorously" when it likely does not even know the names of the confidential witnesses it quotes and may not be able to meet its discovery disclosure obligations.  *See, e.g.*, *Arbitron*, 278 F.R.D. at 341 ("where a party has attempted to satisfy the pleading requirements of the PSLRA 'by 'showcasing' statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are'").  Indeed, Ghosh's renewed selection of counsel after this conduct was questioned by the Court-appointed Lead Plaintiff, *see* ECF No. 201 at 16-17, "casts doubt on h[er] ability to handle the responsibilities of lead plaintiff" and adequately represent the class.  *Cavanaugh*, 306 F.3d at 733 (authorizing courts to "consider whether the plaintiff's decision to select [a particular] lawyer" undermines the movant's adequacy).

Accordingly, Ghosh is inadequate to represent the class and should be rejected.

---

[8]    Despite the fact that Ghosh's counsel did not contact the confidential witnesses to confirm their testimony, the Plagiarized Complaint expressly states that the allegations contained therein are "based upon, among other things, the ongoing independent investigation of their counsel [which] includes, among other things, a review and analysis of . . . interviews with former Snap employees."  Plagiarized Complaint at 1.  This inconsistency calls into question whether the Plagiarized Complaint complied with the Federal Rules of Civil Procedure.  *See* Rule 11 ("an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable . . . the factual contentions have evidentiary support").

### ii. The Stewart-Khussainov-Weisman Group Is Not Cohesive, Cannot Adequately Oversee Counsel, and Has Submitted an Inaccurate Certification

The Stewart-Khussainov-Weisman Group's commitment and ability to work together to represent the class is belied by the fact that the composition of the group has changed three times since its first lead plaintiff motion was filed in July 2017. Indeed, the group originally consisted of four members: Stewart, Khussainov, Weisman, and Chiao. *See* ECF No. 21. When Stewart and Weisman sought to reopen the lead plaintiff process in December 2018, Khussainov and Chiao went missing and a brief partnership began between Stewart, Weisman, and Ghosh to file the Plagiarized Complaint. The partnership dissolved quickly, *see* ECF No. 192, and Stewart and Weisman are rejoined by Khussainov (who has reappeared after his more than year-long absence) and are now competing with Ghosh. *See* ECF No. 222. This lack of cohesion and consistency negates Stewart-Khussainov-Weisman Group's purported operation as a "coordinated group." *See* ECF No. 224-2, ¶ 5; *see also Fusion-io*, 2014 WL 2604991, at *5 (noting that groups are appointed as lead plaintiff under the PSLRA "when they have ***shown their ability*** to manage the litigation effectively in the interests of the class without undue influence of counsel.").

Additionally, the Stewart-Khussainov-Weisman Group inexplicably claims that it has "repeatedly demonstrated [its] commitment to prosecuting the Action on behalf of the[] class" by filing the Plagiarized Complaint. ECF No. 223 at 2. Indeed, the Stewart-Khussainov-Weisman Group's willingness to allow its counsel to file a complaint that fails to satisfy the basic level of inquiry required under Rule 11 completely undercuts its claims to be acting "to protect the interests of the class," *see id.*, and "casts doubt on [its] ability to handle the responsibilities of lead plaintiff." *Cavanaugh*, 306 F.3d at 733; *see also supra* at Section II.2.E.i.

Lastly, Khussainov's sworn certification [ECF No. 224-1] is facially inaccurate given that his purported purchase of 7,500 shares at $29.10 per share on March 8, 2017, is outside of the daily trading price range for Snap stock.   As illustrated in the accompanying chart, Snap's stock traded between $21.31 and $23.43 on March 8, 2017 (including pre- and post-market trading).  *See* Nirmul Supp. Decl., Ex. A.  Accordingly, Khussainov's transactions purportedly occurred at prices that are nearly 25% greater than the high price of the day.  As explained by the court in *Qualcomm*, such errors "underscore the reliability of [the movant's] representations" and dictate that the movant "does not meet the final requirements to be appointed lead plaintiff under Rule 23."  2019 WL 277360, at *3-4 (rejecting movant where certification included stock purchased at a "price allegedly [] not within the daily low or high trading prices").  This error is particularly egregious given that DiBiase, the Court-appointed Lead Plaintiff, flagged this exact issue ***more than a year and a half ago*** during the initial lead plaintiff briefing.  *See* ECF No. 32 at 13; *Qualcomm*, 2019 WL 277360, at *3-4; *In re Safeguard Scis.*, 216 F.R.D. 577, 582. 582 n.4 (E.D. Pa. 2003) (rejecting class representative where, *inter alia*, errors in his certification presented "serious concerns with credibility" that gave rise to a "potential and likely adverse effect on the putative class' interests").  This collection of issues dictates that the Stewart-Khussainov-Weisman Group's motion be denied.

**3.   In the Alternative, the Court Should Appoint the Snap Shareholder Group as Co-Lead Plaintiff and Kessler Topaz as Co-Lead Counsel**

If the Court ultimately determines that another movants is entitled to appointment as Lead Plaintiff (they are not), the Snap Shareholder Group respectfully requests that the Court exercise its statutory discretion and appoint the Snap Shareholder Group as Co-Lead Plaintiff and appoint Kessler Topaz as Co-Lead Counsel in order to protect the interests of the class.

As outlined in the Snap Shareholder Group's Motion, the use of a Co-Lead structure would be appropriate given the unique circumstances of the case and the fact that the continued involvement of Kessler Topaz would prevent the loss of significant knowledge the firm has developed throughout the litigation as Court-appointed Lead Counsel and minimize the needless duplication of the substantial effort and expenses incurred to date (more than 20,000 attorney hours). Indeed, no competing movant has articulated a plan for quickly and effectively resuming the prosecution of this litigation, and the adoption of a co-lead structure is essential to protecting the class's interests. *See Pirelli*, 229 F.R.D. at 419 (concluding that under the circumstances "the interests of a proposed class will be served best by the appointment of co-lead plaintiffs or multiple lead plaintiffs who did not move initially as a group"); *Lusk*, 2015 WL 9858177, at *2 (noting the court's "interest in managing and maintaining the orderly progression of the case" and appointing co-lead plaintiffs where doing so "would best protect the [class's] interests"); *In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 488 (D.N.J. 2001) (pairing the existing lead plaintiff with a new movant asserting the largest financial interest when subsequently-filed securities class actions were consolidated with the existing class action).

Accordingly, should the Court determine that another movant satisfies the PSLRA's requirements, the appointment of the Snap Shareholder Group as Co-Lead Plaintiff and Kessler Topaz as Co-Lead Counsel would be in the best interests of the class.

## III.   CONCLUSION

For the reasons set forth above and in its Motion, the Snap Shareholder Group respectfully requests that the Court grant its Motion in its entirety and deny the competing motions.

DATED: February 11, 2019                    Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

1

2   */s/ Jennifer L. Joost*
JENNIFER L. JOOST (Bar No. 296164)

3   jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)

4   skaplan@ktmc.com
One Sansome Street, Suite 1850

5   San Francisco, CA 94104
Telephone: (415) 400-3000

6   Facsimile: (415) 400-3001

7   – and –

8   SHARAN NIRMUL (*Pro Hac Vice*)
snirmul@ktmc.com

9   NAUMON A. AMJED (*Pro Hac Vice*)
namjed@ktmc.com

10  RYAN T. DEGNAN (*Pro Hac Vice*)
rdegnan@ktmc.com

11  ETHAN J. BARLIEB (*Pro Hac Vice*)
ebarlieb@ktmc.com

12  NATHAN A. HASIUK (*Pro Hac Vice*)
nhasiuk@ktmc.com

13  JONATHAN F. NEUMANN (*Pro Hac Vice*)
jneumann@ktmc.com

14  280 King of Prussia Road
Radnor, PA 19087

15  Telephone: (610) 667-7706
Facsimile: (610)-667-7056

16  *Lead Counsel for the Putative Class and*
*Attorneys for Lead Plaintiff Movants*

17  *the Snap Shareholder Group*

18  **THE SCHALL LAW FIRM**
BRIAN SCHALL (Bar No. 290685)

19  brian@schallfirm.com
1880 Century Park East, Suite 404

20  Los Angeles, CA 90067
Telephone: (310) 301-3335

21  Facsimile: (310) 388-0192

22  *Additional Counsel for the*
*Snap Shareholder Group*

23

24  **ROSMAN & GERMAIN LLP**
DANIEL L. GERMAIN (Bar No. 143334)

25  germain@lalawyer.com
16311 Ventura Boulevard, Suite 1200

26  Encino, CA 91436
Telephone: (818) 788-0877

27  Facsimile: (818) 788-0885

28  *Liaison Counsel for the Putative Class*