UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-03679-SVW-AGR | Date | April 1, 2019 |
| Title | *In re Snap Inc. Securities Litigation* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER APPOINTING NEW LEAD PLAINTIFF AND APPROVING OF SELECTION OF COUNSEL [209] [210] [214] [215] [219] [222]

## I.   Introduction

On January 10, 2019, the Court reopened the lead plaintiff appointment process. Dkt. 208 at 4. The Court permitted any party to move for appointment as lead plaintiff by January 31, 2019. *Id.* Six parties timely moved for appointment as lead plaintiff: (1) Sharmilli Ghosh (Dkt. 209); (2) Emad Sayage (Dkt. 210); (3) the New Mexico State Investment Council (the "NMSIC") (Dkt. 214); (4) Shinu Gupta (Dkt. 215); (5) Smilka Melgoza, Rediet Tilahun, Tony Ray Nelson, Rickey E. Butler, and Alan L. Dukes (collectively, the "Snap Shareholder Group") (Dkt. 219); and (6) Irland James Stewart, Howard Weisman, and Sanzhar Khussainov (collectively, the "Snap Investor Group") (Dkt. 222).

## II.   Legal Standard

The Court discussed the PSLRA's standard for appointing a lead plaintiff in its September 18, 2017 order. Dkt. 54 at 3-4. Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is to appoint as lead plaintiff the putative class member-movant that the Court determines to be "most capable of adequately representing the interests of class members." A rebuttable presumption is established that the "most adequate plaintiff" is the person who: (1) has filed the complaint or made a timely motion for lead plaintiff; (2) possesses the largest financial interest in the litigation; and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh*, 306 F.3d

: 

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | April 1, 2019 |
|---|---|---|---|
| Title | *In re Snap Inc. Securities Litigation* | | |

726, 730 (9th Cir. 2002) (describing the PSLRA's competitive process for determining the "most adequate plaintiff"); *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *8-10 (C.D. Cal. May 1, 2006).

Once the court determines who among the movants is the presumptive lead plaintiff, the presumption can be rebutted upon proof by a putative class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); see also *Cavanaugh*, 306 F.3d at 730; *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *8. The PSLRA's "sequential" selection process mandates that "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *See Cavanaugh*, 306 F.3d at 730-32; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). The PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264.

**III.   Analysis**

The PSLRA requires this Court first to consider which movant has the largest financial interest in the litigation.

   **A.   Gupta**

Gupta has the largest alleged loss—$1,689,395—during the class period. Dkt. 215-1 at 2. Gupta is thus the presumptive lead plaintiff. When the Court considered the appointment of a lead plaintiff in 2017, Gupta was also the presumptive lead plaintiff. However, the Court concluded that Gupta was subject to unique defenses that could render him incapable of adequately representing the putative class. Of particular importance was the fact that Gupta had purchased approximately 60% of his Snap stock *after* news surfaced questioning the strength of Snap's daily active user growth. The Court noted that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | April 1, 2019 |
|---|---|---|---|
| Title | *In re Snap Inc. Securities Litigation* | | |

Defendants might argue that the magnitude of Gupta's post-disclosure purchases could undermine his ability to assert the fraud-on-the-market presumption of reliance. Without the presumption of reliance, proof of individualized reliance from each member of the putative class would be required—which would effectively preclude class certification. Dkt. 54 at 4-5.

Nothing in the time since the Court's prior order has changed this analysis in a significant way. Gupta argues that the class period has been expanded, new claims have been asserted, and corrective disclosures have been added. This may be true, but the fact relevant to the Court's prior order remains the same: A disproportionately large percentage of Gupta's stock was purchased post-disclosure. The Court thus concludes, as before, that Gupta is subject to unique defenses and DENIES his motion for appointment as lead counsel.

**B.      The NMSIC**

The movant with the next-largest financial interest in the litigation is the NMSIC. The NMSIC alleges that it suffered losses of $1,068,314 during the class period. Dkt. 216 at 8. Based on this financial interest, the NMSIC is the second presumptive lead plaintiff.

The questions the Court next considers are whether the NMSIC would fairly and adequately protect the interests of the putative class or whether it is subject to unique defenses that render it incapable of adequately representing the putative class. Importantly, "[t]here is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial." *In re Netflix, Inc., Secs. Litig.*, No. 12-0225, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012). The purpose of this requirement is to protect absent putative class members; courts should not appoint a lead plaintiff whose appointment would pose a "danger that absent class members will suffer if [the lead plaintiff] is preoccupied with defenses unique to it." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

Several potential problems regarding the NMSIC's typicality and adequacy have been raised by the other movants. It is possible that Defendants would not ultimately succeed in asserting any of these arguments. However, it seems highly likely that the arguments would play a significant role at trial, and that the NMSIC would have to devote class resources to defending itself. For this reason, the Court

_____ : _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | April 1, 2019 |
|---|---|---|---|

| Title | *In re Snap Inc. Securities Litigation* |
|---|---|

concludes that the NMSIC does not satisfy the Rule 23 requirements of adequacy and typicality and DENIES the NMSIC's motion for appointment as lead counsel.

First, the NMSIC may face a challenge as to whether it enjoys standing and statutory authority to bring suit. The NMSIC manages the State of New Mexico's $23 billion permanent endowment fund. The issue raised is that, although the NMSIC (i.e., the entity itself) seeks lead plaintiff status, the motion for lead plaintiff appointment was brought by the "State of New Mexico on behalf of [the NMSIC]." *See* Dkt. 214. Furthermore, the NMSIC's PSLRA certification was signed by New Mexico's State Investment Officer ("SIO") "on behalf of [the NMSIC.]" Dkt. 217-1 at 2. Thus, there is an apparently complex interplay between three somewhat-independent yet interrelated parties.

The Court sought clarity on this interplay at the hearing on March 4, 2019. Although the NMSIC clarified some points—for example, that the State's Office of the Attorney General authorized the NMSIC to sue on the State's behalf—other issues remained opaque. For example, the Court asked the NMSIC why, in other cases, the PSLRA certification was signed by the Office of New Mexico's Attorney General, whereas in this case the certification was completed by the SIO. The NMSIC stated that it was relying on a decision of the Court of Appeals of New Mexico, which the NMSIC and the State interpreted to mean that the SIO (on behalf of the NMSIC) should sign. However, the relevant case, *N.M. State Inv. Council v. Weinstein*, 382 P.3d 923 (N.M. Ct. App. 2016), does not appear to provide a clear answer on this issue.[1] That the NMSIC and the State of New Mexico had to interpret a New Mexico state court opinion for guidance on how to proceed in this case—and furthermore that the case does not provide a clear answer—exposes a possible unique defense that Defendants would likely seek to exploit.[2]

---

[1]  The case considered, among other things, whether the NMSIC has the authority to settle litigation. *Id.* at 943 n.9. This is a tangentially related, but certainly not identical, inquiry to that before the Court. Furthermore, the New Mexico court did not even resolve that question, ultimately "assum[ing] for the purposes of th[e] opinion that [the] NMSIC had authority to settle with the defendants." *Id.*

[2]  Additionally, the New Mexico Attorney General submitted a declaration in support of the motion, stating that the NMSIC is "participat[ing] in this litigation as an arm of the State of New Mexico" because "civil claims belonging to the state . . . [are] under the management and control of the . . . attorney general." Dkt. 248-1 ¶ 5. What an "arm of the State" means in this context is not explained. Ultimately, the Court is not satisfied in its

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | April 1, 2019 |
|---|---|---|---|

| Title | *In re Snap Inc. Securities Litigation* |
|---|---|

Second, the NMSIC sold all of its stock prior to the final corrective disclosure. Some courts have held that such "in-and-out" traders are inadequate or atypical because they are subject to the unique defense that they cannot prove loss causation. *See, e.g.*, *In re IMAX Secs. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. Dec. 22, 2010); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 237-40 (E.D.N.Y. Aug. 29, 2011); *Doshi v. Cable*, No. 2:17-025 (WOB-CJS), 2017 WL 5178673, at *2-4 (E.D. Ky. Nov. 7, 2017). The NMSIC responds to this argument by citing primarily to a Central District of California case, which held that "the fact that two of the Funds Plaintiffs sold their shares during the class period d[id] not mean that they [were] incapable of proving loss causation." *Maiman v. Talbott*, No. SACV 09-0012 AG (ANx), 2009 WL 10675075, at *3 (C.D. Cal. Sept. 14, 2009). However, the court then immediately stated that its conclusion regarding loss causation was "especially true since . . . one of the Funds Plaintiffs . . . did *not* sell his shares before the end of the class period." *Id.* (citing another case that touted the benefits of a co-lead plaintiff structure) (emphasis added). As discussed above, the Court need not resolve the dispute at this stage; rather, it is sufficient to conclude that the issue is quite likely to be raised by Defendants to the detriment of the putative class.

Third, the NMSIC, like Gupta, made post-disclosure purchases. Unlike Gupta, the NMSIC purchased only 15% of its Snap stock after the corrective disclosures. Dkt. 238 at 15. However, whether 15% is a disproportionately large percentage of the NMSIC's stock could be the focus of litigation were the NMSIC to be appointed lead plaintiff.

C. **The Snap Shareholder Group**

The movant with the next-largest financial interest in the litigation is the Snap Shareholder Group. The Snap Shareholder Group alleges that it suffered losses of $486,597 during the class period. Dkt. 219 at 11. Based on this financial interest, the Snap Shareholder Group is the third presumptive lead plaintiff.

As before, the questions the Court next considers are whether the Snap Shareholder Group would fairly and adequately protect the interests of the putative class or whether it is subject to unique defenses

---

understanding of which party—the State or the NMSIC—is driving this litigation effort and of the relationship between the two.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | April 1, 2019 |
|---|---|---|---|

| Title | *In re Snap Inc. Securities Litigation* |
|---|---|

that render it incapable of adequately representing the putative class. The primary concern raised by the other movants is that the Snap Shareholder Group is inadequate because it comprises individual investors who have not made a strong showing that they are fit to serve jointly as lead plaintiffs.

However, courts have held that such lead plaintiff group structures are not necessarily inadequate. *See, e.g.*, *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *5 (N.D. Cal. June 10, 2014) (collecting cases holding that a group comprising individual investors may satisfy the PSLRA requirements for lead plaintiff appointment, especially when supported by declarations attesting to the group's readiness and willingness to serve collectively on behalf of the class). Here, the Snap Shareholder Group has submitted a joint declaration, which establishes the members' commitment to vigorously pursue the litigation, to oversee counsel to ensure the case is efficiently litigated in the class's best interests, to work collaboratively, and to proceed quickly. Dkt. 219 at 13-15; Dkt. 219-4. Based on the Snap Shareholder Group's submissions, including the joint declaration, the Court is satisfied that the Snap Shareholder Group will "fairly and adequately represent the class as the case moves forward." Dkt. 54 at 6. The Court thus GRANTS the Snap Shareholder Group's motion for appointment as lead plaintiff.

The Snap Shareholder Group has selected and retained Kessler Topaz to serve as lead counsel for the putative class.[3] As discussed in the Court's prior order, Kessler Topaz specializes in class action litigation and has prosecuted numerous other securities fraud class actions. Thus, the Court GRANTS the Snap Shareholder Group's motion to approve its selection of Kessler Topaz as lead counsel for the putative class.

**IV.   Conclusion**

For the reasons discussed above, the Court GRANTS the Snap Shareholder Group's motion for

---

[3]   The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734 (noting that "the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff"); *see also In re Cohen v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.").

|   | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:17-cv-03679-SVW-AGR | Date | April 1, 2019 |
|---|---|---|---|
| Title | *In re Snap Inc. Securities Litigation* | | |

appointment as lead plaintiff and for selection of Kessler Topaz to serve as lead counsel (Dkt. 219); the Court DENIES all of the other related motions (Dkts. 209, 210, 214, 215, and 222).

    IT IS SO ORDERED.

:

Initials of Preparer

PMC