1  **KESSLER TOPAZ**
2     **MELTZER & CHECK, LLP**
  JENNIFER L. JOOST (Bar No. 296164)
  jjoost@ktmc.com
3  STACEY M. KAPLAN (Bar No. 241989)
  skaplan@ktmc.com
4  One Sansome Street, Suite 1850
  San Francisco, CA 94104
5  Telephone: (415) 400-3000
  Facsimile: (415) 400-3001
6

7  *Attorneys for Class Representatives Smilka*
  *Melgoza, as trustee of the Smilka Melgoza*
8  *Trust U/A DTD 04/08/2014, Rediet*
  *Tilahun, Tony Ray Nelson, Rickey E.*
9  *Butler, Alan L. Dukes, Donald R. Allen and*
  *Shawn B. Dandridge, and Class Counsel*
10 *for the Class*

11 [Additional counsel on signature page.]

12

13           **UNITED STATES DISTRICT COURT**

14       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15             **WESTERN DIVISION**

16 | IN RE SNAP INC. SECURITIES | Case No. 2:17-cv-03679-SVW-AGR |
17 | LITIGATION | |
18 | | **CLASS ACTION** |
19 | This Document Relates To: All Actions. | **MEMORANDUM OF POINTS AND** |
20 | | **AUTHORITIES IN SUPPORT OF** |
                                     **CLASS REPRESENTATIVES'**
21                             **UNOPPOSED MOTION FOR**
                            **PRELIMINARY APPROVAL OF**
22                           **PROPOSED SETTLEMENT AND**
                          **AUTHORIZATION TO DISSEMINATE**
23                           **NOTICE TO THE CLASS**
24

25         Date:         April 21, 2020
        Time:         1:30 p.m.
26         Courtroom:   10A, 10th Floor
        Judge:       Hon. Stephen V. Wilson
27

28

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................... 1

II.  SUMMARY OF THE ACTION ................................................................ 3

III.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ......... 7

    A.  Standards Governing Approval of Class Action Settlements ........................ 7

    B.  The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2) ....................................................................... 10

        1.  "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2).......... 10

        2.  The Settlement's Terms Are Adequate ................................................ 13

            a.  The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation ...... 13

            b.  The Proposed Settlement Does Not Unjustly Favor Any Class Member ........................................................................ 16

            c.  The Anticipated Request for Attorneys' Fees Is Reasonable ................................................................................ 18

            d.  Class Representatives Have Identified All Agreements Made in Connection with the Settlement ................................. 19

IV.  THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE CLASS ........................ 20

V.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ................ 24

VI.  CONCLUSION ...................................................................................... 25

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansell v. Laikin*,
 2012 WL 13034812 (C.D. Cal. July 11, 2012) ................................................ 17

*In re AXA Rosenberg Inv'r Litig.*,
 2012 WL 12920617 (N.D. Cal. Apr. 2, 2012) ................................................ 19

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ................................................ 14

*Chun-Hoon v. McKee Foods Corp.*,
 716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................ 12

*Churchill Vill., L.L.C. v. GE*,
 361 F.3d 566 (9th Cir. 2004) ................................................ 10

*Edwards v. N. Am. Power & Gas, LLC*,
 2018 WL 3715273 (D. Conn. Aug. 3, 3018) ................................................ 22

*Elliott v. Rolling Frito-Lay Sales, LP*,
 2014 WL 2761316 (C.D. Cal. June 12, 2014) ................................................ 8

*Garcia v. Ceva Logistics, U.S.A.*,
 2017 U.S. Dist. LEXIS 177946 (C.D. Cal. Oct. 23, 2017) ................................................ 24

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ................................................ 18

*Harris v. Vector Mktg. Corp.*,
 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................................ 12

*Hefler v. Wells Fargo & Co.*,
 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................................ 19

*In re Heritage Bond Litig.*,
 2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................ 7, 10

*Lane v. Facebook, Inc.*,
 696 F.3d 811 (9th Cir. 2012) ................................................ 20

*Livingston v. Toyota Motor Sales USA*,
 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. June 1, 1995) ................................................ 12

*McLaughlin v. IDT Energy*,
 2018 WL 3642627 (E.D.N.Y. July 30, 2018) ................................................ 22

*In re MGM Mirage Secs. Litig.*,
 708 F. App'x 894 (9th Cir. 2017) ................................................ 12

*Misra v. Decision One Mortg. Co.*,
   2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ................................................................. 12

*Morales v. Stevco, Inc.*,
   2011 WL 5511767 (E.D. Cal. Nov. 10, 2011) ............................................................... 12

*Murillo v. Pac. Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010) ................................................................................. 8

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
   2016 WL 3369534 (S.D.N.Y. May 2, 2016) ............................................................... 19

*Nguyen v. Radient Pharm. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................. 10, 11, 14, 17

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..................................................................................... 7

*In re OmniVision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..................................................................... 15

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ....................................................................................... 8

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948, 965 (9th Cir. 2009) ............................................................................. 8

*Salazar v. Midwest Servicing Grp., Inc.*,
   2018 WL 3031503 (C.D. Cal. June 4, 2018) ............................................................. 13

*Satchell v. Fed. Express Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................................................... 12

*Schaffer v. Litton Loan Servicing, LP*,
   2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ......................................................... 22

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ......................................................................... 11, 24

*Tait v. BSH Home Appliances Corp.*,
   2015 WL 4537463 (C.D. Cal. July 27, 2015) ........................................................... 11

*Van Ba Ma v. Covidien Holding, Inc.*,
   2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ....................................................... 8, 9, 20

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ..................................................................................... 8

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ............................................................................. 18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

*Williams v. Costco Wholesale Corp.*,
  2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ........................................................ 9

*Young v. Polo Retail, LLC*,
  2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) .................................................... 9

**Statutes**

15 U.S.C. § 78u-4(a)(4) ....................................................................................... 17

15 U.S.C. § 78u-4(a)(7) ....................................................................................... 23

**Other Authorities**

Fed. R. Civ. P. 23(c)(1)(C) .................................................................................. 15

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 20

Fed. R. Civ. P. 23(e) ......................................................................................... 8, 9

Fed. R. Civ. P. 23(e)(1) .................................................................................... 8, 20

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................... 9

Fed. R. Civ. P. 23(e)(2) ......................................................................... 2, 8, 9, 10

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................. 13

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................................ 16

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................ 13, 16

Fed. R. Civ. P. 23(h)(1) ....................................................................................... 23

William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2019) ......................... 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS
REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

# I.   PRELIMINARY STATEMENT

After nearly three years since the inception of this Action, and following highly contested and vigorous litigation, Class Representatives have agreed to settle all claims against Defendants for a $154,687,500 cash payment. The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement dated March 20, 2020.[1] At this time, Class Representatives seek the Court's preliminary approval of the proposed Settlement under Federal Rule of Civil Procedure 23 ("Rule 23") so that notice of the Settlement can be disseminated to the Class and the Settlement Hearing can be scheduled.

Class Representatives and Class Counsel believe that the Settlement—reached *just two months* before the commencement of a trial, provides an excellent benefit to the Class given the risks to proving liability and damages that the Class faced. While Class Representatives and Class Counsel believe the Class's claims against Defendants are meritorious and supported by substantial evidence developed during discovery and in preparation for trial, they also recognize that, in the absence of a settlement, they faced the significant risk that the Court would grant, in whole or in part, the SAC Defendants'[2] motions for summary judgment (which were pending at the time the Settlement was reached), that the Ninth Circuit would agree to hear the SAC Defendants' appeal of the Court's Order on class certification which raised several novel issues, or that a trial of the Action and the likely appeals that would follow could have precluded *any* recovery for the Class, let alone a recovery greater than the Settlement Amount.

When the Settlement was reached, the Parties were at an advanced stage of litigation, and Class Representatives and Class Counsel were well-informed of the strengths and

---

[1]   All capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation. The Stipulation is attached as Exhibit 1 to the Declaration of Sharan Nirmul in Support of Class Representatives' Unopposed Motion for Preliminary Approval of Proposed Settlement and Authorization to Disseminate Notice to the Class ("Nirmul Decl.") filed herewith. Unless otherwise noted, all emphasis in quotations is added, and internal quotation marks, citations, and footnotes are omitted.

[2]   The SAC Defendants refer to the Defendants named in the operative complaint— Snap Inc. ("Snap"), Evan Spiegel, Robert Murphy, Andrew Vollero, and Imran Khan.

weaknesses of their case. Over the course of the Action, Class Counsel, *inter alia*: (i) conducted a significant investigation into the Class's claims and drafted two detailed complaints, including the operative Second Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("SAC"); (ii) defeated Defendants' motions to dismiss the Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws ("Amended Complaint") and subsequent motion for interlocutory appeal of the Court's order denying Defendants' motions in full; (iii) engaged in comprehensive fact and expert discovery, including taking or defending 32 depositions, analyzing nearly 2,000,000 pages of documents produced by Defendants and various third parties, litigating approximately five discovery-related motions, and exchanging opening and rebuttal reports for five merits experts; (iv) successfully moved for class certification; (v) briefed the SAC Defendants' Rule 23(f) petition for permission to appeal the Court's Order certifying the Class to the Ninth Circuit (which was pending when the Parties reached the Settlement); (vi) made significant progress in drafting their opposition to the SAC Defendants' summary judgment motions; and (vii) had begun preparations for a trial set to commence on March 24, 2020. Moreover, the Settlement is the product of protracted and complex, arm's-length negotiations facilitated by an accomplished mediator, the Honorable Layn R. Phillips (Ret.), including three formal mediation sessions[3] and mediation briefing.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to make a determination as to whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. At this time, Class Representatives request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement's terms and conditions may be provided to Class Members. Entry of the Preliminary Approval Order (attached as Exhibit A to the Stipulation) will, among other things:

---

[3]     Class Counsel attended two of the mediations with Judge Phillips, on October 15, 2019, and January 15, 2020. The initial mediation on September 18, 2019, was attended only by counsel for the State Plaintiffs.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

- preliminarily approve the terms of the Settlement set forth in the Stipulation;

- approve the retention of JND Legal Administration ("JND"), the administrator previously approved by the Court in connection with Class Notice, as the Claims Administrator;[4]

- approve the form and content of the Postcard Notice, Notice, Summary Notice, Notice Ads, and Claim Form attached as Exhibits 1, 2, 3, 4, and 5, respectively, to the Preliminary Approval Order;

- approve the proposed procedures for providing notice to the Class through mailing of the Postcard Notice, posting of the Notice and Claim Form on the website www.SnapSecuritiesLitigation.com, transmittal of the Notice Ads via appropriate social media platforms jointly selected by the Parties, and publication of the Summary Notice as the best notice practicable under the circumstances and complying with due process, Rule 23, and the PSLRA; and

- set a schedule for: (i) providing notice of the Settlement to the Class; (ii) Class Members to request exclusion from the Class; (iii) Class Members to object to the Settlement or any part thereof; (iv) Class Members to submit Claim Forms in order to be potentially eligible to share in the Net Settlement Fund; (v) submitting papers in support of final approval of the Settlement and related matters; and (vi) the Settlement Hearing, at which the Court will consider final approval of the Settlement, as well as approval of the Plan of Allocation and Class Counsel's request for attorneys' fees and Litigation Expenses, including reimbursement of costs to Class Representatives pursuant to the PSLRA.

For the reasons set forth herein, Class Representatives respectfully submit the Settlement warrants the Court's preliminary approval and respectfully request the Court enter the Preliminary Approval Order.

## II.   SUMMARY OF THE ACTION

This securities class action was commenced with the filing of the initial complaint on May 16, 2017. ECF No. 1. Following briefing, and pursuant to the PSLRA, the Court, on September 18, 2017, appointed a lead plaintiff ("Initial Lead Plaintiff") and approved his selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as lead counsel

---

[4]    In the related State Settlement, State Plaintiffs are also requesting the State Court's approval of their retention of JND as the claims administrator and it is envisioned that JND will issue a single postcard notice for both actions, maintain a common website for both settlements, and allow for a single claim form for Class Members to submit in order to recover from each settlement. These efforts, as discussed below in Section IV, are designed to maximize efficiencies and cost savings for the administration of both settlements while allowing for the independent approval of the settlements in their forum courts.

and Rosman & Germain LLP as liaison counsel. ECF No. 54.

On November 1, 2017, the Initial Lead Plaintiff filed the Amended Complaint, naming as defendants: (i) Snap, Evan Spiegel, Robert Murphy, Andrew Vollero, and Imran Khan (i.e., the "SAC Defendants"); (ii) certain Snap directors ("Director Defendants"); and (iii) the principal underwriters of Snap's Initial Public Offering on or about March 2, 2017 ("Underwriter Defendants"), and asserting claims arising under Sections 11 and 15 of the Securities Act of 1933 (15 U.S.C. §§ 77k, 77l(a)(2), and 77o) ("Securities Act"), Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78t(a)) ("Exchange Act"), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5). ECF No. 67. The Amended Complaint alleged that certain Defendants made materially false and misleading statements, or omitted to disclose information required to be disclosed, regarding, among other things: (i) Snap's characterizations and explanations for the slowing growth in daily active users ("DAUs") it experienced in the months leading up to Snap's IPO, and (ii) Snap's characterizations about the quality of its DAUs, particularly as to whether Snap used "growth hacking" techniques to boost its DAU growth.

On December 1, 2017, Defendants moved to dismiss the Amended Complaint. ECF Nos. 73 & 75. Following full briefing on the motions, the Court, by Order dated June 7, 2018, denied Defendants' motions to dismiss in full. ECF No. 92. Thereafter, all Defendants, except for the Underwriter Defendants, moved to certify for interlocutory appeal, under 28 U.S.C. § 1292(b), the Court's June 2018 Order on Defendants' motions to dismiss ("Motion for Interlocutory Appeal"). ECF No. 94. On June 28, 2018, the Underwriter Defendants filed a notice of joinder in the Motion for Interlocutory Appeal. ECF No. 101. Following full briefing, the Court denied the Motion for Interlocutory Appeal on August 8, 2018. ECF No. 108.

All Defendants answered the Amended Complaint by June 29, 2018. ECF Nos. 95, 102. Thereafter, discovery in the Action commenced.

From June 2018 through December 2019, the Parties engaged in extensive fact and expert discovery, including, *inter alia*: (i) issuing 85 document requests to Defendants;

(ii) serving 72 interrogatories and 710 requests for admission on Defendants; (iii) serving 20 subpoenas for records on third parties; (iv) obtaining, reviewing, and analyzing 1,972,314 pages of documents produced by Defendants and third parties; (v) reviewing voluminous written discovery responses from Defendants; (vi) reviewing and producing 5,786 pages of documents by Class Representatives, as well as providing written discovery responses to document requests and interrogatories served by Defendants; (vii) reviewing and analyzing thousands of privilege log entries; (viii) taking and/or defending a total of 32 fact and expert depositions; and (ix) exchanging opening and rebuttal reports for three merits expert witnesses designated by Class Representatives and analyzing such reports from two defense merits experts. In addition, the Parties filed and/or argued approximately five discovery-related motions before Magistrate Judge Alicia G. Rosenberg. *See* ECF Nos. 136–37, 144, 146, 188, 278, 287, 333.

On August 30, 2018, the Initial Lead Plaintiff moved for class certification. ECF No. 114. This motion was fully briefed. ECF Nos. 124–27, 133-135, 163.

On September 28, 2018, the Initial Lead Plaintiff informed the Court that due to medical reasons he intended to withdraw as lead plaintiff. ECF No. 118. By Order entered January 10, 2019, the Court reopened the lead plaintiff appointment process and, by the same Order, administratively terminated the then-pending motion for class certification without prejudice. ECF No. 208. Following the submission of multiple motions for lead plaintiff appointment and related briefing, the Court, on April 1, 2019, appointed Smilka Melgoza, as trustee of the Smilka Melgoza Trust U/A DTD 04/08/2014, Rediet Tilahun, Tony Ray Nelson, Rickey E. Butler, and Alan L. Dukes as lead plaintiffs ("Lead Plaintiffs"), and reappointed Kessler Topaz as lead counsel. ECF No. 262.

Pursuant to joint stipulation, Lead Plaintiffs and additional named plaintiffs Donald R. Allen and Shawn B. Dandridge filed the operative complaint—the SAC—on May 29, 2019. ECF No. 272. The SAC reflected, among other things, the addition of Lead Plaintiffs and the voluntary dismissal without prejudice of the Director Defendants and the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS
REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

Underwriter Defendants.[5] Defendants did not move to dismiss the SAC and the Parties stipulated that the prior answer to the Amended Complaint, ECF No. 102, would serve as the answer to the SAC. ECF No. 271

On June 7, 2019, Lead Plaintiffs filed a renewed motion for class certification ("Class Certification Motion"). ECF No. 275. Thereafter, two motions for leave to intervene to oppose, in part, the Class Certification Motion were filed by plaintiffs in the State Cases. ECF Nos. 284 & 285. These motions, along with the Class Certification Motion, were fully briefed. ECF Nos. 290–95, 298, 301-04, 306.

While Lead Plaintiffs' Class Certification Motion was pending, Lead Plaintiffs, State Plaintiffs, and the Snap Defendants participated in a formal mediation before Judge Phillips. The Parties, however, were too far apart in their respective positions to reach a resolution at the mediation.

On November 20, 2019, the Court granted the Class Certification Motion ("Class Certification Order"). ECF No. 341. Thereafter, Class Representatives filed an unopposed motion to approve the form and manner of notice to the Class (i.e., Class Notice) (ECF No. 342), which the Court granted on December 23, 2019 (ECF No. 355).[6] In the meantime, the SAC Defendants, on December 3, 2019, filed a Rule 23(f) petition with the Ninth Circuit Court of Appeals for permission to appeal certain portions of the Class Certification Order relating to the Securities Act claims at issue ("Ninth Circuit Petition"). The Ninth Circuit Petition was limited to the Securities Act claims and did not seek permission to appeal any of the Class Certification Order's findings as to the Exchange Act claims.

On December 19, 2019, the SAC Defendants filed motions for summary judgment

---

[5]     Previously, on September 12 and 18, 2018, the Parties filed stipulations to voluntarily dismiss without prejudice from the Action the Director Defendants and the Underwriter Defendants. ECF Nos. 116–17.

[6]     Pursuant to the Court's Order, Class Notice was to begin no later than January 17, 2020; however, due to the Parties' agreement in principle to resolve the Action, the Court vacated all deadlines, including with respect to Class Notice, to allow the Parties to prepare final settlement documentation and submit a motion for preliminary approval of the Settlement. ECF No. 364.

pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Summary Judgment Motions"), asserting that there was no triable issue of material fact and that the SAC Defendants were entitled to judgment as a matter of law. ECF Nos. 346–50. Class Representatives were actively preparing their opposition to the Summary Judgment Motions, due to be filed on January 30, 2020.

While the Ninth Circuit Petition and Summary Judgment Motions were pending, and with a trial in the Action nearing, the Parties agreed to reengage with respect to the possibility of resolving the Action, once again utilizing Judge Phillips and participating in a formal mediation on January 15, 2020. Following hard-fought, arm's-length negotiations, the Parties, on January 17, 2020, accepted a mediator's recommendation to resolve the Action, along with the State Cases, for a total of $187.5 million in cash, which agreement was memorialized in a term sheet executed on January 24, 2020 ("Term Sheet").[7] Thereafter, the Parties negotiated the formal Stipulation setting forth the full terms and conditions of the Parties' agreement to settle the Action, which was executed on March 20, 2020, and is submitted herewith. In order to ensure a global resolution, the Parties all agreed to the requirement that the Federal and State Settlements must each receive final approval and be no longer subject to appeal in their respective courts as a condition to the settlements becoming Final.

## III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. Standards Governing Approval of Class Action Settlements

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is

---

[7]   In accordance with the Term Sheet, the $187.5 million was subsequently allocated between the Federal Case and the State Cases through further negotiations between the Federal Plaintiffs and the State Plaintiffs overseen by the mediator.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

"particularly true in class action suits[.]" *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at \*3 (C.D. Cal. June 12, 2014) ("[J]udicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.").

Moreover, the Ninth Circuit expressly recognizes that:

> The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."

*Van Ba Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at \*4 (C.D. Cal. Jan. 31, 2014) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Indeed, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in [the] litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Rule 23(e) requires judicial approval for a compromise of claims brought on a class-wide basis. Rule 23(e) ("The claims . . . of a certified class . . . may be settled . . . only with the court's approval."). Judicial approval of a class action settlement is a two-step process—*first*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Rule 23(e)(1); and *second*, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, *see* Rule 23(e)(2). *See also Elliott*, 2014 WL 2761316, at \*2.

"In the first stage of the approval process, the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class . . ., and authorize[s] notice to be given to the Class." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) (alterations in original). At this stage, the Court is not required to make a final determination as to whether the proposed Settlement will ultimately be found to be fair,

reasonable, and adequate. *See Williams v. Costco Wholesale Corp.*, 2010 WL 761122, at *5 (S.D. Cal. Mar. 4, 2010) ("Given that some . . . factors cannot be fully assessed until the Court conducts the Final Approval Hearing, a full fairness analysis is unnecessary at this stage."). Rather, "[t]he question for preliminary approval of a settlement is whether it is within the range of reasonableness." *Covidien*, 2014 WL 360196, at *4. "Preliminary approval is appropriate" if (i) "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations," (ii) "has no obvious deficiencies," (iii) "does not improperly grant preferential treatment to class representatives or segments of the class," and (iv) "falls within the range of possible approval." *Id*.[8]

Rule 23(e), as amended, does not change this fundamental inquiry. Amended Rule 23(e), among other things, specifies that the crux of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(1)(B).[9] The Rule "focus[es]" the Court's inquiry on "the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Rule 23(e)(2) advisory committee's note to 2018 amendment. In this inquiry, the Court evaluates whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified

---

[8]   *See also, e.g.*, *Young v. Polo Retail, LLC*, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) ("[I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . .").

[9]   Here, the Court need not determine whether it *could* certify a class because it already has certified a class in the Action.

under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2).[10] Each of these factors is satisfied here.

**B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.    "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) Paragraphs (A) and (B) advisory committee's note to 2018 amendment. Courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.*; *see also Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *3 (C.D. Cal. May 6, 2014) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") (alteration in original); *Heritage*, 2005 WL 1594403, at *9 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful

---

[10]    In determining whether to grant final approval of the Settlement, the Court will also be asked to consider the factors set forth in *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)—many of which overlap with the Rule 23(e)(2) factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*See also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

discovery.").

The Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, as detailed above, the Parties have been vigorously litigating this Action since May 2017. At the time of settlement, the Parties had completed comprehensive fact and expert discovery and were a mere eight weeks from trial. Therefore, the Parties' settlement posture was informed by, among other things, significant work performed in responding to motions to dismiss (and related Motion for Interlocutory Appeal), substantial discovery efforts, mediation positions and briefing regarding perceived strengths and weaknesses of each side's case, full briefing on class certification and the Ninth Circuit Petition, the pending Summary Judgment Motions, consultation with experts on market efficiency, damages, and causation, and substantial trial preparation. Indeed, this matter was "hard fought and contentiously litigated throughout." *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 324 (C.D. Cal. 2016) (granting preliminary approval where plaintiffs' counsel "engaged in substantial motion practice"). Accordingly, "both parties had ample time and information to evaluate all aspects of the case, the strength of the factual and legal questions at issue, and the likelihood of prevailing." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *8 (C.D. Cal. July 27, 2015) (approving settlement where "settlement was reached two months before trial was set to commence and only after extensive fact discovery, expert discovery, and motions practice"); *see also Radient*, 2014 WL 1802293, at *3 (parties sufficiently informed where "[a]ll discovery was completed at the time of the settlement").

Additionally, by appointing Class Representatives in connection with class certification, the Court already has found them to have claims typical of those of other Class Members. Moreover, like the rest of the Class, Class Representatives have an interest in obtaining the largest possible recovery from Defendants.

*Second*, the Parties' settlement negotiations were at arm's-length and facilitated by a well-respected and experienced mediator. These negotiations included three formal mediation sessions before Judge Phillips (the initial one attended only by the State Plaintiffs

and the next two by all Parties) and, at Judge Phillips' direction, the preparation and exchange of comprehensive mediation statements and in person presentations by Class Counsel. The Parties' hard-fought negotiations culminated in Judge Phillips' issuance of a mediator's proposal that the Action, along with the State Cases, be settled for a total of $187.5 million, which the Parties accepted. After further negotiations and assistance by Judge Phillips, the $187.5 million was allocated 82.5% to this Action and 17.5% to the State Cases (i.e., $154,687,500 and $32,812,500, respectively). Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also, e.g.*, *In re MGM Mirage Secs. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017).[11]

Additionally, throughout the Action and settlement negotiations, four law firms highly experienced in this type of litigation—Wilson Sonsini Goodrich & Rosati, P.C., Paul, Weiss, Rifkind, Wharton & Garrison LLP, Kirkland & Ellis LLP, and O'Melveny & Myers, LLP—have vigorously represented Defendants. *See, e.g.*, *Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757, at *16-17 (N.D. Cal. June 1, 1995). Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, it deserves preliminary approval. *See Misra v. Decision One Mortg. Co.*, 2009 WL 4581276, at *24 (C.D. Cal. Apr. 13, 2009) (granting preliminary approval where there was "no evidence of fraud or collusion" and "[t]he parties negotiated the settlement at arm[']s length between experienced counsel representing the interests of the plaintiffs and the defendant").

---

[11] *See also Morales v. Stevco, Inc.*, 2011 WL 5511767, at *11 (E.D. Cal. Nov. 10, 2011) (granting preliminary approval because, *inter alia*, "[t]he parties utilized an impartial mediator, and the matter was resolved by means of a mediator's proposal" and thus was "non-collusive"); *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("[T]he parties reached their settlement during a mediation session conducted by [a mediator], who has significant experience mediating complex civil disputes" further supporting conclusion that "it was not the result of collusion or bad faith by the parties or counsel."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (same).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

### 2.   The Settlement's Terms Are Adequate

Rule 23(e)(2)(C) and (D) directs the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents an excellent result for the Class. Furthermore, Class Counsel, with the assistance of Class Representatives' damages expert, has proposed a plan for allocating the Settlement proceeds that ensures all Class Members will be treated equitably relative to their respective losses. *See infra* III(B)(2)(b).

### a.   The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor to be considered in assessing the approval of a class action settlement is the plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. Here, the Settlement provides for an immediate cash recovery of $154,687,500 to be allocated among Class Members following the deduction of Court-approved fees and expenses. In comparison, if the Action had continued, Class Representatives faced numerous factual and legal risks that could have precluded them from securing any recovery at all on behalf of the Class. While Class Representatives remain confident in their ability to ultimately prove their claims, further litigation—including here, defeating the pending Summary Judgment Motions, Ninth Circuit Petition, and winning at trial—is always a risky proposition. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (a settlement agreement's "elimination of risk, delay, and further expenses weighs in favor of approval").

To this day, Defendants adamantly deny any wrongdoing. Had the Settlement not been reached, the SAC Defendants, as they did at the motion to dismiss and summary judgment stages, undoubtedly would have argued at trial that the statements at issue were not false at the time they were made and that they did, in fact, disclose certain material information that Class Representatives alleged Defendants concealed from the market. Relatedly, the SAC Defendants would continue to assert that they did not act with the required intent, or "scienter."

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Even if Class Representatives ultimately prevailed in proving materiality, falsity, and scienter, this Action also would have involved significant risks to establishing loss causation and damages. Throughout the Action, Defendants vigorously asserted that the price declines in Snap Common Stock on the alleged corrective disclosure dates were unrelated to the alleged fraud, as well as that the "truth" regarding Defendants' alleged fraud was revealed prior to the end of the Class Period. Ultimately, resolution of these issues would come down to a "battle of the experts" with no guarantee as to which expert's testimony or methodology would be more compelling to a jury. *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a battle of experts . . . with no guarantee whom the jury would believe").[12]

Moreover, even a unanimous jury verdict on each of the above elements would not guarantee a recovery for the Class. Instead, Class Representatives and Class Counsel would then face significant and vigorous post-trial motion practice from the SAC Defendants, potential individual trials related to any Class Members for whom the SAC Defendants elected to challenge in the claims process, and further appeals to the Ninth Circuit that would further place any Class Member's recovery in jeopardy for years.

Here, the Settlement represents a substantial percentage of the potential recoverable damages (as estimated by Class Representatives' damages expert) had this Action proceeded to trial. Damages in a securities fraud case are typically presented to the fact finder on a per share basis and are a measure of the artificial inflation in a company's stock price caused by the alleged fraud. The artificial inflation is typically measured by the amount of inflation that leaves the stock, net of industry and market forces, when there is a corrective disclosure. In this case, Class Representatives alleged four corrective disclosures, and Class Representatives' damages expert estimated that $10.08 of artificial inflation was gradually removed from the stock price through those corrective events.

---

[12]   *See also Radient*, 2014 WL 1802293, at *2 ("Providing and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of law. The outcome of that analysis is inherently difficult to predict and risky.").

Class Representatives' damages expert has estimated aggregate damages in this Action to range from approximately $1.147 billion to approximately $2.4 billion. Importantly, the high end of this damages estimate assumes that Class Representatives would be able to prove damages based on *all four* alleged corrective disclosures and that they would not need to disaggregate, or parse out, confounding non-fraud related information on those dates. Class Representatives recognize, however, that certain of the alleged corrective disclosures would have been difficult to prove had the Action continued. For example, if the SAC Defendants succeeded in having one or more of the alleged corrective disclosures dismissed at summary judgment, or succeeded in proving that Class Representatives had not adequately disaggregated the price impact of any confounding information, damages would be reduced. Additionally, at class certification, the SAC Defendants argued that the Class Period should end no later than May 10, 2017, as they contended that the truth regarding the impact of Instagram was fully revealed by then. ECF No. 292.[13] If the SAC Defendants were successful in proving this argument, in particular, Class Representatives would lose three of their four alleged corrective disclosures and total aggregate damages, as estimated by their damages' expert, would be closer to $1.147 billion without accounting for any potentially confounding information. Accordingly, based on these estimates, the global $187.5 million settlement represents approximately 7.8% to 16.3% of the Class's potential aggregate damages, which is many multiplies of the median recovery of 1.2% in these cases.[14]

---

[13] Although the Class has already been formally certified, a court's prior grant of certification "may be altered or amended before final judgment" under Rule 23(c)(1)(C). *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

[14] *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, NERA Economic Consulting (Jan. 29, 2019), https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_0128 19_Final.pdf, at 35 (between 1996 and 2018 in securities class actions with investor losses between $1 billion and $4.999 billion, the median settlement represented a recovery of approximately 1.2% of aggregate investor losses).

Thus, the Settlement offers substantial benefits in that each Class Member will recover a monetary award immediately, without the risk of an unfavorable outcome at summary judgment or trial. The Settlement also avoids the expense and delay of continuing to prosecute this litigation through summary judgment, trial, and any appeal.

### b.  The Proposed Settlement Does Not Unjustly Favor Any Class Member

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing relief to members of the Class. Rule 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The Plan of Allocation being proposed by Class Representatives (the "Plan") provides for a straightforward and effective means of distributing the Net Settlement Fund to the Class and treats Class Members equitably relative to each other. *See* Rule 23(e)(2)(D).

Here, the Plan provides for distribution of the Net Settlement Fund to Class Members who submit timely and valid Claims demonstrating a loss on their transactions in Snap Common Stock purchased or acquired during the Class Period. The formula to apportion the Net Settlement Fund—developed in consultation with Class Representatives' damages expert—is based on the estimated artificial inflation in the price of Snap Common Stock over the course of the Class Period that was allegedly caused by Defendants' alleged misconduct. Further, the Plan apportions the Net Settlement Fund among Class Members based on when they purchased, acquired, and/or sold their Snap Common Stock, and was

created without consideration of Class Representatives' individual transactions.[15] This method ensures Class Members' recoveries are based upon the relative losses they sustained, and eligible Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. Accordingly, the Plan applies in an equitable manner to all Class Members. *See Radient*, 2014 WL 1802293, at *5 ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."); *Ansell v. Laikin*, 2012 WL 13034812, at *9 (C.D. Cal. July 11, 2012) (finding that "Plan of Allocation, which distributes the proceeds of the net settlement fund on a pro rata basis, based on the claimant's recognized claim amounts, is fair and reasonable").[16] Moreover, as explained in the proposed Claim Form, attached as Exhibit A-5 to the Stipulation, Claims

---

[15]    As set forth in the proposed Notice (Ex. A-2 to the Stipulation), based on Class Representatives' damages expert's estimate of the number of shares of Snap Common Stock purchased or otherwise acquired during the Class Period that may have been affected by the conduct at issue in the Action, and assuming that all Class Members elect to participate in the Settlement, the estimated average recovery per eligible share of Snap Common Stock (before deducting any Court-approved fees, expenses, and costs as described in the Notice) is approximately $0.55. This is only an estimate, and some Class Members may recover more or less than this amount depending on, *inter alia*: (i) when the price at which they purchased/acquired shares of Snap Common Stock; (ii) whether they purchased shares of Snap Common Stock in Snap's IPO (which would make them potentially eligible to receive additional proceeds from the State Settlement), or on the open market; (iii) whether they sold their shares of Snap Common Stock and, if so, when; (iv) the total number and value of valid Claims submitted; (v) the amount of Notice and Administration Costs; and (vi) the amount of attorneys' fees and Litigation Expenses awarded by the Court.

[16]    The proposed Notice (Ex. A-2 to the Stipulation) also explains that Class Counsel's request for expenses may include a request for reimbursement of Class Representatives' reasonable costs and expenses directly relating to their representation of the Class, as permitted by the PSLRA, in an aggregate amount not to exceed $275,000. *See* 15 U.S.C. § 78u-4(a)(4) ("The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.").

submitted for the Settlement will also be processed in accordance with the plan of allocation for the State Settlement and Class Members may be eligible to receive additional proceeds from the State Settlement as well without reducing their recovery in this Action.

### c. The Anticipated Request for Attorneys' Fees Is Reasonable

The proposed Notice provides that Class Counsel, on behalf of Plaintiffs' Counsel, will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, plus reasonable expenses incurred in prosecuting the Action. A fee of up to 25% is eminently reasonable here and is fully supported by Ninth Circuit case law. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (the Ninth Circuit has established 25% of the common fund as a "benchmark" for what constitutes a reasonable fee); *see also Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("[T]he exact percentage varies depending on the facts of the case, and in most common fund cases, the award exceeds [the 25%] benchmark."). Moreover, there is ample precedent in this District for granting attorneys' fees of 25% (or greater) in securities class actions. *See, generally e.g.*, Nirmul Decl. Ex. 2, *Mild v. PPG Industries, Inc. et al.*, No. 2:18-cv-04231-RGK-JEM, slip op. at 2, ECF No. 132 (C.D. Cal. Oct. 25, 2019) (awarding 25% fee); Nirmul Decl. Ex. 3, *Daniel Turocy v. El Pollo Loco Holdings, Inc. et al.*, 8:15-cv-01343-DOC-KES, slip op. at 1, ECF No. 219 (C.D. Cal. Aug. 27, 2019) (awarding 30% fee); Nirmul Decl. Ex. 4, *Sunil Sudunagunta v. Nantkwest, Inc. et al.*, No. 2:16-cv-01947-MWF-JEM, slip op. at 7, ECF No. 188 (C.D. Cal. May 13, 2019) (awarding 25% fee).

A fee of up to 25% of the Settlement Fund would also befit the substantial risks Class Counsel undertook in pursuing the claims in the Action, its extensive litigation efforts, and

the excellent recovery obtained for the benefit of the Class.[17] Further, Class Members will have an opportunity to weigh in on Class Counsel's fee request before the Settlement Hearing.

### d.  Class Representatives Have Identified All Agreements Made in Connection with the Settlement

In connection with the Settlement, the Parties also have entered into a confidential Supplemental Agreement regarding requests for exclusion, dated March 20, 2020 ("Supplemental Agreement"). *See* Stipulation ¶ 36. The Supplemental Agreement sets forth the conditions under which Snap may exercise a right to terminate the Settlement in the event that requests for exclusion from the Class exceed certain agreed-upon conditions stated in the Supplemental Agreement ("Termination Threshold").[18] As is standard practice in securities class actions, the Supplemental Agreement is not being made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Termination Threshold to extract an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The

---

[17]    Additionally, the proposal that Class Counsel receives its award of attorneys' fees upon issuance of an order awarding such fees is appropriate and consistent with common practice in cases of this nature. The Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Class Counsel will refund or repay the subject amount to the Settlement Fund. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) ("the fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest[.]"); *In re AXA Rosenberg Inv'r Litig.*, 2012 WL 12920617, at *2 (N.D. Cal. Apr. 2, 2012) (same).

[18]    This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS
REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

Stipulation,[19] Supplemental Agreement, and Term Sheet (as noted above) are the only agreements concerning the Settlement entered into by the Parties.

## IV.   THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE CLASS

Rule 23(c)(2)(B) requires notice to be "the best notice that is practicable under the circumstances." Further, Rule 23(e)(1) requires that notice of a settlement be directed "in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Moreover, notice "must generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (alteration in original). Notice that is mailed to each member of a class "who can be identified through reasonable effort constitutes reasonable notice." *Covidien*, 2014 WL 360196, at *5.

As noted above, in order to maximize the efficiencies in the administration of the Federal and State Settlements, and make simple and seamless for a Class Member to participate in both the Federal and State Settlements, Class Representatives, State Plaintiffs, and Defendants have agreed on a procedure with respect to joint notice and administration, including the retention of a single administrator, JND.[20] This protocol will ensure that Class Members will receive just a single, mailed notice informing them of both the Federal and State Settlements, through the joint Postcard Notice attached as Exhibits A-1 to the Stipulation, along with the single, joint Summary Notice attached as Exhibit A-3 to the Stipulation. These notices will direct recipients to a common, shared website, www.SnapSecuritiesLitigation.com (the "Settlement Website"). Likewise, there will be a

---

[19]   As facilitated by Judge Phillips during the negotiation of the Stipulation and as set forth in the Stipulation, Class Representatives, State Plaintiffs, and Defendants also agreed on a procedure with respect to joint notice and administration of the Federal and State Settlements.

[20]   The Court previously appointed JND as the Administrator to supervise and administer the Class Notice. ECF No. 355. Class Representatives hereby request the Court authorize Class Counsel to retain JND as the claims administrator for the Settlement. *See* Stipulation, Ex. A ¶ 4.

single Claim Form for the Federal and State Settlements, and Class Members will need to complete and submit *only one* Claim Form in order to be potentially eligible to receive payment from both the Federal and State Settlements. In light of the differences in the cases and the terms of the respective settlements, separate long-form notices for the Federal and State Settlements will be posted on the Settlement Website.

Consistent with Rule 23(c)(2)(B) and (e)(1), the Claims Administrator will mail the Postcard Notice, attached as Exhibit A-1 to the Stipulation, to all persons and entities who were previously identified in connection with Class Notice, including those persons and entities listed in the records provided by Snap and the Underwriter Defendants, as well as any other potential Class Members who otherwise may be identified through further reasonable effort. The Claims Administrator will also utilize its proprietary list of banks, brokers, and other nominees ("Nominees") that purchase securities on behalf of beneficial owners in order to reach additional potential Class Members.[21] The Postcard Notice will provide important information regarding the Settlement, along with the rights of Class Members in connection therewith, and will direct recipients to the Settlement Website for more information regarding the Action and the Settlement, including a downloadable

---

[21]   Nominees will be asked to provide email addresses, if available, along with physical mailing addresses for potential Class Members. Although it is not commonplace for Nominees to provide email addresses for purposes of providing notice in securities class actions, if email addresses are provided, JND will also email notice to those potential Class Members. Class Members will be mailed the long-form Notice and Claim Form upon request.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS
REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

version of the long-form Notice.[22]

The Parties propose supplementing the mailed Postcard Notice with the publication of the Summary Notice in *Investor's Business Daily* and *The Wall Street Journal* and over *PR Newswire*. In addition, Class Counsel will make copies of the detailed, long-form Notice and Claim Form available on the Settlement Website, along with other documents and information relevant to the Settlement.[23] Finally, Class Representatives believe a media notice component will be particularly beneficial to reach proposed Class Members in this Action and propose serving the Notice Ads, in the forms attached as A-4 to the Stipulation, over appropriate social media platforms jointly agreed to by the Parties.

The proposed notices will apprise prospective Class Members of the terms of the Settlement and of their options in connection therewith, as well as provide all information required by Rule 23(c)(2)(B). Collectively, the proposed forms of notice advise of, *inter alia*: (i) the nature of the Action; (ii) the definition of the certified Class; (iii) the Class's claims, issues, or defenses; (iv) the Settlement's terms; (v) the consideration that caused Class Representatives and Class Counsel to conclude that the Settlement is fair, reasonable, and adequate; (vi) Class Members' right to request exclusion from the Class or object to the Settlement, or any aspect thereof, and the procedures doing so; (vii) the procedures for

---

[22] Courts routinely allow notice by postcard, such as Class Representatives are proposing here. *See, e.g.*, *Baker v. SeaWorld Entertainment, Inc., et al.*, No. 3:14-cv-2129-MMA (AGS) (S.D. Cal. Feb. 19, 2020), ECF No. 518 at 5 (approving notice though mailing of postcard notice, posting of long-form notice and claim form on website, and publishing a summary notice); *In re Banco Bradesco S.A. Sec. Litig.*, No. 1:16-cv-04155 (GHW) (S.D.N.Y. July 24, 2019), ECF No. 197 at 5 (approving notice through "mailing and distribution of the Postcard Notice, the posting of the Notice and Claim Form on the Settlement Website, and the publication of the Summary Notice"); *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 3018) (approving notice by postcard, which directed class members to settlement website); *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *9 (E.D.N.Y. July 30, 2018) (same); *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (same); William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2019) ("[N]umerous courts have held that postcard notice is 'more than sufficient.'") (collecting cases).

[23] The proposed Notice and Summary Notice are attached to the Stipulation as Exhibits A-2 and A-3, respectively.

entering an appearance; (viii) Class Members' right to participate in the Settlement and the procedures for submitting a Claim; (ix) the binding effect of a class judgment; (x) the proposed plan for allocating the Settlement proceeds; (xi) the date, time, and place of the Settlement Hearing, as well as the possibility that the Settlement Hearing may be conducted telephonically; and (xii) how to obtain additional information regarding the Settlement. The notices also provide contact information for Class Counsel and counsel for Defendants, as well as the postal address for the Court. The proposed notices also include all of the information required by the PSLRA.[24]

Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed notice satisfies these requirements—the Notice specifically advises Class Members that Class Counsel will apply to the Court for an award of attorneys' fees not to exceed 25% of the Settlement Fund plus Litigation Expenses in an amount not to exceed $3.25 million to be paid from the Settlement Fund.

The manner of providing notice, which includes notice by first-class mail to Class Members who can be reasonably identified, supplemented by publication and internet notice, represents "the best notice that is practical under the circumstances" and easily satisfies the requirements of due process, Rule 23, and the PSLRA. Moreover, courts

---

[24]    Specifically with respect to cases filed under the PSLRA, notices of settlements must also state: (i) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (ii) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [], a statement from each settling party concerning the issue or issues on which the parties disagree;" (iii) "a statement indicating which parties or counsel intend to make [] an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (iv) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members . . .;" and (v) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7).

routinely approve comparable notice procedures.[25] Accordingly, Class Representatives respectfully submit that the proposed notice program is adequate and should be approved by the Court.

## V.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (e.g., mailing of the Postcard Notice, publication of the Summary Notice, filing of supporting briefs, deadlines for requesting exclusion from the Class, objecting to the Settlement, submitting Claim Forms, and the Settlement Hearing). The Parties propose the following schedule, which is based on Preliminary Approval[26] and the date for which the Settlement Hearing is scheduled:

| Event | Proposed Time for Compliance |
| --- | --- |
| Deadline for commencing mailing Postcard Notice to Class Members ("Notice Date") | Twenty-one (21) calendar days after Preliminary Approval (Preliminary Approval Order ¶4(a)) |
| Deadline for establishing Settlement Website and posting Notice and Claim Form on same | Contemporaneously with the Notice Date (Preliminary Approval Order ¶4(b)) |
| Deadline for commencement of media campaign | Contemporaneously with the Notice Date (Preliminary Approval Order ¶4(c)) |
| Deadline for publishing the Summary Notice | Ten (10) calendar days after the Notice Date (Preliminary Approval Order ¶4(d)) |

---

[25]    *See*, *e.g.*, *Spann*, 314 F.R.D. at 330–31 (finding notice by first class mail and publication satisfied due process); *Garcia v. Ceva Logistics, U.S.A.*, 2017 U.S. Dist. LEXIS 177946, at *13 (C.D. Cal. Oct. 23, 2017) (approving notice that included, *inter alia*, the mailing of postcard notice to members of the class that included a link to a website where class members could access the long-form notice and claim form); *Middlesex Retirement System, et al. v. Quest Software, et al.*, No. 2:06-cv-06863-DOC (RNBx) (C.D. Cal. Dec. 7, 2009), ECF No. 267 (approving notice by mail and publication of summary notice in *Wall Street Journal*); *In re Portal Software Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (dissemination of notice to all reasonably identifiable class members with summary notice published in *Investor's Business Daily* approved as best practical).

[26]    In order for Preliminary Approval to be effectuated, the Notice, Postcard Notice, Summary Notice, Notice Ads, and Claim Form must be approved by this Court and the Postcard Notice, Summary Notice, and Claim Form must be approved by the State Court and Preliminary Approval Orders must be entered in both cases.

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for filing papers in support of final approval of the Settlement, the Plan of Allocation, and the request for attorneys' fees and Litigation Expenses | Forty-Six (46) calendar days after the Notice Date (Preliminary Approval Order ¶25) |
| Deadline for receipt of requests for exclusion from the Class or objections to the Settlement, Plan of Allocation, and/or the request for attorneys' fees and Litigation Expenses | Sixty (60) calendar days after the Notice Date (Preliminary Approval Order ¶¶12, 15) |
| Deadline for filing reply papers | Seven (7) calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶25) |
| Settlement Hearing | At the Court's convenience, at least one hundred ten (110) calendar days after the date of entry of the Preliminary Approval Order (Preliminary Approval Order ¶2) |
| Deadline for submitting Claim Forms | Ninety (90) calendar days after the Notice Date (Preliminary Approval Order ¶8) |

If the Court agrees with the proposed schedule, Class Representatives request the Court schedule the Settlement Hearing for a date 110 calendar days after Preliminary Approval, or at the Court's earliest convenience thereafter. For example, if Preliminary Approval occurs on April 6, 2020, Class Representatives request that the Court schedule the Settlement Hearing for Monday, July 27, 2020, or at the earliest date thereafter on which the Court's schedule will allow the hearing.

## VI.   CONCLUSION

Based on the foregoing, Class Representatives respectfully submit that the proposed Settlement is a fair and reasonable resolution and warrants this Court's preliminary approval. Class Representatives respectfully request the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice submitted herewith, which will: (i) preliminarily approve the proposed Settlement; (ii) approve the form and manner of giving notice of the Settlement to the Class; and (iii) schedule a hearing date and time to consider final approval of the Settlement and related matters.

Dated: March 20, 2020

Respectfully submitted,

**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**

*/s/ DRAFT*
SHARAN NIRMUL (*Pro Hac Vice*)
snirmul@ktmc.com
NATHAN HASIUK (*Pro Hac Vice*)
nhasiuk@ktmc.com
JONATHAN F. NEUMANN (*Pro Hac Vice*)
jneumann@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (267) 948-2512

- and -

JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Attorneys for Class Representatives Smilka Melgoza, as trustee of the Smilka Melgoza Trust U/A DTD 04/08/2014, Rediet Tilahun, Tony Ray Nelson, Rickey E. Butler, Alan L. Dukes, Donald R. Allen and Shawn B. Dandridge, and Class Counsel for the Class*

**ROSMAN & GERMAIN LLP**
DANIEL L. GERMAIN (Bar No. 143334)
Germain@lalawyer.com
16311 Ventura Boulevard, Suite 1200
Encino, CA 91436
Telephone: (818) 788 0877
Facsimile: (818) 788-0885

*Liaison Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS
REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LARSON O'BRIEN LLP**
STEPHEN G. LARSON (Bar No. 145225)
slarson@larsonobrienlaw.com
PAUL A. RIGALI (Bar No. 262948)
prigali@larsonobrienlaw.com
555 South Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

*Local Counsel for Class Representatives*

**THE SCHALL LAW FIRM**
BRIAN SCHALL (Bar No. 290685)
brian@schallfirm.com
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192

*Additional Counsel for Class Representatives*
*Smilka Melgoza, as trustee of the Smilka Melgoza*
*Trust U/A DTD 04/08/2014, and Rediet Tilahun*

Case No. 2:17-cv-03679-SVW-AGR
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS
REPRESENTATIVES' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT