1

**KESSLER TOPAZ**
    **MELTZER & CHECK, LLP**

2
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com

3
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com

4
One Sansome Street, Suite 1850
San Francisco, CA 94104

5
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

6

7
*Attorneys for Class Representatives Smilka*

8
*Melgoza, as trustee of the Smilka Melgoza*
*Trust U/A DTD 04/08/2014, Rediet*

9
*Tilahun, Tony Ray Nelson, Rickey E.*
*Butler, Alan L. Dukes, Donald R. Allen and*

10
*Shawn B. Dandridge, and Class Counsel*
*for the Class*

11

12
[Additional counsel on signature page.]

13
## UNITED STATES DISTRICT COURT

14
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

15
## WESTERN DIVISION

16

| | |
|---|---|
| IN RE SNAP INC. SECURITIES LITIGATION | Case No. 2:17-cv-03679-SVW-AGR |
| | **CLASS ACTION** |
| This Document Relates To: All Actions. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND PLAN OF ALLOCATION** |

Date:        February 22, 2021
Time:        1:30 p.m.
Courtroom:  10A, 10th Floor
Judge:       Hon. Stephen V. Wilson

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:17-cv-03679-SVW-AGR

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

# **TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  THE SETTLEMENT WARRANTS FINAL APPROVAL ....................................... 4

    A.  Class Representatives and Class Counsel Have Adequately Represented the Class in the Action ........................................................... 6

    B.  The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Neutral Mediator ................................................. 8

    C.  The Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors ........................................................................................ 10

        1.  The Amount Offered in Settlement ................................................... 10

        2.  The Risks of Continued Litigation .................................................... 13

        3.  The Complexity, Expense, and Duration of Continued Litigation ..... 16

        4.  The Extent to Which Discovery Had Been Completed and the Stage of Proceedings ............................................................. 18

        5.  Existence of a Governmental Investigation ....................................... 19

        6.  The Reaction of Class Members to Date ............................................ 19

    D.  The Remaining Rule 23(e)(2) Factors Also Support Final Approval .......... 19

III.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL ...................................... 22

IV.  NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA .................................................... 23

V.  CONCLUSION ................................................................................................. 25

Case No. 2:17-cv-03679-SVW-AGR
MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ........................................................................ 18

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ............................................. 4-5, 17, 19, 22

*Ansell v. Laikin*,
   2012 WL 13034812 (C.D. Cal. July 11, 2012) .......................................................... 23

*Beneli v. BCA Fin. Servs., Inc.*,
   324 F.R.D. 89 (D.N.J. Feb. 6, 2018) ....................................................................... 23

*In re Broadcom Corp. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 14, 2005) .............................................. 23

*In re Broadcom Corp. Sec. Litig.*,
   2005 WL 8153007 (C.D. Cal. Sept. 14, 2005) ......................................................... 12

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ............................................................................ 5

*In re Celera Corp. Sec. Litig.*,
   2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) .......................................................... 15

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................... 16

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................................................... 24

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019) ............................................................. 6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ......................................................................*passim*

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................ 6, 22

*de Rommerswael v. Auerbach*,
   2018 WL 6003560 (C.D. Cal. Nov. 5, 2018) ............................................................ 8

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................................ 10

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................ 15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................ 23

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................................7-8

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................................ 12

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ....................................... 19

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................. 6

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011),
  *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) .................................... 17

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4. 2018) ............................... 10, 21, 23

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................... 5

*Hudson v. Libre Tech. Inc.*,
  2020 WL 2467060 (S.D. Cal. May 13, 2020) ........................................... 6

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................... 4

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................... 12

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .............................................................. 6, 25

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ...................................................... 17, 19

*In re LJ Int'l, Inc. Sec. Litig.*,
  2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ....................................... 12

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.,*
  *Sales Practices. & Prod. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) .................................................................. 21

*In re Mannkind Corp. Sec. Litig.*,
  2012 WL 13008151 (C.D. Cal. Dec. 21, 2012) ......................................... 8

*In re MGM Mirage Sec. Litig.*,
   708 F. App'x 894 (9th Cir. 2017) ........................................................................ 23, 25

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019) ........................................................ 11

*Miller v. Ghirardelli Chocolate Co.*,
   2014 WL 4978433 (N.D. Cal. Oct. 2, 2014) .......................................................... 21

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ........................................................................................... 23-24

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*,
   768 F. App'x 651 (9th Cir. 2019) ......................................................................... 20

*Nguyen v. Radient Pharm. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................................................... 22, 23

*Officers of Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................... 11

*In re OmniVision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................... 13

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. June 18, 1994) ....................................................... 22, 23

*In re PAR Pharm. Sec. Litig.*,
   2013 WL 3930091 (D.N.J. July 29, 2013) .......................................................... 17

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) .......................................................................... 8

*Roberti v. OSI Sys., Inc.*,
   2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ...................................................... 12

*Rodriguez v. Bumble Bee Foods, LLC*,
   2018 WL 1920256 (S.D. Cal. Apr. 24, 2018) .................................................... 10, 11

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) .............................................................................. 24

*Taylor v. Shippers Transp. Express, Inc.*,
   2015 WL 12658458 (C.D. Cal. May 14, 2015) ................................................... 8

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .................................................... 8

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
   2018 WL 828199 (S.D. Cal. Feb. 9, 2018) .................................................. 13, 18, 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) ........................................................................ 4

*In re Wireless Facilities, Inc. Sec. Litig.*,
   2008 WL 11338455 (S.D. Cal. Dec. 19, 2008) ............................................ 23

*Young v. LG Chem., Ltd.*,
   783 F. App'x 727 (9th Cir. 2019) ................................................................ 25

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................. 25

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

Court-appointed Class Representatives Smilka Melgoza, on behalf of the Smilka Melgoza Trust U/A DTD 04/08/2014, Rediet Tilahun, Tony Ray Nelson, Rickey E. Butler, Alan L. Dukes, Donald R. Allen, and Shawn B. Dandridge (collectively, "Class Representatives"), on behalf of themselves and the Court-certified Class, submit this Memorandum of Points and Authorities in support of their motion, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for: (i) final approval of the proposed settlement of this class action on the terms set forth in the Stipulation and Agreement of Settlement, dated March 20, 2020 ("Stipulation" or "Settlement"); and (ii) approval of the proposed plan for allocating the net proceeds of the Settlement to the Class ("Plan of Allocation" or "Plan").[1]

# I.    PRELIMINARY STATEMENT

After more than two years of hard-fought litigation, including comprehensive fact and expert discovery, a contested motion for class certification, preparation of an opposition to the SAC Defendants' summary judgment motions, and substantial trial preparation, as well as protracted, arm's-length negotiations facilitated by an experienced mediator, Class Representatives and Class Counsel have succeeded in securing a significant common-fund recovery of $154,687,500 in cash for the Class. Subject to the Court's final approval, this Settlement will resolve all claims asserted in the Action against Defendants and the other Released Defendants' Parties. The Settlement provides an excellent result for the Class and readily satisfies the standards for final approval under Rule 23(e)(2).

As set forth herein, not only does the Settlement provide a certain recovery for the Class in a case that presented numerous risks, but it also represents a significant percentage of the Class's damages. Notably, the Settlement when viewed in combination with the State

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and the Declaration of Sharan Nirmul in Support of (I) Class Representatives' Motion for Final Approval of the Proposed Settlement and Plan of Allocation; and (II) Class Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses ("Nirmul Declaration" or "Nirmul Decl."). Citations to "¶ __" herein refer to paragraphs in the Nirmul Declaration and citations to "Ex. __" herein refer to exhibits to the Nirmul Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

Settlement—an aggregate recovery of $187.5 million—represents approximately 7.8% to 16.3% of the Class's estimated maximum potential aggregate damages, assuming the Class had prevailed on all aspects of its theory of liability and damages at trial. This is many multiplies of the median recovery in comparable cases.[2] The Settlement is also distinguished from typical securities class action settlements by how far the Action had advanced towards trial at the time of its resolution. When the Settlement was reached, Class Counsel was actively preparing the Class's claims for a jury trial scheduled to begin on March 24, 2020—*just eight weeks away*.

While Class Representatives believe that their claims are meritorious and supported by substantial evidence developed during discovery and in preparation for trial, they also recognize that, in the absence of settlement, they faced substantial risks to obtaining a larger recovery for the Class through further litigation. Indeed, at the time they reached their agreement to resolve the Action, the SAC Defendants' motions for summary judgment ("SJ Motions") and petition to the Ninth Circuit for review of the Court's Order on class certification ("Rule 23(f) Petition") were pending. ¶¶ 173-79, 188-202. An adverse ruling for the Class on either the SJ Motions or Rule 23(f) Petition could have precluded *any* recovery, let alone a recovery greater than the Settlement Amount.

Even if Class Representatives defeated the SJ Motions and Rule 23(f) Petition in their entirety, they still faced significant risks at trial. To this day, Defendants adamantly deny any wrongdoing. Had the Settlement not been reached, the SAC Defendants, as they did at the motion to dismiss and summary judgment stages, would have argued that they fully

---

[2]     *See, e.g.*, Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2019 Review and Analysis*, Cornerstone Research, at 6 (2020), www.cornerstone.com/ Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis (reporting that in 2019, the median securities class action settlement amount was 1.3% of estimated damages for cases with estimated damages over $1 billion and, for years 2010 to 2018, it was 2.4%); Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review*, NERA Economic Consulting, https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_0128 19_Final.pdf, at 35 (Jan. 29, 2019) (between 1996 and 2018 in securities class actions with investor losses between $1 billion and $4.999 billion, the median settlement represented a recovery of approximately 1.2% of aggregate investor losses).

disclosed the information that Class Representatives alleged they concealed from the market. ¶ 229. The SAC Defendants also would have continued to assert that they did not know and/or did not recklessly disregard that their statements were false and misleading when made, that they acted diligently and in good faith at all times, and that they legitimately believed the truth of their statements. ¶ 235.

At trial, the SAC Defendants would also have challenged Class Representatives' ability to prove loss causation and the full amount of claimed damages. Throughout the Action, Defendants maintained that the price declines in Snap Common Stock on the alleged corrective disclosure dates were unrelated to the alleged fraud, and that the "truth" regarding Defendants' alleged fraud was revealed prior to the end of the Class Period. ¶ 239. Resolution of these issues, and others, would likely have come down to a "battle of the experts" with no guarantee as to which expert would be more compelling to a jury. If Class Representatives won at trial, the SAC Defendants likely would have pursued appeals and individual Class Member damages trials—delaying any recovery for years, and possibly eliminating it entirely. In the face of these and other risks, Class Representatives and Class Counsel secured a certain benefit for the Class through the Settlement.

As detailed in the Nirmul Declaration, based on their extensive prosecution of the claims in the Action, Class Representatives and Class Counsel were well-informed of the strengths and weaknesses of the case prior to reaching the Settlement.[3] Moreover, the Settlement is the product of extensive, arm's-length negotiations between the Parties. These negotiations included three formal mediation sessions before retired United States District Judge Layn R. Phillips ("Judge Phillips") (the initial one attended only by the State Plaintiffs) and, at Judge Phillips' direction, the preparation and exchange of comprehensive mediation statements and in-person presentations. ¶¶ 214-19. These hard-fought

---

[3]     The Nirmul Declaration is an integral part of this submission and, for the sake of brevity herein, Class Representatives respectfully refer the Court to the Nirmul Declaration for a detailed description of, *inter alia*: the claims asserted, the procedural history of the Action, the Settlement negotiations, the risks of continued litigation, compliance with the Court-approved notice plan and the reaction of the Class to date, and the Plan of Allocation.

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

negotiations culminated in the Parties' January 17, 2020 acceptance of Judge Phillips' proposal to settle the Action, along with the State Cases, for $187.5 million in cash, with 82.5% allocated to the Settlement of this Action and 17.5% allocated to the State Settlement (i.e., $154,687,500 and $32,812,500, respectively). ¶ 221, n.15. The settlements are being jointly administered by a common claims administrator, JND Legal Administration ("JND"), to maximize efficiencies for the benefit of the Class.

In its Preliminary Approval Order, the Court found the Settlement likely to be finally approved as fair, reasonable, and adequate to the Class. ECF No. 375, ¶ 1. The Settlement has the full support of Class Representatives, and the reaction of the Class to date has been positive. While the January 25, 2021 deadline to object has not yet passed, following the dissemination of more than 748,000 Postcard Notices and 4,000 Notices to Class Members and Nominees, publication of the Summary Notice online and in high-circulation media, and a social media campaign, not a single objection has been received. ¶¶ 12, 257.

Given the foregoing considerations and the factors addressed below, Class Representatives and Class Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Class; and (ii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund.

## II. THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e)(2) requires judicial approval of any class action settlement. Whether to grant such approval lies within the district court's sound discretion. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ("[d]eciding whether a settlement is fair is ultimately an amalgam of delicate balancing, gross approximations and rough justice, best left to the district judge, who has . . . a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings . . ."). Such discretion should be guided by this Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *In re Amgen Inc.*

*Sec. Litig.*, 2016 WL 10571773, at *2 (C.D. Cal. Oct. 25, 2016).

"Under [Rule] 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
>> (i)      the costs, risks, and delay of trial and appeal;
>>
>> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment;
>>
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e)(2)'s guidance, the Ninth Circuit has identified similar factors for courts to consider in deciding whether to approve a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[4] In approving a settlement, a court "need not reach any ultimate conclusions on the contested issues of fact

---

[4]      The "goal" of the 2018 amendments to Rule 23(e)(2) was "not to displace" any of the factors historically articulated by the various Circuits, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Campbell*, 951 F.3d at 1121 n.10. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

At the preliminary approval stage, this Court considered the Rule 23(e)(2) factors in assessing the Settlement, and found it to be fair, reasonable, and adequate, subject to further evaluation at the Settlement Hearing. ECF No. 375, ¶ 1. Nothing has changed to alter the Court's previous analysis, and the factors supporting the Court's determination to preliminarily approve the Settlement apply equally now. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Accordingly, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

## A. Class Representatives and Class Counsel Have Adequately Represented the Class in the Action

The first Rule 23(e)(2) factor—whether Class Representatives and Class Counsel "have adequately represented the class"—favors approval of the Settlement. *See* Rule 23(e)(2)(A). "This analysis is 'redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively.'" *Hudson v. Libre Tech. Inc.*, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (quoting William B. Rubenstein, 4 *Newberg on Class Actions* § 13:48 (5th ed.)); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

In certifying the Class in November 2019, the Court found Class Representatives and Class Counsel had satisfied the adequacy requirement of Rule 23(a)(4), and appointed Class Counsel pursuant to Rule 23(g). *See* ECF No. 341 at 26 ("given the aggressive prosecution

of this case by Lead Counsel and the deposition record of Lead Plaintiffs, this Court is satisfied that they meet the adequacy requirements of Rule 23(a)(4)"). In the ensuing months, Class Representatives and Class Counsel continued their aggressive prosecution of the Action to the brink of trial.

Here, Class Representatives have committed extraordinary time and dedication to representing the Class. At the outset, when the original Court-appointed Lead Plaintiff, Mr. DiBiase, was unable to continue to serve because of illness, Class Representatives stepped forward to ensure a seamless transition of leadership of the litigation, making certain that the case maintained its trial track and that a class could be certified. In this vein, Class Representatives quickly got up to speed on the procedural posture of the case and the extensive record, produced extensive discovery, and prepared and sat for depositions, all within a truncated time frame. Even before their formal appointment in this matter, Class Representatives monitored and supervised the prosecution of the Action. Moreover, through their continued efforts, Class Representatives provided valuable and meaningful assistance to Class Counsel that was necessary to obtain the Settlement. ¶ 297. These efforts included, *inter alia*, communicating with Class Counsel through regular telephone calls, in-person meetings, and correspondence, reviewing pleadings and motions, gathering and reviewing documents and information in response to SAC Defendants' discovery requests, preparing and sitting for a deposition, preparing for trial, reviewing jury focus group materials and results, reviewing mediation materials, and actively participating in settlement negotiations. *Id.*[5]

In addition, Class Representatives—whose claims are based on a common course of alleged wrongdoing by Defendants and are typical of other Class Members—have no interests antagonistic to the Class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a

---

[5]    *See generally* Melgoza Decl. (Ex. 1); Tilahun Decl. (Ex. 2); Nelson Decl. (Ex. 3); Butler Decl. (Ex. 4); Dukes Decl. (Ex. 5); Allen Decl. (Ex. 6); and Dandridge Decl. (Ex. 7).

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

sharing of interest" between representatives and absent class members).[6]

Likewise, Class Counsel has adequately represented the Class in the years before and since its appointment. As detailed in the Nirmul Declaration, Class Counsel has actively litigated this Action through every major litigation stage to the brink of trial, resulting in a comprehensive understanding of the strengths and weaknesses of the case, the risks, costs, and delays of trial, and the obstacles to obtaining a greater recovery from Defendants. With insights gleaned from these efforts, Class Counsel recommended that Class Representatives resolve the Action through the Settlement. *See Churchill*, 361 F.3d at 576-77 (instructing courts to consider "*experience and views of counsel*") (emphasis in original). This factor clearly supports approval of the Settlement.

## B.   The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Neutral Mediator

In the Ninth Circuit, a "strong presumption of fairness" attaches to a class action settlement reached through arm's-length negotiations between "experienced and well-informed counsel." *de Rommerswael v. Auerbach*, 2018 WL 6003560, at *3 (C.D. Cal. Nov. 5, 2018); *see also Taylor v. Shippers Transp. Express, Inc.*, 2015 WL 12658458, at *10 (C.D. Cal. May 14, 2015) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). This presumption is further supported where a neutral mediator is involved in the settlement process. *See Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").[7] Here, the Settlement was reached through sustained, intensive, good-faith bargaining facilitated by Judge Phillips, which satisfies Rule 23(e)(2)(B). ¶¶ 214-24.

---

[6]    *See also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

[7]    *See In re Mannkind Corp. Sec. Litig.*, 2012 WL 13008151, at *5 (C.D. Cal. Dec. 21, 2012) ("The Court is completely confident that the negotiations and mediation [conducted by Judge Phillips] were conducted at arm's length, were the product of rational compromise on the part of all involved, and were in no way collusive.").

More specifically, following the completion of fact discovery and while Class Representatives' Class Certification Motion was pending, the Parties participated in a formal mediation with Judge Phillips on October 15, 2019. ¶ 217.[8] Prior to the mediation, the Parties prepared detailed mediation statements and Class Counsel made a detailed in-person presentation of the evidence in the case. *Id*. Despite their best efforts at the mediation, the Parties could not reach a resolution of the Action. Thereafter, expert discovery was completed, including depositions of the parties' experts, and trial preparation efforts continued in earnest. ¶¶ 183-98. On November 20, 2019, the Court granted the Class Certification Motion. ECF No. 341. Shortly thereafter, the SAC Defendants retained additional appellate counsel, including prominent Supreme Court litigator and former Solicitor General, Paul Clement, of Kirkland & Ellis LLP to pursue a Rule 23(f) appeal of the Class Certification Order. ¶ 173. The parties fully briefed the SAC Defendants' Rule 23(f) Petition in the ensuing weeks. ¶¶ 173-79. Thereafter, the SAC Defendants retained noted trial lawyer, Theodore Wells Jr., of Paul, Weiss, Rifkand, Wharton & Garrison LLP to serve as trial counsel. Class Representatives immediately began conferring with the SAC Defendants' trial counsel on various imminent deadlines for the submission of pre-trial materials, including trial exhibits, witness lists, in limine motions, and jury instructions. ¶¶ 2013-13. The parties also commenced briefing the SJ Motions. ¶¶ 199-202.

While these efforts were underway, the Parties participated in a second formal mediation with Judge Phillips on January 15, 2020. ¶ 218. In advance of the mediation, the Parties again submitted detailed mediation statements. *Id*. Though a resolution was not reached during the January 2020 mediation, the Parties continued negotiating through Judge Phillips, who ultimately issued a mediator's proposal to resolve the Action, along with the State Cases, for a total of $187.5 million in cash. ¶ 219. The Parties accepted Judge Phillip's proposal on January 17, 2020. *Id*. The Parties memorialized their

---

[8]     Previously, on September 18, 2019, the State Plaintiffs and Defendants participated in a formal mediation before Judge Phillips which was unsuccessful. Class Representatives and Class Counsel did not participate in that mediation. ¶ 214, n.14.

agreement-in-principle in a term sheet executed on January 24, 2020, and then spent an additional two months negotiating the specific terms of the Stipulation. ¶¶ 221-23.[9]

Accordingly, the advanced posture of this case, and the deliberative nature of the negotiations evidence a fair process involving good-faith, arm's-length bargaining. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4. 2018) ("[I]n light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive."). This factor favors the Settlement.

## C.     The Settlement Provides the Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors

The remaining Rule 23(e)(2) factors overlap considerably with those articulated by the Ninth Circuit, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide to" the Class. Rule 23(e)(2), advisory committee's note to 2018 amendments; *see also Churchill*, 361 F.3d at 575-77. To perform such an evaluation, a court must

> consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Rodriguez v. Bumble Bee Foods, LLC*, 2018 WL 1920256, at *3 (S.D. Cal. Apr. 24, 2018). The Settlement undoubtedly provides adequate relief for the Class, especially when taking into account the costs, risks, and delay of further litigation, as well as other factors.

### 1.     The Amount Offered in Settlement

"The critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (amount of settlement is "generally considered the most important" factor). However, it "is

---

[9]     Also during this time, Class Counsel and counsel for the State Plaintiffs developed the procedure for the joint notice and administration of the Federal and State Settlements, including joint Postcard and Summary Notices and a joint Claim Form. ¶ 222.

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Rodriguez*, 2018 WL 1920256, at *4. By definition, a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers of Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair.").

Here, the Settlement Amount—$154,687,500—is significant by any measure. The recovery provides an immediate and tangible cash benefit to the Class and eliminates the substantial risk that the Class could recover less, or nothing, if the Action continued. In addition, the related State Settlement currently before the Superior Court of the State of California, County of Los Angeles, provides an additional $32,812,500 to those Class Members who purchased Snap Common Stock pursuant to Snap's IPO, based on additional claims asserted on behalf of the purchasers of those shares against certain Defendants under Sections 11 and 15 of the Securities Act. ¶ 263. Together, the Settlement of this Action and the State Settlement provide an aggregate recovery of $187.5 million for the Class—representing a substantial percentage of the Class's <u>maximum</u> potentially recoverable aggregate damages, assuming a jury verdict on all aspects of Class liability and damages theories, as estimated by Class Representatives' damages expert. ¶ 268.

Had Class Representatives overcome *all* of the obstacles to establishing liability, loss causation, and damages discussed *infra*, maximum potentially recoverable aggregate damages were estimated to be approximately $2.4 billion. ¶ 11. Class Representatives recognized, however, that recovering this amount would be no easy feat, and had a jury or the Court found any of the SAC Defendants' arguments regarding whether they were liable for any statements alleged to have been materially misleading, or whether any of the corrective disclosures caused all, some, or none of the Class's damages persuasive, the

Class's damages would have been reduced, or perhaps eliminated. ¶¶ 8-9. For example, at the class certification stage, the SAC Defendants argued that the Class Period should end no later than May 10, 2017, because the truth regarding the impact of Instagram was fully revealed by then. ¶ 240. If this argument proved successful, Class Representatives would have lost more than half of their potentially recoverable damages, with estimated damages closer to $1.147 billion. ¶ 11. And even with respect to the May 10, 2017 corrective disclosure (i.e., the date of Snap's Q1 2017 earnings release), Defendants argued that there was confounding information released on that date that was unrelated to Class Representatives' claims. ¶ 244. If the SAC Defendants prevailed on that argument, only a small proportion of the stock price decline on that date could be tied to Class Representatives' theory of liability. Given all of these arguments, the $187.5 million obtained through the Federal and State Settlements, which conservatively represents approximately 7.8% to 16.3% of the Class's maximum potential aggregate damages, is a fair and adequate result for the Class. ¶ 268.

By way of comparison, the median securities class action recovery in cases with estimated damages of over $1 billion was 1.3% of estimated damages in 2019, and 2.4% of estimated damages from 2010 through 2018. *See supra* footnote 2. Indeed, the recovery for the Class here, when viewed as a percentage of potentially recoverable damages, is superior to the typical recovery in similar court-approved settlements by a considerable margin. *Id.*[10] The "adequacy of this amount is reinforced by the fact that the amount was originally recommended by Judge Phillips, an objective and informed third-party during the mediation process." *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *4 (C.D. Cal. Dec. 8, 2015); *see*

---

[10]     *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of "maximum potential damages"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering approximately 3.5% of maximum damages); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving settlement where recovery was 4.5% of maximum damages); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 14, 2005) (approving settlement representing 2.7% of damages and finding such percentage was "not [] inconsistent with the average recovery in securities class action[s]").

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

*also* ¶ 219. Considered against the extensive risks involved with prosecuting this Action further, the Settlement Amount is adequate, fair, and reasonable and, thus, this factor also supports final approval.

## 2.    The Risks of Continued Litigation

"To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiffs' case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *4 (S.D. Cal. Feb. 9, 2018); Rule 23(e)(2)(C)(i). While Class Counsel and Class Representatives believe they had substantial evidence to support their claims and were fully prepared to begin trying this case on March 24, 2020, they acknowledge that doing so posed major challenges and considerable risks. *See In re OmniVision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("merely reaching trial is no guarantee of recovery"). And, even if a unanimous liability verdict was obtained, there remained no assurance that the jury would have awarded damages in an amount equal to or greater than the Settlement Amount, or that the ultimate judgment could have been protected on appeal. ¶¶ 246-51.

To obtain a more empirically based understanding of the challenges Class Representatives faced at trial, Class Counsel and its jury consultant conducted a mock jury focus group exercise in order to gain an understanding of lay opinions of the case and the Parties' respective arguments. ¶ 204. Following the exercise, Class Counsel and its jury consultant devoted hours to analyzing the results of the focus group exercise and the reactions of mock jurors to the various issues and evidence presented. *Id.* In addition to providing insight into how best to present its case at trial, this exercise gave Class Counsel a greater understanding of the risks of continued litigation discussed below.

*First*, Class Representatives faced challenges to proving that the statements at issue in the Action were materially false or misleading when made and that Defendants did not legitimately believe the truth of such statements. ¶¶ 233-35. Throughout the Action,

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

Defendants vigorously contended that none of the statements challenged in the Action were materially false or misleading. For example, Defendants argued that Snap's IPO prospectus fully disclosed the information that Class Representatives claim was concealed. ¶ 229. In particular, Defendants argued that Snap disclosed in its prospectus that DAU growth had significantly slowed in the third and fourth quarters of 2016, as well as the various factors that contributed to that slowdown, including "increased competition" from competitors that "launched products with similar functionality to ours." According to Defendants, this meant that investors were not misled but instead fully understood that Instagram Stories was one cause of the Company's deceleration in DAU growth in the second half of 2016. *Id*. In support of this contention, the SAC Defendants were prepared to present at trial, as they did in their SJ Motions, media and analyst reports from the relevant period to argue that the relevant truth—that Snap's growth had slowed and that Instagram competition was a culprit—was fully known to investors before the IPO. ¶ 230.

Similarly, Defendants disputed that the requisite element of scienter was satisfied for each alleged misrepresentation. ¶ 234. Indeed, in their SJ Motions, the SAC Defendants argued that their statements were subjective statements of opinion. ¶ 233. The SAC Defendants further asserted that they truly and reasonably believed their explanation that multiple factors were contributing to Snap's DAU slowdown and that those explanations were fully consistent with Snap's internal analyses. ¶ 235. The SAC Defendants thus contended that the disclosures they made were the best possible disclosures under the circumstances based upon the information they possessed. *Id*. Similarly, the SAC Defendants contended that they fully believed that the notifications they sent to users were not "growth hacking," and thus their growth hacking statements, even if Class Representatives could prove that they were false and misleading, were not made with the requisite mental state. ¶ 231.

The foregoing liability risks were only amplified by the fact that the SEC and the DOJ—both of which conducted investigations of the conduct underlying this Action and successfully sought a partial discovery stay of this case while they pursued their

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

investigation—declined to bring any charges or claims against Defendants. ¶ 237. The SAC Defendants would certainly have attempted, as they did in their SJ Motions, to use this detail to bolster their defense if this Action continued to trial. *Id*.

*Second*, Class Representatives faced significant risks in proving loss causation and damages at trial. ¶¶ 238-45. To establish these elements, Class Representatives would have to prove that the revelation of the relevant truth concealed by the SAC Defendants' alleged misrepresentations and omissions proximately caused the declines in the price of Snap Common Stock.[11]

During the course of the Action, Defendants vigorously asserted that the alleged misstatements did not ultimately cause the Class's losses. ¶ 239. For example, Defendants argued that because the relevant truth was already fully understood by the market, the alleged misstatements could not have artificially inflated the price of Snap Common Stock. *Id*. In turn, according to the SAC Defendants and their expert, Snap's stock price drops during the Class Period could not have been caused by the revelation of that relevant truth— since only new (previously unknown) material information causes stock price movements. *Id*. In addition, with respect to Class Representatives' growth hacking claims, Defendants argued that Class Representatives would be unable to establish loss causation because: (i) the alleged misstatements were immaterial and thus did not inflate Snap's stock price; and (2) the market did not react to the alleged corrective disclosures regarding growth hacking. ¶ 241. Moreover, because the determination of loss causation and damages is a complicated process requiring expert testimony, the jury's assessments of the experts' evidence could vary substantially at trial, reducing this crucial element to an uncertain "battle of experts." *See In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to "battle of the experts" favored of settlement approval). There was also a risk that, even after finding liability, a jury could return an award of very

---

[11]     *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

low damages for the Class, or none at all. ¶ 245; *see also, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001).

*Finally*, the SAC Defendants' 23(f) Petition—which was pending at the time of settlement—posed another risk to Class Representatives had the Action continued. The Rule 23(f) Petition raised three primary challenges to Class Representatives' Section 11 claims: (i) such claims were time-barred under controlling Supreme Court precedent; (ii) Class Representatives' damages methodology was invalid; and (iii) certain Class Members could not "trace" their shares of Snap Common Stock to the IPO, and thus the certified Class was overbroad. ¶¶ 245-50. Had the Ninth Circuit in subsequent proceedings accepted any of these arguments or theories, Class Representatives' ability to obtain a recovery for the Class could have been eliminated or significantly limited. *Id.*[12] Moreover, if the Rule 23(f) Petition was granted, there was the very real possibility that either the Ninth Circuit or the Court could have elected to stay the Action pending the Ninth Circuit's review, which would have further delayed Class Representatives' ability to present their claims to a jury regardless of the ultimate result on appeal. ¶ 251.

Class Counsel analyzed each of these risks over the course of the litigation, including testing certain of them before mock jurors in August 2019. ¶¶ 203-05. If realized, any one of these risks could have resulted in no recovery for the Class. By resolving the Action through the Settlement, in contrast, Class Representatives guaranteed the Class a cash recovery of $154,687,500. This factor strongly supports final approval of the Settlement.

### 3.    The Complexity, Expense, and Duration of Continued Litigation

In addition to the risk of continued litigation, in evaluating the fairness of the Settlement, the "expense, complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal" should be taken into account,

---

[12]    For example, if the Ninth Circuit had accepted the SAC Defendants' arguments with *respect* to "traceability," only Class Members who purchased in the six days immediately following the IPO (i.e., between March 2, 2017 and March 8, 2017) would have been permitted to bring Section 11 claims, as compared to all Class Member under the Court's Class Certification Order. Such a finding would have altered the value of such claims. ¶ 250.

Rule 23(e)(2)(C)(i). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Here, these factors further underscore the fairness of the Settlement.

Courts consistently acknowledge that securities class actions are "notably complex, lengthy, and expensive cases to litigate[,]"[13] and this Action is no exception. Moreover, trial was just eight weeks away when the Settlement was reached. Post-trial motions and appeals would invariably have followed (certainly, the issues presented by the Rule 23(f) Petition were novel and likely to have been a fertile area of appellate review), resulting in additional years of complex and expensive litigation. *See Amgen*, 2016 WL 10571773, at *3 ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation."). Even with a verdict at trial affirmed on appeal, the Class would face a potentially complex, lengthy, and contested claims process.[14] Further, the expense of litigating this Action for three years was significant. A trial would have increased those expenses considerably, requiring a full trial team from across the country to move to Los Angeles to work around the clock for many weeks and possibly months. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action."). This factor favors approval of the Settlement.

---

[13]     *In re PAR Pharm. Sec. Litig.*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013) (citing examples).

[14]     In similar actions that were tried, the time from verdict to final judgment has taken as long as *seven* years. *See, e.g.*, *Jaffe Pension Plan v. Household Int'l., Inc.*, No. 1:02-cv-05893, Verdict Form, ECF No. 1611 (N.D. Ill. May 7, 2009) & Final Judgment and Order of Dismissal With Prejudice, ECF No. 2267 (N.D. Ill. Nov. 10, 2016); *In re Vivendi Universal, S.A. Sec. Litig.*, Civ. No. 02-5571 (RJH/HBP) (S.D.N.Y.), Verdict Form, ECF No. 998 (Feb. 2, 2010) & Final Judgment, ECF No. 1317 (May 9, 2017).

### 4.      The Extent to Which Discovery Had Been Completed and the Stage of Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Velazquez*, 2018 WL 828199, at *5; *see also Churchill*, 361 F.3d at 575. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012).

From the commencement of this Action in May 2017 through the Parties' agreement to settle, Class Representatives and Class Counsel spent substantial time and resources analyzing and zealously litigating the factual and legal issues involved in the Action. ¶¶ 6, 20-213. Before reaching the Settlement, Class Representatives through Class Counsel had completed both fact and expert discovery—which included, *inter alia*: successfully negotiating with the DOJ in response to its motion to intervene and stay the litigation pending the completion of its investigation, for a limited stay to ensure that fact discovery would not be at a standstill; analyzing more than 1.97 million pages of documents from Defendants and third parties; serving and responding to numerous discovery requests and subpoenas; litigating discovery disputes formally through motion practice and informally in conferences with Defendants; preparing and exchanging class certification and merits expert reports for five expert witnesses; and taking or defending 29 depositions. ¶¶ 63-129.

Also prior to resolving the Action, Class Representatives and Class Counsel, among other things, briefed motions to dismiss and related interlocutory appeal, successfully moved for class certification, defended a re-opened lead plaintiff process, briefed a Rule 23(f) Petition, substantially drafted an opposition to the SAC Defendants' SJ Motions, and prepared for trial, including preparing for and participating in a jury focus group exercise, and preparing witness and exhibit lists, stipulated facts, and an order of proof. ¶¶ 33-62, 130-213. In addition, Class Representatives and Class Counsel briefed two rounds of mediation statements, prepared detailed evidence-based mediation presentations, and

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

participated in formal mediation sessions with Judge Phillips. *Id.*, ¶¶ 214-19.

This substantial record demonstrates that, when the Settlement was reached, Class Representatives and Class Counsel had more than "enough information to make an informed decision about settlement based on the strengths and weaknesses" of their case. *Amgen*, 2016 WL 10571773, at *4 (finding "in favor of granting final approval" where discovery was complete and "case was on the verge of trial"). This factor strongly supports final approval of the Settlement.

### 5. Existence of a Governmental Investigation

Although both the SEC and DOJ conducted investigations of the conduct underlying the Action, neither decided to bring any charges or claims against Defendants. Also, pursuant to the Class Action Fairness Act ("CAFA"), Defendants provided notice of the Settlement to appropriate state and federal officials. *See* ECF No. 368-3, ¶ 39; *see also* ¶ 255, n.22. To date, none of these officials has raised any objection or concern regarding the Settlement. *LinkedIn*, 309 F.R.D. at 589 (finding no objections favored settlement).

### 6. The Reaction of Class Members to Date

"In addition to the enumerated fairness factors of Rule 23(e)(2), courts within the Ninth Circuit typically consider the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *see also Churchill*, 361 F.3d at 577. "The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement." *Velazquez*, 2018 WL 828199, at *6. Here, as of the date of this filing, no objections to the Settlement have been filed. ¶ 12. Moreover, Class Representatives support the Settlement as well. ¶ 4. This factor favors approval of the Settlement.

### D. The Remaining Rule 23(e)(2) Factors Also Support Final Approval

In evaluating the Settlement, Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the timing of payment; (iii) any other agreement made

in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Rule 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These factors also support final approval of the Settlement.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of Class Members. *See* Rule 23(e)(2)(C)(ii), (e)(2)(D). Class Members' claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. JND will review and process all Claims received, provide Claimants with an opportunity to cure any deficiency or request judicial review of the denial of their Claims, if applicable, and will ultimately mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan. *See infra* Section III; ¶¶ 258-64. Importantly, none of the Settlement proceeds will revert to Defendants. *See* ECF No. 368-3, ¶ 13.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the proposed award of attorneys' fees and reimbursement of expenses incurred in prosecuting this Action, including the timing of any such Court-approved payments. *See* Rule 23(e)(2)(C)(iii). As shown in the accompanying Fee Memorandum, the requested attorneys' fees of 25% of the Settlement Fund, made in accordance with Class Representatives' retention agreements and to be paid only upon the Court's approval, are reasonable in light of the efforts of Class Counsel over the past nearly three years in taking this Action to the brink of trial and obtaining a $154,687,500 cash recovery, as well as the significant risks and expenses Class Counsel shouldered at every step.[15]

The requested 25% fee award is eminently reasonable and fully supported by Ninth Circuit case law, which "permit[s] awards of attorneys' fees ranging from 20 to 30 percent of settlement funds, with 25 percent as the benchmark award." *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (collecting cases).

---

[15]   In connection with its fee request, Class Counsel also seeks payment from the Settlement Fund of Plaintiffs' Counsel's Litigation Expenses in the total amount of $2,390,165.53, which amount *includes* requests for reimbursement of Class Representatives' reasonable costs in the aggregate amount of $99,815.00. ¶ 266.

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

Further, any fee award is separate from the approval of the Settlement, and neither Class Counsel nor Class Representatives may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* ECF No. 368-3, ¶ 17. Additionally, the proposal that any Court-awarded attorneys' fees be paid upon issuance of such an award is reasonable and consistent with common practice in similar cases, as the Stipulation dictates that if the Settlement were terminated or any fee award subsequently modified, Class Counsel must repay the subject amount with interest. *Id.*[16]

*Lastly*, as previously disclosed, the only agreement the Parties entered into in addition to the initial Term Sheet and the Stipulation was a confidential Supplemental Agreement regarding requests for exclusion. *See* ECF No. 368-1 at 19-20; ECF No. 368-3, ¶ 36; *see also* Rule 23(e)(2)(C)(iv). The Supplemental Agreement provides Snap with the option to terminate the Settlement in the event Class Members who timely and validly request exclusion from the Class meet certain conditions. ECF No. 368-3, ¶ 36. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

\*     \*     \*

For the reasons set forth above and in the Nirmul Declaration, the Settlement is fair, reasonable, and adequate when evaluated under any standard, or set of factors and, therefore, warrants the Court's final approval.

---

[16] Such provisions in class action settlements, sometimes termed "quick-pay" provisions, "have generally been approved by other federal courts." *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices. & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) (finding objection to "quick-pay provision" "border[ed] on frivolous" as there was "no reason to buck" the trend of other federal courts approving such quick-pay provisions); *see also, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, 2014 WL 4978433, at *5 (N.D. Cal. Oct. 2, 2014).

### III.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be fair and reasonable. *See, e.g.*, *Class Plaintiffs*, 955 F.2d at 1284; *Amgen*, 2016 WL 10571773, at *7. An allocation formula need only have a "reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). Further, "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

Here, the Plan (set forth in Appendix A to the Notice) was developed by Class Counsel in consultation with Class Representatives' damages expert Dr. Nye and his team at Stanford Consulting Group, Inc. ¶ 260. The Plan is designed to equitably distribute the Net Settlement Fund to Class Members who timely submit valid Claim Forms demonstrating they suffered economic losses from Defendants' alleged misrepresentations and omissions, as opposed to losses caused by unrelated market or industry factors. *Id*.

The Plan is based upon the estimated amount of artificial inflation in the per share price of Snap Common Stock during the Class Period. ¶ 260. To have a Recognized Claim under the Plan, a Claimant must have purchased or otherwise acquired Snap Common Stock during the Class Period (i.e., between March 2, 2017 and August 10, 2017, inclusive) and held those shares through at least one of the alleged corrective disclosures that removed alleged artificial inflation related to that information (i.e., May 10, 2017, June 7, 2017, July 11, 2017, and August 10, 2017). ¶ 261. Further, a Claimant's loss under the Plan will depend upon several factors, including the date(s) when the Claimant purchased/acquired their shares of Snap Common Stock during the Class Period, and whether such shares were sold and if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. *Id*. Authorized Claimants will recover their proportional "pro rata" amount of the Net Settlement Fund based on their calculated loss as a percentage of all

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

Authorized Claimants' calculated losses. *See Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105 (D.N.J. Feb. 6, 2018) ("pro rata distributions are consistently upheld . . ."); *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 41976, at *17 (C.D. Cal. Sept. 14, 2005) (approving plan of allocation where allocation was pro rata across the class).

As noted in the Plan, purchases of Snap Common Stock pursuant to Snap's IPO on or about March 2, 2017, are potentially eligible for additional compensation pursuant to the State Settlement Plan of Allocation, which is based on the statutory measure of damages for claims asserted under the Securities Act. ¶ 263.[17] If a Claimant has a loss pursuant to the State Settlement Plan of Allocation, the Claimant will be eligible for compensation from the State Settlement in addition to compensation from this Settlement.

The structure of the Plan is similar to plans that have been used to equitably apportion settlement proceeds in many other securities class actions.[18] The Plan was fully disclosed in the Notice and, to date, no objections to the Plan have been filed. ¶ 265. Accordingly, Class Counsel and Class Representatives believe the Plan is fair, reasonable, and adequate and should be approved. Rule 23(e)(2)(C)(ii), (e)(2)(D).

## IV.   NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

Notice of the Settlement satisfied both: (i) Rule 23 as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement, Rule 23(c)(2)(B), (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); and (ii) due process as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

---

[17]    As further noted in the Notice and Claim Form, Class Members need only submit *one* Claim Form in order to be potentially eligible for a distribution from both settlements.

[18]    *See, e.g.*, *Hefler*, 2018 WL 4207245, at*11; *Nguyen*, 2014 WL 1802293, at *5; *In re Wireless Facilities, Inc. Sec. Litig.*, 2008 WL 11338455, at *6 (S.D. Cal. Dec. 19, 2008); *Ansell v. Laikin*, 2012 WL 13034812, at *9 (C.D. Cal. July 11, 2012); *Oracle*, 1994 WL 502054, at *1.

1   afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

2   *Tr. Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

3          In accordance with the Preliminary Approval Order and subsequent November 4,

4   2020 Order, beginning on November 25, 2020, JND mailed or e-mailed the Postcard Notice

5   to potential Class Members who were previously identified in the records provided by Snap

6   and the Underwriter Defendants in connection with Class Notice, and any other potential

7   Class Members who were identified through further reasonable effort. *See* Segura Decl.,

8   ¶¶ 3-6.[19] On the same day, JND mailed the Notice Packet[20] to the Nominees contained in

9   JND's Nominee database. *Id.*, ¶ 7. To date, JND has disseminated 748,613 Postcard Notices

10  and 4,096 Notice Packets to potential Class Members and Nominees. *Id.*, ¶ 12. In addition,

11  JND published the Summary Notice in *The Wall Street Journal* and *Investor's Business*

12  *Daily* and transmitted the same over *PR Newswire* and conducted a social media campaign

13  via Twitter, Google Banner Ads, and LinkedIn. *Id.*, ¶ 13.

14         Contemporaneously with this multi-layered notice campaign, JND developed a

15  website, www.SnapSecuritiesLitigation.com, dedicated to the Action (and State Action) to

16  provide information about the Settlement and important dates and deadlines. The long-form

17  Notice and Claim Form, as well as the Stipulation, Preliminary Approval Order, and SAC,

18  were posted on the Settlement Website (Segura Decl., ¶ 18), and copies of the long-form

19  Notice and Claim Form were made available on Class Counsel's website, www.ktmc.com.

20  Pursuant to the Stipulation, Defendants also issued notice pursuant to CAFA. ECF No. 368-

21  3, ¶ 39, *see also* ¶ 255, n.22.

22         Collectively, the notices apprise Class Members of, among other things: (i) the

23  amount of the Settlement; (ii) the reasons why the Parties are proposing the Settlement;

24  (iii) the Class definition and exclusions therefrom; (iv) the estimated average recovery per

25

26  [19]    "Individual notice must be sent to all class members whose names and addresses may
    be ascertained through reasonable effort." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL

27  5173771, at *8 (C.D. Cal. Oct. 10, 2019).

28  [20]    The Notice Packet contained the long-form Notice for this Settlement, along with the
    long-form notice for the State Settlement, and the Claim Form. Segura Decl., ¶ 7, n.7.

affected share of Snap Common Stock; (v) the maximum amount of attorneys' fees and expenses that will be sought; (vi) the identity and contact information for a representative of Class Counsel available to answer questions concerning the Settlement; (vii) the right of Class Members to object to the Settlement; (viii) the right of Class Members to request exclusion from the Class; (ix) the binding effect of a judgment on Class Members; (x) the dates and deadlines for certain Settlement-related events; and (xi) the opportunity to obtain additional information about the Action and the Settlement by contacting Class Counsel, the Claims Administrator, or visiting the Settlement Website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also contains the Plan of Allocation and provides Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund. *See* Segura Decl., Exs. A & B. The content disseminated through this notice campaign was more than adequate, as it "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem., Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019).

In sum, the robust notice campaign here provided sufficient information for Class Members to make informed decisions regarding the Settlement, fairly apprised them of their rights with respect to the Settlement, represented the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order and November 4, 2020 Order, Rule 23, the PSLRA, and due process. *See, e.g.*, *Young*, 783 F. App'x at 736; *MGM Mirage*, 708 F. App'x at 896; *Lane*, 696 F.3d at 826.

## V.   CONCLUSION

For the reasons set forth herein and in the Nirmul Declaration, Class Representatives respectfully request that the Court grant final approval of the Settlement, approve the Plan of Allocation, and determine that notice to the Class was adequate.

| | | |
|---|---|---|
| 1 | Dated: January 11, 2021 | Respectfully submitted, |
| 2 | | **KESSLER TOPAZ** |
| 3 | | **MELTZER & CHECK, LLP** |
| 4 | | */s/ Sharan Nirmul* |
| | | SHARAN NIRMUL (*Pro Hac Vice*) |
| 5 | | snirmul@ktmc.com |
| | | NATHAN HASIUK (*Pro Hac Vice*) |
| 6 | | nhasiuk@ktmc.com |
| 7 | | JONATHAN F. NEUMANN (*Pro Hac Vice*) |
| | | jneumann@ktmc.com |
| 8 | | 280 King of Prussia Road |
| | | Radnor, PA 19087 |
| 9 | | Telephone: (610) 667-7706 |
| 10 | | Facsimile: (610) 667-7056 |
| 11 | | - and - |
| 12 | | JENNIFER L. JOOST (Bar No. 296164) |
| | | jjoost@ktmc.com |
| 13 | | STACEY M. KAPLAN (Bar No. 241989) |
| | | skaplan@ktmc.com |
| 14 | | One Sansome Street, Suite 1850 |
| 15 | | San Francisco, CA 94104 |
| | | Telephone: (415) 400-3000 |
| 16 | | Facsimile: (415) 400-3001 |
| 17 | | *Attorneys for Class Representatives Smilka* |
| 18 | | *Melgoza, as trustee of the Smilka Melgoza Trust* |
| | | *U/A DTD 04/08/2014, Rediet Tilahun, Tony Ray* |
| 19 | | *Nelson, Rickey E. Butler, Alan L. Dukes, Donald R.* |
| | | *Allen and Shawn B. Dandridge, and Class Counsel* |
| 20 | | *for the Class* |
| 21 | | **ROSMAN & GERMAIN LLP** |
| 22 | | DANIEL L. GERMAIN (Bar No. 143334) |
| | | Germain@lalawyer.com |
| 23 | | 16311 Ventura Boulevard, Suite 1200 |
| | | Encino, CA 91436 |
| 24 | | Telephone: (818) 788 0877 |
| 25 | | Facsimile: (818) 788-0885 |
| 26 | | *Liaison Counsel for the Class* |
| 27 | | |
| 28 | | |

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LARSON LLP**
STEPHEN G. LARSON (Bar No. 145225)
slarson@larsonobrienlaw.com
PAUL A. RIGALI (Bar No. 262948)
prigali@larsonobrienlaw.com
555 South Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

*Local Counsel for Class Representatives*

**THE SCHALL LAW FIRM**
BRIAN SCHALL (Bar No. 290685)
brian@schallfirm.com
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192

*Additional Counsel for Class Representatives*
*Smilka Melgoza, as trustee of the Smilka Melgoza*
*Trust U/A DTD 04/08/2014, and Rediet Tilahun*

MEMORANDUM OF POINTS AND AUTHORITIES ISO CLASS REPRESENTATIVES' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION